IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE ZICCARELLI,<br><br>      Plaintiff,<br><br>  v.<br><br>THE ALLEGHENY COUNTY BOARD OF ELECTIONS, RICH FITZGERALD, in his official capacity as a Member of the Allegheny County Board of Elections, SAMUEL DEMARCO, in his official capacity as a member of the Allegheny County Board of Elections, BETHANY HALLAM, in her official capacity as a member of the Allegheny County Board of Elections, and KATHY BOOCKVAR, in her official capacity as the Secretary of the Commonwealth of Pennsylvania,<br><br>      Defendants. | No. 2:20-cv-1831<br><br>(*filed electronically*) |

**PLAINTIFF NICOLE ZICCARELLI'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff Nicole Ziccarelli respectfully moves this Court for a Temporary Restraining Order and a Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure: (a) prohibiting the Allegheny County Board of Elections, acting through its members, Rich Fitzgerald, Samuel DeMarco, Bethany Hallam from amending the certification of the 2020 General Election results to include the tabulation and canvass of over 2,000 invalid mail-in ballots; and (b) prohibiting the Secretary of State, Kathy Boockvar from receiving or in any way acting upon any amended certification, which includes such invalid ballots in its tabulation. The grounds for this motion are set forth in the accompanying Memorandum of Law, attached hereto, which is

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE ZICCARELLI,<br><br>                Plaintiff,<br><br>v.<br><br>THE ALLEGHENY COUNTY BOARD OF ELECTIONS, RICH FITZGERALD, in his official capacity as a Member of the Allegheny County Board of Elections, SAMUEL DEMARCO, in his official capacity as a member of the Allegheny County Board of Elections, BETHANY HALLAM, in her official capacity as a member of the Allegheny County Board of Elections, and KATHY BOOCKVAR, in her official capacity as the Secretary of the Commonwealth of Pennsylvania,<br><br>                Defendants. | No. 2:20-cv-1831<br><br>(*filed electronically*) |

**PLAINTIFF NICOLE ZICCARELLI'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**I.    INTRODUCTION**

This matter presents a straightforward question of law: whether a county board of elections may canvass invalid mail-in ballots without violating the basic precepts of equal protection and due process under the Federal Constitution—particularly where the inclusion of those is outcome determinative of a state legislative race. it is important to plainly state the limited scope of this action at the outset. this matter ***does not*** bring into question the legality of the ballots at issue, as the State Supreme Court has already held that they are *not valid*; nor does it require the Court to delve into sensitive areas of state law or determine the validity of the

current statutory mail-in voting scheme. Rather, Ziccarelli's request presents a simple question: Can ballots—the invalidity of which is now clearly settled and beyond peradventure—be canvassed and permitted to change the outcome of an election without violating the Federal Constitution?

## II.   BACKGROUND

Under the Pennsylvania Election Code, *see* 25 P.S. §§ 2601, *et seq.*, the conduct of elections in Allegheny County is overseen by Defendant Allegheny County Board of Elections (the "Board"), which is composed of the Defendants Rich Fitzgerald, Bethany Hallam, and Samuel DeMarco (together with the Board, the "Board Defendants"). Specifically, as relevant herein, the Board, like its counterpart in the other sixty-six counties, is responsible for counting, computing, and tallying the votes reflected on ballots, including mail-in ballots, cast by voters in Allegheny County. At the conclusion of that process the results are transmitted to the Secretary of the Commonwealth, who tabulates the returns and issues certificates of election to the person receiving the highest number of votes for any given office, including for Senator in the Senate of Pennsylvania. 25 P.S. § 3164 ("The Secretary of the Commonwealth shall issue certificates of election to the persons elected members of the Senate and House of Representatives of the Commonwealth.").

In October 2019, Governor Tom Wolf signed Act 77 of 2019 into law, which, among other things,[1] permitting any registered elector whose application for a mail-in ballot has been approved to vote by submitting that ballot—either in person or by mail—to the appropriate county board of elections which. However, to ensure the integrity of the electoral process, the individual county boards of elections responsible for counting the mail-in ballots, as well as the

---

[1] Act of October 31, 2019, P.L. 552, No. 77.

mail-in electors casting such ballots, must adhere to certain basic guidelines. With regard to the voters who have opted to vote by mail-in ballot, Section 3150.16(a) of the Election Code provides, among other things, that the elector must mark the ballot by eight o'clock p.m. on the day of the election, securely seal it in the secrecy envelope, place it inside a second envelope and, prior to mailing the ballot, fill out, **date**, and sign a voter declaration form affirming the elector's qualifications to vote and attesting that the elector has not already voted in that election (the "Voter Declaration"). *See* 25 P.S. § 3150.16(a); *see also* 25 P.S. § 3150.14 (b) (setting forth the contents of the Voter Declaration). In turn, before a ballot may be canvassed, the county board of elections "is required to determine if the [Voter Declaration] is 'sufficient.'" *In re November 3, 2020 General Election*, __ A.3d __, 2020 WL 6252803, at *12 (Pa. 2020). Where the accompanying Voter Declaration is insufficient, the mail-in ballot may not be treated as "verified" and, thus, cannot be "counted and included with the returns of the applicable election district." 25 P.S. § 3146.8 (g)(4)(i).

On November 3, 2020, the general election was conducted for various offices, including Senator in the General Assembly from the 45th Senatorial District, encompassing parts of Westmoreland and Allegheny counties. The two candidates in that election were Ziccarelli (R) and James Brewster (D).

In Allegheny County, an estimated 350,000 mail-in ballots were received by the Board, of which 2,349 contained a Voter Declaration with an undated signature (the "Disputed Ballots"). Although the Board initially segregated the Disputed Ballots, on November 10, 2020, it decided to proceed with canvassing them. Notably, only three days later, the Westmoreland County board of elections declined to canvass 343 mail-in ballots containing an identical defect – i.e., an undated signature on the Voter Declaration.

Ziccarelli filed a timely appeal to the Allegheny County Court of Common Pleas, which affirmed the Board's decision to canvass the Disputed Ballots. However, upon expedited review, a three-judge panel of the Commonwealth Court reversed the Board's decision and directed the Common Pleas Court "to issue an order sustaining [Ziccarelli]'s challenge to the [Board]'s determination and directing the [Board] to exclude the [ Disputed Ballots] from the certified returns of election for the County of Allegheny under . . . 25 P.S. § 3154." *See In re: 2,349 Ballots in the 2020 General Election*, No. 1162 CD 2020, slip op. at 13 (Pa. Cmwlth. Nov. 19, 2020). In doing so, the Commonwealth Court roundly rejected the notion that the Board had any discretion to canvass a mail-in ballot with an undated signature on the Voter Declaration, holding that such a defect rendered the ballot plainly defective. *See id.* at 7 ("Where the [Board] tacitly derived its statutory authority to ignore its statuary obligation to determine the sufficiency of ballots and to violate the will of the General Assembly reflected in Act 77, approved by the Governor, and the guidance of the Secretary [of State] is a mystery."). The Board filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court, which the Supreme Court granted on November 20, 2020, *see* No. 29 WAP 2020, and then consolidated the appeal with *In re: Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election*. On November 23, 2020, prior to the issuance of the Supreme Court's decision in this matter, the Board certified its election results, but excluded any certification of the Disputed Ballots.

On November 23, 2020, the Supreme Court issued a fractured decision in *In Re: Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election*, No. 29 WAP 2020. Specifically, as pertinent herein, the Opinion Announcing Judgment of the Court (OAJC), authored by Justice Todd and joined by Justices Donohue and Baer, concluded that the Disputed Ballots should be canvassed because an undated signature on the Voter Declaration was a minor

irregularity. *See generally In Re: Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election*, slip op. at 30.

In a concurring and dissenting opinion in which Chief Justice Saylor and Justice Mundy joined, Justice Dougherty concurred with the decision to affirm certain aspects of the lower courts' decision pertaining to canvassing of mail-in ballots. Importantly, however, Justice Dougherty differed from the OAJC's conclusion relative to the Disputed Ballots, concluding that "the statutory language expressly requires that the elector provide" a date and signature on mail-in ballots. *Id.* (Dougherty, J., concurring and dissenting).

Justice Wecht also filed a concurring and dissenting opinion, "part[ing] ways with the conclusion . . . that a voter's failure to comply with the statutory requirement that voters date the voter declaration should be overlooked as a 'minor irregularity.'" *Id.* (Wecht, J., concurring and dissenting). Justice Wecht reasoned that these requirements for signing and dating a mail-in ballot are "stated in unambiguously mandatory terms, and nothing in the Election Code suggests that the legislature intended that courts should construe its mandatory language as directory." *Id.* (footnote omitted). Despite agreeing that the Disputed Ballots do not comply with a mandatory statutory directive, based upon the circumstances, Justice Wecht express his preference for a prospective application of the requirement. *Id.* However, **a four-justice majority of the Court held that an undated signature on the Voter Declaration renders the enclosed mail-in ballot defective**.

On November 24, 2020, Ziccarelli filed an application for reargument, noting that the prospective application of the Court's holding relative to Election Code's dating requirement was untenable under the Court's existing jurisprudence. On that same day, several hours later, the Board announced its intention to amend its certification of the results, presumably to include the

7

Disputed Ballots in its tabulation, notwithstanding a clear directive from the Supreme Court that ballots not in compliance with these requirements are invalid.

With nearly all valid and legal ballots canvassed, Ziccarelli leads her opponent by 20 votes. If the Board is permitted to canvass the Disputed Ballots and include those results in its certification to the Secretary, the result of the 2020 General Election for the 45th Senatorial District will change, with Brewster prevailing by approximately 75 votes.

### III. ARGUMENT

The Board Defendants should be enjoined from including the Disputed Ballots in its amended certification and, concomitantly, the Secretary should be enjoined from receiving or in any way acting upon any certification which includes the Disputed Ballots in its tabulation. Specifically, as detailed below, Ziccarelli is entitled to such injunctive relief because she satisfies each of the four relevant factors: (1) likelihood of success on the merits, (2) risk of imminent, irreparable harm, (3) balance of equities, and (4) the public interest. *See BP Chemicals, Ltd. v. Formosa Chemical & Fibre Corp.*, 229 F.3d 254, 263 (3d Cir. 2000) (identifying standard for injunctive relief).

> **A. Ziccarelli is likely to succeed on the merits of her claim that canvassing the Disputed Ballots would violate the Federal Constitution.**
>
> **1. Because canvassing the Disputed Ballots would result in disparate treatment of similarly situated voters and improperly dilute legal votes by comingling invalid votes, Ziccarelli is likely to succeed on her Equal Protection claim.**

Ziccarelli is likely to succeed on the merits of Count I. Under the Equal Protection Clause of the 14th Amendment, which provides that no person shall be denied equal protection of the laws, *see* U.S. Const. amend XIV, the right to vote is one of the recognized rights. *See Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 666 (1966). As the Supreme Court has explained, "States are required to insure that each person's vote counts as much, insofar as . . . practicable,

8

as any other person's." *Hadley v. Junior College Dist. of Metropolitan Kansas City, Mo.*, 397 U.S. 50, 54 (1970). Therefore, voting discrepancies that dilute the right to vote are constitutionally infirm. Equal protection applies both to the "initial allocation of the franchise" of the right to vote "as well as to the manner of its exercise." *Bush v. Gore*, 531 U.S. 98, 104 (2000). Accordingly, a "State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Id.* a 104-05.

As this Court recognized in *Pierce v. Allegheny County Board of Elections*, 324 F. Supp. 2d 684, 698 (W.D. Pa. 2003), a candidate can show a likelihood of success on the merits of an Equal Protection Clause claim where evidence is presented demonstrating that at least two counties "employ different standards" to determine sufficiency of a ballot. In that case, Allegheny County and Philadelphia County used different "standards to determine whether a third-party hand-delivered absentee ballot constitutes a legal vote." *Id.* This Court recognized that if the interpretation of the relevant provision of the Election Code was determined to be directory rather than mandatory, then the different standards employed across counties could create a "kind of disparate treatment implicat[ing] the equal protection clause because uniform standards will not be used statewide to discern the legality of a vote in a statewide election." *Id.* This same principle applies in the present case.

Here, the Board, by amending to certify the results to include the Disputed Ballots following the Pennsylvania Supreme Court's decision, does not ensure that each person's vote across the 45th Senatorial district counts as much as another's. *See Hadley v. Junior College Dist*, 397 U.S. at 54. Indeed, if the Board is permitted to amend its certification to include the Disputed Ballots, the result will be an inconsistent application of the Election Code in different counties across the Commonwealth, which is inconsistent with the Equal Protection Clause. *See*

9

*Pierce*, 324 F. Supp. 2d at 698. Because the Pennsylvania Supreme Court simultaneously ruled that mail-in ballots lacking the statutorily-required date information are invalid but applied its ruling prospectively, it engaged in arbitrary and disparate treatment that treated voters in the 45th Senatorial District differently depending on which of the two counties composing that District the voter resides in. Ziccarelli voters who voted in complete compliance with the Election Code in both counties – including Ziccarelli herself – had their votes diluted, as otherwise invalid ballots not counted in Westmoreland County *were counted* in Allegheny County. In Allegheny County the unlawful canvass would increase Brewster's vote count by an amount that would provide Brewster with an approximate 74 vote lead, which is enough to switch an electoral win for Ziccarelli to a loss. Accordingly, because the application of the Pennsylvania Supreme Court's ruling by the Board would violate the constitutional mandate of one-person, one vote, Ziccarelli is likely to succeed on the merits on Count I.

> **2.    Ziccarelli is likely to succeed on the merits of her Fourteenth Amendment Due Process claim because the inclusion of the Disputed Ballots in any official certification shocks the conscience and would violate central tenets of fair play.**

Ziccarelli is likely to succeed on the merits of Count II. In order to succeed on a substantive due process claim, a plaintiff "must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Arneault v. O'Toole*, 864 F. Supp. 2d 631, 401 (W.D. Pa. 2012) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 235 n.12 (3d Cir. 2006). As set forth above, the right to vote is *the* "fundamental political right, because [it is] preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). "Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society." *Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964).

While the question of a substantive due process violation has rarely been addressed by Courts in the Third Circuit, case law from other circuits provides a framework. For example, the Second Circuit Court of Appeals in *Shannon v. Jacobwitz*, 394 F.3d 90 (2d Cir. 2005), analyzed a substantive due process claim asserted by electors subject to a voting machine malfunction and miscount. The Second Circuit explained that "courts have found due process violations in voting cases before, but each case involved an intentional act on the part of its officials." *Id.* at 96 (citing *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978); *Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir. 1978)). This included "dilution of votes," "purposeful or systematic discrimination against voters of a certain class, . . . , geographic area, . . . m or political affiliation." *Id*. (citations omitted). Although the Second Circuit concluded that there was no such allegation of intentional conduct in the case before it, Ziccarelli has alleged that the Board intends to count votes that are invalid despite the fact that ballots with the same defect have not been counted elsewhere.

More than 51,452 residents of Allegheny County cast their ballots for candidate Nicole Ziccarelli in the election for 45th Senatorial District (the "Ziccarelli Voters"). If the Board amends its certification to include the Disputed Ballots, despite the Supreme Court's holding this week that the absence of a handwritten date on the declaration of a mail-in ballot invalidates it, Ziccarelli Voters will have their votes unfairly and improperly diluted. Because ballots that were cast in Westmoreland County with the same defect were invalid and not counted, but the Disputed Ballots will be included, the votes of Ziccarelli voters will be diluted in violation of due process rights and the fundamental right to vote.

**B.     Absent injunctive relief, Ziccarelli will suffer irreparable harm.**

Ziccarelli—and, indeed, the voters of the 45th Senatorial District who cast a legal ballot in the 2020 General Election—will be irreparably harmed if injunctive relief is not granted. To

11

begin, canvassing the Disputed Ballots would forestall validly enacted legislation, which itself constitutes irreparable injury. *See Maryland v. King*, 133 S. Ct. 1, 3 (2012) (explaining that when a State is prevented from "effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury"). In this regard, it bears repeating that a four-justice majority of the State Supreme Court has already held that the Election Code's requirement that the signature on a Voter Declaration must be dated "is stated in unambiguously mandatory terms, and nothing the Election Code suggest that the legislature intended that courts should construe its mandatory language as directory." Wecht, J. at 1. These concerns are particularly heightened when the potential violation implicates constitutional rights. *See Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004) ("[V]iolations of constitutional rights are presumed irreparable[.]" (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Moreover, since the Disputed Ballots—if canvassed—will change the result of the election in the 45th Senatorial District, the potential harm to Ziccarelli is, by definition, irreparable. Indeed, the Third Circuit Court of Appeals has previously held that permitting a state representative to be improperly seated and exercise the powers of that office would constitute irreparable harm not just to plaintiffs, but also to the state at large. *See Marks v. Stinson*, 19 F.3d 873, 878 (3rd Cir. 1994).[2]

---

[2] This Court has also noted that, given their unique nature, any harm to candidates associated with the conduct of elections is often irreparable. *See Loftus v. Twp. of Lawrence Park*, 764 F. Supp. 354, 359 (W.D. Pa. 1991) ("The election is a single event incapable of repetition, and it is of such paramount importance to both the candidate and his community, that denying a candidate his effective participation in it is … of great, immediate, and irreparable harm") (internal quotation marks omitted).

### C. Plaintiffs will Suffer Greater Injury from the Denial of Injunctive Relief Than Defendants will Suffer if Injunctive Relief is Granted.

The third consideration, in essence, requires an assessment of whether an injunction would do more harm than good based on a broad examination of all parties' concerns. *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.,* 290 F.3d 578, 596–97 (3d Cir. 2002); *McMahon v. Pennsylvania Turnpike Comm'n,* 491 F.Supp.2d 522, 529 (M.D. Pa. 2007). The preliminary injunction sought by Ziccarelli is patently necessary to avoid the greater harm. If injunctive relief is not granted, she faces the imminent risk that her opponent will be issued the certificate of election for the office of Senator in the General Assembly, based solely on the Board's decision to canvass the Disputed Ballots in violation of the U.S. Constiutiton. Conversely, given that Defendants are tasked with safeguarding the integrity and legality of elections and (ostensibly) have no interest in the outcome of the election, a modest delay to ensure that the certification comport with constitutional norms will not adversely impact either the Secretary or the Board.

Furthermore, to the extent the Board Defendants will assert that an injunction would interfere with their duties under the Election Code, that argument is untenable for a number of reasons. To begin, whatever statutory responsibilities the Board may have, it is difficult to conceive of a more paramount duty than ensuring the accuracy and legality of election results.

### D.   Injunctive relief will not adversely affect the public interest.

The requested injunctive relief is in the public interest, which is best served when elections are conducted consistent with constitutional dictates and, specifically, when the people's representative body is comprised of members duly chosen by the electorate. In fact, as previously noted, the Third Circuit Court of Appeals has previously held that the public interest lies in ensuring that the individual sworn in as a member of the General Assembly received the

plurality of the legality cast votes in an election because "the electorate must be assured that each of the representatives was the choice of the electorate." *Marks*, 19 F.3d at 887. With regard to the United States Supreme Court's directive that "all qualified voters have a constitutionally protected right to vote, and have their votes counted[,]" *id.* (quoting *Reynolds v. Sims*, 377 U.S. 533, 554 (1963)), the panel explained that it is precisely this consideration that warranted injunctive relief:

> These voting rights are potentially violated, however, whenever an individual is sworn in as an elected representative without a demonstration that he or she was the choice of a plurality of the electorate. This is so because the possibility is left open that some other candidate actually received more votes than the declared winner, which would mean that each of the votes cast for this other candidate was ignored.
>
> As such, noting that its "primary concern [was] . . . to promote the public's interest in

having legislative power exercised only by those to whom it has been legally delegated[,]" the Court concluded that an injunction would further, rather than undermine, the public's interest.

## IV.    **CONCLUSION**

Because Ziccarelli is likely to succeed on the merits of her complementary constitutional claims and the equitable considerations governing the Court's assessment in this context weigh in her favor, the Allegheny County Board of Elections should be immediately enjoined from amending its certification to account for the votes reflected in the Disputed Ballots and, concomitantly, the Secretary should be barred from accepting or otherwise acting upon any such amended certification.

15

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: November 25, 2020 | /s/ Joshua J. Voss |

Joshua J. Voss (No. 306853)
Matthew H. Haverstick (No. 85072)
   *Pro Hac Vice Forthcoming*
Shohin H. Vance (No. 323551)
   *Pro Hac Vice Forthcoming*
James G. Gorman (No. 328376)
   *Pro Hac Vice Forthcoming*
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: (215) 568-2000
Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
svance@kleinbard.com
jgorman@kleinbard.com

*Attorneys for Plaintiff*