# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE ZICCARELLI, | No. 2:20-cv-01831-NR |
| Plaintiff, | |
| v. | |
| THE ALLEGHENY COUNTY BOARD OF ELECTIONS, RICH FITZGERALD, in his official capacity as a Member of the Allegheny County Board of Elections, SAMUEL DEMARCO, in his official capacity as a member of the Allegheny County Board of Elections, BETHANY HALLAM, in her official capacity as a member of the Allegheny County Board of Elections, and KATHY BOOCKVAR, in her official capacity as the Secretary of the Commonwealth of Pennsylvania, | |
| Defendants. | |

## PLAINTIFF'S STATUS REPORT

Per the Court's Order of December 10, 2020, Plaintiff Nicole Ziccarelli submits this status report.

**I.   PLAINTIFF INTENDS TO PROCEED**

Plaintiff does intend to proceed with this case (and does not intend to seek appellate review of the order on the request for TRO relief). To that end, subsequent to the TRO hearing on November 25, 2020, Plaintiff filed the First Amended Complaint (FAC) (doc. 29) on December 1, 2020. The FAC reflects events occurring subsequent to the TRO hearing, including the final certification of votes by

Westmoreland County, which certification did *not* include the undated ballots from Westmoreland. *See* FAC at ¶¶ 45-54.

Upon review of the Court's oral opinion regarding the request for TRO relief, Plaintiff understands the Court agrees that Westmoreland and Allegheny County cannot treat identically situated voters differently without violating equal protection. *See* TRO Hearing Transcript at 28:15-29:2 (stating, among other things, "So I do think this falls within *Bush v. Gore* which goes I think to a likelihood of success on the merits to the plaintiff."). This correct conclusion appears to mean that there remains primarily one open legal issue in this matter (but not just one because there are, among other things, due process issues to resolve at summary judgment [1]): whether the remedy for the constitutional violation identified in the original complaint, the TRO hearing, and reiterated in the FAC, is to "level up" or "level down." *See* TRO Hearing Transcript at 29:8-24.

Plaintiff submits, and is prepared to present full summary judgment briefing on the matter upon the close of limited discovery (see below), that the *only* available legal remedy here is to exclude—i.e., level down—the unlawfully counted undated ballots from Allegheny County. By way of brief summary of this position, the United

---

[1] To be clear on this point, Plaintiff fully believes, and is prepared to prove at summary judgment, that the Allegheny County Board of Elections unlawfully changed "the rules of the game" after the election was over by counting the undated declaration ballots, which violated due process. *Cf. Roe v. Mobile Cty. Appointing Bd.*, 904 F. Supp. 1315, 1335 (S.D. Ala. 1995) ("The change in election practice and interpretation of the law of the State of Alabama is 'broad-gauged unfairness [that] permeates an election.' The post-election change of practice is abominable under the Constitution of the United States. It amounts to ballot-box stuffing."), *aff'd*, 68 F.3d 404 (11th Cir. 1995).

States Supreme Court has held, in a case relied upon by Judge Brann in the opinion cited by this Court during the TRO hearing,[2] that "[w]hen the right invoked is that to equal treatment, the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class. *How equality is accomplished ... is a matter on which the Constitution is silent.*" *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1698 (2017) (citations and quotations omitted; emphasis added). The Court further explained that while the "preferred rule in the typical case is to extend favorable treatment" that rule *does not* apply in a case where application of the rule (i.e., leveling up) would thwart legislative intent with a particular statutory scheme. *See id.* at 1701 (where court leveled down based on perceived Congressional intent). Indeed, where unconstitutional disparate treatment springs from application of a statutory scheme—like here with the Pennsylvania Election Code—the question a court must answer is this: what would the legislative body have done with the equal treatment violation had it been presented with it? *See id.* at 1700; *see also Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 427 (2010).

Here, the General Assembly's intent with the requirement to date the voter declaration is clear based on the plain language of the Election Code, meaning the General Assembly would (and, indeed *did*) command each county to set aside and

---

[2] *Donald J. Trump for Pres., Inc. v. Boockvar*, No. 4:20-CV-02078, 2020 WL 6821992, at *12 n.121 (M.D. Pa. Nov. 21, 2020) (citing *Sessions*), *aff'd sub nom. Donald J. Trump for Pres., Inc. v. Sec. of Pennsylvania*, 20-3371, 2020 WL 7012522 (3d Cir. Nov. 27, 2020).

not canvass such ballots to yield equal treatment of the ballots. Certainly Defendant Secretary Boockvar interpreted the Code exactly this way when she issued formal guidance on September 28, 2020 advising county boards of election to "[s]et aside any ballots without a filled out, dated and signed declaration envelope." *See* FAC at ¶ 14. Moreover this same conclusion about the General Assembly's intent to not have undated ballots counted was reached by *both* the Pennsylvania Supreme Court and the Commonwealth Court. *See In re Canvass of Absentee and Mail-in Ballots of November 3, 2020 Gen. Election*, No. 29 WAP 2020, 2020 WL 6866415, at *23 (Pa. Nov. 23, 2020) (Wecht, J., concurring in part: "The only practical and principled alternative is to read 'shall' as mandatory. Only by doing so may we restore to the legislature the onus for making policy judgments about what requirements are necessary to ensure the security of our elections against fraud and avoid inconsistent application of the law, especially given the certainty of disparate views of what constitute 'minor irregularities' and countervailing 'weighty interests.'"); *id.* at *25 (Dougherty J., joined by Saylor, C.J., and Mundy, J., concurring in part: "I cannot agree that the obligation of electors to set forth the date they signed the declaration on that envelope does not carry 'weighty interests.' I therefore respectfully dissent from the holding at Section III(2) of the OAJC which provides that the undated ballots may be counted." (internal citation omitted)); *In Re: 2,349 Ballots in the 2020 Gen. Election App. of: Nicole Ziccarelli*, No. 1162 C.D. 2020, 2020 WL 6820816, at *5 (Pa. Cmwlth. Nov. 19, 2020) ("The General Assembly's use of the word 'shall' in these provisions has a clear imperative and mandatory meaning. ….

A sufficient declaration is one where the elector filled out, dated, and signed the declaration."), *rev'd sub nom*. *In re Canvass of Absentee and Mail-in Ballots of November 3, 2020 Gen. Election*, No. 29 WAP 2020, 2020 WL 6866415 (Pa. Nov. 23, 2020).

Both of these tribunals identified the date requirement as an important anti-fraud provision. *See generally In re Canvass of Absentee and Mail-in Ballots of November 3, 2020 Gen. Election*, 2020 WL 6866415, at *23  (Wecht, J., concurring: "I do not dispute that colorable arguments may be mounted to challenge the necessity of the date requirement, and the OAJC recites just such arguments. But colorable arguments also suggest its importance, as detailed in Judge Brobson's opinion as well as Justice Dougherty's Concurring and Dissenting Opinion."). Notably, Defendant Secretary Boockvar has also identified the important anti-fraud purpose of the date requirement when she, in a brief to the United States Supreme Court, through Attorney General Josh Shapiro, stated as follows: "[T]he mail-in ballot envelope contains a Voter's Declaration that must be signed and dated by the qualified elector. Even absent a legible postmark, if a declaration indicates it was signed after Election Day, that would be compelling evidence that the ballot was not timely mailed. Lying on this declaration constitutes voter fraud." Brief of Kathy Boockvar, *Scarnati v. Boockvar*, Nos. 20A53 & 20A54, 2020 WL 5912579, at *16 (U.S. Oct. 5, 2020).

In other words, every state appellate court to have reviewed these issues, and seemingly also Secretary Boockvar, *agree* that an undated declaration on a mail-in

ballot renders that ballot unlawful under an important election-integrity provision of the Election Code. To set them aside as a function of "leveling down" is not disenfranchisement or against the public's interest, it is, instead, simply following a clear legislative mandate from the General Assembly. *See In re Canvass of Absentee and Mail-in Ballots of November 3, 2020 Gen. Election*, 2020 WL 6866415, at *19 (Wecht, J., concurring in part: "A court's only 'goal' should be to remain faithful to the terms of the statute that the General Assembly enacted, employing only one juridical presumption when faced with unambiguous language: that the legislature meant what it said. And even where the legislature's goal, however objectionable, is to impose a requirement that appears to have a disenfranchising effect, it may do so to any extent that steers clear of constitutional protections."); *see also Burdick v. Takushi*, 504 U.S. 428, 433 (1992) ("Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'").

## II.  PLAINTIFF INTENDS TO SEEK EXPEDITED REVIEW

At the time of the Court's Order requesting this status report, Plaintiff Ziccarelli was preparing a motion for expedited discovery in this matter. Plaintiff believes "good cause" exists under the circumstances to proceed with immediate discovery, even before Defendants have responded to the FAC. *See Mader v. Union Township*, No. 2:20-CV-01138-CCW, 2020 WL 7027499, at *2 (W.D. Pa. Nov. 30,

2020). In lieu of such a formal motion, Plaintiff Ziccarelli requests that the Court accept this status report as a request for expedited discovery.

### III. EXPEDITED REVIEW PROPOSAL AND PROCEDURE FOR SAME

Plaintiff Ziccarelli submits that this matter can, and should be, fully and finally resolved on cross-motions for summary judgment. In aid of such motions, Plaintiff submits the parties should do one of two things. One, the parties should stipulate to a set of facts, and to the authenticity of certain publicly available records, and immediately proceed to merits briefs. If this proposal were adopted, Plaintiff reasonably believes the stipulations could be reached on or before December 16, 2020, and the cross motions for summary judgment, with briefs, could be filed by December 30, 2020. Two, in the alternative, the parties should immediately exchange discovery, with the responses due on or before December 23, 2020 (note: Plaintiff Ziccarelli already has discovery requests drafted and ready for service). Thereafter, the cross motions for summary judgment, with briefs, could be filed by January 6, 2021.

Of the foregoing proposals, Plaintiff Ziccarelli prefers the first one, and reasonably believes the core facts are not in dispute.

                Respectfully submitted,

Dated: December 11, 2020       /s/ Joshua J. Voss
                                       Joshua J. Voss (No. 306853)
                                       Matthew H. Haverstick (No. 85072)*
                                       Shohin H. Vance (No. 323551)*
                                       James G. Gorman (No. 328376)*
                                       Samantha G. Zimmer (No. 325650)*
                                       KLEINBARD LLC
                                       Three Logan Square
                                       1717 Arch Street, 5th Floor
                                       Philadelphia, PA 19103
                                       Ph: (215) 568-2000
                                       Fax: (215) 568-0140
                                       Eml: jvoss@kleinbard.com
                                       mhaverstick@kleinbard.com
                                       svance@kleinbard.com
                                       jgorman@kleinbard.com
                                       szimmer@kleinbard.com
                                       \* *Admitted Pro Hac Vice*

                                       *Attorneys for Plaintiff*