# EXHIBIT C

No. 20A53 & 20A54

# In the Supreme Court of the United States

———

Joseph B. Scarnati, III, et al.
*Applicants*

*v.*

Kathy Boockvar, in her official capacity as
Secretary of Pennsylvania, et al.,
*Respondents*

———

Republican Party of Pennsylvania,
*Applicant*

*v.*

Kathy Boockvar, in her official capacity as
Secretary of Pennsylvania, et al.,
*Respondents*

———

## RESPONSE IN OPPOSITION TO
## EMERGENCY APPLICATIONS FOR STAY

———

Josh Shapiro
*Attorney General*
*Commonwealth of Pennsylvania*

J. Bart DeLone
*Chief Deputy Attorney General*
*Chief, Appellate Litigation Section*
*Counsel of Record*

Howard G. Hopkirk
Sean A. Kirkpatrick
*Senior Deputy Attorneys General*

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 783-3226
jdelone@attorneygeneral.gov

Michael J. Scarinci
Daniel B. Mullen
*Deputy Attorneys General*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................... 1

STATEMENT OF THE CASE............................................................................ 3

A.      Mail-in Voting under the Pennsylvania Election Code ...................................... 3

B.      Letter from the United States Postal Service Warning of Delays ................... 4

C.      *Pennsylvania Democratic Party v. Kathy Boockvar*, 133 MM 2020 (Pa.) ......... 5

ARGUMENT .................................................................................................. 8

I.      Because the Pennsylvania Supreme Court's Decision is Not Reviewable
        by This Court, There is No Reasonable Probability That This Court Will
        Grant Certiorari in This Case. .......................................................................... 9

        A.      The Pennsylvania Supreme Court has the unfettered right to
                interpret the Pennsylvania Constitution. ................................................. 9

        B.      Even if this case involved Federal law, Applicants lack standing
                to pursue their Federal constitutional claims.................................... 11

II.     Applicants Fail to Demonstrate a Strong Showing of Likelihood of
        Success on the Merits on Appeal. .................................................................. 14

        A.      The Pennsylvania Supreme Court's three-day extension to
                receive mailed ballots and presumption of timely mailing do not
                violate federal statutes establishing a uniform Election Day. ............. 14

        B.      The remedies the Pennsylvania Supreme Court provided to
                prevent an impending violation of the Pennsylvania
                Constitution's Free and Equal Elections Clause do not
                undermine the Election or Electors Clause of the United States
                Constitution. ............................................................................... 19

III.    A Stay Will Irreparably Harm the Public by Disenfranchising Voters
        Suffering Under a Global Pandemic. ............................................................. 26

        A.      Applicants' parade of horrors finds no support in the record or
                reality. The Pennsylvania Supreme Court's Order was necessary
                to unify county election rules and prevent the
                disenfranchisement of voters. .................................................. 26

B.    The *Purcell* principle supports the Pennsylvania Supreme
Court's order. ........................................................................................ 30

CONCLUSION ............................................................................................................. 34

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Akins v. Sec. of State,*
  904 A.2d 702 (N.H. 2006) ....................................................... 21

*Arizona State Legislature v. Arizona Ind. Redistricting Comm'n,*
  576 U.S. 787 (2015) (*AIRC*) ............................................... passim

*Arizona v. Evans,*
  514 U.S. 1 (1995) ................................................................... 33

*Arizona v. Inter Tribal Council of Ariz., Inc.,*
  570 U.S. 1 (2013) ................................................................... 19

*Baldwin v. Trowbridge,*
  2 Bartlett Contested Election Cases, H.R. Misc. Doc. No. 152,
  41st Cong., 2d Sess. (1866) ................................................... 21

*Bd. of Revisions of Taxes v. City of Phila.,*
  4 A.3d 610 (Pa. 2004) .............................................................. 6

*Bush v. Gore,*
  531 U.S. 98 (2000) (*Bush II*) ............................................ 28, 29

*Bush v. Gore,*
  531 U.S. 1046 (2000) (*Bush I*) ......................................... 28, 29

*Clarno v. People Not Politicians,*
  No. 20A21 (Aug. 11, 2020) ..................................................... 33

*Commonwealth v. Morris,*
  771 A.2d 721 (Pa. 2001) ........................................................... 6

*Crossey v. Boockvar,*
  No. 108 MM 2020 (Pa.) .......................................................... 25

*Delisle v. Boockvar,*
  No. 95 MM 2020, 2020 WL 3053629 (Pa. May 29, 2020) ......... 8

*Democratic Nat'l Comm. v. Bostelmann,*
  No. 20-cv-249, 2020 WL 5627186 (W.D. Wis. Sept. 21, 2020) ... 27

*Democratic National Comm. v. Bostelmann,*
　__ F.3d __, 2020 WL 5796311 (7th Cir. Sept. 29, 2020) ........................................ 12

*Disability Rights Pa. v. Boockvar,*
　No. 83 MM 2020, 2020 WL 2820467 (Pa. May 15, 2020) ........................................ 8

*Disability Rights v. Boockvar,*
　234 A.3d 390 (Pa. 2020) ........................................................................................ 13

*Exxon Co., USA v. Sofec, Inc.,*
　517 U.S. 830 (1996) ................................................................................................ 25

*Fish v. Kobach,*
　840 F.3d 710 (10th Cir. 2016) ............................................................................... 28

*Florida v. Powell,*
　559 U.S. 50 (2010) .................................................................................................. 10

*Foster v. Love,*
　522 U.S. 67 (1997) .................................................................................................. 18

*Gallagher v. New York State Bd. of Elections,*
　20 CIV. 5504, 2020 WL 4496849 (S.D.N.Y. Aug. 3, 2020) .................................... 18

*Graves v. Barnes,*
　405 U.S. 1201 (1972) ............................................................................................... 9

*Hollingsworth v. Perry,*
　570 U.S. 693 (2013) .......................................................................................... 12, 13

*In re Bruno,*
　101 A.3d 635 (Pa. 2014) ..................................................................................... 6, 23

*In re General Election-1985,*
　531 A.2d 836 (Pa. Cmwlth. 1987) ..................................................................... 23, 24

*In re Guzzardi,*
　99 A.3d 381 (Pa. 2014) .......................................................................................... 21

*In re Revel AC, Inc.,*
　802 F.3d 558 (3d Cir. 2015) .................................................................................. 27

*In re: Extension of Time for Absentee and Mail-In Ballots to be*
　*Received by Mail and Counted in the 2020 Primary Election,*
　No. 2020-003416 (C.P. Delaware) ............................................................................ 7

*In re: Extension of Time for Absentee and Mail-In Ballots to be Received by Mail and Counted in the 2020 Primary Election,*
No. 2020-02322-37 (C.P. Bucks)............................................................ 7

*Lance v. Coffman,*
549 U.S. 437(2007)........................................................................... 12

*League of Women Voters v. Commonwealth,*
178 A.3d 737 (Pa. 2018).......................................................... passim

*Little v. Reclaim Idaho,*
No. 20A18 (July 30, 2020) ................................................................ 33

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992).......................................................................... 12

*McCulloch v. Maryland,*
17 U.S. 316 (1819)............................................................................ 22

*McPherson v. Blacker,*
146 U.S. 1 (1892)....................................................................... 20, 26

*Merrill v. People First of Ala.,*
No. 19A1063 (July 2, 2020) ............................................................. 33

*Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog,*
945 F.2d 150 (6th Cir. 1991)............................................................ 27

*Murdock v. City of Memphis,*
87 U.S. (20 Wall.) 590 (1874)........................................................... 10

*Pa. Democratic Party v. Kathy Boockvar,*
133 MM 2020 (Pa.)............................................................................. 1

*Purcell v. Gonzalez,*
549 U.S. 1 (2006).......................................................................... 31, 32

*Raines v. Byrd,*
521 U.S. 811 (1997)........................................................................... 12

*Republican Nat'l Comm. v. Democratic Nat'l Comm.,*
__U.S.__, 140 S. Ct. 1205 (2020) ............................................. 31, 32, 33

*Republican Party of Pennsylvania v. Cortes,*
218 F.Supp.3d 396 (E.D. Pa. 2016) .................................................. 31

*Robinson Twp. v. Commonwealth*,
  83 A.3d 901 (Pa. 2013) ........................................................... 22

*Rostker v. Goldberg*,
  448 U.S. 1306 (1980) ............................................................. 9

*Sutton v. Bickell*,
  220 A.3d 1027 (Pa. 2019) ....................................................... 25

*Tex. Dem. Party v. Abbott*,
  No. 19A1055 (June 26, 2020) ................................................... 33

*Thompson v. DeWise*,
  No. 19A1054 (June 25, 2020) ................................................... 33

*Tucker Anthony Realty Corp. v. Schlesinger*,
  888 F.2d 969 (2d Cir. 1989) .................................................... 27

*Turzai v. Brandt*,
  No. 17-1700 (U.S. 2018) ......................................................... 11

*Turzai v. League of Women Voters*,
  No. 17A909 (U.S. 2018) .......................................................... 11

*U.S. Term Limits, Inc. v. Thornton*,
  514 U.S. 779 (1995) .............................................................. 20

*U.S. v. Classic*,
  313 U.S. 299 (1941) ........................................................... 17, 18

*U.S. v. Johnston*,
  268 U.S. 220 (1925) .............................................................. 25

*Virginia House of Delegates v. Bethune-Hill*,
  __ U.S. __, 139 S.Ct. 1945 (2019) ...................................... 12, 13, 14

*Voting Integrity Project, Inc. v. Bomer*,
  199 F.3d 773 (5th Cir. 2000) .................................................... 17

*Wardius v. Oregon*,
  412 U.S. 470 (1973) ............................................................. 9, 24

*Young v. Red Clay Consolidated Sch. Dist.*,
  122 A.3d 784 (Ct. of Chancery of Del. 2015) ................................... 5

## Constitutional Provisions

U.S. CONST. Art. I, § 4, cl. 1 ............................................................ 20

U.S. CONST. Art. II, § 1, cl. 2 ........................................................... 25

U.S. CONST. Art. III, § 2 .................................................................. 12

PA. CONST. Art 1, § 5 ................................................................... 5, 10

PA. CONST. Art. III, § 4 .................................................................... 13

PA. CONST. Art. V, § 2 .................................................................. 6, 23

## Federal Statutes

1 U.S.C. § 1 .............................................................................. 14, 17

2 U.S.C. § 7 .............................................................................. 14, 17

3 U.S.C. § 1 .............................................................................. 14, 17

28 U.S.C. § 1257 ............................................................................ 10

28 U.S.C. § 2101 .............................................................................. 8

52 U.S.C. § 20301 ....................................................................... 11, 15

## Pennsylvania Statutes

25 P.S. § 2602 ................................................................................. 3

25 P.S. § 2963 ............................................................................... 26

25 P.S. § 3146.2c ............................................................................. 3

25 P.S. § 3146.8 ........................................................................... 3, 4

25 P.S. § 3150.11 ............................................................................. 3

25 P.S. § 3150.12a ........................................................................... 3

25 P.S. § 3150.12b ........................................................................... 4

25 P.S. § 3150.16 ......................................................................... 3, 4

25 P.S. § 3191 ............................................................................... 26

25 P.S. § 3527 .................................................................................... 16

35 Pa.C.S. § 7301 ................................................................................. 7

42 Pa.C.S. § 501 ............................................................................. 6, 23

42 Pa.C.S. § 726 ............................................................................. 6, 23

71 P.S. § 732-204 ............................................................................... 14

**Other State Statutes**

10 ILCS 5/18A-15 ............................................................................... 17

10 ILCS 5/19-8(c) ............................................................................... 17

Cal. Elec. Code § 3020 ....................................................................... 17

N.J. Stat. Ann. § 19:63-31 ................................................................. 17

N.Y. Elec. Law § 8-412 ...................................................................... 17

Nev. Rev. Stat. Ann. § 293.317 .......................................................... 17

W. Va. Code, § 3-3-5 .......................................................................... 17

**Regulations**

39 C.F.R. § 211.2 .......................................................................... 15, 16

**Rules**

Supreme Court Rule 21 ......................................................................... 9

Supreme Court Rule 23.1 ...................................................................... 8

Pa.R.A.P. 3309 ...................................................................................... 6

**Treatises**

*Black's Law Dictionary* 1431 (11th ed. 2019) ............................................ 29

Michael T. Morley, *The New Elections Clause*, 91 Notre Dame L. Rev. Online 79, 96
(2016)................................................................................................. 21

**Other Authorities**

"PA Department of State History," https://www.dos.pa.gov/about-
us/Pages/History.aspx (last visited 9/30/20). ........................................................ 30

Your 2020 Official Election Mail Kit 600, United States Postal Service,
https://about.usps.com/kits/kit600.pdf ............................................................ 15, 16

The Pennsylvania Office of Attorney General, on behalf of the Secretary of the Commonwealth Kathy Boockvar, respectfully files this memorandum in opposition to the two applications to stay the Pennsylvania Supreme Court's September 17, 2020 Order in *Pa. Democratic Party v. Kathy Boockvar*, 133 MM 2020 (Pa.).

Applicants in 20A53 are Joseph B. Scarnati III, President Pro Tempore of the Pennsylvania Senate, and Jake Corman, Majority Leader of the Pennsylvania Senate (collectively "the Senators"). Applicant in 20A54 is the Pennsylvania Republican Party ("the Republican Party") (collectively "the Applicants"). Respondents in both matters are Secretary Boockvar, the Pennsylvania Democratic Party, and all 67 Pennsylvania County Boards of Elections.

## INTRODUCTION

On September 17, 2020, 47-days before the 2020 General Election, the Pennsylvania Supreme Court fulfilled its role by rendering a decision interpreting Pennsylvania statutes in accordance with the Free and Equal Elections Clause of the Pennsylvania Constitution. That provision, which has no counterpart in the United States Constitution (and, indeed, predates it by 11 years), mandates that all aspects of the electoral process in Pennsylvania be open and unrestricted so as not to disenfranchise Pennsylvania voters. The Pennsylvania Supreme Court's decision protected that right and brought much needed clarity to the exigent circumstances surrounding a global pandemic. In doing so, that court ensured that Pennsylvanians would not be forced to choose between exercising their right to vote and protecting their health. The Pennsylvania Supreme Court's ability to be left free and unfettered

in interpreting the Pennsylvania Constitution is fundamental to our system of federalism.

In seeking a stay, Applicants ask this Court to intrude on the stability and clarity rendered by the Pennsylvania Supreme Court. They invite this Court to supplant the Pennsylvania Supreme Court's interpretation of Pennsylvania law. In an effort to convince this Court to intrude upon Pennsylvania's sovereignty, Applicants engage in a slight of hand. They attempt to convert a case that hinges upon state law into one that is about the Electors and Elections Clauses of the United States Constitution and federal law. These Federal provisions have no bearing on the present case. Even if they did, Applicants lack standing to pursue those claims. Thus, this Court has neither authority nor jurisdiction to review this case. And in any event, Applicants' claims are baseless, as the Pennsylvania Supreme Court's decision neither conflicts with the United States Constitution nor Federal law.

While Secretary Boockvar firmly opposes a stay under these circumstances, not least of all because the Pennsylvania Supreme Court's decision was manifestly correct, she recognizes the importance of clarity and certainty for Pennsylvania and its citizens regarding the deadline for returning mail-in and absentee ballots for the upcoming General Election, as well as regarding the authority of the Pennsylvania Supreme Court to have final say over the Commonwealth's election laws. Thus, even if this Court denies Applicants' stay request, Secretary Boockvar respectfully requests that this Court convert the stay applications and this opposition to merits

filings, and issue a decision as soon as is practicable for the benefit of the Commonwealth's voters as Election Day fast approaches.

## STATEMENT OF THE CASE

### A.    Mail-in Voting under the Pennsylvania Election Code

On October 31, 2019, Governor Wolf signed Act 77 of 2019 (Act 77) into law, amending the Election Code to permit, for the first time, no-excuse mail-in voting for all qualified electors. 25 P.S. § 3150.11. Voters have until October 27, 2020, to request a ballot in this year's November 3rd General Election. 25 P.S. § 3150.12a(a). Act 77 established a deadline for returning ballots to the county boards of elections by 8:00 p.m. on Election Day. 25 P.S. § 3150.16.

When the county boards of elections meet beginning no earlier than 7:00 am on Election Day to pre-canvass[1] or canvass the mail-in ballots, the boards examine the declarations on the exterior envelopes and compare the information on the ballots—voter's name and address—to the lists of voters approved to vote by mail. 25 P.S. § 3146.8(g)(3); 25 P.S. § 3146.2c. If an elector has provided proof of identification required to be approved to vote by mail (defined in 25 P.S. § 2602(z.5)(3) as driver's license number, last four digits of social security number or other specified

---

[1]    Pre-canvassing is the "inspection and opening of all envelopes containing official absentee ballots or mail-in ballots, the removal of such ballots from the envelopes and the counting, computing and tallying of the votes reflected on the ballots. The term does not include the recording or publishing of the votes reflected on the ballots." 25 P.S. § 2602(q.1). Pre-canvassing the mail-in ballots occurs before polls close on Election Day. "The county board of elections shall meet no earlier than seven o'clock A.M. on election day to pre-canvass all ballots received prior to the meeting." 25 P.S. § 3146.8(g)(1.1). This ability to "pre-canvass" ballots was added to the Election Code through Act 12 of 2020, Act of Mar. 27, 2020, P.L. 41, No. 12.

identification) and the proof of identification has been verified and the elector's voter declaration is sufficient, a mail-in ballot may be counted unless it was previously challenged on the grounds that the voter is not a qualified elector. 25 P.S. § 3146.8(g)(4); 25 P.S. § 3150.12b(a)(2).

"[A]ll mail-in ballots which have not been challenged under [25 P.S. § 3150.12b(a)(2)] and that have been verified under [25 P.S. § 3146.8(g)(3)] shall be counted and included with the returns of the applicable election district." 25 P.S. § 3146.8(g)(4). "Following the close of the polls, the county board shall record and publish the votes reflected on the ballots." 25 P.S. § 3146.8(g)(4)(iv). Any elector who votes by using a mail-in ballot is obviously not eligible to vote again at a polling place on Election Day. 25 P.S. § 3150.16(b). And mail-in ballots for which "proof of identification has not been received or could not be verified" will only be counted if "proof of identification is received and verified prior to the sixth calendar day following the election[.]" 25 P.S. § 3146.8(h)(2).

**B.     Letter from the United States Postal Service Warning of Delays**

On July 29, 2020, Thomas J. Marshall, General Counsel for the United States Postal Service ("USPS"), mailed a letter to Secretary Boockvar stating that, based on the USPS's expected delivery times for mail service at the time of the General Election, "there is a significant risk that * * * ballots may be requested in a manner that is consistent with [Pennsylvania's] election rules and returned promptly, and yet not be returned in time to be counted." USPS Letter at 2. Critically, the letter explained that Pennsylvania's election law "deadlines for requesting and casting

mail-in ballots are incongruous with the USPS's delivery standards." *Id* at 1. "This mismatch creates a risk that ballots requested near the deadline under state law will not be returned by mail in time to be counted under your laws as we understand them." *Ibid.*

### C.   *Pennsylvania Democratic Party v. Kathy Boockvar*, 133 MM 2020 (Pa.)

The Pennsylvania Democratic Party and several Democratic candidates (collectively the "Democratic Party") originally initiated this action in the Commonwealth Court against Secretary Boockvar and the 67 County Boards raising challenges to the mail-in ballot process. Relevant to this matter, the Democratic Party argued that, in light of the current COVID-19 pandemic and professed delays in mail delivery, the current deadline violates the Pennsylvania Constitution's Free and Equal Elections Clause. PA. CONST., art. I, § 5.[2] The Democratic Party sought an injunction ordering all respondents to lift the deadline in the Election Code across the Commonwealth to allow any ballot postmarked by election night to be counted if received by the boards by November 10—a seven-day extension.

---

[2]   The Free and Equal Elections Clause provides that "[e]lections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right to suffrage." PA. CONST. art. I, § 5. The Pennsylvania Supreme Court has held that this provision "guarantees, to the greatest degree possible, a voter's right to equal participation in the electoral process for the selection of his or her representatives in government." *League of Women Voters v. Commonwealth,* 178 A.3d 737, 804 (Pa. 2018). The United States Constitution, unlike Pennsylvania and 25 other state constitutions, does not explicitly guarantee that elections be "free and equal" or "free and open." *Young v. Red Clay Consolidated Sch. Dist.*, 122 A.3d 784, 815 (Ct. of Chancery of Del. 2015).

Recognizing the exigent need to resolve this issue quickly given the impending election date, the Secretary asked the Pennsylvania Supreme Court to exercise extraordinary jurisdiction over the matter. *See* 42 Pa.C.S. § 726; Pa.R.A.P. 3309.[3] The Secretary agreed that an extension of the mail-in ballot receipt date was necessary given the USPS's recognition that their capabilities conflicted with Pennsylvania's election calendar. The Secretary, however, advised that only a three-day extension was required, not the seven-day extension requested by the Democratic Party.

The Pennsylvania Supreme Court, after expedited briefing, granted the three-day extension of the ballot receipt deadline recommended by the Secretary. A.38-39 (Opinion). That court emphasized the unexpected number of requests for mail-in ballots during Pennsylvania's recent primary—1.5 million rather than the expected 100,000—and the difficulties the COVID-19 pandemic caused for some election boards. A.22; A.37. The election boards of Delaware and Bucks counties had such a difficult time during the primary that they sought, and received, a seven-day extension of the deadline for the return of mail-in ballots from their courts of common

---

[3]     The Pennsylvania Supreme Court may assume, at its discretion, plenary jurisdiction over any matter of immediate public importance that is pending before another court of the Commonwealth. *See* 42 Pa.C.S § 726. *See e.g., League of Women Voters*, 178 A.3d at 766–67. In exercising this discretion, that court considers the immediacy of the issue raised, *Bd. of Revisions of Taxes v. City of Phila.*, 4 A.3d 610, 620 (Pa. 2004); that is, whether there is some intervening need to expedite the proceeding and truncate the normal judicial process. *Commonwealth v. Morris*, 771 A.2d 721, 731 (Pa. 2001). This power arises, not only from statute, but the Pennsylvania Supreme Court's constitutionally granted "supreme judicial power." PA. CONST. art. V, § 2(a); 42 Pa.C.S. § 501. This power is used "sparingly" by the Commonwealth's High Court to respond to matters requiring immediate resolution. *See In re Bruno*, 101 A.3d 635, 676 (Pa. 2014).

pleas under a provision in the Election Code authorizing courts to address situations that arise on Election Day, 25 P.S. § 3046. A.23 (citing *In re: Extension of Time for Absentee and Mail-In Ballots to be Received by Mail and Counted in the 2020 Primary Election,* No. 2020-02322-37 (C.P. Bucks)*; In re: Extension of Time for Absentee and Mail-In Ballots to be Received by Mail and Counted in the 2020 Primary Election,* No. 2020-003416 (C.P. Delaware).[4]

Given these unprecedented numbers and "the near-certain delays that will occur in Boards processing the mail-in applications," the Pennsylvania Supreme Court determined that the timeline built into the Election Code could not be met under the USPS's delivery standards. A.37 (Opinion). The Pennsylvania High Court, pursuant to, *inter alia*, the Free and Equal Elections Clause of the state constitution has "broad authority to craft meaningful remedies when required." A.37 (quoting *League of Women Voters*, 178 A.3d at 822), Thus, "rather than allowing the chaos to brew, creating voter confusion regarding whether extensions will be granted, for how long, and in what counties[,]" the Pennsylvania Supreme Court decided to act well in advance of Election Day in order to bring much needed clarity to the mail-in ballot process. A.37-38.

Accordingly, that court extended the ballot receipt deadline by three days, until November 6, 2020 at 5:00 p.m., and adopted the Secretary's recommendation that

---

[4]    The Election Code grants courts of common pleas the authority to address situations that arise on Election Day. 25 P.S. § 3046. The Pennsylvania Supreme Court also noted that Governor Wolf, pursuant to the Emergency Management Services Code, 35 Pa.C.S. § 7301(c), extended the return deadline for six additional counties. A.23.

ballots received without a legible postmark be presumed to have been mailed by Election Day unless a preponderance of the evidence demonstrates otherwise. A.38 n.26. "[T]his proposal * * * requires that all votes be cast by Election Day but does not disenfranchise a voter based upon the absence or illegibility of a USPS postmark that is beyond the control of the voter once she places her ballot in the USPS delivery system." A.28 n.20.[5]

Thereafter, the Pennsylvania Republican Party and two Pennsylvania Senators asked the Pennsylvania Supreme Court to stay its order pending appeal to this Court. The Pennsylvania Supreme Court denied those requests, prompting the current applications.

## ARGUMENT

Pursuant to Supreme Court Rule 23.1, "[a] stay may be granted by a justice as permitted by law." When seeking a stay of a state court decision, the relevant law is 28 U.S.C. § 2101(f), which provides, in pertinent part, that:

> [i]n any case in which the final judgment or decree of any court is *subject to review by the Supreme Court on writ of certiorari*, the execution and enforcement of such judgment

---

[5]     In their statement of the case, the Republican Party attempts to analogize this case with two earlier Pennsylvania Supreme Court cases: *Delisle v. Boockvar*, No. 95 MM 2020, 2020 WL 3053629 (Pa. May 29, 2020) and *Disability Rights Pa. v. Boockvar*, No. 83 MM 2020, 2020 WL 2820467 (Pa. May 15, 2020). Republican Party app. at 7, 11, 34. These cases, however, are fundamentally different. The former case was dismissed for want of jurisdiction. *Delisle, supra.* As for the latter case, the Pennsylvania Supreme Court itself distinguished that case from the present one. A.38, n. 25 (opinion). In *Disability Rights*, "the potential of voter disenfranchisement was speculative as many unknowns existed[,]" whereas "[t]hose uncertainties no longer exist in light of our experience in the 2020 Primary where thousands of voters would have been disenfranchised but for the emergency actions of the courts of common pleas and the Governor." *Ibid.*

or decree may be stayed for a reasonable time to obtain a
writ    of    certiorari    from    the    Supreme    Court.

*Ibid.* (emphasis added).

"Stays pending appeal to this Court are granted only in extraordinary circumstances." *Graves v. Barnes*, 405 U.S. 1201, 1203 (1972) (Powell, J., in chambers). When considering a stay request, a Circuit Justice considers whether there is: (1) a "reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari or to note probable jurisdiction;" (2) "a fair prospect that a majority of the Court will conclude that the decision below was erroneous;" (3) a "demonstration that irreparable harm is likely to result from the denial of a stay;" and (4) "in a close case it may be appropriate to balance the equities to explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J., in chambers) (citations and internal quotations omitted).

## I. Because the Pennsylvania Supreme Court's Decision is Not Reviewable by This Court, There is No Reasonable Probability That This Court Will Grant Certiorari in This Case.

### A. The Pennsylvania Supreme Court has the unfettered right to interpret the Pennsylvania Constitution.

Applicants' request for a stay has no basis as they fail to meet the threshold requirement for issuance of a stay in any case: they have not presented this Court with a reviewable decision. A bedrock feature of our system of federalism is that state supreme courts are the ultimate expositors of state law. *See, e.g.*, *Wardius v. Oregon*, 412 U.S. 470, 477 (1973) ("It is, of course, true that the Oregon courts are the final

arbiters of the State's own law."). Thus, it is well-established that this Court lacks authority to review a state's interpretation of its own laws. *Murdock v. City of Memphis*, 87 U.S. (20 Wall.) 590, 626 (1874). Indeed, this Court's jurisdictional statute prohibits such review. *See* 28 U.S.C. § 1257(a). This Court has recognized as fundamental "that state courts be left free and unfettered by [this Court] when interpreting their state constitutions." *Florida v. Powell*, 559 U.S. 50, 56 (2010).

The Pennsylvania Supreme Court could not have been more explicit that it was rendering a decision in this case based upon its interpretation of the Free and Equal Elections Clause of the Pennsylvania Constitution—a clause which has no federal counterpart. *See* PA. CONST. art 1, § 5. That court emphasized that under Pennsylvania law, the Free and Equal Elections Clause requires that:

> all aspects of the electoral process, to the greatest degree possible, be kept open and unrestricted to the voters of our Commonwealth, and, also, conducted in a manner which guarantees, to the greatest degree possible, a voter's right to equal participation in the electoral process for the selection of his or her representatives in government.

A.35 (Opinion) (citation omitted).

Given the strains of the COVID-19 pandemic, and the conflict between USPS's delivery standards and Pennsylvania's election calendar, there was a real and substantial risk of widespread voter disenfranchisement in contravention of the Pennsylvania Constitution. The Pennsylvania Supreme Court thus fashioned an equitable remedy that will ensure voters will not be disenfranchised due to circumstances beyond their control. Specifically, while maintaining the Election Day deadline for casting mail-in ballots, that court held that mail-in ballots received by

November 6 must be tabulated. It based its remedy upon procedures already enshrined in the Pennsylvania's Election Code; procedures that, in turn, effectuate the Federal Uniformed and Overseas Citizens Absentee Voting Act. *See* 25 Pa.C.S. § 3511 (military and overseas ballots are counted if received within seven days of Election Day); *see also* 52 U.S.C. § 20301, *et seq*. The Pennsylvania Supreme Court's interpretation of the Free and Equal Elections Clause of the *Pennsylvania* Constitution and the *Pennsylvania* Election Code is not reviewable by this Court.

Because it is fatal to their argument, Applicants ignore that this case turned entirely on state law. Instead, Applicants attempt to engraft Federal law onto this state-law case. But Applicants' makeweight assertions cannot convert a case that arose under the Pennsylvania Constitution and the Pennsylvania Election Code into a case that arose under Federal law. Were it otherwise, this Court would be forced to micromanage virtually every dispute over any state's election law and would have room for little else on its docket. As it has done previously in cases seeking a stay arising out of the Pennsylvania Supreme Court's application of the Free and Equal Elections Clause, this Court should decline Applicants' invitation to intrude upon Pennsylvania law and sovereignty. *See Turzai v. League of Women Voters*, 17A909 (U.S. 2018) (denying application to stay Pennsylvania Supreme Court's decision); *see also Turzai v. Brandt*, 17-1700 (U.S. 2018) (denying petition for a writ of certiorari).

## B. Even if this case involved Federal law, Applicants lack standing to pursue their Federal constitutional claims.

Article III, Section 2 of the United States Constitution limits the jurisdiction of the federal courts to resolving only "cases" and "controversies." U.S. CONST. art.

III, § 2; *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Such a controversy must "persist throughout all stages of litigation." *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013). If Article III standing is lacking, there can be no case or controversy. *Arizona State Legislature v. Arizona Ind. Redistricting Comm'n*, 576 U.S. 787, 799-800 (2015) (*AIRC*). To establish standing, the party seeking relief must establish it has suffered injury to a legally protected interest, which injury is "fairly traceable to the challenged action and redressable by a favorable ruling." *Id.* at 800.

The Republican Party lacks an injury to a legally protected interest. Their arguments under the Elections and Electors Clause, were they viable, relate to injuries allegedly suffered by the General Assembly as a whole, not by a political party. Its challenges amount to a "generalized grievance," that is, "[a]n interest shared generally with the public at large in the proper application of the Constitution and laws." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 (1992). This does not amount to an injury-in-fact. *See Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) (four voters' challenge to judicial redistricting plan as violating Elections Clause presented only generalized grievance); *see also Democratic National Comm. v. Bostelmann*, __ F.3d __, 2020 WL 5796311, *1 (7th Cir. Sept. 29, 2020) (extension of received-by deadline for mailed ballots did not cause any injury to political party or their members).

The Senators fare no better. Any claims under the Elections and Electors Clauses must derive from the "institutional interests of [the] legislature." *Virginia House of Delegates v. Bethune-Hill*, __ U.S. __, 139 S.Ct. 1945, 1953 (2019); *see AIRC*,

576 U.S. at 800-02. Critically, however, the Senators consist of only two members of that body, and certainly do not represent the entire Senate.

But even if two Senators could arguably represent the entire Senate, the General Assembly consists of two chambers: a Senate and a House. PA. CONST. art. III, § 4. As a "single House of a bicameral legislature" the Senate "lack[s] capacity to assert interests belonging to the legislature as a whole." *Bethune-Hill*, 139 S.Ct. at 1953-54; *cf. AIRC*, 576 U.S. at 802 (Arizona Legislature possessed standing because it "commenced this action after authorizing votes in both of its chambers"). It makes no difference that the Pennsylvania Supreme Court's decision affected a statute the Senate helped enact. *See Bethune-Hill*, 139 S.Ct. at 1953 ("This Court has never held that a judicial decision invalidating a state law as unconstitutional inflicts a discrete, cognizable injury on each organ of government that participated in the law's passage").[6]

Moreover, there is nothing in Pennsylvania state law that authorizes the Senate to act on behalf of the Commonwealth. *See Hollingsworth*, 570 U.S. at 710 ("a State must be able to designate agents to represent it in federal court"); *see also Disability Rights v. Boockvar*, 234 A.3d 390 (Pa. 2020) (Wecht, J., concurring statement) (noting that in mail voting case, the same Senate caucus had "no authority * * * to act on behalf of the General Assembly or to substitute their interests for the Commonwealth," which were represented by the Secretary of the Commonwealth).

---

[6]     Two members of the House have filed a brief as amicus, not as a party or intervenor. Moreover, neither the House nor the Senate have authorized the Senators or House Amici to represent the General Assembly.

That power has been entrusted to the Attorney General. *See* 71 P.S. § 732-204 (it is the "duty of the Attorney General to uphold and defend the constitutionality of all statutes"); *see also Bethune-Hill*, 139 S.Ct. at 1952 (noting that Virginia speaks as a "sovereign entity with a single voice" through its Attorney General). Accordingly, none of the applicants possess the requisite Article III standing to appeal to this Court.

This Court lacks authority and jurisdiction to review this state law matter, and the Applicants lack standing. These jurisdictional defects are fatal to any review of the decision of the Pennsylvania Supreme Court. But even if jurisdiction were not lacking, the Applicants' legal arguments lack merit.

## II. Applicants Fail to Demonstrate a Strong Showing of Likelihood of Success on the Merits on Appeal.

### A. The Pennsylvania Supreme Court's three-day extension to receive mailed ballots and presumption of timely mailing do not violate federal statutes establishing a uniform Election Day.

Applicants contend that the Pennsylvania Supreme Court's decision violates a trio of Federal statutes that establish a uniform Election Day. *See* 1 U.S.C. § 1, 2 U.S.C. § 7, 3 U.S.C. § 1. But in so arguing, Applicants muddle the distinction between the casting of votes and the tabulation of votes. Both sets of applicants argue that Federal law prohibits the counting of ballots cast after Election Day. Republican Party app. at 21; Senator app. at 11. We agree, as did the Pennsylvania Supreme Court. *See* A.38 n.26 (Opinion) (mandating that "voters utilizing the USPS must cast their ballots prior to 8:00 p.m. on Election Day, like all voters, including those utilizing drop boxes, as set forth *supra*"). The Pennsylvania Supreme Court's decision

14

leaves intact the November 3 deadline for casting mail-in ballots. But from that solid uncontroversial position, Applicants then leap into groundless speculation. Applicants assert, without evidence, that accepting ballots without legible postmarks during the short three-day extension for tabulating votes *necessarily* allows ballots to be cast after Election Day. Republican Party app. at 20-22; Senator app. at 15. This does not follow.

As an initial matter, the Pennsylvania Supreme Court's decision is consistent with how Pennsylvania law handles military and overseas ballots timely cast, but not received until after Election Day. *See* 25 Pa.C.S. § 3511 (military and overseas ballots are counted if received within seven days of Election Day). Applicants do not challenge this longstanding statute, which, in fact, effectuates the Federal Uniformed and Overseas Citizens Absentee Voting Act. 52 U.S.C. § 20301, *et seq*. Certainly Congress was aware of its uniform Election Day statutes when it mandated that all states tabulate military and overseas ballots submitted on Election Day, but received after, and did not view such a mandate as incongruous with a uniform Election Day.

Moreover, as the Pennsylvania Supreme Court correctly recognized, voters have no control over mail delivery timetables, or whether their mailed ballots will be legibly postmarked or even postmarked at all. A.28, n. 20 (Opinion). Under USPS regulations, post offices are required to postmark election mail. *See* 39 C.F.R. § 211.2(a)(2); Postal Operations Manual at 443.3; Your 2020 Official Election Mail Kit 600, United States Postal Service, https://about.usps.com/kits/kit600.pdf at page 25

(last visited 9/23/2020).[7] While these regulations do not guarantee that every ballot envelope will be postmarked, the actions—and diligence—of an unknown postal employee are beyond the control of the voter.

Further, the mail-in ballot envelope contains a Voter's Declaration that must be signed and dated by the qualified elector. Even absent a legible postmark, if a declaration indicates it was signed after Election Day, that would be compelling evidence that the ballot was not timely mailed. Lying on this declaration constitutes voter fraud. 25 P.S. § 3527. Voter fraud in Pennsylvania is a third-degree felony, carrying a maximum 7-year prison term. *Ibid*. To assume that hordes of voters will commit voter fraud and flood the post offices with late ballots, so that some may slip through without postmarking, is fantasy. Applicants point to nothing in support of such baseless fearmongering.

Many other states clearly do not share Applicants' baseless fears, as they have enacted laws mirroring the Pennsylvania Supreme Court's evidentiary presumption. Under Nevada law, "[i]f an absent ballot is received by mail not later than 5 p.m. on the third day following the election and the date of the postmark cannot be

---

[7]    First-Class and Priority mail are postmarked showing the "full name of [the] Post Office, two-letter state abbreviation, ZIP Code, date of mail, and a.m. or p.m." *See* 39 C.F.R. § 211.2(a)(2); Postal Operations Manual at 443.3. But because "the Postal Service recognizes elections as the bedrock of our system of government[,]" beginning in March 2014, the USPS "began applying a cancellation mark to all letter pieces processed on USPS Letter Automation Compatible Postage Cancellation Systems." Your 2020 Official Election Mail Kit 600, United States Postal Service, https://about.usps.com/kits/kit600.pdf at page 25 (last visited 9/23/2020). This improvement in USPS automation prints a cancellation mark on ballot envelopes with pre-paid postage "including identifying the date the Postal Service accepted custody of balloting materials." *Ibid*.

determined, the absent ballot shall be deemed to have been postmarked on or before the day of the election." Nev. Rev. Stat. Ann. § 293.317(2). In Illinois, any mail-in ballot received without a postmark "after the polls close on election day and before the close of the period for counting provisional ballots cast at that election, shall be * * * opened to inspect the date inserted on the certification, and, if the certification date is election day or earlier" it will be counted. 10 ILCS 5/19-8(c); *see also*, 10 ILCS 5/18A-15. And New Jersey likewise accepts any "ballot without a postmark, * * * that is received by the county boards of elections from the United States Postal Service within 48 hours of the closing of polls on November 3, 2020[.]" N.J. Stat. Ann. § 19:63-31(m). *See also*, N.Y. Elec. Law § 8-412; Cal. Elec. Code § 3020(b); W. Va. Code, § 3-3-5(g)(1).

The question the Pennsylvania Supreme Court confronted was how to handle ballots with no clear postmarks received from the USPS shortly after Election Day. This issue is an evidentiary one. And on that issue, Federal law is silent. While the Federal laws set Election Day as November 3, 2020, their plain text provides nothing regarding how to determine whether a ballot was in fact cast by that date. *See* 3 U.S.C. § 1; 2 U.S.C. §§ 1, 7 (establishing date but saying nothing regarding these evidentiary issues). That is yet another fatal flaw in Applicants' claims: when federal election laws are silent, States are empowered to resolve the election issues. *U.S. v. Classic*, 313 U.S. 299, 311 (1941); *Voting Integrity Project, Inc. v. Bomer,* 199 F.3d 773, 775 (5th Cir. 2000) (noting only limit on "a state's discretion and flexibility in establishing the time, place and manner of elect[ions]" is that it "cannot directly

17

conflict with federal election laws on the subject"). In fact, States "are given * * * a wide discretion in the formulation of a system for the choice by the people of representatives in Congress." *Classic*, 313 U.S. at 311.[8]

The Pennsylvania Supreme Court's decision not to disenfranchise voters based upon the unpredictable and uncontrollable actions of busy postal employees fits well within that wide discretion. It also complies with the mandate of the Free and Equal Elections Clause of the Pennsylvania Constitution that "all aspects of the electoral process, to the greatest degree possible, be kept open and unrestricted to the voters of our Commonwealth, and, also, conducted in a manner which guarantees, to the greatest degree possible, a voter's right to equal participation in the electoral process for the selection of his or her representatives in government." *League of Women Voters v. Commonwealth*, 178 A.3d 737, 804 (Pa. 2018). Using postmarks to determine ballot eligibility hinges a voter's right to vote "on random chance." *Gallagher v. New York State Bd. of Elections*, 20 CIV. 5504, 2020 WL 4496849, at *19 (S.D.N.Y. Aug. 3, 2020). And the Pennsylvania Supreme Court refused to disenfranchise voters based on random bad luck. Applicants' argument to the contrary amounts to merely a public policy disagreement with Pennsylvania's highest court concerning an evidentiary presumption. In sum, because the Pennsylvania Supreme Court's order does not

---

[8]    Both sets of applicants rely heavily on *Foster v. Love*, 522 U.S. 67, 72 (1997). But that case is clearly distinguishable. There, Louisiana law allowed candidates to be elected to federal office in October. The Pennsylvania Supreme Court's order, in contrast, does not establish a new election date. Applicants attempt to hang their hats on *Foster* demonstrates the weakness of their position.

enable casting of votes after Election Day, that order does not violate Federal law; it is consistent with it.

**B.   The remedies the Pennsylvania Supreme Court provided to prevent an impending violation of the Pennsylvania Constitution's Free and Equal Elections Clause do not undermine the Election or Electors Clause of the United States Constitution.**

Applicants suggest that the Pennsylvania Supreme Court's remedy, which ensures that the Election Code will be enforced consistent with the Pennsylvania Constitution, violated the United States Constitution's Elections Clause. Applicants' argument proceeds on the presumption that once a state legislature passes a statute regulating elections, it is sacrosanct. Applicants are obviously wrong. As this Court stated in *Arizona State Legislature v. Arizona Independent Redistricting Commission*, 576 U.S. 787, 817-818 (2015) (*AIRC*), nothing in the Elections "Clause instructs, nor has this Court ever held, that a state legislature may prescribe regulations on the time, place, and manner of holding federal elections in *defiance of provisions of the State's constitution*." (emphasis added). Without the intervention of the Pennsylvania Supreme Court, that is what would have occurred here.

The Elections Clause assigns the States "the duty * * * to prescribe the time, place, and manner of electing Representatives and Senators" and gives Congress "the power to alter those regulations or supplant them altogether." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8 (2013).[9] "[T]he Framers understood the Elections

---

[9]     The Elections Clause specifically provides, "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State

Clause as a grant of authority to issue procedural regulations, and not as a source of power to dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional restraints." *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 833-34 (1995). It makes no difference if those restraints flow from the United States Constitution or, as here, the Pennsylvania Constitution. Indeed, this Court has already specifically rejected the suggestion that enforcing a state constitutional provision that is inconsistent with a state statute undermines the Elections Clause.

In *AIRC*, this Court was presented with the argument by the Arizona State Legislature that where a constitutional amendment enacted by popular initiative conflicted with existing state law, the Elections Clause required that the statute prevail. 576 U.S. at 818. This Court rejected that argument because the Elections Clause does not empower a state legislature, through legislation, to "trump" a state "constitutional provision regulating federal elections." *Ibid*. Applicants offer precisely the same argument here. Republican Party app. at 28-29; Senator app. at 23-24. This Court should once more reject that argument.

Again, this Court has never held "that a state legislature may prescribe regulations on the time, place, and manner of holding federal elections in *defiance of provisions of the State's constitution*." *AIRC*, 576 U.S. at 817-18 (emphasis added); *see also McPherson v. Blacker*, 146 U.S. 1, 25 (1892) ("The legislative power is the

---

by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the places of choosing Senators." U.S. CONST., Art. I, § 4, cl. 1.

supreme authority, *except as limited by the constitution of the state*").[10] Indeed, "a state legislature * * * is bound by substantive restrictions set forth in the state constitution when enacting laws governing federal elections."[11] In *AIRC*, the Court criticized the United States House of Representatives' contrary reading of the Elections Clause. *AIRC*, 576 U.S. at 818 (citing *Baldwin v. Trowbridge*, 2 Bartlett Contested Election Cases, H.R. Misc. Doc. No. 152, 41st Cong., 2d Sess., 46–47 (1866)).[12]

All this makes sense: the Framers did not write the United States Constitution on a blank slate. As Justice Todd pointed out, the Pennsylvania Constitution "is the

---

[10]    State courts of last resort have also reached the same conclusion. *See In re Guzzardi*, 99 A.3d 381, 386 (Pa. 2014) ("*Subject to constitutional limitations*, the Pennsylvania General Assembly may require such practices and procedures as it may deem necessary to the orderly, fair, and efficient administration of public elections in Pennsylvania" (emphasis added)); *Akins v. Sec. of State*, 904 A.2d 702, 706, 708 (N.H. 2006) (balancing legislature's right to regulate elections under Elections Clause with citizens' right to vote and be elected under state constitution and holding latter prevailed over former where state law required that party receiving most votes in prior election be placed in the first column of the ballot).

[11]    Michael T. Morley, *The New Elections Clause*, 91 Notre Dame L. Rev. Online 79, 96 (2016).

[12]    In *Baldwin*, "Michigan voters had amended the State Constitution to require votes to be cast within a resident's township or ward," but the state legislature passed a contradictory "law permitting soldiers to vote in other locations." *Ibid.* The House Elections Committee sided with the state legislature, over a dissenting report and in the face of a contrary, unanimous report that Committee had issued just five years earlier in *Shiel v. Thayer,* where the House concluded that "Oregon's Constitution prevailed over any conflicting legislative measure setting the date for a congressional election." *AIRC*, 576 U.S. at 818 (footnote omitted). This Court in *AIRC* criticized the House's interpretation of the Elections Clause in *Baldwin* as being political, not legal. *Ibid.*

ancestor, not the offspring, of the federal Constitution." *League of Women Voters*, 178 A.3d at 740. Indeed, the Free and Equal Elections Clause predates the U.S. Constitution by 11 years. *Id.* 803-14. Thus, when the Framers adopted the Elections Clause, they recognized that a state constitution can constrain a state legislature. *See AIRC*, 576 U.S. at 818.

The Pennsylvania Supreme Court was unanimous in determining that a confluence of unforeseen and unforeseeable emergencies—a pandemic and its cascading effects, including delays with the postal service—threatened the rights of Pennsylvania voters under the Free and Equal Elections Clause. A.36-38 (Majority Op.); A.71-72 (Concurring Op., Wecht, J.); A.84, 90 (Concurring and Dissenting Statement, Donahue, J.). The Pennsylvania Supreme Court, confronted with an impending violation of established fundamental constitutional rights,[13] exercised its power to protect those rights.[14] *See Robinson Twp. v. Commonwealth*, 83 A.3d 901, 952-53 (Pa. 2013) (noting that courts may fashion an appropriate remedy to vindicate a constitutional right).

---

[13]   The only dispute among the Justices was what remedy to fashion. And Applicants have no complaint with the "judicial rewriting," Republican Party app. at 23, proposed by the dissenting Justices, that the received-by deadline for mail-in ballot applications be pushed back. *Id.* at 31.

[14]   Given this established body of law, the Pennsylvania Supreme Court did not make some "vague appeal" to the Free and Equal Elections Clause. *Cf.* Senator app. at 28-29. Deriving specific rules from broad constitutional provisions is the basic task of constitutional adjudication. *See McCulloch v. Maryland*, 17 U.S. 316, 406-07 (1819).

The Pennsylvania Supreme Court's power to vindicate the rights guaranteed under the Free and Equal Elections Clause emanates from three sources: its role under the Pennsylvania Constitution; its inherent equitable powers; and Pennsylvania statutes. As already discussed, the Pennsylvania Constitution gives the Pennsylvania Supreme Court "broad authority to craft meaningful remedies when required," including equitable remedies. A.37 (Majority Op.) (citing *League of Women Voters*, 178 A.3d at 822 and 42 Pa.C.S. § 726).

Additionally, 25 P.S. § 3046 provides courts of common pleas with the power "to decide 'matters pertaining to the election as may be necessary to carry out the intent' of the Election Code," which includes "providing 'an equal opportunity for all eligible electors to participate in the election process.'" A.36 (Opinion) (quoting 25 P.S. § 3046 and *In re General Election-1985*, 531 A.2d 836, 839 (Pa. Cmwlth. 1987)). Because the Pennsylvania Supreme Court possesses the "supreme judicial power"— and even more so where, as here, it acted pursuant to its extraordinary jurisdiction power—it was also empowered by § 3046 to respond to emergencies in the same manner as those inferior tribunals. PA. CONST. art. V, § 2(a); 42 Pa.C.S. § 501; *In re Bruno*, 101 A.3d 635, 676 (Pa. 2014).

Thus, the Pennsylvania Supreme Court adopted the analysis in *In re General Election-1985,* 531 A.2d at 839, where a Pennsylvania court employed 25 P.S. § 3046 to extend election deadlines in the face of natural disasters imperiling some electors' ability to vote. A.36 (Opinion). There, the court reasoned, "[t]o permit an election [to] be conducted where members of the electorate could be deprived of their opportunity

to participate because of circumstances beyond their control, such as a natural disaster, would be inconsistent with the purpose of the election laws." *In re General Election-1985*, 531 A.2d. at 839. Consistent with that power contained in Section 3046, in order "to prevent the disenfranchisement of voters," the Pennsylvania Supreme Court provided for a three-day extension of the received-by deadline for mailed ballots. It also provided an evidentiary presumption that ballots whose envelopes lack a legible postmark were timely mailed.[15]

Indeed, Section 3046 is a recognition by the General Assembly that Pennsylvania courts must be empowered to vindicate the right to a free and equal election when emergencies arise. Applicants spill much ink contending that these remedies are contrary to the General Assembly's intent in enacting Act 77 and even reflect the Pennsylvania Supreme Court having substituted its "policy judgments" for that of the legislature. Republican Party app. at 23, 25-26, 31; Senators App at 26. But the Pennsylvania Supreme Court's remedies, far from being contrary to legislative intent, guard the most fundamental expression of that intent—as found in both the Free and Equal Elections Clause and in Section 3046—that Pennsylvanian citizens not be disenfranchised.

---

[15]     The Republican Party explicitly argues that an extension of the deadline should have resulted in the invalidation of all of Act 77, app. at 26, but, like this entire case, that question was one of state law, which is outside this Court's purview. *See e.g.*, *Wardius v. Oregon*, 412 U.S. 470, 477 (1973); *see also Halbert v. Michigan*, 545 U.S. 605, 611 (2005) (this Court is not a court of error-correction). In any event, since the Pennsylvania Supreme Court extended the deadline for only this election, because of a confluence of emergencies, the statutory deadline was not abrogated. It remains in place for the next election cycle. A.28 (Majority Op., recounting same); *see* 25 P.S. §§ 3146.6(c) and 3150.16(a).

Applicants also err in claiming that the General Assembly's intent is reflected by its implicit consideration and rejection of the need to move the received-by deadline for ballots when the legislature enacted Act 12 in March. Republican Party app. at 26; Senators app. at 22-23. It was not until July, after Act 12 was enacted, that the USPS informed the Commonwealth that its delivery capabilities conflicted with the election calendar. A.85 (Concurring and Dissenting Statement, Donahue, J.).[16]

As for whether the Pennsylvania Supreme Court's remedy violates the Electors Clause, both set of Applicants make only fleeting arguments that need only be fleetingly addressed.[17] Republican Party app. at 22-23; Legislators app. at 21. Initially, the Court should not countenance this undeveloped argument. *See e.g. Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (declining to address petitioners'

---

[16]   All Applicants take issue with the Pennsylvania Supreme Court's factual findings concerning the USPS's delivery capabilities. The Applicants urge this Court to credit the proposed findings and conclusions of law of a special master (Commonwealth Court President Judge Mary Hannah Leavitt) appointed by the Pennsylvania Supreme Court in a different case. *See Crossey v. Boockvar*, 108 MM 2020 (Pa.). Republican Party app. at 32; Senators app. at 30-31. Judge Leavitt's factual findings, however, were unclear. For example, she found "no clear evidence presented on whether prepaid postage envelopes * * * will be postmarked." A.134 (findings of Fact at ¶ 24). The proposed findings of a special master cannot be used to collaterally attack the decision of the court which appointed her in a different case. *See Exxon Co., USA v. Sofec, Inc.*, 517 U.S. 830, 840-41 (1996); *see also U.S. v. Johnston*, 268 U.S. 220, 227 (1925) ("We do not grant a certiorari to review evidence and discuss specific facts"). Moreover, the Pennsylvania Supreme Court ultimately dismissed *Crossey* as moot once it decided the present case.

[17]   The Electors Clause provides that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors . . . ." U.S. CONST., Art. II, § 1, cl. 2.

undeveloped argument). But in any event, the Electors Clause is not implicated here. That Clause "vests the power to determine the manner of appointment in 'the Legislature' of the State." *AIRC*, 576 U.S. at 839. For example, over the course of American history, electors have been "appointed by the legislatures," "by popular vote for a general ticket," or "elected by districts." *McPherson*, 146 U.S. at 31. The three-day extension and presumption of timely mailing in no way affect the manner in which electors will be appointed: voters will choose the electors who choose their representatives. 25 P.S. §§ 2963, 3191 ("qualified electors," *i.e.*, voters, shall select electors of President and Vice President of the United States); *Cf. McPherson*, 146 U.S. at 24 (state legislature, as a body of representatives, could divide authority to appoint electors across each of the State's congressional districts).

For all these reasons, both sets of Applicants have failed to show that their claims under the Elections and Electors Clauses have merit. Accordingly, there is not a fair prospect that a majority of the Court would vote to reverse the judgment below. The Applications should be denied.

## III.   A Stay Will Irreparably Harm the Public by Disenfranchising Voters Suffering Under a Global Pandemic.

### A.   Applicants' parade of horrors finds no support in the record or reality. The Pennsylvania Supreme Court's Order was necessary to unify county election rules and prevent the disenfranchisement of voters.

Applicants base their equities argument entirely upon speculation that voters will allegedly cast ballots after Election Day. Republican Party app. at 37. They cite nothing in support of this baseless assertion.

26

To establish the requisite irreparable harm for a stay, "[t]he harm alleged must be both certain and immediate, rather than speculative or theoretical." *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). *See also*, *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015) ("[t]o establish irreparable harm, a stay movant 'must demonstrate an injury that is neither remote nor speculative, but actual and imminent.' (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)).

As explained above, Applicants' argument stacks speculation upon speculation. For Applicants' hypothetical late-voting to occur, an unscrupulous voter would have to wait until after Election Day, commit a third-degree felony by lying on the Voter's Declaration, and bribe a postal employee not to postmark the envelope. "In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again." *Michigan Coal. of Radioactive Material Users, Inc.*, 945 F.2d at 154. Applicants, however, cite to no evidence supporting this fantasy. This is unsurprising, as no such evidence exists.[18]

---

[18] Applicants' reliance upon evidence in an unrelated federal case in Wisconsin demonstrates their lack of any evidence of the elaborate voter fraud conspiracy they imagine here. Republican Party app. at 17. In that case, the district court found that, during the 2020 primary, "many ballots arrived with no postmarks, two postmarks, or unclear postmarks." *Democratic Nat'l Comm. v. Bostelmann*, No. 20-cv-249, 2020 WL 5627186, at *6 (W.D. Wis. Sept. 21, 2020). Even if this were true today for Pennsylvania, the imagined unscrupulous voter could not control this. A 7-year prison sentence is a heavy bet to risk on the vagaries of a postal employee.

While applicants are correct that the election cannot be held twice, Republican Party app. at 37, this reality does not weigh in their favor. Voters whose ballots are timely completed but not timely delivered because of COVID-19 and election-related delays in the mail service will be disenfranchised if a stay of the Pennsylvania Supreme Court's order is entered. Because that disenfranchisement cannot be later corrected, it constitutes irreparable harm. *See Fish v. Kobach*, 840 F.3d 710, 754 (10th Cir. 2016). Voters who themselves played by the rules will be disenfranchised if this Court grants the requested stay; through no fault of their own, their votes will be irrevocably lost.

Further, Applicants' invocation of *Bush v. Gore*, 531 U.S. 98 (2000) (*Bush II*), in support of their arguments that the equities favor a stay in this case is perverse. Insofar as the Fourteenth Amendment Equal Protection issues surrounding the post-election recount in *Bush II* have any bearing on the issues here, the Court's opinion actually supports the Pennsylvania Supreme Court's uniform equitable remedy in this case.[19]

In *Bush II*, the Court confronted an Equal Protection challenge to Florida's recount procedures that were established nearly one month *after* the election. More specifically, the Court confronted the standards (or lack thereof) for counting ballots that were insufficiently cast, *i.e.*, ballots with dimpled or hanging chads. 531 U.S. at

---

[19]    Applicants place heavy reliance upon Justice Scalia's stand-alone concurring statement in support of the Court's stay order, *see Bush v. Gore*, 531 U.S. 1046, 1047 (2000) (*Bush I*), and Chief Justice Rehnquist's concurring opinion in support of the Court's decision on the merits, *see Bush II*, 531 U.S. at 112-122, as if they were binding precedent. Obviously, they are not.

101-05. The amorphous and arbitrary standard enunciated by the Florida Supreme Court without uniform rules resulted in unequal evaluation of ballots across Florida counties. *Id.* at 105-06. In some counties, so-called "dimpled chads" were counted, but in others they were not. *Id.* at 106. Other counties changed their ballot-evaluation standards in the middle of the recount. *Ibid.* For this reason, the Court stayed the Florida recount, *see Bush I*, 531 U.S. 1046, and concluded that the process for gleaning a voter's intent lacked "sufficient guarantees of equal treatment." 531 U.S. at 107.

Nothing about the Pennsylvania Supreme Court's remedy here has anything to do with gleaning a voter's intended choice of candidate in the context of an equal protection claim. As to that court's actual decision, its equitable remedy passes constitutional muster for all the reasons this Court stated that the Florida recount did not. The Pennsylvania Supreme Court's solution 47-days before the election establishes a uniform standard for all Pennsylvania counties. It is based upon procedures already enshrined in Pennsylvania law, *see* 25 Pa.C.S. § 3511 (military and overseas ballots are counted if received within seven days of Election Day), and a "preponderance of the evidence" standard longstanding in our common law, *see Black's Law Dictionary* 1431 (11th ed. 2019) (term originated in the 18th Century). This bears no resemblance to the Florida Supreme Court's *ad hoc*, county-by-county standard during the 2000 recount. *Bush I* thus lends no support to—and indeed undermines—Applicants' request for a stay.

**B.    The *Purcell* principle supports the Pennsylvania Supreme Court's order.**

The Pennsylvania Department of State has roots that date back to the 1680s and, for at least a century, has been the principal body tasked with organizing and conducting elections in the Commonwealth.[20] A century's worth of experience with holding elections, including during natural disasters, unrest, and war, has given this department the expertise to identify and best address issues that threaten to disenfranchise Pennsylvania voters.

The Secretary's decision to ask the Pennsylvania Supreme Court for a short three-day extension of time to receive ballots mailed on or before Election Day did not come lightly. Although we initially argued against an extension of time in *Crossey*, *supra*, our experience and expertise have taught us the necessity of being open to new information and responding quickly to changes in circumstances.

The COVID-19 pandemic is unprecedented in its scope and effect. So, when the USPS advised of the delays with returning mail-in ballots in Pennsylvania, we requested the short three-day extension to ensure that the flood of mail-in ballots expected to be cast in this election have time to arrive and be counted. It was in recognition of that expertise that the Pennsylvania Supreme Court "adopt[ed] the Secretary's informed recommendation of a three-day extension of the absentee and mail-in ballot received-by deadline to allow for the tabulation of ballots mailed by voters via the USPS and postmarked by 8:00 p.m. on Election Day to reduce voter

---

[20]    "PA Department of State History," https://www.dos.pa.gov/about-us/Pages/History.aspx (last visited 9/30/20).

disenfranchisement resulting from the conflict between the Election Code and the current USPS delivery standards, given the expected number of Pennsylvanians opting to use mail-in ballots during the pandemic." A.38 (opinion).

The *Purcell* principle provides that near an impending election federal court orders risk disenfranchisement because "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam). This principle admonishes "lower *federal* courts" to not interfere with a State's election rules on the eve of an election. *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, __U.S.__, 140 S. Ct. 1205, 1207 (2020) (emphasis added).

This principle arises from the recognition that "[t]here is good reason to avoid last-minute intervention in a state's election process. Any intervention at this point risks practical concerns including disruption, confusion or other unforeseen deleterious effects." *Republican Party of Pennsylvania v. Cortes*, 218 F.Supp.3d 396, 404–05 (E.D. Pa. 2016) (alteration in original) (citation and quotation omitted). More fundamentally, "[c]omity between the state and federal governments also counsels against last-minute meddling. Federal intervention * * * risks a disruption in the state electoral process [which] is not to be taken lightly. This important equitable consideration goes to the heart of our notions of federalism." *Ibid*. Applicants' request for this Court's intervention now is precisely the eleventh-hour federal meddling that the *Purcell* principle counsels against.

Applicants' heavy reliance on *Republican Nat. Comm. v. Democratic Nat. Comm.*, reveals their fundamental miscomprehension of the *Purcell* principle and this Court's adherence to federalism. Applicants assert that *Republican Nat. Comm.* is similar to this case because this Court granted a stay. Republican Party app. at 1. This assertion ignores the logic, context, and meaning behind that decision. In that case, this Court stayed a *federal district court's* eleventh-hour order directing Wisconsin "to count absentee ballots postmarked *after* [Election Day]" because of COVID-19. *Republican Nat. Comm.*, 140 S.Ct. at 1206 (emphasis added). Detailing its reasons for the stay, this Court explained that it "has repeatedly emphasized that *lower federal courts* should ordinarily not alter the election rules on the eve of an election." *Id*. at 1207 (emphasis added) (citing *Purcell*, 549 U.S. 1). Nevertheless, and importantly, this Court allowed the counting of ballots mailed *by* Election Day but received six days later and issued its order "subject to any further alterations that the State may make to state law." *Id*. at 1208.

Additionally, this Court in *Republican National Committee* found it "a critical point" that none of the parties "ask[ed] that the District Court allow ballots mailed and postmarked after election day * * * to be counted." *Id*. at 1206; *id*. at 1207 ("Our point is not that the argument is necessarily forfeited, but is that the plaintiffs themselves did not see the need to ask for such relief"). Here, the Pennsylvania department charged with conducting the General Election did ask Pennsylvania's highest court for an extension of the receipt date. The USPS's admitted inability to timely deliver ballots would have disenfranchised voters faithfully complying with

the Election Code. Far from interfering with the Commonwealth's ability to hold a fair and free election, the Pennsylvania Supreme Court's order is necessary to it.

Based on the *Purcell* principle, this Court has routinely stayed or vacated orders by federal courts affecting state election procedures on the eve of an election.[21] In fact, the Senators helpfully list six such examples in their application. Senator app. at 29-30 (citing *Republican Nat. Comm.*, 140 S.Ct. 1205; *Merrill v. People First of Ala.*, No. 19A1063 (July 2, 2020); *Little v. Reclaim Idaho*, No. 20A18 (July 30, 2020); *Clarno v. People Not Politicians*, No. 20A21 (Aug. 11, 2020); *Thompson v. DeWise*, No. 19A1054 (June 25, 2020); *Tex. Dem. Party v. Abbott*, No. 19A1055 (June 26, 2020)). In each case, this Court stayed an attempt by a federal court to interfere with the State's election rules. And that is precisely what Applicants ask this Court to do here: Interfere with the Commonwealth's election rules a little more than a month from the General Election. The equities weigh heavily against a stay.

---

[21]   On pages 31-32 of their application, the Senators cite to several cases being considered in other state courts concerning ballot receipt deadlines. The Senators appear to argue that this Court should issue an order preventing those state courts from addressing COVID-19 related emergencies in their respective states. This is directly contrary to the *Purcell* principle. As this Court has repeatedly recognized, "[s]tate courts are absolutely free both to interpret state constitutional provisions to accord greater protection to individual rights than do similar provisions of the United States Constitution. They are also free to serve as experimental laboratories[.]" *Arizona v. Evans*, 514 U.S. 1, 8 (1995).

# CONCLUSION

The Court should deny the applications to stay the Pennsylvania Supreme Court's September 17, 2020 order.

Respectfully submitted,

JOSH SHAPIRO
Attorney General

By:  */s/ J. Bart DeLone*
J. BART DeLONE
*Chief Deputy Attorney General*
Chief, Appellate Litigation Section
Pa. Bar # 42540

HOWARD G. HOPKIRK
SEAN A. KIRKPATRICK
*Senior Deputy Attorneys General*

MICHAEL J. SCARINCI
DANIEL B. MULLEN
*Deputy Attorneys General*

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
Phone: (717) 712-3818
FAX:   (717) 772-4526

October 5, 2020