# EXHIBIT G

**[J-118F-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| IN RE: 2,349 BALLOTS IN THE 2020 GENERAL ELECTION | : | No. 29 WAP 2020 |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ALLEGHENY COUNTY BOARD OF ELECTIONS | : | |
| | : | |

**ORDER**

**PER CURIAM**

 **AND NOW**, this 25th day of November, 2020, the Emergency Application for

Reargument by Nicole Ziccarelli, filed on November 24, 2020, is hereby **DENIED**

 Chief Justice Saylor and Justice Mundy note their dissent.

A True Copy Patricia Nicola
As Of 11/25/2020

Attest: _Patricia Nicola_

Chief Clerk
Supreme Court of Pennsylvania

Received 11/24/2020 8:52:00 AM Supreme Court Western District

Filed 11/24/2020 8:52:00 AM Supreme Court Western District
29 WAP 2020

# IN THE SUPREME COURT OF PENNSYLVANIA

## No. 29 WAP 2020

## IN RE: 2,349 BALLOTS IN THE 2020 GENERAL ELECTION

Appeal of: Allegheny County Board of Elections

## EMERGENCY APPLICATION FOR REARGUMENT BY NICOLE ZICCARELLI

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Shohin H. Vance (No. 323551)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: (215) 568-2000
Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
svance@kleinbard.com
szimmer@kleinbard.com

*Attorneys for Nicole Ziccarelli*

# TABLE OF CONTENTS

I.     INTRODUCTION..............................................................................1

II.    REFERENCE TO THE ORDER IN QUESTION OR THE
PORTIONS THEREOF SOUGHT TO BE REARGUED.................1

III.   POINTS OF LAW OR FACT OVERLOOKED OR
MISAPPREHENDED BY THE COURT .........................................1

IV.   CONCISE STATEMENT OF THE REASONS RELIED UPON
FOR ALLOWANCE OF REARGUMENT........................................2

V.    CONCLUSION..................................................................................8

Exhibits A-C    Relevant Orders and Opinions

# TABLE OF AUTHORITIES

## Cases

*Dana Holding Corporation v. Workers' Compensation Appeal Board*, 232 A.3d 629 (Pa. 2020) ........................................................................ 3

*In re L.J.*, 79 A.3d 1073 (Pa. 2013) ...................................................... 2, 3

*In Re: Allegheny Provisional Ballots in the General Election*, No. 1161 CD 2020 (Pa. Cmwlth. Nov. 20, 2020) .................................................. 6

## Rules

Pa.R.A.P. 2543 ...................................................................................... 1, 5

## Constitutional Provisions

Pa. Const. art. I, § 5 ............................................................................. 5, 7

## I.    INTRODUCTION

In the one day, within just a few hours, this Court reached

incongruous results on two substantially identical Election Code issues

(statutorily non-compliant ballots), involving the same county

(Allegheny), and involving the same race (45th Senate District). This

warrants immediate reargument under Pa.R.A.P. 2543 because of the

conflicting results and the violation of the Free and Equal Elections

Clause this yields.

## II.   REFERENCE TO THE ORDER IN QUESTION OR THE PORTIONS THEREOF SOUGHT TO BE REARGUED

Nicole Ziccarelli seeks reargument of that portion of the Court's

judgment that allows the Allegheny County Board of Elections to

canvass and count mail-in ballots containing an undated declaration,

notwithstanding the fact that a majority of the Court held such ballots

are violative of the Election Code.

## III.  POINTS OF LAW OR FACT OVERLOOKED OR MISAPPREHENDED BY THE COURT

In holding that undated declarations on mail-in ballots render

them invalid, but simultaneously ordering them to be canvassed, the

Court: (1) misapprehended the limited circumstances under which a

"purely prospective" application of a holding is warranted; and

1

(2) overlooked the effect of its order in *In Re: Allegheny Provisional Ballots in the General Election*, No. 338 WAL 2020, which, in contrast to the judgment here, has the effect of rendering ballots *invalid* in Allegheny County due to statutory non-compliance with the Election Code.

## IV.  CONCISE STATEMENT OF THE REASONS RELIED UPON FOR ALLOWANCE OF REARGUMENT

The Court should immediately grant reargument in this matter for at least two reasons.

*First*, the Court's ultimate mandate concerning the undated mail-in ballots at issue in this specific appeal results in a prospective application of its decision in contravention of settled jurisprudence. As this Court has explained, "the general rule is that the decision announcing a new rule of law is applied retroactively so that a party whose case is pending on direct appeal is entitled to the benefit of the changes in the law." *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013). Prospective application, on the other hand, is appropriate "***only*** if the new rule of law is of the court's own making, involves a procedural matter, and involves common law development." *Id.* (internal quotation marks omitted; emphasis added). In determining "whether to deviate

2

from [the] general rule" in favor of retroactive application, the Court

considers three factors: "(1) the purpose of the new rule; (2) the extent of

reliance by courts and litigants upon the old rule, and (3) the effect the

new rule of law will have on the fair administration of justice." *Id.*

Finally, even where the Court determines that prospective application

is appropriate, this Court has rarely endorsed a "purely prospective"

application whereby the decision is "not even applied to the litigants

before the court upon announcement of the new rule." *Dana Holding*

*Corporation v. Workers' Compensation Appeal Board*, 232 A.3d 629, 637

n.9 (Pa. 2020). Rather, the Court has generally utilized a "modified, or

selective prospectivity," which requires "the application of a decision to

the parties in the case in which the decision announcing a new rule is

rendered, but thereafter only to parties whose conduct occurs after the

announcement." *Id.*; *see also In re L.J.*, 79 A.3d at 1089 n.19 ("We note

that this Court has recognized two types of prospective application of

decisions: (1) 'purely prospective,' which does not apply the new rule of

law to the parties to the case, but only to cases commenced thereafter;

and (2) 'prospective' generally, which does apply the new rule of law to

the parties in the case and all litigation commenced thereafter.").

3

Against this backdrop, the specific relief relative to the ballots presently at issue overlooks this Court's own precedent on multiple levels. To begin, prospective application—whether modified or otherwise—of this Court's holding is inappropriate, since the validity of mail-in ballots with undated declarations does not entail a procedural rule. Indeed, not only is the question decidedly substantive, but it is plainly one that implicates issues of constitutional dimension. Moreover, even if the matter before the Court could properly be characterized as procedural, the controlling factors militate strongly against prospective application. First, the purpose of any ruling concerning the casting of ballots is maintaining the integrity of the electoral process and ensuring the orderly conduct of elections. As such, applying the rule retroactively would cast an indelible shadow of doubt over the 2020 General Election. Second, the "old rule" in this context— to the extent it even existed—has been minimally relied upon. Finally, as recognized by the four justices who concluded that an undated voter declaration invalidates the mail-in ballot, the "new rule" is designed to further the fair and impartial administration of elections.

4

However, even if this Court were to conclude that prospective application is appropriate, there is no basis for employing the seldom-utilized "purely prospective" framework. At a minimum, the decision should apply to the litigants presently before the Court—namely Ms. Ziccarelli, since she filed the action, she's uniquely impacted by it, and the outcome of the case is potentially outcome-determinative in her race, unlike in the Philadelphia companion cases.

*Second*, the judgment in this case conflicts with the order issued by the Court earlier in the day pertaining to provisional ballots cast by mail-in electors. That disparate treatment of the two classes of ballots is plainly a violation of the Free and Equal Elections Clause. *See* Pa.R.A.P. 2543(1); Pa. Const. art. I, § 5.

To illuminate, hours before holding that mail-in ballots accompanied by undated voter declaration are invalid, but should nonetheless be included in the 2020 General election returns, the Court endorsed a vastly different approach relative to a materially similar type of statutory violation by mail-in electors. Specifically, in denying *allocatur* in *In Re: Allegheny Provisional Ballots in the General Election,*

5

No. 338 WAL 2020,[1] this Court allowed the opinion of the

Commonwealth Court to stand, which held that provisional ballots from

Allegheny County concerning the 45th Senate District race *would not be*

*canvassed* due to statutory non-compliance with the Election Code. *See*

*In Re: Allegheny Provisional Ballots in the General Election*, No. 1161

CD 2020, slip op. at 8-9 (Pa. Cmwlth. Nov. 20, 2020) (holding, *inter alia*,

"provisional ballots cast by a voter whose mail-in ballots were timely

received[,]" were invalid because courts are "unable to excuse the

defects in the ballot," even if voters had received misleading advice).

(emphasis in original)) (Exhibit B). Under the Commonwealth Court's

opinion and order, which this Court allowed to stand, ballots—including

those cast by mail-in electors who submitted defective ballots pursuant

to the newly mail-in voting provisions—were disqualified and not

canvassed in Allegheny County *solely because of* statutory non-

compliance with the Election Code.

Despite the ruling in *Allegheny Provisional Ballots*, just a few

hours later in a second contest also involving Allegheny County, also

involving the 45th Senate District, and also involving statutorily non-

_____

[1] *See* Order, No. 228 WAL 2020 (Nov. 23, 2020) (Exhibit A)

compliant ballots, this Court reached a polar opposite result.

Specifically, the Court—with four justices in separate opinions

agreeing, *see* Concurring and Dissenting Opinion of Justice Wecht at 1-

2 (Exhibit C); Concurring and Dissenting Opinion of Dougherty at 1

(joined by Justices Saylor and Mundy)—held that undated declarations

rendered ballots statutorily non-compliant and, therefore, *invalid*.

Nevertheless, the Court then allowed those ballots to be canvassed and

counted, even though a majority of the justices agreed that they were

statutorily invalid. As such, in two cases on the same day involving the

same county, the same race, and the same issue, the Court in one

allowed statutorily non-compliant ballots *to be rejected*, and, in another,

directed similarly defective ballots to *be counted*. Such a result does

violence to the fundamental principle that "Elections shall be free and

equal; and no power, civil or military, shall at any time interfere to

prevent the free exercise of the right of suffrage." Pa. Const. art. I, § 5.

Thus, reargument should be immediately granted and these

incongruous results reconciled.

7

## V. CONCLUSION

Accordingly, this Court should grant reargument and immediately

affirm the opinion and order of the Commonwealth Court.

Respectfully submitted,

Dated: November 24, 2020

/s/ Matthew H. Haverstick
Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Shohin H. Vance (No. 323551)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: (215) 568-2000
Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
svance@kleinbard.com
szimmer@kleinbard.com

*Attorneys for Nicole Ziccarelli*

# WORD COUNT CERTIFICATION

I hereby certify that the above brief complies with the word count limits of the Pa.R.A.P. 2544(c). Based on the word count feature of the word processing system used to prepare this brief, this document contains 1348 words, exclusive of the cover page, tables, and the signature block.

Dated: November 24, 2020        /s/ Matthew H. Haverstick
                                Matthew H. Haverstick (No. 85072)
                                Joshua J. Voss (No. 306853)
                                Shohin H. Vance (No. 323551)
                                Samantha G. Zimmer (No. 325650)
                                KLEINBARD LLC
                                Three Logan Square
                                1717 Arch Street, 5th Floor
                                Philadelphia, PA 19103
                                Ph: (215) 568-2000
                                Fax: (215) 568-0140
                                Eml: mhaverstick@kleinbard.com
                                jvoss@kleinbard.com
                                svance@kleinbard.com
                                szimmer@kleinbard.com
                                *Attorneys for Nicole Ziccarelli*

# EXHIBIT A

**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | |
|---|---|
| IN RE:  ALLEGHENY COUNTY | :  No. 338 WAL 2020 |
| PROVISIONAL BALLOTS IN THE 2020 | : |
| GENERAL ELECTION | : |
| | :  Petition for Allowance of Appeal from |
| | :  the Order of the Commonwealth |
| PETITION OF:  ALLEGHENY COUNTY | :  Court |
| BOARD OF ELECTIONS | : |

## **ORDER**

**PER CURIAM**

       **AND NOW**, this 23rd day of November, 2020, the Petition for Allowance of Appeal

is **DENIED**.

A True Copy Patricia Nicola
As Of 11/23/2020

Attest: _____
Chief Clerk
Supreme Court of Pennsylvania

# EXHIBIT B

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Allegheny County Provisional  :
Ballots in the 2020 General Election  :   No. 1161 C.D. 2020
                                      :
Appeal of: Nicole Ziccarelli         :   Submitted: November 19, 2020


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                      FILED:  November 20, 2020


        Nicole Ziccarelli, a Republican candidate for State Senator from the 45th

Senatorial District in the General Election (Candidate), appeals from the November 18,

2020 order of the Court of Common Pleas of Allegheny County (trial court) which

denied Candidate's petition for review and affirmed the decision of the Allegheny

County Board of Elections (Elections Board) to canvass and count 270 provisional

ballots for the November 3, 2020 General Election.  The disputed provisional ballots

at issue were submitted by voters who either failed to affix the necessary signatures

under the Pennsylvania Election Code[1] (Election Code), and/or whose mail-in ballots

were timely received, but ultimately found defective.

_____

    [1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§2600-3591.

## **Factual and Procedural Background**

Of the approximately 17,000 provisional ballots cast in Allegheny County in the 2020 General Election, these approximately 270 ballots were challenged on one of the following three grounds:

i.    The provisional ballot contained an affidavit signed by the voter under [section 1210(a.4)(2) of the Election Code, 25 P.S. §3050(a.4)(2),] but did not contain the signature required by [section 1210(a.4)(3) of the Election Code,] 25 P.S. §3050(a.4)(3);

ii.   The provisional ballot contained the requisite signature under 25 P.S. § 3050(a.4)(3), but lacked the affidavit signed under 25 P.S. §3050(a.4)(2);

iii.  The provisional ballot was cast by an elector whose mail-in or absentee ballot was timely received by the Elections Board, but was somehow defective (i.e., missing or incomplete secrecy envelope, identifying mark, etc.).

On November 14, 2020, the Elections Board conducted a hearing, during which it considered whether the three classes of disputed provisional ballots described above should be set aside as invalid.   Considering each of the three challenges separately, the Elections Board decided, by a vote of 2-1 relative to each category, to canvass and count the disputed provisional ballots.

On November 16, 2020, Candidate filed a petition for review in the trial court.  The Pennsylvania Democratic Party and Democratic candidate for State Senator from the 45th Senatorial District, James Brewster, were permitted to intervene.   On November 17, 2020, the trial court conducted a hearing.  At the hearing, the Elections Board provided the trial court with an example of a provisional ballot envelope.[2]  The

_____

[2] The provisional ballot envelope used in the Allegheny County 2020 General Election is attached to the Pennsylvania Democratic Party/James Brewster's Brief as Exhibit B.

provisional ballot outer envelope contains two similar voter declarations. The first declaration, contained in Box 1, states: "I do solemnly swear or affirm that my name and date of birth are as I have listed above, and at the time that I registered I resided at the address I have provided above, in the Commonwealth of Pennsylvania and that this is the only ballot that I have cast in this election." The second declaration, contained in Box 4, states: "The undersigned declares, under penalty of law, that he/she is a properly registered elector in the election district indicated in my affidavit, and that he/she is eligible to vote in this election in this election district." Notably, at the hearing, counsel for the Elections Board suggested, but provided no evidence, that these 270 electors received faulty instructions from election officials to sign the provisional ballot envelope only once.

On November 18, 2020, the trial court issued an order denying the petition for review and affirming the Elections Board on the grounds that these eligible electors "should not be penalized because they were given and relied on incorrect information by the election administration." (Trial Ct. Op. at 5.) That same day, Candidate filed a timely appeal with this Court[3] contending that the disputed provisional ballots are invalid and cannot be counted. The parties have submitted briefs in support of their respective arguments on the merits.[4]

Candidate submits that the trial court erred when it concluded that provisional ballots lacking one of the necessary signatures could be counted. Candidate argues that the trial court's decision is in plain contravention of the mandatory language

---

[3] This Court has jurisdiction over this election-related appeal pursuant to Section 762(a)(4)(i)(c) of the Judicial Code, 42 Pa.C.S. § 762(a)(4)(i)(c). *See Dayhoff v. Weaver*, 808 A.2d 1002, 1005-06 & n.7 (Pa. Cmwlth. 2002).

[4] This matter calls for the Court to review and determine the meaning of the Election Code. "[S]tatutory interpretation of the Election Code . . . as a question of law, is subject to a de novo standard of review and a plenary scope of review." *Banfield v. Cortes*, 110 A.3d 155, 166 (Pa. 2015).

3

of section 1210 of the Election Code, which states that a provisional ballot "shall not be counted" if "either the provisional ballot envelope . . . or the affidavit . . . is not signed by the individual;" 25 P.S. §3050(a.4)(5)(ii)(A), or if "the elector's absentee ballot or mail-in ballot is timely received by a county board of elections." *Id.* §3050(a.4)(5)(ii)(F). She asserts that a mail-in ballot that the Elections Board rejected for lack of an inner secrecy envelope is "timely received" by the Elections Board pursuant to section 1210, thus prohibiting the voter from being eligible to cast a provisional ballot. Lastly, Candidate argues that there was no evidence to support the trial court's finding that the electors were given incorrect instructions, and even assuming arguendo that the defects in the disputed provisional ballots were the result of erroneous instructions by election officials, the Elections Board was nonetheless required to set them aside under both settled and recent Supreme Court decisions.

In response, the Pennsylvania Democratic Party, James Brewster, and the Elections Board (collectively, Appellees) concede that 270 voters each filled out a provisional ballot that included one of the signatures referenced in section 1210 of the Election Code, but not the other. (Brief of the Pennsylvania Democratic Party and James Brewster at 6.) They argue however that the absence of a second voter signature on the outer envelope should not result in the disenfranchisement of any of the affected voters. They submit that there is no reason to disenfranchise 270 voters for a "minor technicality" that most likely resulted from an election worker providing incorrect advice. *Id.* at 13.

### Discussion

Section 1210(a.4)(2) of the Election Code, 25 P.S. §3050(a.4)(2), provides that, "[p]rior to voting the provisional ballot, the elector *shall be required to sign* an affidavit" stating the elector's name, date of birth, address at the time of registration,

4

and attesting that the provisional ballot is the only ballot that the elector cast in the election.   25 P.S. §3050(a.4)(2) (emphasis added).   Section 1210(a.4)(3) further provides: "After the provisional ballot has been cast, the individual shall place it in a secrecy envelope.  The individual shall place the secrecy envelope in the provisional ballot envelope and *shall place his signature on the front of the provisional ballot envelope.*"  *Id.* (emphasis added).   These provisions plainly contemplate separate signatures for each delineated item.

Section 1204(a.4)(5)(ii)[5]  specifies the circumstances under which a provisional ballot will not be counted, and provides, in relevant part:

> A provisional ballot **shall not be counted** if:
>
> > (A) **either the provisional ballot envelope under clause (3) or the affidavit under clause (2) is not signed by the individual;**
> >
> > \* \* \*
> >
> > (F) the elector's absentee ballot or mail-in ballot is timely received by a county board of elections.

25 P.S. §3050(a.4)(5)(ii)(A), (F) (emphasis added).

We conclude that, pursuant to the plain language of this statute, the provisional ballots at issue **shall not be counted.  Section 1204(a.4)(5)(ii)(A) makes quite clear that, if "either" the provisional ballot envelope "or" the affidavit are not "signed by the individual," then the "provisional ballot shall not be counted."**  *Id.*  Stated otherwise, *both* signatures are required.

---

[5] Added by the Act of October 8, 2004, P.L. 807, and amended by the Act of October 31, 2019, P.L. 552.

Notably, the specificity of the statutory language renders this circumstance quite unlike the question that our Supreme Court confronted in *Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345, 374-380 (Pa. 2020), concerning mail-in ballots that lack a secrecy envelope—so-called "naked" ballots. The argument presented to the *Boockvar* Court revolved around the absence of any statutory provision requiring such "naked" ballots to be disqualified. *Id.* at 375-76. Ultimately, notwithstanding that absence, our Supreme Court held that the requirement that a voter utilize the secrecy envelope was mandatory, and was so essential to the preservation of secrecy in voting—a constitutional imperative[6]—that the failure of a voter to enclose his ballot in the secrecy envelope necessitates disqualification of the ballot. *Id.* at 380. Here, the analysis is much more straightforward. Unlike the statutory provision at issue in *Boockvar*, Section 1204(a.4)(5)(ii) of the Election Code plainly speaks to the disqualification of provisional ballots that fail to meet the specified requirements.[7] Here there is a plain, unambiguous, and directly applicable statutory command.

This case is also quite distinct from *Appeal of James*, 105 A.2d 64 (Pa. 1954), relied upon below. In *James*, certain challenged ballots used "sticker votes" to write in a candidate who already appeared on the ballot. *Id.* at 64-65. Noting the importance of "ascertainment of the intent of the voter," and repeating the admonition

---

[6] *See Boockvar*, 238 A.3d at 379 (citing PA. CONST. art. VII, §4 ("All elections by the citizens shall be by ballot or by such other method as may be prescribed by law: Provided, That secrecy in voting be preserved.")).

[7] Moreover, we note that, like "the failure to 'fill out, date *and sign* the declaration printed on the ballot' return envelope, as required by 25 P.S. §3150.16(a)," the failure to sign a provisional ballot in the places required by 25 P.S. §3050(a.4)(2)-(3) is a defect that is "capable of objective assessment pursuant to uniform standards," and requires no resort to "subjective assessments" that could lead to inconsistent determinations. *Boockvar*, 238 A.3d at 389 (Wecht, J., concurring) (emphasis added).

that "[t]echnicalities should not be used to make the right of the voter insecure," *id.* at 65-66, the *James* Court held that the voters who marked their ballots in the challenged manner had "unmistakably, unerringly and precisely demonstrated their intention" to vote for the candidate. *Id.* at 65. The ballots, therefore, were not to be deemed void. What *James* did not involve, however, is an unambiguous statutory provision directing that ballots shall not be counted if they contain specified deficiencies. Because we are faced with such a statutory provision here, *Appeal of James* is plainly inapposite.

Importantly, Appellees do not dispute that the provisional ballots at issue facially failed to satisfy the statutory requirements. The Elections Board characterizes the ballots in question as "[b]allots containing an affidavit signature by the voter. . . but not a signature pursuant to 25 P.S. §3050(a.4)(3)" and "[b]allots containing the signature under 25 P.S. §3050(a.4)(3), but not the affidavit signature . . . ." (Elections Board Br. at 2.)   The Pennsylvania Democratic Party and James Brewster similarly state that, "[i]n Allegheny County, 270 voters each filled out a provisional ballot that included one of the signatures referenced in [25 P.S. §3050], but not the other." (Brief of the Pennsylvania Democratic Party and James Brewster at 6.)   Accordingly, it is uncontested that the ballots failed to conform to statutory requirements. Appellees' position instead is premised upon the rule that we must interpret the Election Code liberally in favor of the right to vote, and that we should avoid disenfranchising voters due to minor irregularities in their ballots. (Elections Board Br. at 11 (citing *Shambach v. Bickhart*, 845 A.2d 793, 798 (Pa. 2004); Pennsylvania Democratic Party and James Brewster Br. at 7 (same)).)   However, unlike matters which involve ambiguous statutory language where courts apply principles of statutory construction to interpret same, this matter requires no application of statutory construction principles, for the language is plain and unambiguous—the provisional ballots at issue "shall not be

counted." 25 P.S. §3050(a.4)(5)(ii). Although we do not take lightly the disqualification of any ballot, it is a cardinal rule that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. §1921(b); *see Trust Under Agreement of Taylor*, 164 A.3d 1147, 1155 (Pa. 2017) ("If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent and not look beyond the statutory language to ascertain its meaning.").

With regard to the small number of provisional ballots cast by a voter whose mail-in ballots were timely received, our analysis is the same. Section 1204(a.4)(5)(ii)(F) plainly provides that a provisional ballot shall not be counted if "the elector's absentee ballot or mail-in ballot is timely received by a county board of elections." 25 P.S. §3050(a.4)(5)(ii)(F). Like the language relating to the requisite signatures, this provision is unambiguous. We are not at liberty to disregard the clear statutory mandate that the provisional ballots to which this language applies must not be counted.

That said, the decision below cannot stand on numerous grounds. Here, the entire foundation of the decision of the trial court rested on this line of reasoning:

> The Board argues that if an error or defect is caused by the misrepresentation or error of the election administration, the voter should not be penalized. Here, voters presented at their polling location and voted with a provisional ballot. Poll workers handed them all of the materials and gave them instructions how to fill out the outer envelope. Many people are unfamiliar with this process and rely on the information given to them at the polling location.

(Trial court op. at 2.)

While counsel's argument is one thing, evidence is another. Having reviewed the evidence generated in this matter, we conclude that the trial court's

finding that the 270 or so voters, throughout the entire County of Allegheny, in various and different polling places in that county, were subjected to and heeded misleading advice from election officials, lacks the requisite support in the record. Indeed, there is no evidence in the record to establish that the failure to comply with the Election Code was the result of voters being misled by election officials.

Assuming arguendo, there *was* evidence of election officials providing misleading advice to these voters, this Court, nonetheless, would be unable to excuse the defects in the ballot based on Pennsylvania Supreme Court precedent that, because our General Assembly "pronounced a bright-line rule couched in strong admonitory terms," we "are not free to disregard the explicit legislative direction based on equitable considerations." *In re Nomination Petition of Guzzardi*, 99 A.3d 381 (Pa. 2014) (candidate not excused from filing timely financial statement through principles of equity, even if the election office provided him with misleading information). In other words, "where the Legislature has attached specific consequences to particular actions or omissions, Pennsylvania courts may not mitigate the legislatively prescribed outcome through recourse to equity," and this holds true even where, as here, election officials allegedly provide erroneous advice and the recipient relies on that advice. *See id.* As explained above, our General Assembly, in clear and unmistakable language, dictated that, in circumstances like this case, the "provisional ballot[s] **shall not be counted**." 25 P.S. §3050(a.4) (emphasis added). This Court is not at liberty to ignore this mandate.

Finally, although our decision may be perceived as disenfranchising voters, the Election Code mandates that these deficient ballots **shall not be counted**. This Court emphasizes that it is following and faithfully applying the mandates of our General Assembly and our Supreme Court precedent. Accordingly, the plain language

of the Election Code and the lack of evidence in support of the position advanced by the Appellees require this Court to reverse the trial court's decision.

This matter is remanded to the trial court to issue an order sustaining the Candidate's challenge to the Elections Board's determination and directing the Elections Board to exclude the 270 challenged ballots from the certified returns of election for the County of Allegheny under section 1404 of the Election Code, 25 P.S. §3154.

_s/ Patricia A. McCullough_
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Allegheny County Provisional     :
Ballots in the 2020 General Election     :   No.  1161 C.D. 2020
                                  :
Appeal of: Nicole Ziccarelli           :

## ***ORDER***

            AND NOW, this 20th day of November, 2020, the November 18, 2020
order of the Court of Common Pleas of Allegheny County is hereby REVERSED,
and this matter is REMANDED to the court of common pleas for further proceedings
in accordance with the accompanying opinion.

                                  *s/ Patricia A. McCullough*
                                  PATRICIA A. McCULLOUGH, Judge

Certified from the Record

NOV 2 3 2020

And Order Exit

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Allegheny County Provisional     :
Ballots in the 2020 General Election     : No. 1161 C.D. 2020
                                     : Submitted: November 19, 2020
Appeal of: Nicole Ziccarelli          :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE WOJCIK                     FILED:  November 20, 2020


       I respectfully dissent from the majority's decision to reverse the order of the Court of Common Pleas of Allegheny County (trial court) in this matter.

       The Pennsylvania Supreme Court has explained:

> 'The power to throw out a ballot for minor irregularities, like the power to throw out the entire poll of an election district for irregularities, must be exercised very sparingly and with the idea in mind that either an individual voter or a group of voters are not to be disfranchised at an election except for compelling reasons. * * * 'The purpose in holding elections is to register the actual expression of the electorate's will' and that 'computing judges' should endeavor 'to see what was the true result.' There should be the same reluctance to throw out a single ballot as there is to throw out an entire district poll, for sometimes an election hinges on one vote.'

>       In resolving election controversies it would not be amiss to consider the following criteria:

1. Was any specific provision of the Election Code violated?

2. Was any fraud involved?

3. Was the will of the voter subverted?

4. Is the will of the voter in doubt?

5. Did the loser suffer an unfair disadvantage?

6. Did the winner gain an unfair disadvantage?

*Appeal of James*, 105 A.2d 64, 67 (Pa. 1954) (citation omitted). It is undisputed that only the first of the foregoing six criteria is at issue with respect to the contested ballots herein.

Regarding the submission of a vote by provisional ballot, Section 1204(a) and (a.4)(1)-(3), (5)(i), (ii)(A) and (F) of the Pennsylvania Election Code[1] provides, in relevant part:

> (a) At every primary and election each elector who appears to vote and who desires to vote shall first present to an election officer proof of identification. The election officer shall examine the proof of identification presented by the elector and sign an affidavit stating that this has been done.
>
> \* \* \*
>
> (a.4)(1) At all elections an individual who claims to be properly registered and eligible to vote at the election district but whose name does not appear on the district register and whose registration cannot be determined by the inspectors of election or the county election board shall be permitted to cast a provisional ballot. Individuals who appear to vote shall be required to produce proof of identification pursuant to subsection (a)

---

[1] Act of June 3, 1937, P.L. 1333, as *amended*, 25 P.S. §3050(a), (a.4)(1)-(3), (5).

and if unable to do so shall be permitted to cast a provisional ballot. An individual presenting a judicial order to vote shall be permitted to cast a provisional ballot.

(2) Prior to voting the provisional ballot, the elector shall be required to sign an affidavit stating the following:

I do solemnly swear or affirm that my name is _____, that my date of birth is _____, and at the time that I registered I resided at _____ in the municipality of _____ in _____ County of the Commonwealth of Pennsylvania and that this is the only ballot that I cast in this election.

Signature of Voter/Elector

Current Address

Check the Reason for Casting the Provisional Ballot.

Signed by Judge of Elections and minority inspector

(3) After the provisional ballot has been cast, the individual shall place it in a secrecy envelope. The individual shall place the secrecy envelope in the provisional ballot envelope and shall place his signature on the front of the provisional ballot envelope. All provisional ballots shall remain sealed in their provisional ballot envelopes for return to the county board of elections.

\* \* \*

(5)(i) Except as provided in subclause (ii), if it is determined that the individual was registered and entitled to vote at the election district where the ballot was cast, the county board of elections shall compare the signature on the provisional ballot envelope with the signature on the elector's registration form and, if the signatures are determined to be genuine, shall count the ballot if the county board of elections confirms that the individual did

not cast any other ballot, including an absentee ballot, in the election.

(ii)  A provisional ballot shall not be counted if:

(A)  either the provisional ballot envelope under clause (3) or the affidavit under clause (2) is not signed by the individual;

* * *

(F)  the elector's absentee ballot or mail-in ballot is timely received by a county board of elections.

At issue in the instant matter are approximately 270 provisional ballots cast in Allegheny County in the November 3, 2020 General Election that purportedly have one of the following technical defects:  (1) the provisional ballot contained an affidavit signed by the voter as required by Section 1204(a.4)(2), but did not contain a signature on the provisional ballot envelope as required by Section 1204(a.4)(3); (2) the provisional ballot contained the signature on the provisional ballot envelope as required by Section 1204(a.4)(3), but did not contain the affidavit signed by the voter as required by Section 1204(a.4)(2); or (3) the provisional ballot was cast by a voter whose absentee or mail-in ballot was timely received by the Allegheny County Board of Elections, but the absentee or mail-in ballot was defective and, therefore, invalid in some respect.

There is no dispute that the voters who cast the questioned 270 ballots were qualified, registered electors.  Moreover, there is no allegation that any of the 270 voters in question had voted more than once.  The only sins that would lead these votes to be discarded is that the qualified, registered voters failed to properly enter his or her signature on all of the multiple documents required to be signed, or his or her desire to correct a previously submitted, but admittedly invalid absentee or mail-in ballot through the submission of a properly executed provisional ballot.

MHW - 4

I view the foregoing technical provisional ballot requirements as similar to the issue of the color of ink that is used to fill in an absentee or mail-in ballot. With respect to such ballots, Sections 1306(a)[2] and 1306-D(a)[3] of the Pennsylvania Election Code plainly state the voter "*shall*, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen." 25 P.S. §§3146.6(a), 3150.16(a) (emphasis added).[4] Our Supreme Court approved the marking of absentee ballots with green or red pen to be appropriate despite the General Assembly's use of the word "shall" when describing the method of marking the ballots. *See In re Luzerne County Return Board*, 290 A.2d 108, 109 (Pa. 1972). There, our Supreme Court construed the Election Code liberally so as to not disenfranchise Pennsylvania voters over a technicality.

In light of the foregoing criteria outlined in *Appeal of James*, I would do so here as well, and I would not blithely disenfranchise those 270 voters who merely neglected to enter a signature on one of the various signed documents of an otherwise properly executed and timely-submitted provisional ballot. Likewise, I would not penalize a properly registered voter's attempt to exercise his or her right

---

[2] Added by the Act of March 6, 1951, P.L. 3, as *amended*, 25 P.S. §3146.6(a).

[3] Added by the Act of October 31, 2019, P.L. 552, 25 P.S. §3150.16a.

[4] The same requirements apply to the execution of all documents relating to the submission of a provisional ballot. *See* Section 1204(a.3)(1) of the Pennsylvania Election Code, 25 P.S. §3050(a.3)(1) ("All electors, including any elector that shows proof of identification pursuant to subsection (a), shall subsequently sign a voter's certificate in blue, black or blue-black ink with a fountain pen or ball point pen, . . . and hand the same to the election officer in charge of the district register.").

MHW - 5

of franchise by correcting a previously submitted, but admittedly invalid absentee or mail-in ballot, by submitting a properly executed provisional ballot.

Accordingly, unlike the majority, I would affirm the trial court's order in this case.


MICHAEL H. WOJCIK, Judge

# EXHIBIT C

**[J-118A-2020, J-118B-2020, J-118C-2020, J-118D-2020, J-118E-2020 and J-118F-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | |
|---|---|
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | : No. 31 EAP 2020<br>:<br>:<br>:<br>:<br>: SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | :<br>: |
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | : No. 32 EAP 2020<br>:<br>:<br>:<br>: SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | :<br>: |
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | : No. 33 EAP 2020<br>:<br>:<br>:<br>: SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | :<br>: |
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | : No. 34 EAP 2020<br>:<br>:<br>:<br>: SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | :<br>: |
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | : No. 35 EAP 2020<br>:<br>:<br>:<br>: SUBMITTED: November 18, 2020<br>: |

APPEAL OF:  DONALD J. TRUMP FOR             :
PRESIDENT, INC.

IN RE: 2,349 BALLOTS IN THE 2020           :   No. 29 WAP 2020
GENERAL ELECTION                           :
                                           :   Appeal from the Order of the
                                           :   Commonwealth Court entered
APPEAL OF: ALLEGHENY COUNTY                :   November 19, 2020 at No. 1162 CD
BOARD OF ELECTIONS                         :   2020, reversing the Order of the
                                           :   Court of Common Pleas of Allegheny
                                           :   County entered November 18, 2020
                                           :   at No. GD 20-011654 and remanding
                                           :
                                           :   SUBMITTED:  November 20, 2020
                                           :

*Justice Donohue announces the judgment of the Court,
joined by Justices Baer, Todd and Wecht, and files an
opinion joined by Justices Baer and Todd*

**OPINION ANNOUNCING THE JUDGMENT OF THE COURT**

**JUSTICE DONOHUE**                        **DECIDED:  November 23, 2020**

These appeals present the question of whether the Election Code requires a

county board of elections to disqualify mail-in or absentee ballots submitted by qualified

electors who signed the declaration on their ballot's outer envelope but did not handwrite

their name, their address, and/or a date, where no fraud or irregularity has been alleged.

Pursuant to our longstanding jurisprudence, central to the disposition of these appeals is

whether the information is made mandatory by the Election Code or whether the inclusion

of the information is directory, i.e., a directive from the Legislature that should be followed

but the failure to provide the information does not result in invalidation of the ballot.

We are guided by well-established interpretive principles including that where the

language of a statute is unambiguous, the language shall be controlling.  1 Pa.C.S. §

1921(b).  In the case of ambiguity, we look to ascertain the legislative intent, and in

election cases, we adhere to the overarching principle that the Election Code should be

liberally construed so as to not deprive, inter alia, electors of their right to elect a candidate

of their choice.  *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 356 (Pa. 2020).  Stated

more fully:

> Election laws will be strictly enforced to prevent fraud, but ordinarily will be
> construed liberally in favor of the right to vote.  All statutes tending to limit
> the citizen in his exercise of the right of suffrage should be liberally
> construed in his favor.  Where the elective franchise is regulated by statute,
> the regulation should, when and where possible, be so construed as to
> insure rather than defeat the exercise of the right of suffrage.  Technicalities
> should not be used to make the right of the voter insecure.  No construction
> of a statute should be indulged that would disfranchise any voter if the law
> is reasonably susceptible of any other meaning.

*Appeal of James*, 105 A.2d 64, 65-66 (Pa. 1954).

Guided by these principles and for the reasons discussed at length in this opinion,

we conclude that the Election Code does not require boards of elections to disqualify

mail-in or absentee ballots submitted by qualified electors who signed the declaration on

their ballot's outer envelope but did not handwrite their name, their address, and/or date,

where no fraud or irregularity has been alleged.

* * *

In connection with five of these consolidated appeals, Petitioner Donald J. Trump

for President, Inc. (the "Campaign") challenges the decision of the Philadelphia County

Board of Elections (the "Philadelphia Board") to count 8,329 absentee and mail-in ballots.

The Campaign does not contest that these ballots were all timely received by the

Philadelphia Board prior to 8:00 p.m. on November 3, 2020 (election day); that they were

cast and signed by qualified electors; and that there is no evidence of fraud associated

with their casting.  The Campaign instead contends that these votes should not be counted because the voters who submitted them failed to handwrite their name, street address or the date (or some combination of the three) on the ballot-return outer envelope.  The Philadelphia County Court of Common Pleas, per the Honorable James Crumlish, upheld the Philadelphia Board's decision to count the ballots, ruling that the Election Code does not mandate the disqualification of ballots for a failure to include the challenged information, stressing that the inclusion or exclusion of this information does not prevent or promote fraud.  The Campaign pursued an appeal to the Commonwealth Court.   This Court granted the Philadelphia Board's application to exercise our extraordinary jurisdiction, 42 Pa. C.S. § 726, over these cases then pending in the Commonwealth Court.

At or around the same time that the matters were being litigated in Philadelphia, across the state in Allegheny County, Nicole Ziccarelli, a candidate for the Pennsylvania Senate in the 45th Senatorial District (Allegheny-Westmoreland counties) challenged the November 10, 2020 decision of the Allegheny County Board of Elections (the "Allegheny County Board") to canvass 2,349 mail-in ballots that contained a signed – but undated – declaration.  Again, all of the outer envelopes were signed, they are conceded to be timely and there are no allegations of fraud or illegality.  On November 18, 2020, the Court of Common Pleas of Allegheny County, per the Honorable Joseph James, upheld the decision of the Allegheny County Board to count the ballots.   *Ziccarelli v. Allegheny County Board of Elections*, No. GD-20-011654 (Allegheny Cty. Ct. Com. Pl.).  Ziccarelli filed an appeal to the Commonwealth Court and an application in this Court requesting that we exercise extraordinary jurisdiction over her appeal.  During the pendency of the

request to this Court, on November 19, 2020, a three-judge panel of the Commonwealth Court, with one judge dissenting, reversed the common pleas court decision.

On November 20, 2020, the Allegheny County Board filed an emergency petition for allowance of appeal, which we granted, limited to whether the ballots contained in undated outer envelopes should be invalidated. We stayed the order of the Commonwealth Court pending the outcome of this appeal and consolidated it with the Philadelphia Board cases.

In these appeals, we are called upon to interpret several provisions of the Election Code. We set them forth at the outset since they guide the resolution of these appeals.

Section 3146.6(a) provides as follows with respect to absentee ballots:

> (a) Except as provided in paragraphs (2) and (3), at any time after receiving an official absentee ballot, but on or before eight o'clock P.M. the day of the primary or election, the elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed "Official Election Ballot." This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. **The elector shall then fill out, date and sign the declaration printed on such envelope.** Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

25 P.S. § 3146.6(a) (emphasis added).

Section 3150.16(a) sets forth the procedure for the submission of a mail-in ballot:

> (a) General rule.--At any time after receiving an official mail-in ballot, but on or before eight o'clock P.M. the day of the primary or election, the mail-in elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible

pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed "Official Election Ballot." This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. **The elector shall then fill out, date and sign the declaration printed on such envelope.** Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

25 P.S. § 3150.16(a) (emphasis added).

Sections 3146.4 and 3150.14(b) delegate to the Secretary of the Commonwealth the responsibility to prescribe the form of the elector's declaration on the outer envelope used to mail the absentee and mail-in ballots:

### § 3146.4. Envelopes for official absentee ballots

The county boards of election shall provide two additional envelopes for each official absentee ballot of such size and shape as shall be prescribed by the Secretary of the Commonwealth, in order to permit the placing of one within the other and both within the mailing envelope. On the smaller of the two envelopes to be enclosed in the mailing envelope shall be printed, stamped or endorsed the words "Official Election Ballot," and nothing else. **On the larger of the two envelopes, to be enclosed within the mailing envelope, shall be printed the form of the declaration of the elector, and the name and address of the county board of election of the proper county.** The larger envelope shall also contain information indicating the local election district of the absentee voter. **Said form of declaration and envelope shall be as prescribed by the Secretary of the Commonwealth and shall contain among other things a statement of the electors qualifications, together with a statement that such elector has not already voted in such primary or election.** The mailing envelope addressed to the elector shall contain the two envelopes, the official absentee ballot, lists of candidates, when authorized by section 1303 subsection (b) of this act, the uniform instructions in form and substance as

prescribed by the Secretary of the Commonwealth and nothing else.

25 P.S. § 3146.4 (emphasis added).

### § 3150.14. Envelopes for official mail-in ballots

*       *       *

(b) Form of declaration and envelope.--**The form of declaration and envelope shall be as prescribed by the Secretary of the Commonwealth and shall contain, among other things, a statement of the elector's qualifications, together with a statement that the elector has not already voted in the primary or election**.

25 P.S. § 3150.14(b) (emphasis added).

The pre-canvassing or canvassing of absentee and mail-in ballots proceed in accordance with the dictates of 25 P.S. § 3146.8(g)(3), as follows:

### § 3146.8. Canvassing of official absentee ballots and mail-in ballots

When the county board meets to pre-canvass or canvass absentee ballots and mail-in ballots under paragraphs (1), (1.1) and (2), **the board shall examine the declaration on the envelope of each ballot not set aside under subsection (d) [a voter who dies before the election] and shall compare the information thereon with that contained in the "Registered Absentee and Mail-in Voters File," the absentee voters' list and/or the "Military Veterans and Emergency Civilians Absentee Voters File," whichever is applicable. If the county board has verified the proof of identification as required under this act and is satisfied that the declaration is sufficient and the information contained in the "Registered Absentee and Mail-in Voters File," the absentee voters' list and/or the "Military Veterans and Emergency Civilians Absentee Voters File" verifies his right to vote**, the county board shall provide a list of the names of electors whose absentee ballots or mail-in ballots are to be pre-canvassed or canvassed.

25 P.S. § 3146.8(g)(3) (emphasis added).

Pursuant to the authority granted in § 3150.14(b), the Secretary of the Commonwealth developed the following declaration used in connection with the 2020 General Election:

> I hereby declare that I am qualified to vote from the below stated address at this election; that I have not already voted in this election; and I further declare that I marked my ballot in secret.  I am qualified to vote the enclosed ballot.  I understand I am no longer eligible to vote at my polling place after I return my voted ballot.  However, if my ballot is not received by the county, I understand I may only vote by provisional ballot at my polling place, unless I surrender my balloting materials, to be voided, to the judge of elections at my polling place.
>
> [BAR CODE]
>
> Voter, sign or mark here/Votante firme o margue aqui
>
> <u>X</u>_____
>
>
> _____
> Date of signing (MM/DD/YYYY)/Fechade firme (MM/DD/YYYY)
>
> _____
> Voter, print name/Votante, nombre en letra de impreta
>
> _____
> Voter, address (street)/Votante, dirreccion (calle)
>
> [LABEL – Voters' name and address]

In addition, the Secretary issued guidance to the county boards of elections with respect to the examination of ballot return envelopes.  First, on September 11, 2020, she issued the following guidance:

> 3. EXAMINATION OF DECLARATION ON BALLOT RETURN ENVELOPES:
>
> The county board of elections is responsible for approving ballots to be counted during pre-canvassing.

To promote consistency across the 67 counties, the county boards of elections should follow the following steps when processing returned absentee and mail-in ballots.

After setting aside ballots of elector's who died prior to the opening of the polls, the county board of elections shall examine the Voter's Declaration on the outer envelope of each returned ballot and compare the information on the outer envelope, i.e., the voter's name and address, with the information contained in the "Registered Absentee and Mail-in Voters File, the absentee voter's list and/or the Military Veterans' and Emergency Civilians Absentee Voters File."

If the Voter's Declaration on the return envelope is blank, that ballot return envelope must be set aside and not counted. If the board determines that a ballot should not be counted, the final ballot disposition should be noted in SURE. The ballot return status (Resp Type) should be noted using the appropriate drop-down selection.

If the Voter's Declaration on the return envelope is signed and the county board is satisfied that the declaration is sufficient, the mail-in or absentee ballot should be approved for canvassing unless challenged in accordance with the Pennsylvania Election Code.

Guidance Concerning Examination of Absentee and Mail-in Ballot Return Envelopes, 9/11/2020, at 3. On September 28, 2020, the Secretary offered additional guidance on the treatment of ballot return envelopes:

With regard to the outer ballot-return envelope:

A ballot-return envelope with a declaration that is filled out, dated, and signed by an elector who was approved to receive an absentee or mail-in ballot is sufficient and counties should continue to pre-canvass and canvass these ballots.

A ballot-return envelope with a declaration that is not filled out, dated, and signed is not sufficient and must be set aside, declared void and may not be counted. Ballot-return envelopes must be opened in such a manner as not to destroy the declarations executed thereon.

All ballot-return envelopes containing executed declarations must be retained for a period of two years in accordance with the Election Code.

* * *

**Pre-canvass and Canvass Procedures**

At the pre-canvass or canvass, as the case may be, the county board of elections should:

- Segregate the unopened ballots of voters whose applications were challenged by the challenge deadline (5:00 PM on the Friday before the election).
  - These ballots must be placed in a secure, sealed container until the board of elections holds a formal hearing on the challenged ballots.
  - Ballot applications can only be challenged on the basis that the applicant is not qualified to vote.
- Set aside the ballot of any voter who was deceased before election day.
- Set aside any ballots without a filled out, dated and signed declaration envelope.
- Set aside any ballots without the secrecy envelope and any ballots in a secrecy envelope that include text, mark, or symbol which reveals the identity of the voter, the voter's political affiliation (party), or the voter's candidate preference.

The Election Code does not permit county election officials to reject applications or voted ballots based solely on signature analysis.

No challenges may be made to mail-in or absentee ballot applications after 5:00 pm on the Friday before the election.

No challenges may be made to mail-in and absentee ballots at any time based on signature analysis.

NOTE: For more information about the examination of return envelopes, please refer to the Department's September 11, 2020 *Guidance Concerning Examination of Absentee and Mail-in Ballot Return Envelopes*.

Guidance Concerning Civilian Absentee and Mail-in Ballot Procedures, 9/28/2020, at 5, 8-9.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to the General Assembly's passage of Act 77 of 2019, voters in Pennsylvania may cast their ballots in elections by absentee or no-excuse mail-in ballots. To do so, they must submit applications to county boards of elections, and in connection therewith must provide the address at which they are registered to vote. They must also sign a declaration affirming, among other things, that they are "eligible to vote by mail-in [or absentee] ballot at the forthcoming primary or election," and that "all of the information" supplied in the mail-in or absentee ballot application is "true and correct." 25 P.S. §§ 3150.12, 3146.2. Upon receipt of the application, the county board of elections must confirm the elector's qualifications and verify that the elector's address on the application matches the elector's registration. Upon the county board of elections' approval of the application, the elector is provided with a ballot, an inner "secrecy envelope" into which the ballot is to be placed, and an outer envelope into which the secrecy envelope is to be placed and returned to the board. The outer envelope has pre-printed on it (1) a voter's declaration, (2) a label containing the voter's name and address, and (3) a unique nine-digit bar code that links the outer envelope to the voter's registration file contained in the Statewide Uniform Registry of Electors ("SURE") system. After receiving the outer envelope, the board of elections stamps the date of receipt on it and then scans the unique nine-digit bar code, which links the voter's ballot to his or her registration file.

The pre-canvassing or canvassing of absentee and mail-in ballots then proceeds in accordance with the dictates of 25 P.S. § 3146.8(g)(3):

> When the county board meets to pre-canvass or canvass
> absentee ballots and mail-in ballots under paragraphs (1),
> (1.1) and (2), the board shall examine the declaration on the
> envelope of each ballot not set aside under subsection (d) [a
> voter who dies before the election] and shall compare the
> information thereon with that contained in the "Registered
> Absentee and Mail-in Voters File," the absentee voters' list
> and/or the "Military Veterans and Emergency Civilians
> Absentee Voters File," whichever is applicable.  If the county
> board has verified the proof of identification as required under
> this act and is satisfied that the declaration is sufficient and
> the information contained in the "Registered Absentee and
> Mail-in Voters File," the absentee voters' list and/or the
> "Military Veterans and Emergency Civilians Absentee Voters
> File" verifies his right to vote, the county board shall provide a
> list of the names of electors whose absentee ballots or mail-
> in ballots are to be pre-canvassed or canvassed.

25 P.S. § 3146.8(g)(3).

Pursuant to this section, on November 9, 2020, the Philadelphia Board met to

determine whether ballots separated into nine categories were "sufficient" to be pre-

canvassed or canvassed.  It concluded that four categories were not sufficient to be pre-

canvassed or canvassed:  (1) 472 ballots where the outer envelope lacked a signature

and any other handwritten information; (2) 225 ballots where the outer envelope was not

signed by the voter; (3) 112 ballots where the individual who completed the declaration

appeared to be different from the individual who had been assigned the ballot; and (4)

4,027 ballots that were not submitted in a secrecy envelope.

In contrast, the Philadelphia Board approved as sufficient to be pre-canvassed or

canvassed the ballots in five categories:  (1) 1,211 ballots that lacked a handwritten date,

address, and printed name on the back of the outer envelope (but were signed); (2) 1,259

ballots that lacked only a handwritten date on the back of the outer envelope (but were

signed and contained a handwritten name and address); (3) 533 ballots that lack only a

handwritten name on the back of the outer envelope (but were signed and dated and contained a handwritten address); (4) 860 ballots that lack only a handwritten address on the back of the outer envelope (but were signed and dated and contained a handwritten name); (5) 4,466 ballots that lack only a handwritten name and address on the back of the outer envelope (but were signed and dated).

On November 10, 2020, the Campaign filed five pleadings entitled "Notice of Appeal via Petition for Review of Decision by the Philadelphia County Board of Elections," one for each of the five categories referenced above that the Philadelphia Board approved as sufficient to be pre-canvassed or canvassed. In each petition for review, the Campaign alleged that this Court, in *Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020), declared that absentee and mail-in ballots cast in violation of the Election Code's mandatory requirements are void and cannot be counted. Petition for Review, 11/10/2020, ¶ 14. The Campaign further alleged that failures to include hand-written names, addresses and dates constituted violations of mandatory obligations under Sections 3146.6(a) and/or 3150.16(a) of the Election Code. *Id.* at 15-16. Accordingly, the Campaign alleged that the Board's decisions with respect to the absentee and mail-in ballots in the above-referenced five categories were based on a clear error of law and must be reversed. *Id.* at 32.

On November 13, 2020, Judge Crumlish held oral argument on the issues raised in the Petition for Review. In response to questions from Judge Crumlish, counsel for the Campaign agreed that the Petition for Review was "not proceeding based on allegations of fraud or misconduct." Transcript, 11/13/2020, at 13-14. She further agreed that the Campaign was not challenging the eligibility of the 8,329 voters in question and did not

contest either that all of the ballots at issue were signed by the voters or that they had been timely received by the Board.  *Id.* at 30-31, 37.  Instead, she indicated that the Campaign was "alleging that the ballots were not filled out correctly."  *Id.* at 14.  Counsel for the DNC[1] argued that the failures to handwrite names, addresses and dates "are, at most, minor technical irregularities that the Supreme Court of Pennsylvania has repeatedly said do not warrant disenfranchisement."  *Id.* at 14.  Counsel for the Philadelphia Board added that the Election Code includes no provision requiring "absolute technical perfection" when filling out the declaration on the outer envelope containing an absentee or mail-in ballot.  *Id.* at 38.

Later that same day, Judge Crumlish entered five orders affirming the Philadelphia Board's decision to count the contested ballots.  In his orders, Judge Crumlish noted that while the declaration contained a specific directive to the voter to sign the declaration, it made no mention of filling out the date or other information.  Trial Court Orders, 11/13/2020, ¶ 2.  He further found that while the Election Code provides that while the voter shall "fill out" and date the declaration, the term "'fill out' is not a defined term and is ambiguous."  *Id.* at ¶ 4.  He indicated that the outer envelope already contains a pre-printed statement of the voter's name and address, and that "[n]either a date nor the elector's filling out of the printed name or of the address are requirements necessary to prevent fraud."  *Id.* at ¶ 5-6.  Concluding that "[t]he Election Code directs the Court of Common Pleas in considering appeals from the County Board of Elections to make such

---

[1]  DNA Services Corp./Democratic National Committee (hereinafter "DNC") intervened in the proceedings before the trial court.

decree as right and justice may require[,]" *id.* at ¶ 8 (quoting 25 P.S. § 3157), Judge Crumlish upheld the decision of the Philadelphia Board.

The Campaign filed appeals from Judge Crumlish's orders in the Commonwealth Court on November 14, 2020, and the next day the Commonwealth Court issued an order consolidating the five appeals and setting an expedited briefing schedule. On November 17, 2020, the Philadelphia Board filed an application with this Court to exercise its extraordinary jurisdiction, 42 Pa.C.S. § 726, over the consolidated appeals, which we granted by order dated November 18, 2020.

In our order granting the Philadelphia Board's application for the exercise of extraordinary jurisdiction, we stated the issue to be decided as follows:

> Does the Election Code require county boards of elections to disqualify mail-in or absentee ballots submitted by qualified electors who signed their ballot's outer envelopes but did not handwrite their name, their address, and/or a date, where no fraud or irregularity has been alleged?

On November 10, 2020, the Allegheny County Board decided to canvass 2,349 mail-in ballots that contained a signed but undated declaration. Ziccarelli challenged the decision in an appeal to the court of common pleas ultimately heard and decided by the Honorable Joseph James. It was not disputed that all 2,349 voters signed and printed their name and address on the outer envelopes and returned the ballots to the Allegheny County Board on time. Each of the ballots was processed in the Statewide Uniform Registry of Electors ("SURE") system and was time-stamped when it was delivered to the Allegheny County Board on or before November 3, 2020. At a hearing, via Microsoft Teams, on November 17, 2020, the Democratic Party and James Brewster (Ziccarelli's opponent in the 45th Senatorial District race) moved to intervene, which motion was

granted.  At the hearing, Ziccarelli stated that she was not claiming voter fraud regarding the challenged ballots.

In an opinion and order dated November 18, 2020, Judge James affirmed the Allegheny County Board's decision to count the ballots.  He concluded that the date provision in Section 3150.16(a) is directory, not mandatory, and that "ballots containing mere minor irregularities should only be stricken for compelling reasons," citing *Shambach v. Shambach*, 845 A.2d 793, 798 (Pa. 2004).  Noting that the ballots were processed in the SURE system and time-stamped when delivered to the Allegheny County Board, he found that the technical omission of the handwritten date on a ballot was a minor technical defect and did not render the ballot deficient.

Ziccarelli immediately appealed Judge James' decision to the Commonwealth Court and contemporaneously filed an application to this Court requesting our exercise of extraordinary jurisdiction, noting that the issue presented was accepted by this Court as part of the Philadelphia Board appeals.  While the application was pending, the Commonwealth Court ordered expedited briefing and on November 19, 2020, issued an opinion and order reversing the Court of Common Pleas of Allegheny County and remanded.  *In Re: 2,349 Ballots in the 2020 General Election; Appeal of: Nicole Ziccarelli,* __ A.3d __, 1162 C.D. 2020 (Commw. Ct. 2020).  Ziccarelli then withdrew her application for extraordinary jurisdiction.

On November 20, 2020, this Court granted the Allegheny County Board's Petition for Allowance of Appeal limited to the question of whether the ballots contained in undated but signed outer envelopes should be invalidated.  The opinion of the Commonwealth

Court will be discussed, as necessary, in the analysis that follows.  The order was stayed pending our disposition of these consolidated cases.

The pertinent scope and standard of review follow:  the Court of Common Pleas' decision is reviewed on appeal "to determine whether the findings are supported by competent evidence and to correct any conclusions of law erroneously made."  *In re Reading Sch. Bd. of Election*, 634 A.2d 170, 171–72 (Pa. 1993).  The Court of Common Pleas, in turn, could reverse the Philadelphia Board's decision only for an abuse of discretion or error of law.  *See Appeal of McCracken*, 88 A.2d 787, 788 (Pa. 1952).  As the issue involves the proper interpretation of the Election Code, it presents a question of law and our standard of review is de novo and our scope of review is plenary.  *See, e.g., Banfield v. Cortés*, 110 A.3d 155, 166 (Pa. 2015).

## II. ARGUMENTS OF THE PARTIES

Although more fully developed in our analysis set forth later in this opinion, we here briefly summarize the arguments of the parties and intervenors.

The Campaign argues that the General Assembly set forth in the Election Code the requirements for how a qualified elector can cast a valid absentee or mail-in ballot. Campaign's Brief at 22.  One of those requirements is for each elector to "fill out, date, and sign" the declaration on the Outside Envelope.  *Id.* (citing 25 P.S. §§ 3146.6(a) and 3150.16(a)).  According to the Campaign, this Court has repeatedly ruled that the requirements of the sections of Election Code relevant here impose mandatory obligations, and that ballots cast in contravention of the these requirements are void and cannot be counted.  *Id.* at 23.  As a result, the Campaign insists that the trial court erred

in affirming the Board's decision to count the 8,329 non-conforming absentee and mail-in ballots. *Id.*

The Philadelphia Board, conversely, contends that the Election Code does not require the Philadelphia Board to set aside timely-filed ballots by qualified electors that are merely missing handwritten names, street addresses, and/or dates on the signed voter declaration. Philadelphia Board's Brief at 12. Contrary to the Campaign's contention that the provisions of the Election Code at issue here impose exclusively mandatory requirements, the Philadelphia Board argues that Pennsylvania courts have long held that minor errors or omissions should not result in disenfranchisement, particularly in cases where the errors or omissions do not implicate the board's ability to ascertain the voter's right to vote or the secrecy or sanctity of the ballot. *Id.* Here, the Philadelphia Board notes that the Campaign does not allege that the voters at issue here were not qualified to vote and have not asserted that any fraud or other impropriety has occurred. *Id.* As such, it concludes that it acted properly and within its discretion in determining that these omissions were not a basis for setting aside those ballots. *Id.*

The DNC largely concurs with the Philadelphia Board's arguments, indicating that there is no statutory requirement that voters print their full name or address on the outer envelopes and that adding a date to the envelope serves no compelling purpose. DNC's Brief at 9-10.

Ziccarelli argues further that, in regard to outer envelopes not containing a voter-supplied date, this Court's opinion in *In Re: Nov. 3, 2020 General Election*, No. 149 MM 2020, 2020 WL 6252803 (Pa. Oct. 23, 2020) definitively speaks to the mandatory nature of the date requirement and, without much extrapolation, requires that such ballots not be

counted.    The Allegheny County Board agrees with its Philadelphia counterpart.    It counters Ziccarelli's reliance on *In Re Nov. 3, 2020 General Election* by noting that Ziccarelli's challenge to the ballots for lack of a date is based on the premise that the date is essential to the validity of the signature.  Allegheny County Board points out this is the precise type of challenge that was disavowed in the case upon which Ziccarelli relies.

## III. ANALYSIS

We begin by recognizing from the outset that it is the "longstanding and overriding policy in this Commonwealth to protect the elective franchise."  *Shambach v. Birkhart*, 845 A.2d 793, 798 (Pa. 2004).   "The Election Code must be liberally construed so as not to deprive ... the voters of their right to elect a candidate of their choice."  *Ross Nomination Petition*, 190 A.2d 719, 719 (Pa. 1963).   It is therefore a well-settled principle of Pennsylvania election law that "[e]very rationalization within the realm of common sense should aim at saving the ballot rather than voiding it."  *Appeal of Norwood*, 116 A.2d 552, 554–55 (Pa. 1955).  It is likewise settled that imbedded in the Election Code is the General Assembly's intent to protect voter privacy in her candidate choice based on Article VII, Section 4 of the Pennsylvania Constitution and to prevent fraud and to otherwise ensure the integrity of the voting process.

We agree with the Campaign's observation that in Sections 3146.6(a) and 3150.16(a), the General Assembly set forth the requirements for how a qualified elector may cast a valid absentee or mail-in ballot.  Campaign's Brief at 22.  We further agree that these sections of the Election Code specifically provide that each voter "shall fill out, date, and sign" the declaration on the outside envelope.  *Id*.  We do not agree with the Campaign's contention, however, that because the General Assembly used the word

"shall" in this context, it is of necessity that the directive is a mandatory one, such that a failure to comply with any part of it requires a board of elections to declare the ballot void and that it cannot be counted.   It has long been part of the jurisprudence of this Commonwealth that the use of "shall" in a statute is not always indicative of a mandatory directive; in some instances, it is to be interpreted as merely directory.   *See, e.g.*, *Commonwealth v. Baker*, 690 A.2d 164, 167 (Pa. 1997) (citing *Fishkin v. Hi–Acres, Inc.*, 341 A.2d 95 (Pa. 1975)); *see also Commonwealth ex rel. Bell v. Powell*, 94 A. 746, 748 (Pa. 1915) (quoting *Bladen v. Philadelphia*, 60 Pa. 464, 466 (1869) ("It would not perhaps be easy to lay down any general rule as to when the provisions of a statute are merely directory, and when mandatory and imperative.")).   The Campaign's reliance on this Court's recent decision in *Pa. Democratic Party v. Boockvar,* 238 A.3d 345 (Pa. 2020) for the proposition it asserts is misplaced.

In *Pa. Democratic Party*, we held that the requirement in Section 3150.16(a) that a mail-in voter place his or her ballot in the inner secrecy envelope was a mandatory requirement and thus a voter's failure to comply rendered the ballot void.  *Pa. Democratic Party*, 238 A.3d at 380.   In concluding that the use of the secrecy envelope was a mandatory, rather than a discretionary directive, we reviewed our prior decisions on the distinction between mandatory and discretionary provisions in the Election Code, including *Shambach v. Bickhart*, 845 A.2d 793 (Pa. 2004), *In re Luzerne County Return Board, Appeal of Elmer B. Weiskerger*, 290 A.2d 108 (Pa. 1972), and *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election, Appeal of John Pierce*, 843 A.2d 1223 (Pa. 2004).

In *Shambach*, the Court declined to invalidate a write-in vote cast for a candidate who was named on the ballot, in direct violation of the Election Code's instruction that a voter could only write in a person's name if the name of said individual was "not already printed on the ballot for that office." *Shambach*, 845 A.2d at 795. In reaching that conclusion, the Court observed that "[m]arking a ballot is an imprecise process, the focus of which is upon the unmistakable registration of the voter's will in substantial conformity to the statutory requirements." *Id.* at 799 (quoting *Appeal of Gallagher*, 41 A.2d 630, 632 (Pa 1945)).

In *Weiskerger*, this Court refused to invalidate a ballot based upon the "minor irregularity" that it was completed in the wrong color of ink. The provision of the Election Code in question provided that "'[a]ny ballot that is marked in blue, black or blue-black ink ... shall be valid and counted." *Weiskerger*, 290 A.2d at 109 (citing 25 P.S. § 3063). In providing that ballots completed in the right color must be counted, we noted that the General Assembly "neither stated nor implied that ballots completed in a different color must not be counted." *Id.* We thus treated the instruction to use blue, black or blue-black ink as merely directory.

In *Pa. Democratic Party*, we compared these cases to our decision in *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election, Appeal of John Pierce*, 843 A.2d 1223 (Pa. 2004), where we held that the Election Code's "in-person" ballot delivery requirement, *see* 25 P.S. § 3146.6, was mandatory, and that votes delivered by third persons must not be counted. *Appeal of Pierce*, 843 A.2d at 1231. There, we recognized that the in-person requirement served important purposes in the Election Code, including "limit[ing] the number of third persons who unnecessarily come in contact with the ballot[,]

... provid[ing] some safeguard that the ballot was filled out by the actual voter, ... and that once the ballot has been marked by the actual voter in secret, no other person has the opportunity to tamper with it." *Id.* at 1232. We thus explained in *Pa. Democratic Party* that "the clear thrust of *Appeal of Pierce*, ... is that, even absent an express sanction, where legislative intent is clear and supported by a weighty interest like fraud prevention, it would be unreasonable to render such a concrete provision ineffective for want of deterrent or enforcement mechanism." *Pa. Democratic Party*, 238 A.3d at 380 (citing *Appeal of Pierce*, 843 A.2d at 1232).

Based upon this comparison between *Shambach, Weiskerger* and *Appeal of Pierce,* in *Pa. Democratic Party* we determined that the decision in *Appeal of Pierce* provided the appropriate guidance for the analysis of the secrecy envelope requirement. We held that "[i]t is clear that the Legislature believed that an orderly canvass of mail-in ballots required the completion of two discrete steps before critical identifying information on the ballot could be revealed. The omission of a secrecy envelope defeats this intention." *Pa. Democratic Party*, 238 A.3d at 380. Unlike in *Shambach* and *Weiskerger* which involved "minor irregularities," the use of a secrecy envelope implicated a "weighty interest," namely secrecy in voting protected expressly by Article VII, Section 4 of our state charter. *Id.* As such, we recognized the use of a secrecy envelope as a mandatory requirement and that failures to comply with the requirement required that the ballot must be disqualified." *Id.*; *see also id.* at 378 (quoting *JPay, Inc. v. Dep't of Corr. & Governor's Office of Admin.*, 89 A.3d 756, 763 (Pa. Commw. 2014) ("While both mandatory and directory provisions of the Legislature are meant to be followed, the difference between a mandatory and directory provision is the consequence for non-compliance: a failure to

strictly adhere to the requirements of a directory statute will not nullify the validity of the action involved.")).

To determine whether the Election Code's directive that the voter handwrite their names, address and the date of signing the voter declaration on the back of the outer envelope is a mandatory or directory instruction requires us to determine whether the intent of the General Assembly was clear and whether the failure to handwrite the information constitutes "minor irregularities" or instead represent "weighty interests," like fraud prevention or ballot secrecy that the General Assembly considered to be critical to the integrity of the election.

**(1) Failures to include handwritten names and addresses**

Beginning with the Campaign's contention that ballots may not be counted if a voter fails to handwrite their name and/or address under the full paragraph of the declaration on the back of the outer envelope, we conclude that given the factual record in this case and the mechanics of the pre-canvassing and canvassing procedures including the incorporation of reliance on the SURE system, this "requirement" is, at best, a "minor irregularity" and, at worst, entirely immaterial. More to the point, the direction to the voter to provide a handwritten name and/or address is not only not mandatory, it is not a directive expressed in the Election Code. Thus, these directions do not meet the first prong of the test used in *Pa. Democratic Party*: the clear intent of the General Assembly.

The Election Code does not require that the outer envelope declaration include a handwritten name or address at all. Instead, Sections 3146.4 (absentee) and 3150.14(b) (mail-in) provide only that the declaration must include "a statement of the elector's

qualifications, together with a statement that the elector has not already voted in the primary or election." 25 P.S. §§ 3146.4, 3150.14(b).  Aside from this information (none of which is relevant to the present issue), the General Assembly delegated to the Secretary of the Commonwealth the obligation to prescribe the form of declaration and envelope for absentee and mail-in ballots, presumably to allow the inclusion of information that would be helpful for administrative or processing purposes.  *Id.*[2]  As such, the decision to include spaces in the declaration for handwritten names and addresses was made solely by the Secretary of the Commonwealth, not the General Assembly.  It would be a stretch to divine that the General Assembly was advancing any weighty interest for the inclusion of handwritten names and addresses in the declaration such that a voter's failure to include them should result in the ballot not being counted.  Moreover, the Campaign does not argue that the Secretary's request for handwritten names and addresses implicated any "weighty interests" that would compel a finding that the request to provide them constituted a mandatory requirement.[3]

---

[2]  None of the parties have challenged whether these provisions constituted improper delegations of legislative authority.  *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017).

[3]  Conversely, the Philadelphia Board and the DNC have both selectively relied upon guidance provided by the Secretary to the county boards of election that indicated that a voter's failure to handwrite his/her name and address was not a ground to set the ballot aside.  Philadelphia Board's Brief at 19; DNC's Brief at 15.  They have directed the Court to the Guidance published on September 11, 2020, in which the Secretary advised that "[i]f the Voter's Declaration on the return envelope is signed and the county board is satisfied that the declaration is sufficient, the mail-in or absentee ballot should be approved for canvassing."  Guidance, 9/11/2020, at 3.  As discussed infra at n.6, however, on September 28, 2020 the Secretary issued arguably contrary guidance stating that "[a] ballot-return envelope with a declaration that is not filled out, dated, and signed is not sufficient and must be set aside, declared void and may not be counted."  Guidance,

The Campaign argues that we should read the "handprinted name and address" requirement into the directives in Section 3146.6(a) and 3150.16(a) that the voter "fill out" the declaration.  Campaign's Brief at 30.  Citing to dictionary definitions, the Campaign contends that "fill out" means "to write or type information in spaces that are provided for it."  *Id.* at 32.  Because 8,349 voters did not "fill out" one or more spaces provided on the outer envelope provided in the declaration (including the voter's name and/or address), the Campaign argues that those ballots were non-conforming and could not be counted.  *Id.* at 29.  The directive to "fill out" does not give any legislative definition to the specific information to be placed in the blank spaces.  It is the weight of the information that must be tested in the analysis.  As stated, since the General Assembly did not choose the information to be provided, its omission is merely a technical defect and does not invalidate the ballot.

Further, as Judge Crumlish observed, the term "fill out" is ambiguous.[4]  Trial Court Opinion, 11/13/2020, ¶ 4.  As Judge Crumlish recognized, the term "fill out" is not a defined term under the Election Code.  *Id.*  Moreover, and contrary to the Campaign's contention that no alternative understanding of the term "fill out" has been proffered, the Campaign has failed to recognize, **the voter's name and address are already on the back of the outer envelope on a pre-printed label affixed no more than one inch**

---

9/28/20, at 9.  Confusingly, she also incorporated by reference the September 11, 2020 Guidance.  Both sets of Guidance are set forth on pages 8-10 supra.

[4] Where an election statute is ambiguous, courts apply the interpretative principle that that "election laws ... ordinarily will be construed liberally in favor of the right to vote."  *Pa. Democratic Party*, 238 A.3d at 360–61.

**from the declaration itself.** A voter could reasonably have concluded that the blanks requesting his or her name and address needed to be "filled out" only if the name and/or address on the label was incorrect or incomplete, as it was unnecessary to provide information that was already on the back of the outer envelope.[5] To add further confusion, the declaration itself can be read to refer to the label: "I hereby declare that I am qualified to vote from the below stated address" can be read to mean the address as already stated on the label.

The text of the Election Code provides additional evidence of the directory nature of the provisions at issue. With regard to individuals who are not able to sign their name due to illness or physical disability, the General Assembly imposed a requirement that the declarant provide his or her "complete address." 25 P.S. § 3146.6(a)(3); 25 P.S. §

---

[5]   The DNC argues, with some persuasive force, that the Campaign's requested interpretation of Pennsylvania's Election Code could lead to a violation of federal law by asking the state to deny the right to vote for immaterial reasons. Nobody acting under color of state law may deny anyone the right to vote "in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B).

Under this section, the so-called "materiality provision" of the Voting Rights Act, federal courts have barred the enforcement of similar administrative requirements to disqualify electors. *See, e.g.*, *Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) (disclosure of voter's social security number is not "material" in determining whether a person is qualified to vote under Georgia law for purposes of the Voting Rights Act); *Washington Ass'n of Churches v. Reed*, 492 F.Supp.2d 1264 (W.D. Wash. 2006) (enjoining enforcement of "matching" statute, requiring state to match potential voter's name to Social Security Administration or Department of Licensing database, because failure to match applicant's information was not material to determining qualification to vote); *Martin v. Crittenden*, 347 F.Supp.3d 1302 (N.D. Ga. 2018), *reconsideration denied*, 1:18-CV-4776-LMM, 2018 WL 9943564 (N.D. Ga. Nov. 15, 2018) (voter's ability to correctly recite his or her year of birth on absentee ballot envelope was not material to determining said voter's qualifications).

3150.16(a.1).   These provisions demonstrate that the General Assembly clearly knew how to impose such a requirement when it wishes to do so.   *In re Nov. 3, 2020 Gen. Election*, __ A.3d __, 2020 WL 6252803, at *14 (Pa. 2020) (stating that the General Assembly's prior inclusion of a signature comparison requirement demonstrated that "it understands how to craft language requiring signature comparisons at canvassing when it chooses to do so").   Moreover, Sections 3146.6(a)(3) and 3150.16(a.1) contain a precise form of declaration, crafted by the General Assembly, pertaining to voters with disabilities evidencing the General Assembly's understanding of how to mandate a precise declaration without resort to delegating non-essential information to the Secretary.

Finally, the text of the Election Code further demonstrates the lack of any need for handwritten names and addresses.   Section 3146.8(g)(3), which relates to the canvassing of official absentee ballots and mail-in ballots, provides, in relevant part:

> When the county board meets to pre-canvass or canvass absentee ballots and mail-in ballots under paragraphs (1), (1.1) and (2), the board shall examine the declaration on the envelope of each ballot not set aside under subsection (d) [a voter who dies before the election] and shall compare the information thereon with that contained in the "Registered Absentee and Mail-in Voters File," the absentee voters' list and/or the "Military Veterans and Emergency Civilians Absentee Voters File," whichever is applicable.

25 P.S. § 3146.8(g)(3).   The county board of elections' duty to keep a "Military Veterans and Emergency Civilians Absentee Voters File," which is not relevant to the current dispute, is governed by 25 P.S. § 3146.2c(b).   Section 3146.2c(a) previously housed the board's duty to keep a "Registered Absentee and Mail-in Voters File."   However, the General Assembly recently eliminated this directive.   *See* 2020, March 27, P.L. 41, No.

12, § 8, imd. effective (deleting subsection (a), which required county board of elections to maintain at its office "a file containing the duplicate absentee voter's temporary registration cards of every registered elector to whom an absentee ballot has been sent"). By virtue of this amendment, the General Assembly eliminated one of the reference points that still appear in Section 3146.8(g)(3). The current Section 3146.2c(c) directs the county board to maintain the "the absentee voters' list" referenced in Section 3146.8(g)(3). The General Assembly also amended Section 3146.2c(c), which previously only directed the chief clerk to "prepare a list for each election district showing the names and post office addresses of all voting residents thereof to whom official absentee ballots shall have been issued," to include such voting residents who were issued mail-in ballots. *See* 2019, Oct. 31, P.L. 552, No. 77, § 5.1, imd. effective (inserting "or mail-in" twice in subsection (c)).

As such, as relevant for our purposes, Section 3146.8(g)(3) directs that "the board shall examine the declaration on the envelope of each ballot not set aside under subsection (d) [a voter who dies before the election] and shall compare the information thereon with that contained in the … the absentee voters' list," which, pursuant to Section 3146.2c(c), now also contains voters who received mail-in ballots. A close reading of the language chosen by the General Assembly here is telling. Section 3146.8(g)(3) directs the board to "examine the declaration **on the envelope**" and "compare the information **thereon**" to the absentee (and mail-in) voters' list. 25 P.S. § 3146.8(g)(3) (emphasis added). Reading these phrases together, it is clear that the General Assembly intended that the information to be compared to the absentee (and mail-in) voters' list is the information on the outer envelope which includes the pre-printed name and address. If

the General Assembly intended for the information written by the voter to be compared to the absentee voters' list, it would have used the term "therein," thus directing the board to compare the information contained "within" the declaration (the handwritten name and address).

The following sentence in this section further suggests that the General Assembly intended such bifurcation. Section 3146.8(g)(3) next states:

> If the county board has verified the proof of identification as required under this act and is satisfied that the declaration is sufficient and the information contained in the ... the absentee voters' list ... verifies his right to vote, the county board shall provide a list of the names of electors whose absentee ballots or mail-in ballots are to be pre-canvassed or canvassed.

25 P.S. § 3146.8(g)(3). Here, the board is directed to consider whether the declaration is sufficient (i.e., the examination contained in the previous sentence) and also ensure that the absentee voters' list confirms the voter's right to vote (i.e., the comparison of the printed information to the relevant list from the prior sentence).

### (2) Failures to include dates

Both the Campaign and Ziccarelli argue that the requirement to state the date on which declaration was signed is a mandatory obligation requiring disenfranchisement for lack of compliance. We disagree, as we conclude that dating the declaration is a directory, rather than a mandatory, instruction, and thus the inadvertent failure to comply does not require that ballots lacking a date be excluded from counting. As reviewed hereinabove, in our recent decision in *Pa. Democratic Party*, we reiterated that the distinction between directory and mandatory instructions applies with respect to a voter's obligations under the Election Code, and that only failures to comply with mandatory

obligations, which implicate both legislative intent and "weighty interests" in the election process, like ballot confidentiality or fraud prevention, will require disqualification. *Pa. Democratic Party*, 238 A.3d at 379-80.

The Commonwealth Court and Ziccarelli relied upon the Election Code's use of the of "**shall** ... date" language in construing the date obligation as mandatory. *In Re: 2,349 Ballots in the 2020 General Election, Appeal of: Nicole Ziccarelli*, __ A.3d __, 1162 C.D. 2020, 10 (Pa. Comm. 2020). Although unlike the handwritten name and address, which are not mentioned in the statute, the inclusion of the word "date" in the statute does not change the analysis because the word "shall" is not determinative as to whether the obligation is mandatory or directive in nature. That distinction turns on whether the obligation carries "weighty interests." The date that the declaration is signed is irrelevant to a board of elections' comparison of the voter declaration to the applicable voter list, and a board can reasonably determine that a voter's declaration is sufficient even without the date of signature. Every one of the 8,329 ballots challenged in Philadelphia County, as well as all of the 2,349 ballots at issue in Allegheny County, were received by the boards of elections by 8:00 p.m. on Election Day, so there is no danger that any of these ballots was untimely or fraudulently back-dated. Moreover, in all cases, the receipt date of the ballots is verifiable, as upon receipt of the ballot, the county board stamps the date of receipt on the ballot-return and records the date the ballot is received in the SURE system. The date stamp and the SURE system provide a clear and objective indicator of timeliness, making any handwritten date unnecessary and, indeed, superfluous.

Ziccarelli offers two alternative "weighty interests" for our consideration. She first contends that the date on which the declaration was signed may reflect whether the

person is a "qualified elector" entitled to vote in a particular election. Pursuant to Section 3150.12b (entitled "Approval of application for mail-in ballot"), a board of elections may have determined that the person was a qualified elector and thus entitled to receive a mail-in ballot. Pursuant to Section 2811, however, to be a qualified elector, "[h]e or she shall have resided in the election district where he or she shall offer to vote at least thirty days immediately preceding the election, except that if qualified to vote in an election district prior to removal of residence, he or she may, if a resident of Pennsylvania, vote in the election district from which he or she removed his or her residence within thirty days preceding the election." 25 P.S. § 2811. As a result, Ziccarelli contends that the person may have been qualified to vote in a particular voting district at the time of applying for a mail-in ballot, but no longer a qualified elector in that voting district on Election Day. Ziccarelli's Brief at 16.

This unlikely hypothetical scenario is not evidence of a "weighty interest" in the date on the document for assuring the integrity of Pennsylvania's system for administering mail-in voting. Among other things, the canvassing statute, 25 P.S. § 3146.8(g)(3), directs the board to examine the declaration on the envelope of each ballot and compare the information thereon with that contained in the now defunct "Registered Absentee and Mail-in Voters File." *See* discussion supra pp. 27-29. The date of signing the declaration will not be of any benefit in performing this task, as the name of the voter at issue will be on this list (as a result of his or her approval to receive a mail-in ballot), and the date of signing will provide no information with respect to whether or not he or she has left the voting district in the interim. Most critically, our current statutory framework includes no requirement that a county board of elections investigate whether an individual who had

been confirmed as a qualified elector at the time of approval to receive a mail-in ballot remains as a qualified elector on Election Day. If the General Assembly had so intended, it would certainly have expressly stated it, as opposed to nebulously tucking such an unprecedented requirement into the instructions to the Secretary for designing the declaration.

Second, Ziccarelli argues that the date of signature of the declaration will serve to prevent double voting, as "whether an elector has already voted in the election for which the ballot is issued, by its very nature, depends on the date on which the declaration was signed." Ziccarelli's Brief at 16. Boards of elections do not use signatures or any handwritten information to prevent double voting. Duplicate voting is detected by the use of bar codes through the SURE system, and the board identifies the earlier cast vote by referencing the date it received the ballot, not the date on which the declaration was signed.

Ziccarelli and the Commonwealth Court insist that this Court "has already held that mail-in ballots with undated declarations are not 'sufficient' and, thus, must be set aside." Ziccarelli's Brief at 9; *In Re: 2,349 Ballots in the 2020 General Election*, 1162 C.D. 2020, at 10. In support of this contention, they reference an observation in our recent decision in *In re November 3, 2020 General Election*, ___ A.3d ___, 2020 WL 6252803 (Pa. 2020), that when assessing the sufficiency of a voter's declaration, "the county board is required to ascertain whether the return envelope has been filled out, dated, and signed – and if it fails to do so then the ballot cannot be designated as "sufficient" and must be set aside.[6]

---

[6]  In her brief, Ziccarelli cites to the Guidance distributed by the Secretary of the Commonwealth on September 28, 2020 to the county boards of elections, advising that

*Id.* at *12-13. This statement is being taken out of context. Our statement in 2020 *General Election* was in reference to the limitations on what an election board is directed by the statute to do when assessing the sufficiency of a voter's declaration for the express purpose of indicating what they were not to do, i.e., signature comparisons. The question in *In Re: Nov. 3, 2020 General Election* was a narrow one. We did not address (as it was not at issue) whether a county board of elections could find a declaration as sufficient even though it was undated. That question requires an entirely different analysis that

---

"[a] ballot-return envelope with a declaration that is not filled out, dated, and signed is not sufficient and must be set aside, declared void and may not be counted." As noted in footnote 3 supra, however, the Secretary also issued Guidance on September 11, 2020, which was cited with approval by the Philadelphia Board and the DNC. No party referenced both sets of Guidance, however, even though the September 28 Guidance incorporated the September 11 Guidance. *See* Guidance, 9/28/2020, at 9 ("For more information about the examination of return envelopes, please refer to the Department's September 11, 2020 Guidance Concerning Examination of Absentee and Mail-in Ballot Return Envelopes.").

In any event, we will not consider this Guidance in making our decision. Neither of the parties explain how the potentially contradictory directives are to be understood. More importantly, the Secretary has no authority to definitively interpret the provisions of the Election Code, as that is the function, ultimately, of this Court. The Secretary also clearly has no authority to declare ballots null and void. "[I]t is the Election Code's express terms that control, not the written guidance provided by the Department and as this Court repeatedly has cautioned, even erroneous guidance from the Department or county boards of elections cannot nullify the express provisions of the Election Code." *In re Scroggin*, 237 A.3d 1006, 1021 (Pa. 2020). Moreover, the Secretary has no authority to order the sixty-seven county boards of election to take any particular actions with respect to the receipt of ballots. 25 P.S. § 2621(f.2).

Finally, with respect to the September 28 Guidance indicating that undated ballots must be set aside, we note that in addition to the Philadelphia and Allegheny County Boards, at least two other boards of elections also did not follow it. *Donald J. Trump for President Inc. v. Bucks Cnty. Bd. of Elections,* No. 2020-05786 (Bucks Cty. Ct. Com. Pl.); *Donald J. Trump for President, Inc., et al. v. Montgomery Cnty. Bd. of Elections*, No. 2020-18680 (Nov. 13, 2020). Both the Bucks County and Montgomery County Courts of Common Pleas affirmed the counting of the ballots even though the declarations had not been filled out in full. Each of the courts of common pleas appropriately applied this Court's precedent in doing so.

depends in significant part on whether dating was a mandatory, as opposed to a directive, requirement. We have conducted that analysis here and we hold that a signed but undated declaration is sufficient and does not implicate any weighty interest. Hence, the lack of a handwritten date cannot result in vote disqualification.

## IV. CONCLUSION

As we recognized in *Pa. Democratic Party*, "while both mandatory and directory provisions of the Legislature are meant to be followed, the difference between a mandatory and directory provision is the consequence for non-compliance: a failure to strictly adhere to the requirements of a directory statute will not nullify the validity of the action involved." *Pa. Democratic Party*, 238 A.3d at 378. Here we conclude that while failures to include a handwritten name, address or date in the voter declaration on the back of the outer envelope, while constituting technical violations of the Election Code, do not warrant the wholesale disenfranchisement of thousands of Pennsylvania voters. As we acknowledged in *Shambach*, "ballots containing mere minor irregularities should only be stricken for compelling reasons." *Shambach*, 845 A.2d at 799; *see also Appeal of Gallagher*, 41 A.2d 630, 632 (Pa. 1945) ("[T]he power to throw out a ballot for minor irregularities ... must be exercised very sparingly and with the idea in mind that either an individual voter or a group of voters are not to be disfranchised at an election except for compelling reasons."). Having found no compelling reasons to do so, we decline to intercede in the counting of the votes at issue in these appeals.

The decision of the Philadelphia Court of Common Pleas is hereby affirmed. The decision of the Commonwealth Court is hereby reversed and the decision of the Allegheny County Court of Common Pleas is reinstated.

Justices Baer and Todd join the opinion.

Justice Wecht concurs in the result and files a concurring and dissenting opinion.

Justice Dougherty files a concurring and dissenting opinion in which Chief Justice Saylor and Justice Mundy join.

**[J-118A-2020, J-118B-2020, J-118C-2020, J-118D-2020, J-118E-2020 and J-118F-2020] [OAJC]**
**IN THE SUPREME COURT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | :  No. 31 EAP 2020 <br> : <br> : <br> :  SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | : <br> : <br> : <br> : |
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | :  No. 32 EAP 2020 <br> : <br> : <br> :  SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | : <br> : <br> : <br> : |
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | :  No. 33 EAP 2020 <br> : <br> : <br> :  SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | : <br> : <br> : <br> : |
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | :  No. 34 EAP 2020 <br> : <br> : <br> :  SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | : <br> : <br> : <br> : |
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | :  No. 35 EAP 2020 <br> : <br> : <br> :  SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | : <br> : <br> : <br> : |

IN RE: 2,349 BALLOTS IN THE 2020 : No. 29 WAP 2020
GENERAL ELECTION :
: Appeal from the Order of the
APPEAL OF: ALLEGHENY COUNTY : Commonwealth Court entered
BOARD OF ELECTIONS : November 19, 2020 at No. 1162 CD
: 2020, reversing the Order of the
: Court of Common Pleas of
: Allegheny County entered November
: 18, 2020 at No. GD 20-011654 and
: remanding
:
:
: SUBMITTED: November 20, 2020

## CONCURRING AND DISSENTING OPINION

**JUSTICE DOUGHERTY**                          **DECIDED:  November 23, 2020**

I concur in the decision to affirm the lower courts' orders pertaining to ballots where the qualified electors failed to print their name and/or address on the outer envelope containing their absentee or mail-in ballots.  However, I cannot agree that the obligation of electors to set forth the date they signed the declaration on that envelope does not carry "weighty interests."  Opinion Announcing the Judgment of the Court (OAJC) at 30. I therefore respectfully dissent from the holding at Section III(2) of the OAJC which provides that the undated ballots may be counted.

The applicable statutes require that electors "shall [ ] fill out, date and sign" the declaration printed on the ballot envelope.  25 P.S. §§3146.6(a), 3150.16(a).  In my view, the term "fill out" is subject to interpretation.  Maybe it means printing one's name and address on the envelope, and maybe it does not.  Given that our goal in interpreting the Election Code is to construe ambiguous provisions liberally, in order to avoid disenfranchisement where possible, I do not consider the failure of qualified electors to "fill out" their name and address, particularly where the name and address already appear

[J-118A-2020, J-118B-2020, J-118C-2020, J-118D-2020, J-118E-2020 and J-118F-2020] [OAJC: Donohue, J.] - 2

on the other side of the envelope, to require disqualification of the ballot. I am further persuaded of this position by the fact that the blank spaces on the envelope indicating where the name and address should be "filled out" were designated by the Secretary, not the General Assembly. 25 P.S. §3146.4 ("Said form of declaration and envelope shall be as prescribed by the Secretary of the Commonwealth[.]"); *see also* Concurring and Dissenting Opinion at 12-13 (Wecht, J.). But, the meaning of the terms "date" and "sign" — which **were** included by the legislature — are self-evident, they are not subject to interpretation, and the statutory language expressly requires that the elector provide them. *See In re Canvass of Absentee Ballots of Nov. 4, 2003 General Election*, 843 A.2d 1223, 1231 (Pa. 2004) ("[A]ll things being equal, the law will be construed liberally in favor of the right to vote but, at the same time, we cannot ignore the clear mandates of the Election Code.") (citation omitted). Accordingly, I do not view the absence of a date as a mere technical insufficiency we may overlook.

In my opinion, there is an unquestionable purpose behind requiring electors to date and sign the declaration. As Judge Brobson observed below, the date on the ballot envelope provides proof of when the "elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at a polling place. The presence of the date also establishes a point in time against which to measure the elector's eligibility to cast the ballot[.]" *In Re: 2,349 Ballots in the 2020 General Election*, 1162 C.D. 2020, slip op. at 12 (Pa. Cmwlth. Nov. 19, 2020) (memorandum). The date also ensures the elector completed the ballot within the proper time frame and prevents the tabulation of potentially fraudulent back-dated votes. *Cf. In re Canvass of Absentee Ballots of November 4, 2003 General Election*, 843 A.2d at 1232-33 (statutory requirement that ballot be submitted by elector and not third-party is mandatory safeguard against fraud). I recognize there is presently no dispute that all undated ballots at issue here arrived in a

timely manner.  But I am also cognizant that our interpretation of this relatively new statute will act as precedential guidance for future cases.

Chief Justice Saylor and Justice Mundy join this concurring and dissenting opinion.

**[J-118A-F-2020] [OAJC: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | : No. 31 EAP 2020<br>:<br>:<br>: SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | :<br>:<br>:<br>: |
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | : No. 32 EAP 2020<br>:<br>:<br>: SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | :<br>:<br>:<br>: |
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | : No. 33 EAP 2020<br>:<br>:<br>: SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | :<br>:<br>:<br>: |
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | : No. 34 EAP 2020<br>:<br>:<br>: SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | :<br>:<br>:<br>: |
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | : No. 35 EAP 2020<br>:<br>:<br>: SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | :<br>:<br>:<br>: |
| IN RE: 2,349 BALLOTS IN THE 2020 GENERAL ELECTION | : No. 29 WAP 2020<br>:<br>: |

APPEAL OF: ALLEGHENY COUNTY
BOARD OF ELECTIONS

: Appeal from the Order of the
: Commonwealth Court entered
: November 19, 2020 at No. 1162 CD
: 2020, reversing the Order of the
: Court of Common Pleas of
: Allegheny County entered November
: 18, 2020 at No. GD 20-011654 and
: remanding
:
:
:   SUBMITTED: November 20, 2020

**CONCURRING AND DISSENTING OPINION**

**JUSTICE WECHT**                    **DECIDED:  November 23, 2020**

I agree with the conclusion that no mail-in or absentee ballot should be set aside

solely because the voter failed to hand print his or her name and/or address on the

declaration form on the ballot mailing envelope.  These items are prescribed not by statute

but by the Secretary of the Commonwealth under legislatively delegated authority.

Absent evidence of legislative intent that what in context amounts to redundant

information must be furnished to validate a mail ballot, their omission alone should not

deny an elector his or her vote.  But I part ways with the conclusion reflected in the Opinion

Announcing the Judgment of the Court ("OAJC") that a voter's failure to comply with the

statutory requirement that voters date the voter declaration should be overlooked as a

"minor irregularity."  This requirement is stated in unambiguously mandatory terms, and

nothing in the Election Code[1] suggests that the legislature intended that courts should

---

[1]      Act of June 3, 1937, P.L. 1333, art. I, § 101, *codified as amended at* 25 P.S.
§§ 2601, *et seq.*

construe its mandatory language as directory. Thus, in future elections, I would treat the date and sign requirement as mandatory in both particulars, with the omission of either item sufficient without more to invalidate the ballot in question.[2] However, under the circumstances in which the issue has arisen, I would apply my interpretation only prospectively. So despite my reservations about the OAJC's analysis, I concur in its disposition of these consolidated cases.

Concurring in this Court's recent decision in *Pennsylvania Democratic Party v. Boockvar*, I expressed my increasing discomfort with this Court's willingness to peer behind the curtain of mandatory statutory language in search of some unspoken directory intent.

> [If this Court is] to maintain a principled approach to statutory interpretation that comports with the mandate of our Statutory Construction Act,[3] if we are to maximize the likelihood that we interpret statutes faithfully to the drafters' intended effect, we must read mandatory language as it appears, and we must recognize that a mandate without consequence is no mandate at all.[4]

There, I wrote separately in support of this Court's ruling requiring the invalidation of mail-in ballots that were returned to boards of elections not sealed in their secrecy envelopes as required by statutory language. The secrecy envelope requirement at issue in that case was no less ambiguous than the "fill out, date and sign" mandate at issue in this

---

[2]     None of the parties or courts involved in these consolidated cases dispute that a voter's failure to sign a mail-in or absentee ballot's declaration requires invalidation.

[3]     Act of Dec. 6, 1972, No. 290, § 3, *codified as amended at* 1 Pa.C.S. §§ 1501, *et seq.*

[4]     238 A.3d 345, 391 (Pa. 2020) (Wecht, J., concurring) (hereinafter "*PDP*").

case.[5]   Nonetheless, departing from that holding for reasons that do not bear close scrutiny, the OAJC concludes that invalidation should *not* follow for failure to comply with the Election Code provisions requiring that "the elector shall . . . fill out, date and sign the declaration printed on" the ballot mailing envelope, even though this requirement appears in precisely the same statutory provisions as were at issue in *PDP*.

Section 3150.16 of the Election Code, governing "[v]oting by mail-in electors"— and its counterpart for absentee ballots, which employs the same operative language[6]— provides:

> At any time after receiving an official mail-in ballot, but on or before eight o'clock P.M. the day of the primary or election, the mail-in elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed "Official Election Ballot."  This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector.  *The elector* **shall** *then fill out, date and sign the declaration printed on such envelope.*  Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.[7]

---

[5]        Specifically, 25 P.S. § 3150.16(a) provides that the mail-in ballot elector "shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, *enclose and securely seal the same in the envelope on which is printed, stamped or endorsed 'Official Election Ballot.'"*

[6]        *Compare* 25 P.S. § 3150.16(a) ("Voting by mail-in electors") *with* 25 P.S. § 3146.6(a) ("Voting by absentee electors").  Each provision governing the form of mail-in ballots and the voter's obligations in preparing and transmitting them has its verbatim equivalent for absentee ballots, and the issue presented applies equally to both. Hereinafter, for simplicity's sake, I refer exclusively to mail-in ballots and cite and quote only the provisions that apply to mail-in ballots, but my analysis applies identically to both. The OAJC reproduces the relevant sections at length.  *See* OAJC at 5-7.

[7]        25 P.S. § 3150.16(a) (emphasis added).

While this Court has not reviewed every constituent step this provision prescribes, we have addressed several of the requirements, taking it upon ourselves to weigh in each instance whether to interpret the mandatory statutory language as being mandatory in fact.  The law those cases now comprise is so muddled as to defy consistent application, an inevitable consequence of well-meaning judicial efforts to embody a given view of what is faithful to the spirit of the law, with the unfortunate consequence that it is no longer clear what "shall" even means.

Nearly fifty years ago, this Court considered whether a ballot completed in red or green ink should be counted given that the statute provided by its terms only for the canvassing of ballots completed in blue/black ink.[8]  Then-applicable Section 3063 of the Election Code provided that "[a]ny ballot that is marked in blue, black or blue-black ink, in fountain pen or ball point pen, or black lead pencil or indelible pencil, shall be valid and counted."[9]  The Court determined that the Code did not require the invalidation of ballots completed in other colors, holding that the mandatory language was merely directory in effect:

> [T]he power to throw out a ballot for minor irregularities should be sparingly used.  It should be done only for very compelling reasons.  Marking a ballot in voting is a matter not of precision engineering but of an unmistakable registration of the voter's will in substantial conformity to statutory requirements.  In construing election laws[,] while we must strictly enforce all provisions to prevent fraud over overriding concern at all times must be to be flexible in order to favor the right to vote.  Our goal must be to enfranchise and not to disenfranchise.  This section of the code merely assures the validity of ballots marked in blue, black or blue-black ink.  It does not . . . specify that any other type of marking will necessarily be void.  We have noted in other cases that the dominant theme of this section is to prevent ballots from being identifiable.  A ballot should not be invalidated

---

[8]    *Appeal of Weiskerger*, 290 A.2d 108 (Pa. 1972).

[9]    25 P.S. § 3063 (applicable through October 30, 2019).

under [25 P.S. § 3063] unless the voter purposely makes a mark thereon or commits some other act in connection with this ballot to distinguish and identify it. The proper interpretation of this portion of the statute considering the occasion for its enactment, the mischief to be remedied, and the policy to liberally construe voting laws in the absence of fraud, is that the ballot is valid unless there is a clear showing that the ink used was for the purpose of making the ballot identifiable.[10]

As this Court later stressed in *Appeal of Pierce*, *Weiskerger* "was decided before the enactment of the Statutory Construction Act [("SCA")], which dictates that legislative intent is to be considered only when a statute is ambiguous."[11] Thus, while *Pierce* focused on distinguishing *Weiskerger*, it nonetheless implicitly called into question the *Weiskerger* Court's casual dismissal of the language of the statute there at issue because the various factors the *Weiskerger* Court cited as relevant to its decision not to give "shall" mandatory effect are relevant under the SCA only when the statute is susceptible of two or more reasonable interpretations.[12]

In insisting that a court's goal should be to "enfranchise and not to disenfranchise" and to be "flexible" in furtherance of that goal, the *Weiskerger* Court found itself awash in

---

[10]    *Weiskerger*, 290 A.2d at 109 (cleaned up).

[11]    *Appeal of Pierce*, 843 A.2d 1223, 1231 (Pa. 2004); *see* 1 Pa.C.S. 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."); *see also Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 n.2 (Pa. 1997) (rejecting a party's reliance upon a 1965 case because it was at odds with the ambiguity-first, reliance-upon-rules-of-construction-later approach to statutory construction required by the SCA).

[12]    Without suggesting that the ink color language at issue in that case was ambiguous on its face, the *Weiskerger* Court suggested that interpreting the language required it to consider, *inter alia*, "the occasion for its enactment" and "the mischief to be remedied." *Weiskerger*, 290 A.2d at 109. Section 1921 of the SCA similarly provides that courts may consider "[t]he occasion and necessity for the statute" and "[t]he mischief to be remedied"—but *only* "[w]hen the words of the statute are not explicit." 1 Pa.C.S. § 1921(c).

language so slippery as to defy consistent application. The Court posited the existence of "minor irregularities," a term we repeat often but have yet to define with suitable rigor,[13] and posited that ballots should be invalidated only for "very compelling reasons."[14] It also blessed "substantial conformity," and directed courts to "be flexible in order to favor the right to vote"—evidently even when doing so runs counter to statutory directives stated in mandatory terms.[15]

Perhaps most troublingly, the Court posited that its "*goal* must be to enfranchise and not to disenfranchise."[16] A court's only "goal" should be to remain faithful to the terms of the statute that the General Assembly enacted, employing only one juridical presumption when faced with unambiguous language: that the legislature *meant what it said*. And even where the legislature's goal, however objectionable, is to impose a requirement that appears to have a disenfranchising effect, it may do so to any extent that steers clear of constitutional protections. In any event, even if the *Weiskerger* Court

---

[13]     *See, e.g., Appeal of Norwood*, 116 A.2d 552, 555 (Pa. 1955); *Appeal of Gallagher*, 41 A.2d 630, 632 (Pa. 1945).

[14]     *Weiskerger*, 290 A.2d at 109 (quoting *In re Petitions to Open Ballot Boxes*, 188 A.2d 254, 256 (Pa. 1963)).

[15]     In contrast to *Weiskerger*'s capacious understanding of this principle, the Court adopted a more measured tone in *Appeal of Urbano*, 190 A.2d 719 (Pa. 1963). There, citing the presumption in favor of counting votes, it allowed for relief from the apparent consequences of failing to satisfy mandatory statutory language, but did so specifically because the common-law presumption was in keeping with additional statutory language expressly granting the court discretion to permit amendments to cure even "material errors or defects." *Id.*

[16]     *Weiskerger*, 290 A.2d at 109 (emphasis added).

faithfully applied the common-law principles it cited, it did so inconsistently with the SCA's

contrary guidance, which issued later the same year and binds us today.[17]

But the advent of the SCA did not prevent this Court from repeating the same

mistake even decades later.  In *Shambach v. Bickhart*,[18] a voter wrote in a candidate for

office despite the fact that the candidate appeared on the official ballot for that office.  This

facially violated the Election Code, which provided that the voter shall, in the designated

area, "write the identification of the office in question and the name of *any person not*

*already printed on the ballot for that office*, and such mark and written insertion shall count

as a vote for that person for such office."[19]  Echoing *Weiskerger*, the *Shambach* Court

observed that, "although election laws must be strictly construed to prevent fraud, they

---

[17]    To be clear, *Weiskerger* was by no means our original sin in this area.  In one earlier example cited by the OAJC, this Court discerned reason to disregard the mandatory connotation of "shall" in *Appeal of James*, 105 A.2d 64 (Pa. 1954).  Indeed, one can detect aspects of the same open-ended analysis in, *e.g.*, our 1922 decision in *In re Fish's Election*, 117 A. 85, 87 (Pa. 1922) (quoting *Knight v. Borough of Coudersport*, 92 A. 299, 300 (Pa. 1914)) ("If the law declares a specified irregularity to be fatal, the court will follow that command, irrespective of their views of the importance of the requirement.  In the absence of such declaration the judiciary endeavor, as best they may, to discern whether the deviation from the prescribed forms of law had or had not so vital an influence on the proceedings as probably prevented a full and free expression of the popular will. . . . [If not], it is considered immaterial.").  Our willingness to substitute our judgment for that of the legislature perhaps reached its nadir in *Norwood*, where we held that "[e]very rationalization within the realm of common sense should aim at saving [a] ballot rather than void it," 116 A.2d at 554-55, an expression that the OAJC embraces as a "well-settled principle of Pennsylvania election law."  OAJC at 19.  Perhaps no passage better illustrates the liberties this Court has taken when probing for reasons to treat mandatory language as anything but mandatory.

[18]    845 A.2d 793 (Pa. 2004).

[19]    25 P.S. § 3031.12(b)(3) (emphasis added).  The language in question has been amended in the intervening years.

ordinarily will be construed liberally in favor of the right to vote."[20]  Thus, the Court "[has] held that ballots containing mere irregularities should only be stricken for compelling reasons."[21]  In support of this particular proposition, though, the Court cited only decisions that predated the SCA.[22]  Much as in *Weiskerger*, the Court held that the absence of statutory language requiring the invalidation of a ballot completed in violation of the mandatory language of Section 3031.12(b)(3), combined with the amorphous principles it drew from the Court's prior cases, precluded the invalidation of a nonconforming ballot, effectively writing unambiguous language out of the Election Code entirely.

We restored a greater degree of rigor in *Pierce*.  In that case, we considered whether absentee ballots delivered by third persons on behalf of non-disabled voters were invalid under the Election Code, which provided that "*the elector shall* send [the absentee ballot] by mail, postage prepaid, except where franked, *or deliver it in person* to said county board of election."[23]  There, in a step the *Shambach* Court tacitly bypassed, the Court underscored the SCA's direction that a court's sole objective in construing a statute is to "ascertain and effectuate the intention of the General Assembly," and that, "[g]enerally speaking, the best indication of legislative intent is the plain language of a

---

[20]  *Shambach*, 845 A.2d at 798 (quoting *James*, 105 A.2d at 65).

[21]  *Id.* at 798.

[22]  *See Appeal of Mellody*, 296 A.2d 782, 784 (Pa. 1972); *Reading Defense Committee*, 188 A.2d at 256; *Gallagher*, 41 A.2d at 632.  The OAJC similarly relies substantially for these principles on pre-SCA case law.  *See*, *e.g.*, OAJC at 3 (quoting *James*, 105 A.2d at 65-66 (Pa. 1954)); *id.* at 19 (quoting *Urbano*, 190 A.2d at 719, and *Norwood*, 116 A.2d at 554).

[23]  25 P.S. § 3146.6(a) (emphasis added); *see Pierce*, 843 A.2d at 1231.

statute."[24]  "[I]t is only when the words of a statute 'are not explicit' that a court may resort to other considerations, such as the statute's perceived 'purpose,' in order to ascertain legislative intent."[25]  In this light, the Court turned to the legislature's use of the word "shall."  "Although some contexts may leave the precise meaning of the word 'shall' in doubt," the Court opined, "this Court has repeatedly recognized the unambiguous meaning of the word in most contexts."[26]  As noted *supra*, this Court in *Pierce* declined to treat *Weiskerger* as controlling in part because it was decided before the enactment of the SCA.  While we did not assert *Weiskerger*'s abrogation, we certainly cast doubt upon its probity, as well, by extension, as all similarly permissive Election Code case law relying upon the presumption to count votes that violated the Code's unambiguous directives.

In *In re Scroggin*,[27] too, we applied the relevant statutory language strictly in conformity with its terms, despite colorable arguments that doing so would deny ballot access to a candidate who had "substantially complied" with the statutory requirements. And at issue in that case was not merely the votes of a small percentage of otherwise qualified voters, but whether a political body's Presidential candidate would appear on the ballot at all in the wake of a placeholder nominee's failure to satisfy the Code's mandatory affidavit requirement.  "[T]he provisions of the election laws relating to the form of nominating petitions and the accompanying affidavits are not mere technicalities," we

---

[24]    *Pierce*, 843 A.2d at 1230 (citations omitted).

[25]    *Id.*

[26]    *Id.* at 1231-32 (citing, *inter alia*, BRYAN GARNER, DICTIONARY OF MODERN LEGAL USAGE 939 (2d ed. 1995)).

[27]    237 A.3d 1006 (Pa. 2020).

explained, "but are necessary measures to prevent fraud and to preserve the integrity of the election process. . . . Thus, the policy of the liberal reading of the Election Code cannot be distorted to emasculate those requirements necessary to assure the probity of the process."[28]

Finally, in *PDP*, we held that the failure strictly to comply with the Election Code's mandatory requirement that mail-in ballots be sealed in the provided "Official Election Ballot" envelope required invalidation. Again, we specifically rejected the appellants' reliance upon *Weiskerger* and *Shambach*, relying instead upon *Pierce*. As in *Pierce*, we found that to interpret "shall" as directory rather than mandatory would render the Code's requirements "meaningless and, ultimately, absurd," notwithstanding the absence of an express, statutorily-prescribed sanction for non-compliance.[29] While we did not go out of our way to express a jaundiced a view of our cases holding that "minor irregularities" might be overlooked, the gravamen of our decision in that case, as in *Pierce*, was clear: shall means *shall*.[30]

Although I joined the Majority in that case, I wrote separately to underscore the difficulties endemic to judicial efforts to discern ulterior meanings ostensibly obscured by the legislature's use of mandatory language. I observed that relying upon such unbounded investigations invited courts "to bend unclear texts toward whatever ends that

---

[28]    *Id.* at 1019 (quoting *Appeal of Cubbage*, 359 A.2d 383, 384 (Pa. 1976)).

[29]    *PDP*, 238 A.3d at 379 (quoting *Pierce*, 843 A.2d at 1232).

[30]    *Id.* at 380 ("[*Pierce*] leads to the inescapable conclusion that a mail-in ballot that is not enclosed in the statutorily-mandated secrecy envelope must be disqualified. . . . Accordingly, we hold that the secrecy [envelope] language in Section 3150.16(a) is mandatory and the mail-in elector's failure to comply . . . renders the ballot invalid.").

they believe to be consonant with legislative intent, but with little or no contemporaneous insight into whether they have done so successfully."[31]  Acknowledging that legislation is sometimes less than a model of clarity, and that this Court consequently will continue to face invitations to treat mandatory language as something less, I wrote: "[I]f we are to maintain a principled approach to statutory interpretation that comports with the mandate of [the SCA], if we are to maximize the likelihood that we interpret statutes faithfully to the drafters' intended effect, we must read mandatory language as it appears, and we must recognize that a mandate without consequence is no mandate at all."[32]

It is against this case law, and particularly the views I expressed in *PDP*, that I review the question now before us, briefly addressing the Secretary-imposed name and address requirement first, before proceeding to consider the statutory requirement that the voter date and sign the voter declaration.

As to the former question, I agree with the OAJC's conclusion, although I subscribe to the narrower approach briefly set forth by Justice Dougherty in his Concurring and Dissenting Opinion and developed variously in the OAJC's analysis.  But while the OAJC acknowledges the reasons that Justice Dougherty cites as militating against invalidation, it supplements them with the minor-irregularity analysis familiar from *Weiskerger* and *Shambach*, which is neither necessary nor advisable.  Justice Dougherty's approach requires no reliance upon cases that *Pierce* and *PDP* rightly have called into question. Rather, the fact that the name and address requirement does not stem from mandatory

---

[31]     *Id.* at 391 (Wecht, J., concurring).

[32]     *Id.*

statutory language,[33] as well as questions about the Secretary's authority to compel county boards of elections to conform with whatever guidance the Secretary offers,[34] combined with our presumption in favor of treating qualified voters' ballots as valid absent clear legal mandates to the contrary where statutory language is less than clear,[35] collectively recommend against invalidating ballots for this omission alone.[36]   That is enough for me.

The same cannot be said about the date and sign requirement, which derives from an unmistakable statutory directive.  Drawing upon our less rigorous case law, and relying heavily upon the interpretive latitude this Court has arrogated to itself sporadically for generations, the OAJC assumes that our mission is to determine whether the apparent mandate is in fact directory, hanging the entire inquiry upon the question of mandatory versus directory effect.   That reading, in turn, must rely upon the "minor

---

[33]     *See* Conc. & Diss. Op. at 2 (Dougherty, J.).

[34]     *See* OAJC at 32-33 n.6.

[35]     *See PDP*, 238 A.3d at 356 ("[T]he Election Code should be liberally construed so as not to deprive, *inter alia*, electors of their right to elect a candidate of their choice."). Notably, the OAJC cites *PDP* for the same proposition, correctly qualifying the principle by noting that liberal construction comes into play only "[*w*]*here an election statute is ambiguous.*"  OAJC at 25 n.4 (emphasis added).

[36]     I also find cause for concern in the absence of clear instruction on the ballot materials indicating that a ballot lacking a name or address will be disqualified, a concern that informs my preference for prospective application of the statutory date requirement. *Cf. Reading*, 188 A.2d at 256 (declining to invalidate ballots upon which voters did not signal their intended votes strictly with the X or check mark mandated by statute for various reasons—including a "minor irregularity" approach I reject—especially where the printed instruction on the ballot did not specify that only those two methods of signaling one's vote would be recognized).

irregularity" / "weighty interest" dichotomy underlying the cases that *Pierce* and *PDP* have called into question.

> To determine whether the Election Code's directive that the voter handwrite their names, address, and the date of signing the voter declaration on the back of the outer envelope is a mandatory or directory instruction requires us to determine whether the intent of the General Assembly was clear and whether the failure to handwrite the information constitutes "minor irregularities" or instead represent[s] "weighty interests" . . . that the General Assembly considered to be critical to the integrity of the election.[37]

To be clear, the OAJC offers a commendably thorough analysis, but its length and involution is necessary only *because* of the open-ended inquiry it embarks upon. And it is no surprise that, like the cases upon which it relies, the OAJC involves protean characterizations of voting requirements as "technicalities,"[38] "minor irregularities,"[39] and

---

[37]    OAJC at 23.

[38]    *See id.* at 3 (quoting *James*, 105 A.2d at 66 ("Technicalities should not be used to make the right of the voter insecure.")). *James*'s tendentious resort to the word "technicalities," which seldom is used constructively when invoked in connection with the law, is contradicted at least in tenor by subsequent pronouncements. *See Pierce*, 843 A.2d at 1234 ("[S]o-called technicalities of the Election Code are necessary for the preservation of secrecy and the sanctity of the ballot and must therefore be observed . . . ."); *Appeal of Weber*, 159 A.2d 901, 905 (Pa. 1960) ("The technicalities of the Election Law (and they are many) are necessary for the preservation of the secrecy and purity of the ballot and must, therefore, be meticulously observed.").

[39]    *See* OAJC at 22-23 (counterposing "minor irregularities" and "weighty interests" as the framework for decision). Notably, the question as to which we granted review quite confused the meaning of "irregularity." We proposed to answer the question whether "the Election Code require[s] county boards of elections to disqualify mail-in or absentee ballots submitted by qualified electors who signed their ballot's outer envelopes but did not handwrite their name, their address, and/or a date, *where no fraud or irregularity has been alleged*?" *Id.* at 15. But this formulation is irreconcilable with the question whether failing to date a ballot declaration is, itself, a "minor irregularity" and, as such, not subject to the sanction of ballot invalidation—the very crux of the case, as the OAJC defines it. I raise this discrepancy because it illustrates how these constructs lend themselves to confusion, complicating what should be simple questions by engrafting unenumerated considerations upon plainly worded statutes.

even "superfluous."[40]  As illustrated in my review of earlier case law, the OAJC does not conjure this terminology from the ether—all but the last of these terms have been central to this Court's decisional law going back decades.  But properly understood, all of these terms signal (and implicitly bless) the substitution of judicial appraisals for legislative judgments.

The OAJC approach ultimately requires that in *any* case requiring interpretation of the Election Code to determine the validity of votes nonconforming with facially mandatory requirements, the Court must assess the effect of that language *de novo* before deciding whether the legislature intended for it to be interpreted as mandatory or merely directory.[41] Thus, while a court embracing that test might take it as obvious, *e.g.*, that the signature requirement should be construed as mandatory, it could not merely have taken its mandatory effect as a given by virtue of the statutory language alone.   If the mandatory/directory inquiry is ever appropriately applied to mandatory language, then the Court can only conclude that mandatory language must be applied as such after applying its balancing test, with cases that *seem* obvious merely reflecting that the Court deemed the "interest" to be protected so "weighty" that its omission clearly cannot be viewed as a "minor irregularity."

---

[40]    *See id.* at 30 ("The date stamp and the SURE system provide a clear and objective indicator of timeliness, making any handwritten date unnecessary and, indeed, superfluous."); *cf. id.* at 23 (characterizing the handwritten name and address requirement as, "at best, a 'minor irregularity' and, at worst, entirely immaterial").

[41]    *See id.* at 30 ("Although unlike the handwritten name and address, which are not mentioned in the statute, the inclusion of the word 'date' in the statute does not change the analysis *because the word 'shall' is not determinative as to whether the obligation is mandatory or direct[ory] in nature*." (emphasis added)).

The only practical and principled alternative is to read "shall" as mandatory.  Only by doing so may we restore to the legislature the onus for making policy judgments about what requirements are necessary to ensure the security of our elections against fraud and avoid inconsistent application of the law, especially given the certainty of disparate views of what constitute "minor irregularities" and countervailing "weighty interests."

I do not dispute that colorable arguments may be mounted to challenge the necessity of the date requirement, and the OAJC recites just such arguments.[42]  But colorable arguments also suggest its importance, as detailed in Judge Brobson's opinion as well as Justice Dougherty's Concurring and Dissenting Opinion.[43]  And even to *indulge* these arguments requires the court to referee a tug of war in which unambiguous statutory language serves as the rope.  That reasonable arguments may be mounted for and against a mandatory reading only illustrates precisely why we have no business doing so.

Ultimately, I agree with Judge Brobson's description of the greatest risk that arises from questioning the intended effect of mandatory language on a case-by-case basis:

> While we realize that our decision in this case means that some votes will not be counted, the decision is grounded in law.  It ensures that the votes will not be counted because the votes are invalid as a matter of law.  Such adherence to the law ensures equal elections throughout the Commonwealth, on terms set by the General Assembly.  The danger to our democracy is not that electors who failed to follow the law in casting their ballots will have their ballots set aside due to their own error; rather, the real danger is leaving it to each county board of election to decide what laws must be followed (mandatory) and what laws are optional (directory), providing a patchwork of unwritten and arbitrary rules that will have some defective ballots counted and others discarded, depending on the county in which a voter resides. Such a patchwork system does not guarantee voters

---

[42]    *See id.* at 30-32.

[43]    *See In re 2,349 Ballots in the 2020 General Election*, 1162 C.D. 2020, slip op. at 12 (Pa. Cmwlth. Nov. 19., 2020) (memorandum); Conc. & Diss. Op. at 3 (Dougherty, J.).

an "equal" election, particularly where the election involves inter-county and statewide offices. We do not enfranchise voters by absolving them of their responsibility to execute their ballots in accordance with law.[44]

We must prefer the sometimes-unsatisfying clarity of interpreting mandatory language as such over the burden of seeking The Good in its subtext. Substantive perfection is the ever-elusive concern of the legislature. Ours must be consistency of interpretive method without fear or favor, a goal that recedes each time a court takes liberties with statutory language in furtherance of salutary abstractions. Because the OAJC favors a more intrusive and ambitious inquiry, I respectfully dissent.

But just because I disagree with the OAJC's interpretation of the date and sign requirement does not inexorably lead me to the conclusion that the votes at issue in this case must be disqualified. While it is axiomatic that *ignorantia legis neminem excusat* (ignorance of the law excuses no one), this Court may elect to apply only prospectively a ruling that overturns pre-existing law or issues a ruling of first impression not foreshadowed by existing law. Indeed, we have done so in at least one case under the Election Code. In *Appeal of Zentner*,[45] we confronted a statute governing candidates' obligation to submit statements of financial interests by a time certain that had been revised specifically to correct our previously fluid interpretations of the predecessor statute. We were forced to consider whether our newly strict construal of the revised statute should result in the invalidation of entire ballots already cast because they included one or more candidates who had failed to satisfy the statutory disclosures. We

---

[44]   *In re 2,349 Ballots*, slip op. at 12-13.

[45]   626 A.2d 146 (Pa. 1993)

held, as the legislature clearly intended, that a candidate's "failure to file the requisite financial interests statement within the prescribed time shall be fatal to a candidacy."[46] But we also concluded that to "void the results of an election where all candidates were submitted to the voters, with late but nonetheless filed financial statements which left adequate time for study by the electorate, would be an unnecessary disenfranchisement."[47] Thus we determined that our holding should apply prospectively but not to the election at issue.[48]

It goes without saying that 2020 has been an historically tumultuous year. In October of 2019, the legislature enacted Act 77,[49] introducing no-excuse mail-in voting with no inkling that a looming pandemic would motivate millions of people to avail themselves of the opportunity to cast their ballots from home in the very first year that the law applied. Soon thereafter, Act 12,[50] introduced and enacted with unprecedented

---

[46]    *Id.* at 149.

[47]    *Id.*

[48]    *Cf. Andino v. Middleton*, No. 20A55, ___ U.S. ___, 2020 WL 5887393, *1 (Oct. 5, 2020) (staying the district court's injunction of an absentee ballot witness requirement, "except to the extent that any ballots cast before this stay issues and received within two days of this order may not be rejected for failing to comply with the witness requirement" in light of the fact that voters cast nonconforming absentee ballots in reliance upon the guidance of state elections officials during the pendency of the injunction); *In re Beyer*, 115 A.3d 835, 843-44 (Pa. 2015) (Baer, J., dissenting) (finding it "reasonable for this Court to rule prospectively that a candidate may only designate his occupation or profession as 'lawyer' on nomination papers after he or she has graduated from law school, passed the bar exam, and is in good standing as an active member of the Pennsylvania Bar," but dissenting because, "at the time Candidate Beyer filed his nomination papers, neither a majority of this Court nor the Commonwealth Court had ever made such an express declaration").

[49]    *See* Act of Oct. 31, 2019, P.L. 552, No. 77.

[50]    *See* Act of March 27, 2020, P.L. 41, No. 12.

alacrity in response to the pandemic, further amended the Election Code to address emergent concerns prompted by the looming public health crisis. While aspects of the new provisions that are relevant to this case were not wholly novel to the Code, as such—for example, the provisions that authorized no-excuse mail-in voting by and large just expanded the pool of voters to whom the rules that long had governed absentee balloting applied—the massive expansion of mail-in voting nonetheless presented tremendous challenges to everyone involved in the administration of elections, from local poll workers to the Secretary of the Commonwealth. Importantly, it transformed the incentives of probing the mail-in balloting provisions for vulnerabilities in furtherance of invalidating votes. For the first time, a successful challenge arising from a given technical violation of statutory requirements might result in the invalidation of many thousands of no-excuse mail-in ballots rather than scores or hundreds of absentee ballots.

In advance of the 2020 election, neither this Court nor the Commonwealth Court had occasion to issue a precedential ruling directly implicating the fill out, date and sign requirement. Moreover, as the OAJC highlights in multiple connections, the Secretary issued confusing, even contradictory guidance on the subject.[51] Thus, local election officials and voters alike lacked clear information regarding the consequence of, *e.g.*, failing to handwrite one's address on an envelope that already contained preprinted text with that exact address or record the date beside the voter's declaration signature.

I have returned throughout this opinion to our decision in *PDP*, and I do so once more. I maintained in that case that the Election Code should be interpreted with

---

[51]    *See* OAJC at 24 n.3, 32-33 n.6; *see also id.* at 8-10 (reproducing all relevant aspects of the guidance documents pertaining to the issues presented).

unstinting fidelity to its terms, and that election officials should disqualify ballots that do not comply with unambiguous statutory requirements, when determining noncompliance requires no exercise of subjective judgment by election officials.[52]  The date requirement here presents such a case.  But I *also* emphasized that disqualification is appropriate "[s]o long as the Secretary and county boards of elections *provide electors with adequate instructions for completing the declaration of the elector—including conspicuous warnings regarding the consequences for failing strictly to adhere*" to those requirements.[53]  I cannot say with any confidence that even diligent electors were adequately informed as to what was required to avoid the consequence of disqualification in this case.  As in *Zentner*, it would be unfair to punish voters for the incidents of systemic growing pains.

In case after case involving the Election Code, especially this year, we have been reminded how important it is that the General Assembly provide unambiguous guidance for the administration of the election process.  But it is imperative that we recognize when the legislature has done precisely that, and resolve not to question the legislature's chosen language when it has done so.  And perhaps it is a silver lining that many of the problems that we have encountered this year, in which a substantially overhauled electoral system has been forced to make its maiden run in stormy seas, are now clear enough that the legislature and Department of State have notice of what statutory refinements are most needful.  It is my sincere hope that the General Assembly sees fit to refine and clarify the Election Code scrupulously in the light of lived experience.  In particular, because this is the second time this Court has been called upon to address the

---

[52]     *See PDP*, 238 A.3d at 389 (Wecht, J., concurring).

[53]     *See id.* (emphasis added).

declaration requirement, it seems clear that the General Assembly might clarify and streamline the form and function of the declaration, perhaps prescribing its form to advance clarity and uniformity across the Commonwealth.[54]

---

[54]      In this regard, the OAJC observes that the Democratic National Committee "argues, with some persuasive force, that the Campaign's requested interpretation of Pennsylvania's Election Code could lead to a violation of [the federal Voting Rights Act] by asking the state to deny the right to vote for immaterial reasons." OAJC at 26 n.5; *see* 52 U.S.C. § 10101(a)(2) (No person acting under color of law shall . . . (B) deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election . . . ."). The OAJC does not pursue this argument, except to acknowledge a handful of cases that might be read to suggest that the name and address, and perhaps even the date requirement could qualify as "not material in determining whether such individual is qualified under State law to vote." Given the complexity of the question, I would not reach it without the benefit of thorough advocacy. But I certainly would expect the General Assembly to bear that binding provision in mind when it reviews our Election Code. It is inconsistent with protecting the right to vote to insert more impediments to its exercise than considerations of fraud, election security, and voter qualifications require.

Received 11/24/2020 8:52:00 AM Supreme Court Western District

Filed 11/24/2020 8:52:00 AM Supreme Court Western District
29 WAP 2020

# IN THE SUPREME COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: 2,349 Ballots in the 2020 General Election | : | 29 WAP 2020 |
| | : | |
| Appeal of: Allegheny County Board of Elections | : | |

## <u>PROOF OF SERVICE</u>

I hereby certify that this 24th day of November, 2020, I have served the attached document(s) to the persons on the

date(s) and in the manner(s) stated below, which service satisfies the requirements of Pa.R.A.P. 121:

**Service**

| | |
|---|---|
| Served: | Andrew Francis Szefi |
| Service Method: | eService |
| Email: | Andrew.Szefi@alleghenycounty.us |
| Service Date: | 11/24/2020 |
| Address: | 445 Ft Pitt Blvd |
| | Suite 300 |
| | Pittsburgh, PA 15219 |
| Phone: | 412--35-0-1128 |
| Representing: | Appellant   Allegheny County Board of Elections |

| | |
|---|---|
| Served: | Chair Clifford B. Levine |
| Service Method: | eService |
| Email: | clifford.levine@dentons.com |
| Service Date: | 11/24/2020 |
| Address: | Dentons Cohen & Grigsby P.C. |
| | 625 Liberty Avenue |
| | Pittsburgh, PA 15222-3152 |
| Phone: | 412--29-7-4998 |
| Representing: | Appellee   James Brewster |
| | Appellee   Pennsylvania Democratic Party |

| | |
|---|---|
| Served: | Frances Marie Liebenguth |
| Service Method: | eService |
| Email: | frances.liebenguth@alleghenycounty.us |
| Service Date: | 11/24/2020 |
| Address: | 207 Stettler Drive |
| | Jefferson Hills, PA 15025 |
| Phone: | 412--71-9-7068 |
| Representing: | Appellant   Allegheny County Board of Elections |

**IN THE SUPREME COURT OF PENNSYLVANIA**

**<u>PROOF OF SERVICE</u>**

*(Continued)*

| | |
|---|---|
| Served: | Kyle John Semroc |
| Service Method: | eService |
| Email: | kyle.semroc@dentons.com |
| Service Date: | 11/24/2020 |
| Address: | Dentons Cohen & Grigsby P.C. |
| | 625 Liberty Avenue, 5th Floor |
| | Pittsburgh, PA 15222 |
| Phone: | 412-297-4646 |
| Representing: | Appellee   James Brewster |
| | Appellee   Pennsylvania Democratic Party |

| | |
|---|---|
| Served: | Marco Santino Attisano |
| Service Method: | eService |
| Email: | marco@arlawpitt.com |
| Service Date: | 11/24/2020 |
| Address: | 429 Fourth Avenue |
| | Suite 1705 |
| | Pittsburgh, PA 15219 |
| Phone: | 412-336-8622 |
| Representing: | Appellee   James Brewster |
| | Appellee   Pennsylvania Democratic Party |

| | |
|---|---|
| Served: | Michael James Healey |
| Service Method: | eService |
| Email: | mike@unionlawyers.net |
| Service Date: | 11/24/2020 |
| Address: | 247 Fort Pitt Blvd. |
| | Fourth Floor |
| | Pittsburgh, PA 15222 |
| Phone: | 412--39-1-7711 |
| Representing: | Appellee   James Brewster |
| | Appellee   Pennsylvania Democratic Party |

| | |
|---|---|
| Served: | Virginia Spencer Scott |
| Service Method: | eService |
| Email: | vscott@alleghenycounty.us |
| Service Date: | 11/24/2020 |
| Address: | 300 Fort Pitt Commons |
| | 445 Fort Pitt Blvd |
| | Pittsburgh, PA 15219 |
| Phone: | 412- 35-0-1173 |
| Representing: | Appellant   Allegheny County Board of Elections |

**IN THE SUPREME COURT OF PENNSYLVANIA**

**PROOF OF SERVICE**

*(Continued)*

**Courtesy Copy**

| | |
|---|---|
| Served: | Kathleen Marie Kotula |
| Service Method: | eService |
| Email: | kkotula@pa.gov |
| Service Date: | 11/24/2020 |
| Address: | Room 306 North Office Building |
| | 401 North Street |
| | Harrisburg, PA 17120-0500 |
| Phone: | (71-7) -783-0736 |
| Pro Se: | Participants   Kathleen Marie Kotula |

_____
/s/  Matthew Hermann Haverstick

*(Signature of Person Serving)*

| | |
|---|---|
| Person Serving: | Haverstick, Matthew Hermann |
| Attorney Registration No: | 085072 |
| Law Firm: | Kleinbard, LLC |
| Address: | Kleinbard LLC |
| | 1717 Arch St 5th Fl |
| | Philadelphia, PA 19103 |
| Representing: | Appellee   Ziccarelli, Nicole |