# EXHIBIT H

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Canvass of Absentee : 
and/or Mail-in Ballots of : 
November 3, 2020 General Election : 
 : 
 v. : No. 1191 C.D. 2020
 : Submitted: November 23, 2020
Appeal of: Donald J. Trump for : 
President, Inc. : 

**BEFORE:**   **HONORABLE RENÉE COHN JUBELIRER,** Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED: November 25, 2020**

      Donald J. Trump for President, Inc. (Appellant) appeals from the Order of the Court of Common Pleas of Bucks County (common pleas) that overruled the Appellant's objections to certain absentee and/or mail-in ballots, denied Appellant's requested relief, and dismissed Appellant's appeal from the Bucks County Board of Elections' (Board) determination that the challenged ballots were valid and could be counted in the General Election of November 3, 2020 (Election).[1] Appellant argues the Board violated the Election Code[2] (Code) when it did not reject and, over objection, accepted 2,177 ballots on the basis that they did not comply, in some way, with Sections 3146.6 or 3150.16 of the Code, 25 P.S. §§ 3146.6 (absentee electors),

---

[1] Others challenged the Board's decision to common pleas, but only Appellant has filed a notice of appeal from the common pleas' Order.

[2] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2601-3591.

3150.16 (mail-in electors). Appellant has since withdrawn some of the challenges, and of the remaining challenges, all but 69 ballots are resolved by a recent decision of the Supreme Court; common pleas' Order with regard to those ballots is, therefore, affirmed for that reason. The remaining 69 ballots were received with secrecy envelopes that were "unsealed." The statute unambiguously requires that secrecy envelopes shall be "securely seal[ed]," 25 P.S. §§ 3146.6(a), 3150.16(a), and that the board of elections shall "break the seals" on these envelopes before counting the ballots. Section 3146.8(g)(4)(iii) of the Code, 25 P.S. § 3146.8(g)(iii).³ Therefore, in future elections, the sealing requirement should be treated as mandatory and if unsealed secrecy envelopes are received, this will invalidate the ballots contained therein. However, because of the facts and circumstances in this case, this interpretation will be applied prospectively. Common pleas' Order is, therefore, affirmed with regard to those 69 ballots.

The parties filed a joint stipulation of facts with common pleas setting forth the following facts relevant to the Court's resolution of this appeal. On November 3, 2020, the Board met to pre-canvass absentee and mail-in ballots as set forth in Section 3146.8(g) of the Code. (Stip. ¶ 17.) During the course of the Board's canvass meeting on November 7, 2020, and with Authorized Representatives present and given an opportunity to provide argument, the Board considered whether certain voter declarations on the outer envelope were "sufficient" to meet the requirements of Section 3146.8(g). (*Id.* ¶ 18.) The Board separated the ballots into 10 different categories, and accepted some of the categories for canvassing and rejected others. (*Id.* ¶ 19.) Of the categories accepted for canvassing, Appellant challenged six to common pleas. Those six categories were:

---

³ This section was added by Section 11 of the Act of March 6, 1951, P.L. 3.

- Category 1: 1,196 ballots whose outer envelopes did not contain a handwritten date or contained only a partial handwritten date.

- Category 2: 644 ballots whose outer envelopes did not include a handwritten name or address.

- Category 3: 86 ballots whose outer envelopes contained a partial written address.

- Category 4: 246 ballots whose outer envelopes contained mismatched addresses.

- Category 5: 69 ballots with "unsealed" secrecy envelopes.

- Category 6: 7 ballots whose secrecy envelopes had markings that did not identify the elector's identity, political affiliation, or candidate preference.

(*Id.* ¶ 24.) During the hearing before common pleas, Appellant withdrew its challenges to Categories 4 and 6, (Hr'g Tr. at 114-15; common pleas' op. at 6; common pleas' November 23, 2020 Order Clarifying the Record.) Therefore, these challenges will not be discussed further.

The parties stipulated that "[w]hen received by [the Board,] each of the challenged ballots was inside a [secrecy] envelope, and the [secrecy] envelope was inside a sealed outer envelope with a voter's declaration that had been signed by the elector." (Stip. ¶ 45.) On the outer envelope "is a checklist for the voter, asking: "Did you . . . [p]ut your ballot inside the secrecy envelope and place it in here?" (*Id.* ¶ 10). With regard to Category 5 ballots, the parties stipulated that the Board "could not determine whether the [secrecy] envelopes were initially sealed by the elector but later became unsealed." (*Id.* ¶ 46.) The electors whose ballots are being challenged have not been notified. (*Id.* ¶ 47.) The stipulation clearly establishes that Appellant does not allege, and there is no evidence of, fraud, misconduct, impropriety, or undue influence. (*Id.* ¶¶ 27-30.) Further, Appellant does not allege,

3

and there is no evidence, that the Board counted ballots that did not contain signatures on the outer envelope or "'naked ballots,' (ballots that did not arrive in a secrecy envelope)." (*Id.* ¶¶ 31-32.)  Last, Appellant does not allege, and there is no evidence, that the electors who cast these votes were ineligible to vote, that votes were cast by or on the behalf of a deceased elector, or that votes were cast by someone other than the elector.  (*Id.* ¶¶ 33-35.)

In addition to these stipulated facts, common pleas held a hearing, at which Thomas Freitag, the Board's Director (Director), testified.  (Hr'g Tr. at 63-64.)  Director testified about the Board's process in reviewing the ballots in general, the challenged ballots, and the Board's determinations to accept or reject challenged ballots that were missing information on the outer envelopes.  (*Id.* at 68-96.)  Relevant specifically to Category 5 challenges, Director indicated that "the privacy of the ballots [were not] jeopardized in any manner[,]" there was no "view of the ballots" "to his knowledge," and that there was no "way to determine by the Board whether or not [the secrecy envelope] had been sealed at one point and became unsealed."  (*Id.* at 97-98.)  He testified that the Board provided the envelopes, including the secrecy envelopes, which were the type that had "to be either moistened by licking or water or glue," and agreed that people would have to rely on the type of envelopes provided by the Board as to the quality of the seal.  (*Id.* at 98-99.)  Director agreed that the Board discussed the possibility that voters may have concerns about licking the envelopes, given the pandemic, which appeared to be a factor in its decisions.  (*Id.* at 99.)  He further agreed that the "ballots that were enclosed within unsealed [secrecy] envelopes" were "enclosed within [the] outer envelope."  (*Id.*)  Director was subjected to limited cross-examination., but not on this issue.  The parties then provided argument on the various challenges.  Following

4

the hearing, common pleas issued an opinion and order rejecting the challenges and dismissing the appeal of the Board's decision. Appellant now appeals to this Court.[4]

As to Categories 1 through 3, which challenged the ballots on the basis of a deficiency on the outer envelopes, common pleas held that the information missing was not mandatory under the Election Code, but directory and, therefore, its absence would not invalidate those ballots. (Common pleas' op. at 14-19.) Appellant challenges these determinations before this Court. However, after the filing of the appeal, the Supreme Court of Pennsylvania rejected these same legal challenges in *In re: Canvass of Absentee and Mail-In Ballots of November 3, 2020 General Election* (Pa., Nos. 31-35 EAP 2020 and 29 WAP 2020, filed November 23, 2020) (*Philadelphia/Allegheny*), slip op. 19-32.[5] In doing so, the Supreme Court "conclude[d] that the . . . Code does not require boards of elections to disqualify mail-in or absentee ballots submitted by qualified electors who signed the declaration on their ballot's outer envelope but did not handwrite their name, their address, and/or date, where no fraud or irregularity has been alleged." *Id.*, slip op. at 3. Appellant acknowledges this holding in its brief, but points out that, per a majority of the Supreme Court, dating the outer envelope is a mandatory requirement, but would be applied prospectively. (Appellant's Brief (Br.) at 27.)

---

[4] Common pleas' decision is reviewed on appeal "to determine whether the findings are supported by competent evidence and to correct any conclusions of law erroneously made." *In re Reading Sch. Bd. Election*, 634 A.2d 170, 171-72 (Pa. 1993). Issues involving the proper interpretation of the Code is a question of law, and the Court's standard of review is de novo and scope of review is plenary. *Banfield v. Cortes*, 110 A.3d 155, 166 (Pa. 2015.)

[5] DNC Services Corporation/Democratic National Committee, an appellee here, filed an application for extraordinary relief with the Supreme Court requesting the Supreme Court exercise its extraordinary jurisdiction powers over this appeal, but this application was denied by the Supreme Court by order dated November 24, 2020.

This Court is bound by the Supreme Court's decision,[6] and, applying that decision, there was no error in common pleas rejecting Appellant's challenges to Categories 1 through 3.[7]

The sole remaining issue before this Court is whether the ballots identified in Category 5, which are those ballots that were enclosed, but did not appear to be "sealed," in the secrecy envelope, must be invalidated under the Code. In rejecting Appellant's challenge to this category, common pleas explained that the ballots at issue were not "naked ballots," which would have been invalid pursuant to the Supreme Court's decision in *Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345, 378-80 (Pa. 2020). Common pleas held that "[t]here is no factual evidence that supports a conclusion that the envelopes had not been sealed by the elector prior to" the time of canvassing. (Common pleas op. at 20.) Instead, common pleas pointed to the parties' stipulation that "[w]ith respect to Category 5 . . . [the Board] could not determine whether the [secrecy] envelopes were initially sealed by the elector but later became unsealed." (*Id.* (quoting Stip. ¶ 46).) Accordingly, common pleas found "there [was] no evidence that the electors failed to 'securely seal [the ballot] in the [secrecy] envelope,' as required by the . . . Code." (*Id.* (first and third alteration added).) It explained that "[t]he elector was provided the envelope by the government" and "[i]f the glue on the envelope failed[,] that would be the responsibility of the government." (*Id.*) Therefore, common pleas held "[t]here

---

[6] Notably, the Supreme Court referenced common pleas' decision in this matter and held that common pleas "appropriately applied th[e Supreme] Court's precedent" in affirming the counting of these ballots. *Philadelphia/Allegheny*, slip op. at 32-33 n.6.

[7] To the extent Appellant seeks to "incorporate" Equal Protection arguments into this case that were raised in other cases, Appellant did not raise such claims before common pleas and, therefore, the Court will not consider them. Pennsylvania Rule of Appellate Procedure 302(a), Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

6

[was] insufficient evidence to determine whether the specific language of the mandated law was violated" and "it would be an injustice to disenfranchise these voters when it cannot be shown that the ballots in question were not 'securely sealed' in the [secrecy] envelope prior to the canvassing of those ballots," particularly where "there ha[d] been no suggestion or evidence that the absence of a sealed inner envelope in anyway jeopardized the privacy of the ballot." (*Id.*)

Appellant, citing *Boockvar*, argues that the requirements of Sections 3146.6(a) and 3150.16(a) are mandatory, not directory. According to Appellant, the Supreme Court has recognized that these requirements of the Code "are necessary for the preservation of secrecy and the sanctity of the ballot and must therefore be observed -- particularly where . . . they are designed to reduce fraud." *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d 1223, 1234 (Pa. 2004) (*Appeal of Pierce*). Therefore, Appellant argues, "absentee or mail-in ballots cast in contravention of the requirements of [Section 3146.6(a) and 3150.16(a) of the Code] are 'void' and cannot be counted." (Appellant's Br. at 23 (quoting *Appeal of Pierce*, 843 A.2d at 1234).)

The Board, as an appellee, argues that the deficiencies set forth in Category 5 are minor technical deficiencies related to the sealing of the secrecy envelopes and should be treated like other minor mistakes that do not require that the ballots be stricken. The Board maintains that there is no evidence that these 69 electors did not comply with the statutory language or that the secrecy of the ballots was in any way compromised. *Boockvar*, the Board asserts, requires that the ballots must be **enclosed** in the secrecy envelopes or the ballots should be disqualified. 238 A.3d at 380. Here, there is no dispute that the ballots were fully enclosed in the secrecy envelopes, consistent with the holding in *Boockvar*, and, as a factual matter, there

7

could be no determination as to whether the secrecy envelopes were sealed by the electors and later became unsealed. Given that the Court cannot tell whether the electors made errors in casting their ballots, and the lack of any allegation of fraud, the Board argues there is no compelling reason to disenfranchise these electors. *Appeal of James*, 105 A.2d 64, 66 (Pa. 1954).

Appellee DNC Services Corporation/Democratic National Committee (DNC) asserts there is no statutory requirement that the voter must seal the secrecy envelope in order for the ballot to be counted. Further, it asserts that the word "seal" is not a term of art and is not defined by the Code, is ambiguous and, per a dictionary definition, commonly means "to close" or "to make secure," and there is no allegation that the secrecy envelopes were not closed or the ballots were not secure in the envelopes. (DNC's Br. at 16-17.) DNC argues that noncompliance with this requirement does not justify disenfranchisement because, unlike with "naked ballots," the identity of the electors was protected, which is consistent with the statutory purpose.[8]

Relevant here are Sections 3146.6(a), 3150.16(a), and 3146.8(g)(4)(ii) and (iii) of the Code. Section 3146.6(a) states, in pertinent part:

> at any time after receiving an official absentee ballot, but on or before eight o'clock P.M. the day of the primary or election, **the elector shall**, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, **enclose and securely seal the same in the envelope on which is printed, stamped or endorsed "Official Election Ballot**. This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election

---

[8] DNC argues this Court does not have jurisdiction to consider this matter; however, our Supreme Court's order denying DNC's request for that Court to exercise its powers of extraordinary jurisdiction confirms this Court's jurisdiction.

8

district of the elector. The elector shall then fill out, date and sign the declaration printed on such envelope. Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

25 P.S. § 3146.6(a) (emphasis added). Section 3150.16(a) contains the nearly identical statement that "**the mail-in elector shall**, in secret, proceed to mark the ballot . . . and then fold the ballot, **enclose and securely seal the same in the envelope** on which is printed, stamped or endorsed 'Official Election Ballot'" and "[t]his envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector." 25 P.S. § 3150.16(a) (emphasis added).

Section 3146.8(g)(4)(ii) and (iii), governing "Canvassing of official absentee ballots and mail-in ballots," specifies that

> (4) All absentee ballots which have not been challenged under section 1302.2(c) and all mail-in ballots which have not been challenged under section 1302.2-D(a)(2) and that have been verified under paragraph (3) shall be counted and included with the returns of the applicable election district as follows:
> 
> . . . .
> (ii) If any of the envelopes on which are printed, stamped or endorsed the words "Official Election Ballot" contain any text, mark or symbol which reveals the identity of the elector, the elector's political affiliation or the elector's candidate preference, the envelopes and the ballots contained therein shall be set aside and declared void.
> 
> (iii) **The county board shall then break the seals of such envelopes, remove the ballots and count, compute and tally the votes**.

25 P.S. § 3146.8(g)(4)(ii), (iii) (emphasis added).

9

The parties present three legal interpretive approaches to whether these 69 ballots were properly accepted by the Board when they were enclosed, but not sealed, in the secrecy envelope at the time of canvassing. Appellant argues this requirement is mandatory and allows for **no** exception. The Board and DNC argue that this requirement is directory and noncompliance with that requirement is a minor defect that should be excused. The Board alternatively argues, in accordance with common pleas' reasoning, that as a factual matter, a violation of this requirement by the electors has not been established, and, in the absence of compelling reasons, such as allegations of fraud or infringement on the electors' secrecy, the electors should not be disenfranchised.

"[T]he polestar of statutory construction is to determine the intent of the General Assembly." *Appeal of Pierce*, 843 A.2d at 1230. Generally, "the best indication of the legislative intent is the plain language of a statute." *Id.* (citation omitted). In construing that language, "[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage . . . ." *Id.* (citation omitted). The Court is mindful that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* (citation omitted). It is only when the words of the statute "are not explicit" that the Court may then "resort to other considerations, such as the statute's perceived 'purpose,' in order to ascertain legislative intent." *Id.* (citation omitted). The Court is likewise mindful that, as our Supreme Court has explained, "all things being equal, the [Code] will be construed liberally in favor of the right to vote but, at the same time, we cannot ignore the clear mandates of the . . . Code." *Id.* at 1231.

The operative provisions at issue here involve the statutory direction that "the elector shall . . . fold the ballot, **enclose and securely seal** the same in the envelope on which is printed, stamped or endorsed 'Official Election Ballot.'" 25 P.S. §§ 3146.6(a), 3150.16(a) (emphasis added). At canvassing, "[t]he county board shall then **break the seals** of such envelopes, remove the ballots and count . . . ." 25 P.S. § 3146.8(g)(4)(iii) (emphasis added).

The provisions that are at issue here are contained within sections that our Supreme Court has found to contain both mandatory and directory provisions. However, particularly applicable here, the Supreme Court in *Boockvar* held that "the secrecy provision language in Section 3150.16(a) is **mandatory** and the mail-in elector's failure to comply with such requisite by enclosing the ballot in the secrecy envelope renders the ballot invalid." *Boockvar*, 238 A.3d at 380 (emphasis added). In *Boockvar*, our Supreme Court considered whether county boards of election should be required to "clothe and count naked ballots," that is, place ballots that were returned to the county board without the secrecy envelopes into an envelope and count them. 238 A.3d at 374. As here, the Supreme Court was presented with conflicting assertions that this requirement was directory or mandatory. After examining the statutory text, the Court concluded that the legislative intent was for the "**secrecy envelope provision**" to be mandatory, citing article VII, section 4 of the Pennsylvania Constitution, providing that "secrecy in voting shall be preserved," PA. CONST. art. VII, § 4, and Section 3146.8(g)(4)(ii). The Supreme Court explained that the two statutory provisions, dealing with the same subject, "must be read *in pari materia*." *Boockvar*, 238 A.3d at 378. Based on that statutory language, the Supreme Court held that it was clear that the legislature intended "that, during the collection and canvassing processes, when the outer envelope in which the ballot

arrived is unsealed and **the sealed ballot** removed, it should not be readily apparent who the elector is, with what party [the elector] affiliates, or for whom the elector has voted." *Id.* (emphasis added). Per the Court, "[t]he secrecy envelope properly unmarked **and sealed** ensures that result, unless it is marked with identifying information, in which case that goal is compromised" and that "[t]he omission of a secrecy envelope defeats this intention." *Id.* at 378, 380 (emphasis added). The Supreme Court in *Boockvar* found the matter analogous to the issue in *Appeal of Pierce*, where there was a challenge to absentee ballots that were delivered to the county board of election by third persons in violation of the Code's "in-person" delivery requirement. *Id.* at 379. In *Appeal of Pierce*, the Supreme Court held that the "so-called technicalities of the . . . Code," such as the requirement that an elector personally deliver the elector's absentee ballot, "are necessary for the preservation of secrecy and the sanctity of the ballot and must therefore be observed – particularly where, as here, they are designed to reduce fraud." 843 A.2d at 1234. Therefore, the Court in that case, found that the in-person delivery requirement was mandatory and the absentee ballots delivered in contravention of this mandatory provision were void. *Id.*

The Court recognizes that the unsealed envelopes here could be viewed as a less substantial noncompliance than an elector's failure to use the secrecy envelope, as the ballots here were actually enclosed in the secrecy envelope and then in the sealed outer envelope. However, the language relating to securely sealing the secrecy envelope is encompassed within the provision directing the use of the secrecy envelope, which the Supreme Court found mandatory in *Boockvar*. That the legislature intended the secrecy envelopes to remain sealed until the ballots are counted is further evidenced by the directive in Section 3146.8(g)(4)(iii) that "[t]he

12

county board **shall then break the seals of such envelopes**, remove the ballots and **count** . . . ." 25 P.S. § 3146.8(g)(4)(iii) (emphasis added). Such language, when read *in pari materia* with Sections 3146.6(a) and 3150.16(a), reflects that the legislature intended the secure sealing of the secrecy envelope to be mandatory. *Boockvar*, 238 A.3d at 378. Accordingly, Appellant's argument that this directive is mandatory such that an elector's noncompliance results in a ballot that is not valid is supported by the statutory language and *Boockvar*.

The parties stipulated that these challenged ballots were "unsealed" in the secrecy envelopes when canvassing of the ballots was to begin. The text of the Code unambiguously states that the elector "shall . . . enclose and securely seal the [ballot] in the envelope . . . ," 25 P.S. §§ 3146.6(a), 3150.16(a), and that, at canvassing, "[t]he county board shall then break the seals of such envelopes, remove the ballots and count," 25 P.S. § 3146.8(g)(4)(iii). The legislature did not merely require the envelope to be sealed, but specified that it be **"securely"** sealed. 25 P.S. §§ 3146.6(a), 3150.16(a) (emphasis added). The Code unambiguously requires the envelopes remain sealed until the county board of elections can "break the seals" of the secrecy envelopes. 25 P.S. § 3146.8(g)(4)(iii). When the text of the statute is clear and unambiguous, those words best reflect the legislative intent, and "the letter of [the unambiguous language] is not to be disregarded under the pretext of pursuing its spirit." *Appeal of Pierce*, 843 A.2d at 1230 (citation omitted).

Justice Wecht recently in *Philadelphia/Allegheny* highlighted that there are times a Court should give prospective application to a ruling under the Code. Slip op. at 17-18 (Wecht, J., concurring). Citing *In Appeal of Zentner*, 626 A.2d 146 (Pa.1993), as precedent, Justice Wecht concurred in the decision of the Court to count the ballots that were undated, and would prospectively apply a more strict

interpretation of the statute favored by three other justices. As did Justice Wecht, this Court recognizes the tremendous challenges presented by the massive expansion of mail-in voting, and the lack of precedential rulings on the requirement of a "securely sealed" secrecy envelope. Moreover, the parties stipulated in this case reveals that the instructions on the outer envelope for the elector stated only that the ballot should be placed in the secrecy envelope and did not specify that the envelope needed to be securely sealed or the consequences of failing to strictly adhere to that requirement. *See Philadelphia/Allegheny*, slip op. at 20 (Wecht, J., concurring). Moreover, in this case, it cannot be established that the electors did not seal the secrecy envelope. Importantly, the Court must point out that there are absolutely **no allegations** of any fraud, impropriety, misconduct, or undue influence, that anyone voted who was not eligible to vote, or that the secrecy of the ballots cast was jeopardized. For these reasons, the decision of the Court will be applied prospectively, and the 69 ballots will not be invalidated.

    Accordingly, common pleas' Order is affirmed.

_____
**RENÉE COHN JUBELIRER,** Judge

### IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| In Re: Canvass of Absentee and/or Mail-in Ballots of November 3, 2020 General Election | : : : : |
| v. | : No. 1191 C.D. 2020 |
| Appeal of: Donald J. Trump for President, Inc. | : : : |

## **O R D E R**

**NOW**, November 25, 2020, the Order of the Court of Common Pleas of Bucks County, entered in the above-captioned matter, is **AFFIRMED** in accordance with the foregoing opinion.

 

 

**RENÉE COHN JUBELIRER,** Judge

<span style="color:red">Order Exit
11/25/2020</span>