# EXHIBIT I

# ATTISANO & ROMANO

**429 4th Avenue**
**Suite 1705**
**Pittsburgh, PA 15219**
**Phone: 412-336-8622**
**Fax: 412-336-8629**
**WWW.ARLAWPITT.COM**

## VIA EMAIL & HAND DELIVERY

### November 30, 2020

Honorable Douglas Chew, Chair Commissioner Westmoreland County
Honorable Sean Kertes, Vice Chair Commissioner Westmoreland County
Honorable Gina Cerilli, Secretary Commissioner Westmoreland County
Melissa Guiddy, Esquire – Solicitor Westmoreland County

**Re:    November 30, 2020 Board of Elections Meeting**

Dear Commissioners,

As you know, we represent Senator James Brewster and the Pennsylvania Democratic Party ("PDP") in the various matters involving the Boards of Election in both Westmoreland County and Allegheny County, and the litigation associated with decisions of those boards. We are writing to you today in anticipation of this afternoon's meeting of the Westmoreland County Board of Elections ("Board"). Specifically, we are asking that the Board agree to count a set of mail in ballots in which the registered voters filled out the Declaration on the outside envelope containing their ballots, but omitted to fill in the date such Declaration was prepared. We wanted to provide the Board with an update of litigation relating to that particular issue in support of our position that these particular voters should not be disenfranchised and that the Board should vote to accept and count such ballots.

This exact category of ballots has been the subject of litigation that commenced in the Allegheny County Board of Elections ("Allegheny Board"), which decided, on November 14, 2020, to count the votes of 2,349 individual voters who had completed the Declaration on the outside envelope containing their ballots, but had not written in the date of such Declaration. The Allegheny Board was able to confirm that these ballots were timely received through the use of a time-stamp and in tracking the receipt of such ballots in the SURE System. Candidate Ziccarelli appealed that decision to the Court of Common Pleas of Allegheny County ("CCP Allegheny"), which affirmed the decision of the Allegheny Board.[1] Candidate Ziccarelli appealed that decision to the Commonwealth Court, which, by a 2-1 vote, reversed the decision of the CCP Allegheny. Upon an appeal of Senator Brewster and the PDP, the Pennsylvania Supreme Court, on November 23, 2020, in *In Re: 2,349 Ballots In The 2020 General Election* (No. 29 WAP 2020) reversed the Commonwealth Court and issued the following order:

> The decision of the Commonwealth Court is hereby reversed and the decision of the Allegheny County Court of Common Pleas is reinstated. Justices Baer and Todd join the opinion. Justice Wecht concurs in the result and files a concurring

---

[1] *Ziccarelli v Allegheny BOE and PDP & James Brewster* (GD 20-011654) Opinion & Order attached as Appendix A.

1

# ATTISANO & ROMANO

429 4th Avenue
Suite 1705
Pittsburgh, PA 15219
Phone: 412-336-8622
Fax: 412-336-8629
WWW.ARLAWPITT.COM

and dissenting opinion. Justice Dougherty files a concurring and dissenting opinion in which Chief Justice Saylor and Justice Mundy join.[2]

Candidate Ziccarelli immediately filed with the Pennsylvania Supreme Court an Application for Reargument/Reconsideration, which the Court denied on November 25, 2020.[3]

Not content to accept the ruling of the highest court in the Commonwealth, and allow the votes of 2,349 registered voters to count, Candidate Ziccarelli filed a Complaint in the United States District Court on November 25th and also requested a Temporary Restraining Order ("TRO"). *See Nicole Ziccarelli v Allegheny County BOE, et. al.* (No. 20-1831). Late that afternoon, the Honorable Nicholas Ranjan conducted a hearing on the TRO. Candidate Ziccarelli asserted that, although the Allegheny Board was going to count the 2,349 ballots that were the subject of Pennsylvania Supreme Court decision, the fact that the Westmoreland Board had not counted the same category of ballots raised federal constitutional questions. Candidate Ziccarelli specifically asked the court to block the Allegheny Board from counting these votes, despite the order of the Pennsylvania Supreme Court. However, Judge Ranjan denied the request of Candidate Ziccarelli to "level down" by not counting the 2,349 ballots in Allegheny County, and suggested that the appropriate response would be to "level up" and count the votes in Westmoreland County, citing the recent decision of Judge Matthew Brann in *Donald J. Trump for President v. Boockvar*, Case No 4:20-cv-2078, --- F.Supp.3d ----, 2020 WL 6821992 at *12 (M.D. Pa. Nov. 21, 2020) ("When remedying an equal-protection violation, a court may either "level up" or "level down." This means that a court may either extend a benefit to one that has been wrongfully denied it, thus leveling up and bringing that person on par with others who already enjoy the right, or a court may level down by withdrawing the benefit from those who currently possess it. Generally, the preferred rule in a typical case is to extend favorable treatment and to level up."), aff'd No. 20-3371, --- Fed. Appx. ---- (3d Cir. Nov. 27, 2020) (Slip Op., Bibas, J.). *See also* Ranjan Tr. 29: 3-30:6 (analyzing *DJT v. Boockvar*). We have attached the transcript of the TRO hearing before Judge Ranjan as Appendix D.

As the Board is aware, it has not yet ruled on the treatment of this particular category of votes, where eligible voters omitted the date on the Declaration. On or about November 13, 2020, Commissioner Cerilli made a motion to count such ballots, but the motion did not receive a second and thus was tabled. In view of the ruling of the Pennsylvania Supreme Court[4] and the subsequent decision of Judge Ranjan specifically denying Candidate Ziccarelli's efforts to block the counting of these 2,349 ballots, it seems appropriate that the Westmoreland Board follow the Pennsylvania Supreme Court and Judge Ranjan's guidance and "level up" by counting those ballots in

---

[2] The Order for *In Re: 2,349 Ballots In The General Election* (29 WAP 2020) is attached as Appendix B.

[3] The Order denying candidate Ziccarelli's Application for Reargument/Reconsideration is attached as Appendix C.

[4] The PA Supreme Court also consolidated the Allegheny County "no date" case with the Philadelphia County "no date" case and referenced Montgomery County and others in footnotes of the Opinion, which made it obvious that the principle to count otherwise valid and timely "no date" mail in ballots applies to all counting still occurring throughout the state.

# ATTISANO & ROMANO

429 4th Avenue
Suite 1705
Pittsburgh, PA 15219
Phone: 412-336-8622
Fax: 412-336-8629
WWW.ARLAWPITT.COM

Westmoreland County, like the 2,349 ballots cast in Allegheny County, in which a voter simply omitted the date on the Declaration.

Senator Brewster and the Pennsylvania Democratic Party urge this Board to count such ballots and request that Candidate Ziccarelli join us in this request to "level up" and treat these ballots as they are being treated in Allegheny County and throughout the Commonwealth. We suspect that federal courts would look unfavorably upon a candidate who, through the calculated disenfranchisement of a select group of voters, sought to create a contrived federal constitutional claim. Judge Ranjan has indicated that differing decisions of the Allegheny Board and this Board would not create such an issue. Certainly, with the benefit of the decisions of the Pennsylvania Supreme Court and the United States District Court, the decision to count such ballots is compelling, and, most importantly, fair.

Thank you for your consideration.

Sincerely,                                          Sincerely,

*/s/ James Antoniono*                              */s/ Marco S. Attisano*

James Antoniono                                    Marco S. Attisano

Enclosed:
*Ziccarelli v Allegheny BOE and PDP & James Brewster* (GD 20-011654) Opinion & Order attached as Appendix A.

PA Supreme Court Order for *In Re: 2,349 Ballots In The General Election* (29 WAP 2020) is attached as Appendix B.

PA Supreme Court Order denying candidate Ziccarelli's Application for Reargument/Reconsideration is attached as Appendix C.

Transcript for hearing on request for a Temporary Restraining Order ("TRO") before Judge Ranjan is attached as Appendix D. *See Nicole Ziccarelli v Allegheny County BOE, et. al.* (No. 20-1831).

CC:    James Gorman, Esquire

3

# APPENDIX A

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CIVIL DIVISION

NICOLE ZICCARELLI,

      Petitioner,

v.

ALLEGHENY COUNTY BOARD OF
ELECTIONS,

      Respondent,

and

PENNSYLVANIA DEMOCRATIC PARTY
AND JAMES BREWSTER,

      Intervenors.

No.  GD 20-011654

MEMORANDUM AND ORDER OF COURT

Honorable Joseph M. James

Copies Sent To:

Matthew H. Haverstick, Esquire
Andrew F. Szefi, Esquire
Allan J. Opsitnick, Esquire
Michael J. Healey, Esquire

2020 NOV 18  PH 12: 25
DEPT. OF ...
CIVIL ... SION
ALLEGHENY COUNTY PA

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CIVIL DIVISION

NICOLE ZICCARELLI,

      Petitioner,

v.

ALLEGHENY COUNTY BOARD OF
ELECTIONS,

      Respondent,

and

PENNSYLVANIA DEMOCRATIC
PARTY AND JAMES BREWSTER,

      Intervenors.

No.   GD 20-011654

## MEMORANDUM AND ORDER OF COURT

James, J.

November 18, 2020

Petitioner Nicole Ziccarelli, candidate for the Senate of Pennsylvania from the 45th

Senatorial District, filed a Petition for Review of Decision by the Respondent Allegheny

County Board of Elections ("the Board") on November 12, 2020, seeking to invalidate

2,349 mail-in ballots cast by voters in the November 3, 2020 General Election. Petitioner seeks review of the Board's decision to overrule Petitioner's objection to count these ballots. Petitioner alleges that these ballots were cast in violation of the Election Code because they do not contain a date penned by the elector on the outer envelope. The Court conducted a hearing on November 17, 2020 via Microsoft Teams. The Pennsylvania Democratic Party and James Brewster moved to intervene in the action. Petitioner and the Board did not object and the motion was granted by the Court. Petitioner stated that she was not claiming any voter fraud regarding the challenged ballots. The Board argues that the failure to place a date on the outer envelope does not invalidate a ballot.

Section 3150.16(a) of the Election Code states:

> (a) General rule--At any time after receiving an official mail-in ballot, but on or before eight o'clock p.m. the day of the primary or election, the mail-in elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed "official election ballot." This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. The elector shall then fill out, date and sign the declaration printed on such envelope. Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

The Election Code Section 3146.8(g)(3) vests the Board with the duty of determining the sufficiency of the declaration of a mail-in ballot. If the Board determines that the declaration is sufficient, then the Board "shall provide a list of the names of electors whose absentee ballots or mail-in ballots are to be pre-canvassed or canvassed." Id. Any ballots cast by electors whose applications have been challenged are set aside

unopened, but all other ballots that have been verified under subsection (g)(3) shall be counted. 25 P.S. Section 3146.8(g)(4).

The Court agrees with the Board that the Section 3150.16(a) date provision is directory not mandatory. Specifically, the use of the word "shall" does not make a statutory phrase mandatory. It is well settled Pennsylvania law that election laws should be construed liberally in favor of voters, and that "[t]echnicalities should not be used to make the right of the voter insecure." Pennsylvania Democratic Party v. Boockvar, 238 A.3d 345, 373 (Pa. 2020) citing Appeal of James, 105 A.2d 64, 65-66 (Pa. 1954). "Ballots containing mere minor irregularities should only be stricken for compelling reasons." Shambach v. Bickhart, 845 A.2d 793, 798 (Pa. 2004).

The ballots at issue here are sufficient even without a voter supplied date. They were processed in the Statewide Uniform Registry of Electors ("SURE") system and timestamped when they were timely delivered to the Board on or before November 3, 2020. They were signed and have been otherwise properly completed by a qualified elector. In light of the fact that there is no fraud, a technical omission on an envelope should not render a ballot invalid. The lack of a written date on an otherwise qualified ballot is a minor technical defect that does not render it deficient. The Court finds that the Board properly overruled Petitioner's objections to the 2,349 challenged mail-in ballots. These ballots must be counted. The Petition for Review is denied and the Board's decision is affirmed.

*Joseph M. James*

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

NICOLE ZICCARELLI,                                    No.    GD 20-011654

        Petitioner,

v.

ALLEGHENY COUNTY BOARD OF
ELECTIONS,

        Respondent,

and

PENNSYLVANIA DEMOCRATIC
PARTY AND JAMES BREWSTER,

        Intervenors.

## ORDER OF COURT

And NOW, this 18th day of November 2020, upon consideration of the Petition For
Review In the Nature Of A Statutory Appeal filed by Nicole Ziccarelli, and any responses
thereto, it is hereby ORDERED that the Petitioner's appeal is dismissed and the decision
of the Board of Elections is affirmed.

BY THE COURT:

*Joseph M. James*

# APPENDIX B

You are logged on as: mattisano

# PACFile® - View Notification

 Navigate To

Initiate New Case                    Case Filing              Case Search              Dashboard

## Electronic service for case 29 WAP 2020

Service Date: 11/23/2020

Served By: Supreme Court Western District

Docket Number: 29 WAP 2020

Lead Case Caption: In Re: 2,349 Ballots in the 2020 General Election

Filing Type: Reversed/Reinstated

Filed Date: 11/23/2020

Filers: Donohue, Christine

Documents: CO-DO
MO
Judgment Copy - MO
CO-DO

## Comments

| Type | Comment |
|------|---------|
| Comments | The decision of the Commonwealth Court is hereby reversed and the decision of the Allegheny County Court of Common Pleas is reinstated. Justices Baer and Todd join the opinion. Justice Wecht concurs in the result and files a concurring and dissenting opinion. Justice Dougherty files a concurring and dissenting opinion in which Chief Justice Saylor and Justice Mundy join. |

# APPENDIX C

**[J-118F-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| IN RE: 2,349 BALLOTS IN THE 2020 GENERAL ELECTION | : | No. 29 WAP 2020 |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ALLEGHENY COUNTY BOARD OF ELECTIONS | : | |
| | : | |

## ORDER

**PER CURIAM**

      **AND NOW**, this 25th day of November, 2020, the Emergency Application for Reargument by Nicole Ziccarelli, filed on November 24, 2020, is hereby **DENIED**

      Chief Justice Saylor and Justice Mundy note their dissent.

# APPENDIX D

IN THE UNITED STATES DISTRICT COURT

OF WESTERN PENNSYLVANIA

NICOLE ZICCARELLI,                          CIVIL ACTION

              Plaintiff,                  No. 20-1831

       vs.

ALLEGHENY COUNTY BOARD OF
ELECTIONS, et al.,

              Defendants.

---

Transcript of TELEPHONIC MOTION HEARING held on
November 25, 2020
United States District Court, Pittsburgh, Pennsylvania
BEFORE:  HONORABLE J. NICHOLAS RANJAN, DISTRICT JUDGE

APPEARANCES:

For Plaintiff:                              Joshua J. Voss
                                            Kleinbard LLC
                                            115 State Street
                                            2nd Floor
                                            Harrisburg, PA 17101

                                            Matt Haverstick, Esq.
                                            Shohin Vance, Esq.
                                            James Gorman, Esq.
                                            Samantha Zimmer, Esq.

For Allegheny County Board
 Of Elections, et al.:                      Andrew F. Szefi
                                            Allegheny County Law
                                            Department
                                            445 Fort Pitt Boulevard
                                            Suite 300
                                            Pittsburgh, PA 15219

                                            Virginia Scott, Esq.
                                            Frances Liebenguth, Esq.

```
For Kathy Boockvar:              Michele D. Hangley
                                 Hangley Aronchick Segal
                                 Pudlin & Schiller
                                 One Logan Square
                                 27th Floor
                                 Philadelphia, PA 19103

                                 Keli Neary, Esq.
                                 Karen Romano, Esq.
                                 Rob Wiygul, Esq.

For PA Democratic Party and
  James Brewster:                Clifford Levine, Esq.
                                 Dentons Cohen & Grigsby,
                                 EQT Plaza, 625 Liberty Ave,
                                 Pittsburgh, PA 15222

                                 Lazar Palnick, Esq.
                                 Marco Attisano, Esq.


Court Reporter:                  Karen M. Earley, RDR-CRR
                                 Joseph F. Weis, Jr.
                                 U.S. Courthouse
                                 6260 U.S. Courthouse
                                 700 Grant Street
                                 Pittsburgh, PA 15219
                                 412-201-2660
```

Proceedings reported by mechanical stenography.
Transcript produced by computer-aided transcription.

```
1                      P R O C E E D I N G S
2      (November 25, 2020, 4:00 p.m.)
3                 (Whereupon, roll call was taken by the
4      Courtroom Deputy Clerk.)
5                 THE COURT:  Good afternoon, everybody.  This
6      is Judge Ranjan.
7                 We're here on a motion for a TRO.  The case is
8      Ziccarelli versus Allegheny County Board of Elections,
9      et al., Case No. 20-1831.
10                My understanding is that before I joined this
11     call, that all counsel were able to enter their
12     appearances for the record.
13                I do have a court reporter on the line but
14     just to make sure that I have at least the lead speaking
15     attorneys here on the line, do I have Mr. Voss for the
16     plaintiff?
17                MR. VOSS:  You do, Your Honor.  Thank you.
18                THE COURT:  All right.  Good afternoon.
19                Then for Allegheny County Board of Elections,
20     do I have Mr. Szefi?
21                MR. SZEFI:  Yes, Your Honor.
22                THE COURT:  Good afternoon.
23                Then for Secretary of State Boockvar, do I
24     have Ms. Hangley?
25                MS. HANGLEY:  Yes, Your Honor.  And, Your
```

4

1   Honor, I will be filing for pro hac vice.

2           THE COURT:  Okay.  Very good.  You are entered

3   regularly at this point.

4           Do I have anybody from Pennsylvania Democratic

5   Party and Mr. Brewster?

6           MR. LEVINE:  Yes, Your Honor.  This is Cliff

7   Levine.  I will be the primary speaker.

8           THE COURT:  Very good.

9           Ms. Hangley made a good point as to

10  pro hac vice motions.  In addition to her, there are

11  several others.  I think I saw for plaintiff's counsel

12  there are some pro hac vice motions that will be

13  forthcoming.  I would just ask all counsel file their

14  pro hac vice motions promptly after this hearing just so

15  we can make sure that I grant those and everybody can be

16  properly admitted, but I will permit the parties to

17  proceed without formally granting the pro hac vice

18  admissions at this point.

19          One other sort of housekeeping issue.  I don't

20  think Mr. Brewster and the Pennsylvania Democratic Party

21  are named defendants in this case.

22          Mr. Levine, do you intend to move for

23  intervention to intervene in this case?

24          MR. LEVINE:  Yes, we do.  We are preparing

25  those papers, Your Honor, but I can orally make that

1 | motion as well to intervene on behalf of Senator

2 | Brewster and the Party.

3 |         THE COURT:  Any objection to that?  My

4 | understanding of Rule 24 is that based on some other

5 | rulings I made, that both the Pennsylvania Democratic

6 | Party and Mr. Brewster will be eligible to intervene at

7 | least permissibly in this case.

8 |         Any objections to their intervention,

9 | Mr. Voss?

10 |         MR. VOSS:  At this time, we have no objection.

11 | That makes sense.

12 |         THE COURT:  Okay.  Mr. Szefi?

13 |         MR. SZEFI:  No, no objection, Your Honor.

14 |         THE COURT:  Thank you.

15 |         Ms. Hangley?

16 |         MS. HANGLEY:  No objection, Your Honor.

17 |         THE COURT:  All right.  Very good.

18 |         Mr. Levine, your oral motion is granted and so

19 | no need to file any papers.  At the conclusion of this

20 | hearing, I will enter an order that grants intervenor

21 | status to both the Pennsylvania Democratic Party as well

22 | as Mr. Brewster.

23 |         MR. LEVINE:  Thank you.

24 |         THE COURT:  So with respect to the motion for

25 | a TRO, before we get started, I will say for purposes of

1  the record and for all of you, I received the complaint.

2  I think the complaint was filed earlier today or earlier

3  this afternoon, along with -- it was a verified

4  complaint, along with a motion for TRO.  The case was

5  randomly assigned to me.

6        Since then, I reviewed the complaint and the

7  TRO motion.  I've also reviewed the Pennsylvania Supreme

8  Court decision from a couple days ago involving these

9  same 2,000 ballots and I'm also just generally familiar

10  with a lot of the underlying cases implicated by the

11  motion.

12        Prior to this call, I and my courtroom deputy

13  reached out to plaintiff's counsel to alert them to

14  schedule this call today at 4:00 p.m. and to alert all

15  defense counsel to be present.  So that's what brings us

16  to this point in time.

17        I guess the only other data point that I would

18  ask counsel, but I think I'm generally aware of because

19  I was online and I saw this in the paper, it was that

20  the Commonwealth Court appears to have issued an

21  injunction that delayed or enjoined certification of the

22  votes for any down-ballot races which I presume would

23  include this particular race been Ms. Zicarelli and

24  Mr. Brewster.

25        In terms of how we want to proceed at this

1  point in time, I'm glad to first hear from Mr. Voss for

2  the plaintiff if you want to indicate how you want to

3  proceed.

4          I know that before this hearing, I was alerted

5  you may have a witness as well, and I'm fine hearing

6  evidence from everyone today.  It didn't strike me from

7  reading the papers that this hearing required much

8  factual development.  So I primarily wanted to hear oral

9  argument from the parties, but if anyone wanted to put

10 into evidence anything, I would be glad to hear it

11 either through witness testimony or it may be more

12 efficient to do so by proffer.

13         I just heard a beep.  I would like to make

14 sure I still have everybody on the line.

15         Mr. Voss, do I still have you?

16         MR. VOSS:  Yes, Your Honor.

17         THE COURT:  Mr. Szefi?

18         MR. SZEFI:  Yes.

19         THE COURT:  Ms. Hangley?

20         MS. HANGLEY:  I'm still here, Your Honor.

21         THE COURT:  Mr. Levine?

22         MR. LEVINE:  I'm here, Your Honor.

23         THE COURT:  Okay.  So with that, let's get

24 started.  Mr. Voss, do you want to proceed?

25         MR. VOSS:  Yes, Your Honor.

1          Thank you for making time for us this
2   afternoon on what we think is a pretty important issue.
3          We do have witnesses available but I suspect
4   much of what I'm about to present by way of factual
5   background is going to be undisputed, so in the interest
6   of time, let me say the best I can with the most
7   accurate information I am able to present to the Court
8   as evidence and we can verify it with witness testimony,
9   but I'll note that our complaint is verified.
10         Some of this information is state of the art
11  and has happened even since we filed the complaint at
12  one o'clock.
13         Let me start with this.  This case concerns
14  the election for the 45th Senatorial District in the
15  Pennsylvania Senate.  It's a district that covers
16  Allegheny in part and Westmoreland County in part.
17         As of five minutes before this call with
18  132,279 votes having been cast, there is a difference
19  between Candidate Brewster and Candidate Ziccarelli of
20  just 89 votes.  I would add to that that I'm led to
21  believe Westmoreland is going to change those totals at
22  some point today, so the actual delta would be somewhere
23  closer to 73 votes.  It's not exactly 73 votes.  So
24  there is a tight race, to say the least.
25         THE COURT:  Mr. Voss, can I just interrupt you

1   very briefly.

2            With respect to Westmoreland changing their

3   votes, are they intending to change the votes, in the

4   sense, are they going to count certain of the quote,

5   unquote, defective ballots, at least those that didn't

6   have the date or address or name on the declaration

7   consistent with the Pennsylvania Supreme Court's recent

8   decision?

9            MR. VOSS:  My understanding is that issue

10  before the Supreme Court decision was presented, the

11  Board considered it.  It did not draw a majority

12  position to adopt those votes or to count those votes.

13  So based on that, that decision by the Board of

14  Elections of Westmoreland County some many days ago,

15  it's my present understanding that those 343 undated

16  mail-in ballots in Westmoreland will not be counted.

17           THE COURT:  Okay.  When you mentioned the

18  change from 89 to 73, does that deal with some other

19  aspect of the change in count, not a decision that

20  Westmoreland County is going to now count the 343 votes?

21           MR. VOSS:  Correct.  I believe it has to do

22  with some provisional ballots that were tallied last

23  night and just having made their way through the

24  Department of State's website, at least as of, again,

25  five minutes before this call.

1    It's my understanding they have nothing to do

2    with the acute issue that's before the Court at the

3    moment.

4    THE COURT:  Okay.  Thank you.

5    MR. VOSS:  As Your Honor pointed out, some of

6    the issues are in our complaint.  These are the critical

7    numbers.  343 mail-in ballots, mailed in under Act 77 of

8    2019 were received in Westmoreland, voter declaration

9    that was signed but undated.  Signed but undated, 343.

10   The Allegheny County Board of Elections

11   received 2,349 signed but undated ballots.  Again,

12   signed but undated.

13   Two sets of identical ballots, two counties.

14   Initially, the Board voted in Allegheny County

15   to canvass those ballots which Candidate Ziccarelli

16   opposed.  We filed a petition called a review in Common

17   Pleas, lost, and filed an immediate appeal to the

18   Commonwealth Court, which in a decision two to one

19   agreed with us that voter declarations under Act 77

20   shall be signed and dated.  It's mandatory.  It is not

21   directory and, therefore, it renders the ballot invalid

22   and cannot be counted.

23   That, of course, was promptly appealed to the

24   Pennsylvania Supreme Court and here is where things get

25   interesting and, hopefully, I can sort of separate out

1   what you just read this afternoon, having participated

2   in the case and had a little bit more time to digest the

3   opinions.

4          I would like to think of the Pennsylvania

5   Supreme Court's decision in this case as sort of a

6   three-one-three opinion.

7          So we have three justices who didn't agree

8   with us at all and would have said these ballots should

9   be counted.

10         We had three who agreed with us exactly and

11  said that the dating is absolutely required by the

12  statute.  That is what makes a valid vote under the

13  Election Code and, therefore, the absence of a date

14  renders them invalid and they cannot be canvassed.

15         The vote in the middle was from Justice Wecht

16  is what swings us this way.  He agreed with us that that

17  is a mandatory provision and that if you do not have a

18  dated declaration, your vote should not be counted.  The

19  reason we are before this Court is he took a procedural

20  turn at that point and said, but I am only going to

21  apply this prospectively.

22         So, in effect, the three justices who didn't

23  agree with us threw a block of four votes to reverse the

24  Commonwealth Court notwithstanding the block of four

25  justices who agreed with us on the merits.

1          So I'm comfortable representing to the Court

2     that the law in the Commonwealth of Pennsylvania as it

3     stands right now according to our highest court is a

4     mail-in ballot without a dated declaration is invalid.

5     That is the law in the Commonwealth and, indeed, Justice

6     Wecht even said in the next election, that is how I

7     shall rule.   That's beyond the count.

8          What we do with the procedural turn is why we

9     are here in court and we submit to you that that

10    procedural turn yielded at a minimum an equal protection

11    violation, if not a due process violation because now we

12    have similarly situated voters, those in Westmoreland

13    and those in Allegheny, who voted in the 45th precinct

14    receiving absolutely disparate and arbitrary treatment.

15         In the one county the votes are counted, I

16    submit to you inconsistent with the Election Code; and

17    in Westmoreland, they are not counted, absolutely

18    consistent with the Election Code.

19         To keep it real simple, this violates the

20    provision, sort of the analysis of equal protection in

21    *Bush v Gore*.

22         Why we are here with our Candidate Nicole

23    Ziccarelli is there is equal well-settled caselaw that

24    says when a violation of the Constitution occurs that

25    changes the outcome of the election, the candidate has

1   standing to pursue relief in federal court.

2           This decision by the Allegheny County Board of

3   Elections to accept these undated invalid ballots has

4   netted an additional 93 votes for Candidate Brewster.

5   Putting exactly a fine point on it, if these ballots are

6   not counted in the end, the next senator for the 45th

7   Senatorial District will be Nicole Ziccarelli by about

8   20 votes.  If these ballots are counted, it is likely

9   that Senator Brewster will remain the senator for the

10  45th.

11          So this issue is outcome determinative of the

12  election.  We are here because we believe that this

13  outcome is determinative choice by the Pennsylvania

14  Supreme Court under state law effective a clear

15  violation of the Constitution under the principle of at

16  least *Bush v Gore*.  That's why we're here.

17          THE COURT:  All right.  Thank you, Mr. Voss.

18  Let me just ask you a couple questions.

19          One, is are you familiar at all with Judge

20  Brann's recent decision from the Middle District of

21  Pennsylvania involving the Trump campaign after the

22  election?  I don't know if you had a chance to review

23  that at all.

24          MR. VOSS:  I had a chance to review portions

25  of the decision.  I have not read it in its entirety.

1          THE COURT:  I won't hold it against you.  I'll

2   tell you what he said and I remember when I read it,

3   thinking about it, and when I read your complaint,

4   thinking about it again which is this.  He said in

5   analyzing the equal protection claim, and I think he

6   said in *Heckler*, which is an old Supreme Court decision

7   on equal protection, he said when you have an equal

8   protection violation like, say, a *Bush v Gore* violation,

9   a court has basically two options.

10          One option is to level down, which is I think

11  what you are asking for here, in other words, to not

12  count the 2,000 votes from Allegheny County; or to level

13  up.  In this context, I think what leveling up would

14  mean to gain consistency between Westmoreland and

15  Allegheny County, would be to count the 340 ballots from

16  Westmoreland County and that would solve the equal

17  protection problem or at least provide a remedy for that

18  problem.

19          Do you have any response -- one, do you have

20  any response to that?  And, two, as a practical matter

21  from your client's perspective, is that going to change

22  the election?

23          I notice that Westmoreland County obviously

24  isn't named as a defendant here and I didn't know if the

25  reason they weren't named is because it wouldn't really

1    be outcome determinative if you only counted the three

2    hundred or so Westmoreland County ballots but continued

3    to count the two thousand or so Allegheny County

4    ballots.

5              MR. VOSS:  I would respond in this way.  Among

6    all else, the Election Code has a number of tight

7    procedural requirements that you have to meet.  One of

8    them is when the Board of Elections does something that

9    impacts your candidate, you're on a real tight

10   turnaround, mandatory turnaround to get your complaint

11   into the Common Pleas Court and object to whatever

12   action they took against you.

13             In Westmoreland County, these votes were

14   rightly, as it turns out, set aside, and I do not, at

15   least I'm not aware of any challenge to that action by

16   Candidate Brewster.  So, procedurally, to level up, as

17   you say, we would have to take Brewster's failure to

18   comport himself with the ministerial provisions of the

19   Election Code and give him the benefit of a second shot.

20   We preserved our objections since we went along and

21   pursued relief.

22             Again, I'll stress, and, frankly, this is why

23   Westmoreland is not here, we don't need Westmoreland

24   here because they did what the Election Code requires.

25   The Pennsylvania Supreme Court agrees with that, again,

1   under the three-one-three when you trace it out, they

2   agreed that is what a Board should do is set them aside.

3            To answer perhaps your second question,

4   Westmoreland is not here as a named defendant because we

5   don't need anything from them.  We believe they counted

6   the ballots as the Election Code requires.

7            THE COURT:  I guess I'll hear from the

8   defendants but I'm going to assume that they are going

9   to take a different position than the Pennsylvania

10  Supreme Court decision and say that really what

11  Allegheny County has done and what Secretary Boockvar

12  intends to do is fully comply with the Pennsylvania

13  Supreme Court decision which they would interpret as

14  requiring a count of those votes.

15           So assuming that to be the case, wouldn't

16  Westmoreland County effectively be violating that such

17  that a remedy in this case for sort of your *Bush v Gore*

18  equal protection argument would be to order Westmoreland

19  County to effectively count those three hundred or so

20  ballots?

21           MR. VOSS:  Well, I would respond to that, Your

22  Honor, requiring Westmoreland to do that which four

23  justices of the Supreme Court agreed is not permitted by

24  the Election Code doesn't solve the Constitutional

25  dilemma.

1          The Constitutional dilemma here right now is
2     two counties are doing it differently.  If we fix it so
3     they were both violating the Election Code, we would
4     still be here.  We would still be saying Justice
5     Wecht -- let me be clear on this.  The Allegheny County
6     Board of Elections is doing what Justice Wecht told them
7     to do.  I mean that's what the Court said to do.  I'm
8     not quarrelling with how they interpreted the order and
9     the order set aside the Commonwealth Court opinion and
10    restored the Common Pleas opinion.
11          I don't think we actually have a difference of
12    opinion on what the Court told them to do.
13          Our argument is you can't consistent with the
14    Constitution, the U.S. Constitution, say as a state this
15    is how you can't vote but this time around, we are going
16    to give you a free pass.
17          Let me underscore one point about what the
18    four justices availing and plotted out agreed with this
19    dating provision.  This is an anti-fraud provision.
20    Justice Brobson stated it clearly in the Commonwealth --
21    Judge Brobson stated it clearly in the Commonwealth
22    Court, and then on appeal, we again get ratification
23    this is an anti-fraud provision.
24          So the notion that you can count some ballots
25    that the highest court agrees are invalid according to

1   the anti-fraud provision, that strikes me as a

2   Constitutional violation itself.  So you send, from our

3   perspective, an unjust result over to Westmoreland

4   County.

5           I don't think that solves the problem.  I

6   don't think it complies with the Constitution.

7           THE COURT:  Thank you.

8           I'll hear from the defendants now.  I don't

9   know who wants to go first.  Mr. Szefi, Ms. Hangley, or

10  Mr. Levine.

11          MR. SZEFI:  This is Mr. Szefi, Your Honor.

12  I'm happy to go first.  I think I'll be very short.

13          THE COURT:  Thank you.

14          MR. SZEFI:  We agree with the analysis you

15  just stated.  That's exactly why the Board took the vote

16  it did today.  It was compelled to do so by the order of

17  the Supreme Court issued on Monday.

18          I would just add this.  I can represent to the

19  Court that the Board did vote today by a vote of two-one

20  to certify the undated ballots.  That has been done and

21  those amended totals have been forwarded to the

22  Department of State.

23          That is the only supplement I have to Your

24  Honor's summary of our position.  It's exactly right.

25  Their request for relief to the extent they are

1  preventing us from taking any more action is moot.

2  Allegheny County is done.  We have no more votes to

3  certify.  So we believe that relief is moot.

4          The issue now rests with the Department of

5  State, which, as you mentioned, has been enjoined from

6  taking further action at this point.

7          Again, I would just disagree as you stated

8  with Mr. Voss' view of the Supreme Court opinion.  It

9  was pretty clear that despite his reservations, Justice

10 Wecht concurred in the disposition of the cases, he said

11 directly in the opinion.  So there really is a 4-3

12 decision on the disposition and we followed that

13 decision in voting as the Board did today.

14          THE COURT:  Okay.  All right.  Thank you,

15 Mr. Szefi.  Appreciate it.

16          Ms. Hangley.

17          MS. HANGLEY:  Yes, Your Honor.

18          First, as a procedural point, the Commonwealth

19 has appealed from the Commonwealth Court ruling so that

20 automatic supersedeas is in effect for now.  That

21 doesn't affect anything practically but we believe the

22 stay is no longer in effect to the certification.

23          No. 2, the more that petitioner's counsel

24 takes issue with the Supreme Court's order, which to be

25 clear, allowed Allegheny County to count those ballots,

1    the more we see the Rooker-Feldman issue here.  The

2    petitioner is asking the Court to overrule the

3    Pennsylvania Supreme Court which is just not a role that

4    this Court is able to play.

5            The third point I would like to make is that

6    the Supreme Court opinion, especially Justice Wecht's

7    concurrence, is very -- it applies to ballots from

8    Philadelphia and Allegheny and it's very fact specific,

9    especially in Justice Wecht's concurrence and ruling

10   that those ballots should be counted despite his yield

11   as to the statute.

12           Westmoreland County was not a party there.

13   There is no evidence about Westmoreland.  The Court

14   didn't say anything about Westmoreland, and the reason

15   for that is that nobody appealed the Westmoreland County

16   decision.

17           Petitioners had every opportunity to do that

18   and didn't do it.  So for them to now come to this Court

19   and ask for relief that has to do with Westmoreland

20   County is something they're precluded from doing.

21           If they have an equal protection issue, which

22   we don't agree they do because of the fact specific

23   nature of the Supreme Court's ruling, but if they did,

24   the remedy would be to seek, as you say, to level up

25   from Westmoreland County, not to ask Allegheny County to

1    level down, which creates any number of additional

2    Constitutional violations for all those people whose

3    ballots the Pennsylvania Supreme Court has ordered to be

4    counted.

5             THE COURT:  Okay.  Thank you.  I think I

6    understand the argument.

7             Mr. Levine.

8             MR. LEVINE:  Yes.  Thank you, Your Honor.

9    Cliff Levine on behalf of Senator Brewster and the

10   Pennsylvania Democratic Party.

11            Let me just jump right in.  No. 1, just to be

12   clear, the decision -- there is an order, a court order.

13   The Pennsylvania Supreme Court issued an order that said

14   the decision of the Commonwealth Court is hereby

15   reversed and the decision of the Allegheny County Court

16   of Common Pleas is reinstated.

17            So although there were concurring opinions and

18   dissenting opinions, clearly Justice Wecht, who is

19   applying this prospectively and was ruling as the fourth

20   vote that the no-date ballots, as we call them, these

21   are the mail-in ballots with no date, they were to be

22   counted, and as Mr. Szefi indicated, Allegheny County

23   did do that.

24            So it's clearly a Rooker-Feldman argument.

25   There is some discussion about poor judgment, this or

1    that.   There is a court order and this is unassailable
2    under the Rooker-Feldman Doctrine and so we now live
3    with this fact the no-date ballots are supposed to be
4    counted.   That is sort of the end of the story there.
5            The good news which I want to clarify is that
6    Westmoreland County Board of Elections has never
7    actually ruled on the no-date ballots that it had, the
8    343 ballots.   There was a motion by one of the three
9    members in the Board of Elections to adopt or to vote
10   and to count these particular ballots and the motion
11   then was tabled, so there was no action.
12           Furthermore, the Westmoreland County Board of
13   Elections has a meeting that is scheduled on Monday at
14   three p.m. in which they are going to do their final
15   computations, the very one that Mr. Szefi and Allegheny
16   County just did earlier this afternoon.
17           So there has not been this final resolution of
18   the count of these no-date ballots and, therefore, they
19   can -- Mr. Voss can certainly ask the Board and present
20   the opinion of the Supreme Court and say this is what is
21   being done in Allegheny and as Ms. Hangley indicated, it
22   was broader and also, I think it's elevated with a case
23   from Philadelphia.
24           So we have statewide application to specific
25   counties, and I can tell Your Honor obviously the

1    Pennsylvania Democratic Party and Senator Brewster will

2    not object to a request to count the no-date ballots

3    because we think that the Supreme Court order compels

4    that.  So we are not going to object to that.  So they

5    can go into Westmoreland County and have that vote.

6            Just as Your Honor recognized in litigation a

7    hundred years ago, but in litigation considered back in

8    September or August, I guess, that would obviously

9    eliminate any protection claims because both counties

10   will be following the Supreme Court order and there will

11   be the same treatment here.

12           So there is a remedy.  There is equality.  I

13   think there is not an entitlement -- just to be clear as

14   to the Westmoreland case, I think one of the Board

15   members made the motion to count these and there was not

16   a second.  So that matter is open.

17           To the extent that they feel it's foreclosed,

18   then they could have certainly taken an appeal of that.

19   We have a system where under the *McCracken* case from the

20   Pennsylvania Supreme Court, we have a system of 67

21   different Boards of Elections, you have to take an

22   appeal within two days, as Mr. Voss noted.  The good

23   news is there was no ruling on those.  They are still

24   there.  They are uncounted.  We will not be objecting if

25   they want to count the no-date ballot cases.

1          So we think Rooker-Feldman says that you can't

2   re-examine what is a clear order to count these ballots,

3   there is no equal protection because both Allegheny

4   County and Westmoreland are in a position to count these

5   ballots, and if there was any issues, it would be

6   associated with the failure of Ms. Ziccarelli to take

7   whatever appeals she felt she didn't take from

8   Westmoreland.

9          So for that reason, I just think that not only

10  should the TRO be denied, clearly it should be dismissed

11  under your prior opinions and under the opinion of Judge

12  Brann.

13          THE COURT:  Okay.  Thank you.  Thank you,

14  Mr. Levine.

15          Mr. Voss, do you have any reply?  Here, I'll

16  give you the last word.

17          MR. VOSS:  Yes, I do.  Thank you, Your Honor.

18          In terms of Rooker-Feldman, I'm not asking you

19  to overrule the Supreme Court.  I actually agree with

20  the four justices who said this is a mandatory provision

21  of the Election Code and it must be followed.  It's an

22  anti-fraud provision.

23          So in that sense, I'm not asking you to do

24  anything with the majority holding.

25          In terms of the procedural outcome of that

1    case, well, that's why we're here.  Procedurally in

2    applying the Election Code as Justice Wecht's

3    determinative vote resulted, they violated the

4    Constitution.  That is an event that occurred on Monday

5    and that's why we're here in federal court to seek

6    remedy.

7              In terms of we could have or should appeal

8    from Westmoreland, I'm not sure why we would ask

9    Westmoreland County Board of Elections to violate the

10   Election Code and count votes that four justices on the

11   Pennsylvania Supreme Court just said are invalid and

12   shouldn't be counted under the Election Code.

13             Now I understand procedurally the fact is that

14   they were counted here.  I'm not going to perpetuate to

15   you what I submit is a Constitutional violation by

16   asking another Board to also violate the Constitution.

17   Frankly, that doesn't make a tremendous amount of sense.

18             What I didn't hear from any of the

19   presentations by counsel is anyone disagreeing with me

20   that four of them said this violates the Election Code.

21             MR. LEVINE:  This is -- I'm sorry.  I thought

22   you were asking a question.

23             THE COURT:  Mr. Voss, why don't you complete

24   that.  Then I can hear from whoever piped in there.

25             MR. LEVINE:  Cliff Levine.

1          MR. VOSS:  The final point I was going to

2     make, Your Honor, if there was a special election

3     tomorrow, name your race, and there were mail-in

4     ballots, under Justice Wecht's ruling, they would have

5     to be signed and dated.  That's the block that came out

6     of that Court, and that's why we are here.  I don't know

7     that equal process, equal protection and due process is

8     served by asking another Board to violate the Election

9     Code to count ballots that shouldn't be counted.  That's

10     what we have by way of response.

11          THE COURT:  Thank you, Mr. Voss.

12          Mr. Levine.

13          MR. LEVINE:  Thank you, Your Honor.

14          As I said I don't -- Mr. Voss was talking

15     about future elections and that was the discussion that

16     Justice Wecht had in his concurring opinion.

17          The Order of Court -- forget all the

18     opinions -- the Order of Court says the decision of the

19     Commonwealth Court is hereby reversed and the decision

20     of the Allegheny County Court of Common Pleas is

21     reinstated, which, of course, the decision of Judge

22     James was to count the 2,349 votes.

23          Now, there was no question about what Mr. Voss

24     understood that order to be because Mr. Voss filed an

25     application for reargument and reconsideration with the

1    Pennsylvania Supreme Court.  So he clearly understood

2    the implications.  The implications were that those

3    2,349 votes were to be counted and that the Court had

4    clearly ordered that because they filed an application

5    for reconsideration; and today, by a five-to-two vote,

6    the Pennsylvania Supreme Court denied the application

7    for reconsideration.

8            So we are not in some alternative universe

9    here.  We are in a situation where the Supreme Court

10    ordered the votes to count.  Westmoreland has not yet

11    decided that issue.  They have a meeting on Monday.  You

12    can go and ask them to count.

13            If he doesn't want them to count, that's his

14    choice.  He can represent his client however he wants to

15    do it, but clearly, he understood the implication of the

16    order because he asked for application of

17    reconsideration.

18            Thank you.

19            THE COURT:  Okay.  Thank you.

20            Anyone else before I -- I'm going to reach a

21    decision here because of the urgency.  Anyone else have

22    anything to say at this point?

23            MR. SZEFI:  No, Your Honor.

24            THE COURT:  Thank you.

25            MS. HANGLEY:  No, Your Honor.

1          THE COURT:  All right.  Very good.

2          Mr. Voss, anything final?

3          MR. VOSS:  No, Your Honor.  Thank you.

4          THE COURT:  All right.  Thank you.

5          Well, I appreciate everybody's very good oral

6   argument here today, and as I mentioned before, I

7   reviewed the verified complaint, as well as the

8   Pennsylvania Supreme Court decision, the motion for a

9   TRO; and based on my review of all of the materials and

10  the oral argument, as well as my review of the relevant

11  caselaw, I'm going to deny the motion for a TRO.  I

12  applied the familiar four factors of success on the

13  merits, irreparable harm, harm to third parties, and the

14  public interest.

15          And focusing on the equal protection clause

16  claim in the complaint, I do think that the plaintiffs

17  make a very strong claim under *Bush v Gore*.  I think

18  it's rare to have a quintessential *Bush v Gore* type

19  claim, but I believe one lies in this case based on the

20  State Supreme Court decision, as I understand it, has

21  led to essentially two potentially different counties

22  here, Allegheny County and Westmoreland County,

23  employing different standards by which to count certain

24  defective ballots.

25          So I do think this falls within *Bush v Gore*

1    which goes I think to a likelihood of success on the

2    merits to the plaintiff.

3         I do find that there would be irreparable harm

4    here, however, with respect to the other injunction

5    factors, harm to third parties and the public interest.

6    I'm mindful of the request that the plaintiff seeks here

7    which is to essentially level down so to speak.

8         As I mentioned, I reviewed Judge Brann's

9    recent decision from the Middle District of Pennsylvania

10   which relies on the Supreme Court decision in *Heckler*

11   and I believe an injunction in the context of a *Bush v.*

12   *Gore* situation like this one and presented by the facts

13   of this case would, if anything, require an injunction

14   that would level up, that is, that would require

15   Westmoreland County to count the three hundred and forty

16   or so ballots in a manner consistent with the

17   Pennsylvania Supreme Court's decision.

18        So, therefore, an injunction that levels down,

19   that does not count those votes, I find to be not

20   narrowly tailored to be in the public interest because

21   it would disenfranchise potentially thousands of voters

22   and cause harm to those individuals.  So for that

23   reason, I don't believe the equitable relief that the

24   plaintiffs seek here is warranted.

25        Furthermore, based on at least Mr. Levine's

1  representation on behalf of the Pennsylvania Democratic

2  Party and Senator Brewster, it appears that Westmoreland

3  County may, in fact, count the 340 votes which would, in

4  effect, remedy any kind of equal protection violation.

5  So that also counsels against granting an injunction

6  here.

7          I would note with respect to the second claim

8  in the complaint, although no party has raised it in

9  this call, it's a substantive due process claim, and I

10  don't find that would have a success on the merits at

11  this point in time. I don't view that compliance with

12  the Pennsylvania Supreme Court's decision shocks the

13  conscience or the procedures implemented by Allegheny

14  County and Secretary Boockvar to count those defective

15  ballots and certify those ballots would place a burden

16  on the right to vote.

17          To the contrary, not counting those ballots

18  would burden the right to vote, and the benefits to

19  counting those I think are obvious here in the sense of

20  franchising voters. So with respect to Count 2, I don't

21  believe any aspect of Count 2 would give rise to or

22  provide a basis for equitable relief on a motion for a

23  TRO.

24          As I said at the outset, I appreciate the

25  urgency of this request and the urgency particularly for

1  the candidates here to have this issue resolved and,

2  therefore, my decision here is going to be what I just

3  stated on the record.

4          I'm going to order a copy of this transcript

5  to be split equally between all parties here, including

6  the intervenors.  I'm going to issue an order after this

7  hearing that simply memorializes my denial of the motion

8  for a TRO for the reasons set forth on this record, such

9  that any party can immediately take an appeal to the

10  Third Circuit of this decision if they so elect to do

11  so.

12          That's my ruling in that respect.

13          Anything further from any of the parties for

14  the plaintiff, Mr. Voss?

15          MR. VOSS:  No.  Again, thank you, Your Honor,

16  for carving out some time for us right before the

17  holiday and we appreciate your reasons being stated

18  promptly and on the record.

19          THE COURT:  Absolutely.  Thank you.

20          Mr. Szefi?

21          MR. SZEFI:  No, Your Honor.  Thank you.

22          THE COURT:  Ms. Hangley?

23          MS. HANGLEY:  No, Your Honor.  Thank you.

24          THE COURT:  Mr. Levine?

25          MR. LEVINE:  Thank you, Your Honor.

1        Just one small point.  Is it possible to get a

2   copy of that transcript prior to Monday or Friday so

3   that it may become relevant at the Westmoreland County

4   Board of Elections meeting?

5        THE COURT:  I think that's a great idea and I

6   believe -- I don't want to speak for Ms. Earley our

7   court reporter.

8        THE COURT REPORTER:  You will have it Friday

9   morning.

10       THE COURT:  Thank you.  Thank you, everybody.

11  I appreciate you all jumping on this call and I want to

12  wish everybody a Happy Thanksgiving as well.

13       Take care.

14       (Whereupon, the above hearing concluded at

15  4:45 p.m.)

16                - - -

17       I hereby certify by my original signature

18  herein, that the foregoing is a correct transcript, to

19  the best of my ability, from the record of proceedings

20  in the above-entitled matter.

21

22            S/ Karen M. Earley

23               Karen M. Earley

24               Certified Realtime Reporter

25