**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

NICOLE ZICCARELLI,
                          *Plaintiff,*

v.

THE ALLEGHENY COUNTY BOARD
OF ELECTIONS, *et al.,*
                          *Defendants.*

Case No. 2:20-cv-01831-NR

**AMICUS BRIEF OF LEGISLATIVE LEADERS IN SUPPORT OF PLAINTIFF'S
AMENDED COMPLAINT**

**INTEREST OF AMICI CURIAE[1]**

Senator Jake Corman, President Pro Tempore of the Pennsylvania Senate; Kim Ward, Majority Leader of the Pennsylvania Senate; Bryan Cutler, Speaker of the Pennsylvania House of Representatives; and Kerry Benninghoff, Majority Leader of the Pennsylvania House of Representatives, bring this brief as *Amici Curiae* in support of their authority as members of a state legislative body under the U.S. Constitution. The Pennsylvania Senate and the Pennsylvania House of Representatives together comprise the General Assembly of the Commonwealth of Pennsylvania (the "General Assembly"), which, as the state legislature of Pennsylvania, is given authority to prescribe the "Times, Places, and Manner of holding elections" by Article I, § 4, cl. 1 of the U.S. Constitution.

*Amici* present the following arguments in support of Plaintiff and respectfully request they be heard in support of the General Assembly's authority to enact election regulations pursuant to the U.S. Constitution's plain text. Because the issues raised in this action directly pertain to the General Assembly's power under the U.S. Constitution, *Amici* have a significant interest in this case.

---

[1] No party's counsel authored this brief in whole or in part, and no one other than *Amici* and their counsel contributed money to fund the brief's preparation or submission.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Elections Clause of Article I, § IV of the U.S. Constitution[2] delegates to state legislatures in the first instance, and Congress in the second, the authority to enact regulations for federal elections. As it pertains to the matter at hand, no county board of elections nor Commonwealth court has any delegation of power to enact or amend election laws.

Election laws and regulations are established prior to holding an election for a simple reason: if election rules are changed in the middle of an election, they can be adjusted to effectuate a partisan outcome—which is exactly what the Allegheny County Board of Elections and the Supreme Court of Pennsylvania did here. Through their procedural gerrymandering, Allegheny County and the Supreme Court of Pennsylvania made a kicked field goal worth five points, when their team was down by four, with no time left on the clock, in order to obtain their desired result.

Here, pursuant to the grant of authority under the Elections Clause, the General Assembly unambiguously mandated that mail-in ballots' envelopes must have the date on which the voter signed the voter declaration.[3] After all voters had cast their ballots, despite the plain reading of the date requirement and contrary to the pre-election guidance of the Secretary of the Commonwealth, Allegheny County decided that it would count ballots that were not properly dated. Further, the Supreme Court of Pennsylvania found that the date requirement was mandatory, but confusingly

---

[2] *Amici* recognize that the Elections Clause refers to establishing laws surrounding federal elections, and Plaintiff is a candidate for the General Assembly. However, when both state and federal elections are unified under the same election process and ballot, the Elections Clause equally applies to the laws that govern both state and federal elections—such is the case in Pennsylvania where both state and federal candidates appear on the mail-in ballots in question. *See Welker v. Clarke*, 239 F.3d 596, 598-99 (3d Cir. 2001), *superseded on other grounds*, (the Pennsylvania Legislature created a single, unified electorate for both state and federal elections).

[3] The requirement in question serves a variety of important election administration purposes: "[T]he date on the ballot envelope provides proof of when the 'elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at a polling place. The presence of the date also establishes a point in time against which to measure the elector's eligibility to cast the ballot[.]' The date also ensures the elector completed the ballot within the proper time frame and prevents the tabulation of potentially fraudulent back-dated votes." *In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, No. 29 WAP 2020, 2020 Pa. LEXIS 5989, at *74-75 (Pa. Nov. 23, 2020) (Dougherty, J., concurring and dissenting) (*quoting In re 2,349 Ballots in the 2020 Gen. Election*, 1162 C.D. 2020, 2020 Pa. Commw. Unpub. LEXIS 560, at *16 (Pa. Commw. Ct. Nov. 19, 2020) (memorandum)).

determined that they would relax the unambiguous law for this election only.[4] The Allegheny County Board of Elections, as aided by the Supreme Court of Pennsylvania, clearly acted outside the confines of the Elections Clause of Article I, § IV of the U.S. Constitution and took it upon themselves to unconstitutionally determine the "manner" of elections.

Finally, the discussion surrounding leveling-up versus leveling-down misses the mark because there exists no constitutional or fundamental right to a mail-in ballot. Just as a potential driver must first obtain a driver's license in order to have the privilege of driving a car, if voters want to have the privilege of voting by mail, they too must abide by the prescribed laws—which include providing the date on which they sign the voter declaration. However, in the event leveling-up or leveling-down is applicable, the only proper remedy would be to level-down, abide by the unambiguous intent of the General Assembly, and demand that voters place the required date on their mail-in ballots.

## ARGUMENT

I.     **The Allegheny County Board of Elections, as Aided by the Pennsylvania Supreme Court, Exceeded Its Authority Because the General Assembly Has Exclusive Authority Over Election Regulations.**

     A.     **The Allegheny County Board of Elections and the Pennsylvania Supreme Court Violated the Elections Clause of the United States Constitution.**

The Constitution delegates the authority to regulate the times, places, and manner of elections to the legislatures of the fifty states in the first instance and to Congress in the second. U.S. Const. art. I, § 4, cl. 1. State courts—as well as their federal counterparts—are wholly excluded. *See id.* The term "legislature" was "not one 'of uncertain meaning when incorporated into the Constitution'" and is not of uncertain meaning today. *Smiley v. Holm*, 285 U.S. 355, 365 (1932) (quoting *Hawke v. Smith*, 253 U.S. 221, 227 (1920)). The term "legislature" necessarily differentiates between itself and the "State" of which it is only a subpart. The plain text of the Elections Clause is clear: neither courts nor executive

---

[4] Justice Scalia aptly noted that judicial power is limited to "discerning what the law *is*, rather than decreeing . . .what it will *tomorrow* be." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 549 (1991) (Scalia, J., concurring) (emphasis in original).

personnel (including county boards of elections) have authority to usurp legislative decision-making and supplant their own in the area of elections. By empowering the legislature of the state to prescribe election rules, the Constitution denies that power to others.

The power to regulate and administer federal (and simultaneously state) elections is committed to "Congress and state legislatures—not courts."[5] *Coal. for Good Governance v. Raffensperger*, No. 1:20-cv-1677-TCB, 2020 U.S. Dist. LEXIS 86996, at *8-9 (N.D. Ga. May 14, 2020); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) ("The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches."). The Framers, through great deliberation and compromise, enacted the Elections Clause and purposefully granted the respective state "legislatures" authority to determine how to hold elections in their respective states. This authority was expressly withheld from the judicial and executive branches. *See Agre v. Wolf*, 284 F. Supp. 3d 591, 594-99 (E.D. Pa. 2018).

In deciding that the mandatory voter declaration date was not required, the Allegheny County Board of Elections, aided by the Supreme Court of Pennsylvania, usurped the General Assembly's authority, and it did so brazenly. Although the Supreme Court of Pennsylvania may have the final say on the substantive law of Pennsylvania, the Elections Clause is a direct delegation of authority to regulate the times, places, and manner of federal elections to the General Assembly's legislative process, subject to alteration by Congress alone, not any county board of elections or any court—state or federal. U.S. Const. Art. I, § 4.

Allowing this usurpation to stand would frustrate the Elections Clause's express delegation of authority to "the legislature." *Id.* Further, by disregarding the unambiguous law of the Commonwealth,

---

[5] While the authority to regulate congressional elections is conferred by the federal Constitution on the state legislatures via the Elections Clause, the states also retain plenary power to regulate state elections. *See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 407 (5th Cir. 2020); *Tashjian v. Republican Party*, 479 U.S. 208, 217 (1986).

Allegheny County and the Supreme Court of Pennsylvania created an equal protection problem where "each of the counties used varying standards to determine what was a legal vote", thus leading to "arbitrary and disparate treatment of the members of [the] electorate", as the different counties within the 45th Senatorial District are applying different standards. *Bush v. Gore*, 531 U.S. 98, 105-107 (2000). The Framers avoided disparate and unequal treatment of voters by giving the authority to enact election regulations to one entity in the Commonwealth, the "legislature", and not to each individual court and county. U.S. Const. Art. I, § 4.

This year, in an attempt to ensure fairness in voting during the pandemic, a number of federal courts adjusted and/or excused lawfully adopted state election rules, and in all but one of those cases, the United States Supreme Court affirmed a state legislature's prerogative to adopt its own rules. *See, e.g., Democratic Nat'l Comm. v. Wis. State Legis.*, No. 20A66, 2020 U.S. LEXIS 5187, at *7-8 (Kavanaugh, J., concurring) slip op. 1; *Andino v. Middleton*, No. 20A55, 2020 U.S. LEXIS 4832, at *1 (granting stay where district court order enjoined South Carolina's witness requirement for absentee ballots as unconstitutional); *Merrill v. People First of Ala.*, 20A67, 2020 U.S. LEXIS 5183, at *1 (granting stay where district court order enjoined Alabama's photo identification and witness requirements for absentee voting during the pandemic as unconstitutional and violative of the Americans with Disabilities Act); *Clarno v. People Not Politicians Or.*, No. 20A21, 2020 U.S. LEXIS 3631 (granting stay of district court order relaxing Oregon's election procedures because of pandemic); *Little v. Reclaim Idaho*, 140 S. Ct. 2616 (2020) (granting stay of district court order relaxing Idaho's rules for ballot initiatives); *but see Republican Nat'l Comm. v. Common Cause R.I.*, No. 20A28, 2020 U.S. LEXIS 3632 (denying request for stay only because all state officials were of the same party and supported the lower court's decree relaxing Rhode Island's witness requirement). There are no facts here which compel a different outcome.

**B.  The General Assembly Unambiguously Spoke on This Issue.**

In the present case, the provision in question is a straightforward section of the Election Code implemented by the General Assembly pursuant to its constitutional powers under the Elections Clause of Article I, § IV of the U.S. Constitution. By the plain meaning of both the Election Code and the decisions of Pennsylvania courts, it is unequivocal that Pennsylvania law requires both a signature and date to be a legally cast ballot.

Pursuant to the plain text of the Election Code, once marking his or her ballot, the absentee or mail-in voter shall:

> then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed 'Official Election Ballot.' This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. **The elector *shall* then fill out, date and sign the declaration printed on such envelope**. Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

25 P.S. § 3146.6(a); 25 P.S. § 3150.16(a) (emphasis added).

When the ballots are returned, the county board of elections must "examine the declaration on the envelope of each ballot . . . and shall compare the information thereon with that contained in the 'Registered Absentee and Mail-in Voters File,' the absentee voters' list and/or the 'Military Veterans and Emergency Civilians Absentee Voters File.'" 25 P.S. § 3146.8(g)(3).

It is important to note the longstanding mandatory meaning of the word "shall" under Pennsylvania law, including in the context of the procedures for absentee voting. *See, e.g.*, *In re Canvass of Absentee Ballots of November 4, 2003 General Election*, 843 A.2d 1223 (Pa. 2004) (reading the word "shall" in absentee voting procedures contained in 25 P.S. § 3146.6(a) as a mandatory prohibition on third party ballot harvesting); *see also In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, No. 29 WAP 2020, 2020 Pa. LEXIS 5989, at *65 (Pa. Nov. 23, 2020) (Wecht, J., concurring and dissenting) ("The only practical and principled alternative is to read 'shall' as mandatory. Only by

doing so may we restore to the legislature the onus for making policy judgments about what requirements are necessary to ensure the security of our elections against fraud and avoid inconsistent application of the law, especially given the certainty of disparate views of what constitute 'minor irregularities' and countervailing 'weighty interests.'").

"All absentee ballots which have not been challenged under section 1302.2(c) and all mail-in ballots which have not been challenged under section 1302.2-D(a)(2) and that have been verified under paragraph (3) shall be counted and included with the returns of the applicable election district." 25 P.S. § 3146.8(g)(4).

The Supreme Court of Pennsylvania has held that, "in determining whether the declaration is 'sufficient' for a mail-in or absentee ballot at canvassing, the county board is required to ascertain whether the declaration on the return envelope has been filled out, *dated*, and signed. This is the extent of the board's obligation in this regard." *In re November 3, 2020 Gen. Election*, 240 A.3d 591, 608 (Pa. 2020) (emphasis added).

The date-and-sign requirement evidences that the "elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at a polling place. The presence of the date also establishes a point in time against which to measure the elector's eligibility to cast the ballot[.]" *In re 2,349 Ballots in the 2020 General Election*, 1162 C.D. 2020, 2020 Pa. Commw. Unpub. LEXIS 560, at *16 (Pa. Commw. Ct. Nov. 19, 2020) (memorandum).

The Court is in the unusual position of addressing a statute, whose textual requirements are self-evident, and an interpretation that has been agreed upon by a majority of the justices of the Supreme Court of Pennsylvania. *See In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, No. 29 WAP 2020, 2020 Pa. LEXIS 5989 (Pa. Nov. 23, 2020).

In their concurring and dissenting opinion, Justice Dougherty, joined by Chief Justice Saylor and Justice Mundy, held that "the meaning of the terms 'date' and 'sign' — which **were** included by

the legislature — are self-evident, they are not subject to interpretation, and the statutory language expressly requires that the elector provide them." *Id.* at *48 (Dougherty, J., concurring and dissenting) (emphasis in original).

Moreover, a fourth member of the Court, Justice Wecht, agreed with the position that the requirement to date and sign "is stated in unambiguously mandatory terms, and nothing in the Election Code suggests that the legislature intended that courts should construe its mandatory language as directory." *Id.* at *50 (Wecht, J., concurring and dissenting). As such, four Justices of the Supreme Court of Pennsylvania—Chief Justice Saylor and Justices Dougherty, Mundy, and Wecht—agreed that there is a mandatory obligation for a voter to date and sign her absentee or mail-in ballot.

The reason why we find ourselves here today is that Justice Wecht declined to apply that application to the present case due to "the circumstances in which the issue has arisen [and as such] [he] would apply [his] interpretation only prospectively." *Id.* The idea of markedly changed circumstances is, itself, a red herring. While it is true that access to voting by mail was greatly expanded by Act 77 of 2019, requiring the voter to date and sign the declaration on the security envelope during the *procedure* of absentee voting has been a requirement in Pennsylvania for absentee ballots since the statutory creation of absentee voting for the general public in the Commonwealth in 1963. *See* Act No. 37, Session of 1963, Pub. L. No. 707, § 22 (amending Section 1306 of the Election Code (25 P.S. § 3146.6) to apply beyond military voters) ("The elector shall then fill out, date[,] and sign the declaration printed on such envelope.").

Given that the text of the Election Code is unambiguous and that the provision in question is a product of the General Assembly's constitutional mandate under the Elections Clause of Article I, § IV of the U.S. Constitution, state courts simply cannot set aside such a procedure in violation of the Constitution.

II.   **Because A Date Is Unambiguously Required and Because There Exists No Fundamental Right to A Mail-In Ballot, The Undated Ballots in Allegheny County Must Be Excluded.**

The Supreme Court has long recognized that the appropriate remedy for an equal protection violation is "a *mandate* of equal treatment" and that this can be accomplished in one of two ways: "by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class." *Heckler v. Mathews*, 465 U.S. 728, 740 (1984). "How equality is accomplished," however, "is a matter on which the Constitution is silent," and the choice between the two is ordinarily "governed by the legislature's intent, as revealed by the statute at hand." *Sessions v. Morales-Santana*, 198 L. Ed. 2d 150, 172-73 (2017) (quoting *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 426-27 (2010)).

Here, the statute is perfectly clear concerning both the actions required of the voter and the deadline by which mail-in ballots must be submitted: the voter must "fill out, date, and sign" her ballot envelope. 25 P.S. § 3150.6(a); 25 P.S. § 3150.16(a). Furthermore, the Secretary of the Commonwealth issued guidance to all county boards of elections on September 28, 2020, stating that mail-in ballots that were received without a dated envelope should be "[s]et aside." *See In re 2,349 Ballots in the 2020 Gen. Election*, No. 1162 CD 2020, 2020 Pa. Commw. Unpub. LEXIS 560, at *9 (Pa. Commw. Ct. Nov. 19, 2020). Therefore, the proper remedy here should have been precisely the one that the state legislature prescribed in the duly enacted election regulation, 25 P.S. § 3150.16: all mail-in ballots submitted without dates should have been set aside.[6]

The Middle District of Pennsylvania noted in a recent decision that "leveling down is impermissible where the withdrawal of a benefit would necessarily violate the Constitution," but that warning is irrelevant here where only mail-in ballots are concerned. *Donald J. Trump for Pres., Inc. v. Boockvar*, 2020 U.S. Dist. LEXIS 218351, at *38 (M.D. Pa. Nov. 21, 2020). There is no right to use

---

[6] This is the exact procedure followed by the Westmoreland County Board of Elections giving rise to the equal protection violations alleged by Plaintiff. Stipulated Undisputed Facts at 9-13, ECF No. 45.

absentee ballots for voting, *see McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807 (1969), and when a voter fails to follow the specified instructions for completing her mail-in ballot then it is not a constitutional violation to exclude that ballot from the final count.[7]

## CONCLUSION

In determining that ballots in question should be excluded, the Commonwealth Court held that:

> While we realize that our decision in this case means that some votes will not be counted, the decision is grounded in law. It ensures that the votes will not be counted because the votes are invalid as a matter of law. Such adherence to the law ensures equal elections throughout the Commonwealth, on terms set by the General Assembly. The danger to our democracy is not that electors who failed to follow the law in casting their ballots will have their ballots set aside due to their own error; rather, the real danger is leaving it to each county board of election to decide what laws must be followed (mandatory) and what laws are optional (directory), providing a patchwork of unwritten and arbitrary rules that will have some defective ballots counted and others discarded, depending on the county in which a voter resides. Such a patchwork system does not guarantee voters an 'equal' election, particularly where the election involves inter-county and statewide offices. We do not enfranchise voters by absolving them of their responsibility to execute their ballots in accordance with law.

*In re 2,349 Ballots in the 2020 General Election*, 1162 C.D. 2020, 2020 Pa. Commw. Unpub. LEXIS 560, at *16-17 (Pa. Commw. Ct. Nov. 19, 2020) (memorandum).

Here, we have a county board of elections that committed a textbook equal protection violation by ignoring a law that the General Assembly put in place in fulfillment of its constitutional duties under the Elections Clause.

---

[7] *Amici* would also question whether "leveling-up" is even a remedy available to the Court since the Westmoreland County Board of Elections is not a party to these proceedings. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1253-58 (11th Cir. 2020) (notwithstanding the presence of the Secretary of State in the suit, the Court could not grant the requested relief without the presence of the election officials of the individual counties); *Ga. Republican Party, Inc., et al v. Sec'y of State of Ga., et al.*, 20-14741, Order Denying Emer. Mot. for Stay at 5-7 (11th Cir. Dec. 21, 2020) (recently affirming the decision in Jacobson that non-party county election boards cannot be ordered to take action pertaining to an election if they are not party to the suit).

This Court should thus affirm the General Assembly's ability to establish the times, places, and manner of elections in the Commonwealth by granting summary judgment on Plaintiff's requested relief and excluding the contested ballots in Allegheny County.

Respectfully submitted,

Dated: December 23, 2020

*/s/ Zachary M. Wallen*
Zachary M. Wallen
Pennsylvania Bar No. 309176
CHALMERS & ADAMS LLC
301 South Hills Village Drive
Suite LL200-420
Pittsburgh, PA 15241
(412) 200-0842
(412) 235-5001 (fax)
ZWallen@cpblawgroup.com

Jason B. Torchinsky*
Dallin B. Holt*
HOLTZMAN VOGEL
  JOSEFIAK TORCHINSKY PLLC
15405 John Marshall Hwy
Haymarket, VA 20169
(540) 341-8808
(540) 341-8809 (fax)
JTorchinsky@hvjt.law
DHolt@hvjt.law

*Counsel for Amici Curiae*
*Jake Corman, Pa. Senate President Pro Tempore*
*Kim Ward, Pa. Senate Majority Leader*
*Bryan Cutler, Speaker of the Pa. House of Representatives*
*Kerry Benninghoff, Pa. House Majority Leader*

*\* Pro Hac Vice Forthcoming*

## CERTIFICATE OF SERVICE

I filed this motion and accompanying documents with the Court via ECF, which will electronically notify all counsel of record.

Dated: December 28, 2020                    /s/ Zachary M. Wallen
                                            Counsel for Amici Curiae