## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NICOLE ZICCARELLI,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀)⠀⠀⠀⠀Civil Action No. 2:20-cv-1831-NR
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
THE ALLEGHENY COUNTY⠀⠀⠀)
BOARD OF ELECTIONS, et al.⠀⠀⠀)⠀⠀⠀⠀The Honorable J. Nicholas Ranjan
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Defendants.⠀⠀⠀)


## INTERVENORS' BRIEF IN SUPPORT OF DISMISSAL, OR IN THE ALTERNATIVE, SUMMARY JUDGMENT

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀DENTONS COHEN & GRIGSBY P.C.
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Clifford B. Levine
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Pa. Id. No. 33507
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Alex M. Lacey
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Pa. Id. No. 313538
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Kyle J. Semroc
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Pa. Id. No. 326107
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀625 Liberty Avenue, 5th Floor
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Pittsburgh, PA  15222-3152
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀(412) 297-4900

Lazar M. Palnick⠀⠀⠀⠀⠀⠀⠀⠀ATTISANO & ROMANO, LLC
Pa. Id. No. 52762⠀⠀⠀⠀⠀⠀⠀⠀⠀Marco S. Attisano
1216 Heberton Street⠀⠀⠀⠀⠀⠀⠀Pa. Id. No. 316736
Pittsburgh, Pennsylvania 15206⠀⠀429 Fourth Avenue, Suite 1705
(412) 661-3633⠀⠀⠀⠀⠀⠀⠀⠀⠀Pittsburgh, PA 15219
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀(412) 336-8622

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀On behalf of the Pennsylvania Democratic
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Party and James Brewster, Intervenors

# TABLE OF CONTENTS

I.   INTRODUCTION ......................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ....................................4

    A.   The Allegheny County Board Of Elections Decision And Ms.
        Ziccarelli's Appeal To State Court .........................................................4

    B.   Initial Federal Court Litigation ...............................................................8

    C.   The Westmoreland County Board Of Elections Decision ...................10

    D.   Further Events Subsequent To The November 25 TRO Hearing ........12

III. LEGAL ARGUMENT............................................................................14

    A.   The Applicable Standard for a Motion to Dismiss or Summary
        Judgment ...............................................................................................14

    B.   Under the Rooker-Feldman Doctrine, this Court Lacks Subject-
        Matter Jurisdiction over Plaintiff's Amended Complaint....................15

    C.   This Court Lacks Subject-Matter Jurisdiction Because Plaintiff
        Does Not Have Standing To Complain About Self-Imposed
        Injuries..................................................................................................20

    D.   Plaintiff's Claims Are Moot Because The Secretary Has Already
        Certified The Election Results .............................................................25

    E.   Ms. Ziccarelli Failed To Join The Westmoreland County Board
        Of Elections To This Action And Misapplies The Level
        Up/Level Down Analysis ......................................................................28

IV.  CONCLUSION...................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690 (3d Cir. 1996) ........................... 26

*Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336
 (3d Cir. 2020) .................................................................................................. 30

*Bowyer v. Ducey*, Case No. cv-20-02321-PHX, --- F. Supp.3d ----, 2020 WL
 7238261 (D. Ariz. Dec. 9, 2020) ........................................................... 27

*Bush v. Gore*, 531 U.S. 98 (2000) ............................................................................. 30

*Campeau v. Soc. Sec. Admin.*, 575 F. App'x 35 (3d Cir. 2014) ............................... 24

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ............................................... 24

*Corman v. Torres*, 287 F. Supp. 3d 558 (M.D. Pa. 2018) ...................... 15, 17, 30, 31

*D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983) .................................... 2, 16

*Democratic Nat'l Comm. v. Wisconsin State, Legis.*, --- U.S. ----,
 141 S. Ct. 28 (Oct. 26, 2020) .......................................................................... 30

*Diamond v. Charles*, 476 U.S. 54 (1986) ................................................................. 23

*Donald J. Trump for President, Inc. v. Boockvar*, Case No. 2:20-cv-966, ---
 F.Supp.3d ----, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) ............................. 15

*Donald J. Trump for President, Inc. v. Boockvar*, Case No. 4:20-cv-2078,
 --- F.Supp.3d ----, 2020 WL 6821992 (M.D. Pa. Nov. 21, 2020) ........ 9, 28, 29, 31

*Feehan v. Wisconsin Elections Comm'n*, Case No. 20-cv-1771, --- F. Supp.,
 3d ----, 2020 WL 7250219 (E.D. Wisc. Dec. 9, 2020) ......................................... 26

*FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834
 (3d Cir.1996) ................................................................................................... 17

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159
 (3d Cir. 2010) .................................................................................................. 16

*Gulla v. N. Strabane Twp.*, 146 F.3d 168 (3d Cir. 1998) ................................. 16, 17

*Hamilton v. Bromley*, 862 F.3d 329 (3d Cir. 2017) ................................................. 26

*Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of
 Library of Cong., Inc. v. Billington*, 737 F.3d 767 (D.C. Cir. 2013) .................... 23

*In Re: Canvass of Absentee and Mail-in Ballots of November 3, 2020 General
 Election*, Case No. 29 WAP 2020, --- A.3d ----, 2020 WL 6866415
 (Pa. Nov. 23, 2020) .............................................................................. 1, 7, 8, 9

*In Re: McNeil Consumer Healthcare*, 877 F. Supp. 2d 254 (E.D. Pa. 2012) ........... 24

*Karpenko v. Leendertz*, 619 F.3d 259 (3d Cir. 2010) .............................................. 25

*King v. Whitmer*, Case No. cv-20-13134, ---F.Supp.3d at ----,
 2020 WL 7134198 n.3 (E.D. Mich. Dec. 7, 2020) ............................................... 27

*League of Women Voters v. Commonwealth*, 921 F. 3d 378 (3d Cir. 2019) ........... 17

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...............................................22

*Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994)..........................................................19

*Nat'l Family Planning & Reprod. Health Ass'n, v. Gonzales*, 468 F.3d 826
   (D.C. Cir. 2006) ...................................................................................................24

*Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321 (3d Cir. 2000) ............16

*League of Women Voters v. Commonwealth*, 181 A.3d 1083 (Pa. 2018) ...............17

*Pennsylvania v. New Jersey*, 426 U.S. 660 (1976)...................................................23

*Petro-Chem Processing, Inc. v. E.P.A.*, 866 F.2d 433 (D.C. Cir. 1989).................24

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279
   (D.C. Cir. 2007) ...................................................................................................25

*Rodos v. Michaelson*, 527 F.2d 582 (1st Cir. 1975) ................................................24

*Roe v. State of Ala. By & Through Evans*, 43 F.3d 574 (11th Cir. 1995) .........18, 19

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)...............................................2, 16

*Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26 (1976)....................23

*Stein v. Corté, s*, 223 F.Supp.3d 423 (E.D. Pa. 2016) .......................................17, 18

*Strader v. U.S. Bank*, Case No. 2-19-cv-118-NR, 2020 WL 3447776
   (W. D. Pa. Jun. 24, 2020)....................................................................................16

*Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181 (3d Cir. 2006) ............20, 21, 22

*Valley Forge Christian College v. Americans United for Separation of
   Church and State, Inc*., 454 U.S. 464 (1982) ......................................................23

*Wood v. Raffensperger*, Case No. 20-14418 ---F.3d ----, 2020 WL 7094866
   (11th Cir. Dec. 5, 2020) .......................................................................................27

## Statutes

25 P.S. § 2600 ..............................................................................................................8

25 P.S. § 3157 ...............................................................................................5, 12, 13

25 P.S. § 3401 ..............................................................................................................8

25 P.S. § 3456 ..............................................................................................................8

25 P.S. § 3457 ..............................................................................................................8

28 U.S.C. § 1257 ........................................................................................................16

U.S. Const., Art. III.....................................................................................23, 24, 26

## Rules

Fed. R. Civ. P. 12(b)(1).............................................................................................14

Fed. R. Civ. P. 56(a)..................................................................................................15

## Other Authorities

Federal Practice and Procedure: Jurisdiction 2d § 3531.5 (2d ed. 1984)................24

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICOLE ZICCARELLI, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:20-cv-1831-NR |
| v. | ) | |
| | ) | |
| THE ALLEGHENY COUNTY | ) | |
| BOARD OF ELECTIONS, et al. | ) | The Honorable J. Nicholas Ranjan |
| | ) | |
| Defendants. | ) | |

### INTERVENORS' BRIEF IN SUPPORT OF DISMISSAL, OR IN THE ALTERNATIVE, SUMMARY JUDGMENT

Intervenors, the Pennsylvania Democratic Party and James Brewster, a candidate for Senator in Pennsylvania's 45th Senatorial District (the "Intervenors"), by and through counsel, file this Brief in Support of Dismissal, or, in the Alternative, Summary Judgment,[1] and in support thereof, state the following:

### I.      INTRODUCTION

Plaintiff Nicole Ziccarelli ("Ms. Ziccarelli") was a party in litigation before the Pennsylvania Supreme Court in a case captioned *In Re: Canvass of Absentee*

---

[1] As used in this Brief, "Stip." means the Stipulated Undisputed Facts, excerpts thereof cited in this Brief are attached to Appendix A as Exhibit 1, "Am. Compl." means the First Amended Complaint, attached to Appendix A as Exhibit 2, "Application" means the Application for Extraordinary Relief by Nicole Ziccarelli, attached to Appendix A as Exhibit 3, "Praecipe" means the Praecipe for Discontinuance, attached to Appendix A as Exhibit 4, "Ziccarelli Br." means Plaintiff's Brief in Support of Motion for Summary Judgment, attached to Appendix A as Exhibit 5, "Compl." means the Verified Complaint, attached to Appendix A as Exhibit 6, and "Amicus Br." means the Amicus Brief of Legislative Leaders in Support of Plaintiff's Amended Complaint, attached to Appendix A as Exhibit 7.  Appendix B contains the unreported opinions cited in this Brief.

*and Mail-in Ballots of November 3, 2020 General Election*, Case No. 29 WAP 2020, --- A.3d ----, 2020 WL 6866415 (Pa. Nov. 23, 2020) (together with lower court proceedings, the "State Court Action"). The Pennsylvania Supreme Court ruled against Ms. Ziccarelli.  The court rejected Ms. Ziccarelli's arguments and held that absentee and mail-in ballots that were timely received, but undated by the elector, were to be counted in the canvass for the 2020 General Election.  On November 24, 2020, Ms. Ziccarelli filed an Application for Reconsideration/Reargument with the Pennsylvania Supreme Court, which denied the application that day.

Ms. Ziccarelli is understandably disappointed in that outcome; she had wanted Allegheny County to discard its undated mail-in ballots.  Rather than appeal the Pennsylvania Supreme Court's decision to the Supreme Court of the United States, however, Ms. Ziccarelli has sought to collaterally attack that determination in federal district court.  Through her First Amended Complaint and her Motion for Summary Judgment, she seeks a direct reversal of the Pennsylvania Supreme Court's decision.  Based on that decision, the Allegheny County Board of Elections has counted those ballots and Secretary Boockvar has certified the results.  Under the *Rooker-Feldman* doctrine, federal district courts lack subject-matter jurisdiction to review such  state supreme court decisions.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  That

2

is particularly true where the Secretary has certified that Senator Brewster won the election.

That lack of subject-matter jurisdiction should end this matter.  Instead, Ms. Ziccarelli, desperate to circumvent the *Rooker-Feldman* doctrine, has sought to contrive a novel federal question for this Court to review.  She asserts that because the Allegheny County Board of Elections counted undated ballots (verified to have been received before Election Day) and the Westmoreland County Board of Elections did not, this somehow creates a federal constitutional issue.  Ms. Ziccarelli, however, is not an inactive observer to the Westmoreland County Board of Election's decision to not count the undated ballots.  Ms. Ziccarelli has actively encouraged this result as she urged the Westmoreland Board of Elections not to count the undated ballots **after** the Pennsylvania Supreme Court had issued its decision and **after** this Court had denied her TRO.  Even if this court had subject-matter jurisdiction (it does not), Ms. Ziccarelli lacks standing to bring her claims, which are contrived and thus moot. She also has failed to join indispensable parties to her action, and has unduly delayed seeking proper post-election relief under the Election Code before the Secretary certified the results and determined that Senator Brewster won his state senate race. In short, Ms. Ziccarelli fails to state a claim upon which relief can be granted.

For these reasons, Ms. Ziccarelli's First Amended Complaint should be dismissed with prejudice.  Alternatively, summary judgment should be entered against Ms. Ziccarelli.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Ms. Ziccarelli is the Republican Party candidate for Pennsylvania's 45th Senatorial District running against Intervenor James Brewster ("Brewster"), who is the incumbent in that office.  Stip. ¶¶ 1-3 (Appendix A Ex. 1).  The 45th Senatorial District primarily is located in Allegheny County, but includes a small portion of Westmoreland County.  *Id.* ¶ 4.  During the canvass of votes in the 45th Senatorial District, various issues arose as to certain categories of ballots, both mail-in and provisional.  Ms. Ziccarelli's Amended Complaint focuses entirely on the fact that Defendants complied with the Pennsylvania Supreme Court's decision in the State Court Action.  *See* Am. Compl. at ¶¶ 55-73 (Appendix A Ex. 2).

### A.    The Allegheny County Board Of Elections Decision And Ms. Ziccarelli's Appeal To State Court

On November 10, 2020, the Allegheny County Board of Elections met and decided to canvass 2,349 mail-in ballots that, although otherwise signed, completed, timely-received and lacking any allegation of fraud, failed to include the elector's printed date.  *Id.* ¶ 19-20.[2]  On November 12, 2020, Ms. Ziccarelli timely filed a

---

[2] Of the 2,349 undated mail-in ballots, 311 were from the 45th Senatorial District.  Stip. ¶ 31 (Appendix A Ex. 1).

Petition for Review of that decision in the Nature of a Statutory Appeal to the Court of Common Pleas of Allegheny County and argued against counting the 2,349 ballots.[3]   *Id.* ¶ 22.

On November 17, 2020, Ms. Ziccarelli participated in a hearing before the Court of Common Pleas of Allegheny County on her Petition for Review.  *Id.* ¶ 23. The Pennsylvania Democratic Party and Senator James Brewster intervened in that proceeding.  On November 18, 2020, the Court of Common Pleas of Allegheny County denied Ms. Ziccarelli's Petition.  *Id.* ¶¶ 23-24. On November 18, 2020, Ms. Ziccarelli appealed that  decision to the Pennsylvania Commonwealth Court.  *Id.* ¶ 25.

Concurrently, Ms. Ziccarelli filed an Application for Extraordinary Relief with the Pennsylvania Supreme Court.  *See* Application (Appendix A Ex. 3).  In that Application, Ms. Ziccarelli acknowledged that the question of law applied to all counties: "The issue presented in this appeal is of immediate importance because is [*sic*] not unique to Allegheny County and, therefore, has a direct effect on the outcome of the 2020 General Election outcome ***in various counties in the Commonwealth***." Application at 6-7 (emphasis supplied) (Appendix A Ex. 3).

---

[3] The Election Code provides a two-day deadline for appeals of county board of elections decisions.  25 P.S. § 3157.

On November 19, 2020, the Pennsylvania Commonwealth Court reversed the decision of the Court of Common Pleas.  Am. Compl. at ¶ 26 (Appendix A Ex. 2). That same day, Ms. Ziccarelli withdrew her Application for Extraordinary Relief with the Pennsylvania Supreme Court via Praecipe for Discontinuance.  *See* Praecipe (Appendix A Ex. 4).  On November 20, 2020, the Allegheny County Board of Elections filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court, which the Pennsylvania Supreme Court granted the same day.  Am Compl. at ¶ 27 (Appendix A Ex. 2).

The Pennsylvania Supreme Court consolidated the appeal from Allegheny County with an election case involving 5 separate orders issued by the Court of Common Pleas of Philadelphia County. One of those orders specifically involved the treatment of ballots in which the voter had not written in the date.  In consolidating the actions from either end of the Commonwealth, the Pennsylvania Supreme Court asked the parties to address the following question of law:

> Does the Election Code require county **boards** of elections to disqualify mail-in or absentee ballots submitted by qualified electors who signed their ballot's outer envelopes but did not handwrite their name, their address, and/or a date, where no fraud or irregularity has been alleged?

*See* State Court Action at *7 (emphasis supplied).

On November 23, 2020, the Pennsylvania Supreme Court reversed the decision of the Commonwealth Court, reinstating the decisions of the Court of

Common Pleas and the Allegheny County Board of Elections. *Id.* at ¶ 28.  The

relevant text entry order provided by the Pennsylvania Supreme Court is as follows:

> "The decision of the Commonwealth Court is hereby reversed and the
> decision of the Allegheny County Court of Common Pleas is
> reinstated.  Justice Donohue announces the judgment of the Court,
> joined by Justices Baer, Todd and Wecht, and files an opinion joined
> by Justices Baer and Todd.  Justices Baer and Todd join the opinion.
> Justice Wecht concurs in the result and files a concurring and
> dissenting opinion.  Justice Dougherty files a concurring and dissenting
> opinion in which Chief Justice Saylor and Justice Mundy join."

*In Re: Canvass of Absentee and Mail-in Ballots of November 3, 2020 General*

*Election*, Nos. 31-35 EAP 2020 and 29 WAP 2020, 2020 WL 6866415 at *16 (Pa.

Nov. 23, 2020); *see also* State Court Action Order at Stip. Ex. I (Appendix A Ex.

1). The November 23, 2020 Pennsylvania Supreme Court decision also applied to

the consolidated matters from Philadelphia County.  *Id.*

On November 24, 2020, Ms. Ziccarelli filed an Emergency Application for

Reargument with the Pennsylvania Supreme Court.  Stip. ¶ 44, Ex. I (Appendix A

Ex. 1).  Contrary to the impression she creates in her filings with this Court, she

clearly and unequivocally understood that the Pennsylvania Supreme Court decision

went against her.  The Pennsylvania Supreme Court denied Ms. Ziccarelli's

Application.  *Id.*  Ms. Ziccarelli did not raise any issues regarding disparate

treatment between Allegheny and Westmoreland counties in that Emergency

Application.  *Id.*  In fact, at no point during the entire State Court Action, did Ms.

Ziccarelli raise equal protection or due process issues related to possible disparate

treatment between undated mail-in ballots across Allegheny and Westmoreland Counties. *Id.* ¶ 48. Ms. Ziccarelli has provided no explanation as to why she failed to do so. *See* Am. Compl. (Appendix A Ex. 2), Stip. (Appendix A Ex. 1), Ziccarelli Br. *generally* (Appendix A Ex. 5).[4] Ms. Ziccarelli does not allege that any of the 2,349 undated ballots in Allegheny County were cast by individuals not otherwise qualified to vote in the 2020 General Election. *Id.*

Under the Pennsylvania Election Code, parties may request a "recount" or "contest" for elections for State Senate upon specific allegations that the election and return thereof was either illegal or not correct. 25 P.S. §§ 3401, 3457. The deadline to file a contest for the November 3, 2020 General Election was November 23, 2020. 25 P.S. § 3456. Neither Ms. Ziccarelli nor any other person filed an election contest challenge for the election for Pennsylvania's 45th Senatorial District. Stip. ¶ 49 (Appendix A Ex. 1).

### B.    Initial Federal Court Litigation

On November 25, 2020, a day after the Pennsylvania Supreme Court denied her Emergency Application for Reconsideration, Ms. Ziccarelli initiated this action, seeking an Emergency Temporary Restraining Order against the Allegheny County

---

[4] The Pennsylvania Election Code does not restrict the arguments a party can raise in a Petition for Review of a County Board of Election. *See* 25 P.S. §§ 2600 *et seq.*

Board of Elections and Secretary Boockvar.  *See* Compl. (Appendix A Ex. 6).[5]

Notably, she chose not to name the Westmoreland County Board of Elections as a

party to this matter.  *Id.*  On November 25, 2020, this Court held a telephonic

hearing and denied the request for a Temporary Restraining Order.  In doing so, this

Court noted that disparate treatment between Allegheny and Westmoreland

Counties regarding mail-in ballots could pose a constitutional issue, but that in a

"situation like this one and presented by the facts of this case [constitutional relief]

would, if anything, require an injunction that would level up, that is, that would

require Westmoreland County to count the three hundred and forty or so ballots in a

manner consistent with the Pennsylvania Supreme Court's decision."  Stip. Ex. I

(Including Hearing Tr. at 29:12-17 (analyzing *Donald J. Trump for President, Inc.*

*v. Boockvar*, Case No. 4:20-cv-2078, --- F.Supp.3d ----, 2020 WL 6821992 at * 12

(M.D. Pa. Nov. 21, 2020))) (Appendix A Ex. 1). In that same hearing, upon

learning that the Westmoreland County Board of Elections had an upcoming

meeting at which it had the opportunity to consider this very issue, this Court

further noted "it appears that Westmoreland County may, in fact, count the 340

---

[5] The ongoing effort to obfuscate the ruling of the Pennsylvania Supreme Court is reflected in Ms.
Ziccarelli's omission in the Complaint that she filed an Application for
Reconsideration/Reargument one day after the Court issued its decision.  Stip. ¶ 44, Ex. I
(Appendix A Ex. 1).

votes which would, in effect, remedy any kind of equal protection violation." Stip. Ex. I, Hearing Tr. at 30:2-4 (Appendix A Ex. 1).[6]

### C.    The Westmoreland County Board Of Elections Decision

On November 13, 2020, three days after the Allegheny County Board of Elections meeting reviewing the treatment of a variety of different voting situations, the Westmoreland County Board of Elections held a similar meeting to review various issues that had arisen concerning mail-in and provisional ballots. At that meeting, the minority Commissioner, Gina Cerelli, proposed a motion to count Westmoreland's undated mail-in ballots, but neither of the other members of the Board would entertain her motion. Stip. ¶ 58 (Appendix A Ex. 1). Accordingly, as of November 13, 2020, Ms. Ziccarelli was aware there was the potential of disparate treatment of undated mail-in ballots between Allegheny and Westmoreland Counties.

As this Court had anticipated, following the November 25, 2020 hearing on the TRO, there would be an opportunity for the Westmoreland County Board of Elections to follow the precedent of the Pennsylvania Supreme Court and agree to count the 343 undated ballots in that county. The Westmoreland County Board of Elections scheduled a meeting on November 30, 2020 to address any outstanding

---

[6] Counsel for Intervenors requested that the TRO hearing transcript be expedited so that the transcript could be referenced during the upcoming Westmoreland County Board of Elections meeting, which this Court agreed would be a "great idea." *See* Stip. Ex. I, Hearing Tr. at 32:1-7 (Appendix A Ex. 1).

issues associated with the computation of votes in that county. The Board had the benefit of knowing how the highest court in the state had ruled, how it had denied Ms. Ziccarelli's Application for Reconsideration, and how the Commonwealth Court had followed that decision in a case involving the Bucks County Board of Elections.[7] In addition, the Board had the benefit of this Court's ruling on the TRO application. Clearly, the Westmoreland County Board of Elections had every opportunity to "level-up" and eliminate any colorable equal protection issue as it applied to the 45th Senate District.

On November 30, 2020, Intervenors appeared before the Westmoreland County Board of Elections. Stip. ¶ 60 (Appendix A Ex. 1). Intervenors presented the Board with a letter laying out the procedural and substantive history before the state courts, and referencing, as well, the order and the transcript of the November 25, 2020 hearing before this Court. *Id.* Senator Brewster, through his counsel, requested that the Westmoreland County Board of Elections count its 343 undated ballots. *Id.* ¶ 61. Senator Brewster, through counsel, also set out in detail the circumstances of the Pennsylvania Supreme Court Decision, and the resolution by this Court of Ms. Ziccarelli's TRO request. *See id.*, Ex. I. In contrast, Ms. Ziccarelli, through counsel, also appeared at the November 30th meeting of the

---

[7] *See In Re: Canvass of Absentee and/or Mail-in Ballots of November 3, 2020 General Election*, 1191 C.D. 2020, (Pa. Commw. Ct. Nov. 25, 2020) (Slip. Op.). Stip. ¶ 45, Ex. H as discussed in Section II. D below (Appendix A Ex. 1).

Westmoreland County Board of Elections.  *Id.* ¶ 62.  Instead of requesting that

Westmoreland County count the undated ballots, Ms. Ziccarelli expressly requested

that the Westmoreland County Board of Elections ***not count*** the undated ballots.

Ms. Ziccarelli encouraged the Westmoreland Board to act in a manner that would

create a colorable claim that the two counties had treated the undated ballots

differently.  *See id.*, Ex. J.  Thereafter, the Westmoreland County Board of

Elections certified its election returns without including the undated ballots.  Am.

Compl. ¶ 50 (Appendix A Ex. 2).

Under the Pennsylvania Election Code, Ms. Ziccarelli could have appealed

the decision of the Westmoreland County Board of Elections (within two days).

*See* 25 P.S. § 3157.  Stip. ¶ 66 (Appendix A Ex. 1).  She chose not to pursue this

remedy.[8]

### D.    Further Events Subsequent To The November 25 TRO Hearing

On November 25, 2020 the Allegheny County Board of Elections re-certified

its results to comply with the Pennsylvania Supreme Court's decision.  *Id.* ¶ 52.

Also on November 25, 2020, the Commonwealth Court, in an opinion by Judge

Cohen Jubelirer, held that the Pennsylvania Supreme Court's decision in the State

Court action (i.e., Ms. Ziccarelli's appeal and the consolidated decisions from

---

[8] Ms. Ziccarelli clearly understood how to appeal a decision of the Westmoreland County Board of Elections, as she had just appealed a decision involving provisional ballots.  *See, e.g.*, *In Re: 2020 General Election Provisional Ballot Challenges*, Case No. 4152 of 2020 (Pa. Ct. Comm. Pl. Westmoreland Cty. Nov. 23, 2020).

Philadelphia) applied to counties not party to the appeal and upheld the decision of the Bucks County Board of Elections to count undated mail in ballots.  *See In Re: Canvass of Absentee and/or Mail-in Ballots of November 3, 2020 General Election*, 1191 C.D. 2020, (Pa. Commw. Ct. Nov. 25, 2020) (Slip. Op.).  Stip. ¶ 45, Ex. H (Appendix A Ex. 1).

On December 1, 2020, Ms. Ziccarelli filed her Amended Complaint in this Court, again seeking to reverse the Pennsylvania Supreme Court's order on the basis of unequal treatment of undated ballots between Allegheny and Westmoreland Counties.  *See* Am. Compl. (Appendix A Ex. 2)  In her request for relief, Ms. Ziccarelli does ***not*** request the counting of the Westmoreland County undated ballots, but instead ***only*** requests the disenfranchisement of the 2,349 undated ballots from Allegheny County which, of course, would vitiate the Pennsylvania Supreme Court's decision in the State Court action.  *See* Am. Compl. Prayer for Relief.  After the November 30th meeting, Plaintiff chose to not appeal the decision of the Westmoreland County Board of Elections to the Westmoreland County Court of Common Pleas, as is permitted under the Election Code.  *See* 25 P.S. § 3157. Stip. ¶ 66 (Appendix A Ex. 1).  Despite naming the Allegheny County Board of Elections and the Secretary of the Commonwealth as Defendants, Ms. Ziccarelli chose not to seek a stay or make any effort to stop the process of certification. Notably, despite the obvious role of the Westmoreland County Board of Elections,

and the fact that it had ignored the precedent of the Pennsylvania Supreme Court, Ms. Ziccarelli chose not to name the Board as a defendant.[9]  Ms. Ziccarelli was not interested in resolving the purported equal protection issue; she wanted to create such an issue once the Pennsylvania Supreme Court had ruled against her.

On December 16, 2020, with all relevant state court proceedings exhausted and Ms. Ziccarelli having declined to renew her request for a temporary restraining order or injunctive relief, Secretary Boockvar certified the results in the election for Pennsylvania's 45th Senatorial District.  *Id.* ¶ 72.  Senator James Brewster was certified as the winner.

### III.    LEGAL ARGUMENT

### A.    The Applicable Standard for a Motion to Dismiss or Summary Judgment

This matter should be dismissed because this Court lacks jurisdiction over the dispute.

> "A court must grant a motion to dismiss made under Federal Rule of Civil Procedure 12(b)(1) when it lacks subject matter jurisdiction. Such jurisdictional challenges take two forms: (1) parties may make a "factual" attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdiction; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues that a

---

[9] Not only did Ms. Ziccarelli not name Westmoreland County Board of Elections, she omitted any reference in her Amended Complaint to her own role before the board in encouraging the board to take a position contrary to the decision of the Pennsylvania Supreme Court.  *See*, *e.g.*, Am. Compl. (Appendix A. Ex. 2)

claim is not within the court's jurisdiction.  ***In either instance, it is the plaintiff's burden to establish jurisdiction."***

*Corman v. Torres*, 287 F. Supp. 3d 558, 566 (M.D. Pa. 2018) (internal citations omitted)(emphasis supplied).  Alternatively, summary judgment is appropriate because, where, as here, "the movant shows that there is no genuine dispute as to any material fact," the movant is entitled to judgment as a matter of law.  *Donald J. Trump for President, Inc. v. Boockvar*, Case No. 2:20-cv-966, --- F.Supp.3d ----, 2020 WL 5997680 at * 27 (W.D. Pa. Oct. 10, 2020) (quoting Fed. R. Civ. P. 56(a)).

### B.    Under the Rooker-Feldman Doctrine, this Court Lacks Subject-Matter Jurisdiction over Plaintiff's Amended Complaint.

Ms. Ziccarelli's December 23, 2020 Brief begins with a startling assertion: that, in counting the 2,349 undated mail-in ballots and certifying the election results in the 45th Senatorial District, Secretary Boockvar and the Allegheny County Board of Elections have expressly rejected the position of the Pennsylvania Supreme Court.  Ziccarelli Br. at 1-2 (Appendix A Ex. 5).  What Ms. Ziccarelli fails to mention, and what makes her assertion an act of bad faith, is that Secretary Boockvar and the Allegheny County Board of Elections counted those ballots ***on the direct order of the Pennsylvania Supreme Court, following litigation that Ms. Ziccarelli herself lost.***  State Court Action at *16.

Ms. Ziccarelli's Amended Complaint amounts to nothing more than a collateral attack of a state court order in federal court, which is prohibited under the

*Rooker-Feldman* doctrine.  *See, e.g., Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923). Under the *Rooker-Feldman* doctrine, federal courts are deprived of subject-matter jurisdiction when "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court's judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments."  *Strader v. U.S. Bank*, Case No. 2-19-cv-118-NR, 2020 WL 3447776 at * 2 (W. D. Pa. Jun. 24, 2020) (Ranjan, J. op.) (*quoting Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)).

The *Rooker–Feldman* doctrine is based on "the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision."  *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir. 2000).  Under 28 U.S.C. § 1257, the Supreme Court has jurisdiction to review a decision by "the highest court of a State in which a decision [may] be had."  Because Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Gulla v. N. Strabane Twp.*, 146 F.3d 168, 171 (3d Cir. 1998).  To ensure that Congress's intent to prevent "the lower federal courts" from "sit[ting] in direct review of the decisions of a state

16

tribunal" is given effect, *Gulla*, 146 F.3d at 171, the *Rooker–Feldman* doctrine

prohibits District Courts from adjudicating actions in which "the relief requested ...

requires determining that the state court's decision is wrong or ... void[ing] the state

court's ruling." *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834,

840 (3d Cir.1996).

Federal courts in Pennsylvania have determined that this doctrine applies to

election law disputes. *See, e.g., Corman v. Torres*, 287 F. Supp.3d 558, 573 (M.D.

Pa. 2018)[10] (citing the *Rooker-Feldman* doctrine and dismissing a federal three-

judge panel's review of congressional districting map generated as a result of the

Pennsylvania Supreme Court's decision in *League of Women Voters v.*

*Commonwealth*, 181 A.3d 1083 (Pa. 2018)), *Stein v. Cortés*, 223 F.Supp.3d 423,

434 (E.D. Pa. 2016) (applying the *Rooker-Feldman* doctrine to federal district court

action challenging same matters addressed in state court election contest).

Here, Ms. Ziccarelli seeks an Order from this Court voiding the Pennsylvania

Supreme Court's Order in the State Court action. *See* Am. Compl. Prayer for Relief

(Appendix A Ex. 2). Her requested relief seeks the discounting of the 2,349 ballots

---

[10] Notably, Plaintiff's counsel represented certain parties in the *Corman* matter, and throughout Pennsylvania's 2017-2018 redistricting challenges. *Id.* There, Plaintiff's counsel also inappropriately sought federal district court intervention in state court proceedings. *See, e.g., League of Women Voters v. Commonwealth*, 921 F. 3d 378, 384 (3d Cir. 2019) (affirming that District Court did not abuse its discretion in determining that Pennsylvania Senate Majority Leader Corman, represented by Plaintiff's counsel here, "lacked an objectively reasonable basis" for removal to federal court and awarding sanctions (though reversing on that award in Leader Corman's personal, rather than official, capacity)).

counted in Allegheny County, directly voiding the decision of the Pennsylvania Supreme Court. *Id.* Ms. Ziccarelli has failed to explain why she could not address her issues before any of the Pennsylvania courts in which she appeared, or address them on appeal to the Supreme Court of the United States. *See* Am. Compl. *generally*. Ms. Ziccarelli has failed to explain why an election contest to the cross-county results of the 45th Senatorial District could not have addressed this issue under the prescribed procedures set forth in the Election Code. *Id.* Under the *Rooker-Feldman* doctrine, this Court simply lacks subject-matter jurisdiction to review the Pennsylvania Supreme Court's order. For this reason, this matter should be dismissed with prejudice.

In her Brief in Support of her Motion for Summary Judgment, Ms. Ziccarelli does not address the *Rooker-Feldman* doctrine at all. *See* Ziccarelli Br. *generally* (Appendix A Ex. 5). Instead, she relies on an Eleventh Circuit opinion where a federal district court addressed an issue of Alabama election law that conflicted with an earlier Alabama state court decision. *Id.* at 21-23 (analyzing *Roe v. State of Ala. By & Through Evans*, 43 F.3d 574 (11th Cir. 1995)). That case, however, specifically addressed why the *Rooker-Feldman* doctrine did not apply under the procedural posture there. *Id.* at 579-80. The Eleventh Circuit's reasoning demonstrates precisely why the *Rooker-Feldman* doctrine does apply here:

> "We reject [the application of the *Rooker-Feldman* doctrine] for two reasons. First, the plaintiffs in this case are not, by the admission of all

parties, parties to the circuit court action.  The *Rooker-Feldman* doctrine does not apply to such circumstances. Second, because the plaintiffs are not parties to the circuit court action, the plaintiffs had no opportunity to raise their constitutional claims in the circuit court and their claims, therefore, were not considered by the circuit court."

*Roe*, 43 F.3d at 580 (internal citations omitted).

*Roe* is simply inapposite: Ms. Ziccarelli, unlike the plaintiffs in *Roe*, was a party to the State Court Action; it was her appeal of a decision of the Allegheny County Board of Elections and her appeal alone.[11] Stip. ¶¶ 34-45 (Appendix A Ex. 1).  She lost.  Despite her purported confusion as to the outcome of the Pennsylvania Supreme Court decision, Ms. Ziccarelli immediately understood that she had lost, as evidenced by the fact that she filed an Application for Reconsideration with the Pennsylvania Supreme Court the very next day, which the Court promptly denied.  *Id.* ¶ 44, Ex. I.  Further, Ms. Ziccarelli had every opportunity to raise whatever arguments she wished to raise in the State Court Action; she simply failed to do so, and now wants a second bite at the apple on a collateral attack in federal district court.  *See id.* ¶¶ 48-49.  The *Rooker-Feldman* doctrine prohibits her from doing so.

This Court lacks subject-matter jurisdiction over Ms. Ziccarelli's collateral attack on the Pennsylvania Supreme Court's order.  This case should be dismissed.

---

[11] Similar procedural distinctions render *Marks v. Stinson* similarly inapposite. 19 F.3d 873, 885 n. 11 (3d Cir. 1994) (holding that because federal plaintiffs were not parties to the state court proceedings, and the federal claims were not "inextricably intertwined" with the prior state court decision, the *Rooker-Feldman* doctrine did not apply).

### C.   This Court Lacks Subject-Matter Jurisdiction Because Plaintiff Does Not Have Standing To Complain About Self-Imposed Injuries.

Even if the *Rooker-Feldman* doctrine did not deprive this Court of subject-matter jurisdiction over Ms. Ziccarelli's claims of disparate treatment across counties (it does), this Court would still lack jurisdiction over this matter because Ms. Ziccarelli lacks standing to bring this dispute.  Standing is a jurisdictional matter. "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006). Here, Ms. Ziccarelli lacks standing because any purported injuries in this action are self-imposed.

Ms. Ziccarelli's entire Amended Complaint is premised on the assertion that the Pennsylvania Supreme Court's decision in the State Court action was limited to Allegheny County and offers no relief to similarly situated voters in Westmoreland County.  *See* Am. Compl. *generally* (Appendix A Ex. 2).  Ms. Ziccarelli makes this assertion despite the fact that the State Court Action was a consolidated, multiple county decision answering the question "Does the Election Code require county **boards** of elections to disqualify mail-in or absentee ballots submitted by qualified electors who signed their ballot's outer envelopes but did not handwrite their name, their address, and/or a date, where no fraud or irregularity has been alleged." State Court Action at * 7 (emphasis supplied).  Ms. Ziccarelli herself asserted that the

State Court Action affected "voters across the Commonwealth."  Application at 6 (Appendix A Ex. 3).

Ms. Ziccarelli's current interpretation of the State Court action is simply false: the State Court action's holding would apply in all counties to undated mail in ballots for the 2020 General Election.  The Commonwealth Court came to the same conclusion and applied the holding in the State Court Action to Bucks County, although that particular county's undated mail-in ballots were not before the Pennsylvania Supreme Court in the State Court Action.  *See* Stip., Ex. H (Appendix A Ex. 1).  In the Bucks County case, Appellants challenging undated mail-in ballots made similar arguments that the holding in the State Court Action only applied prospectively and relief was limited only to the counties in the State Court Action: Allegheny and Philadelphia.  *Id.*, Ex. H at 5-6.  The Commonwealth Court rejected that argument: "This Court [in reviewing Bucks County's decision to count undated mail-in ballots] is bound by the Supreme Court's decision."  *Id.*  Notably, the Commonwealth Court decision was issued on November 25, 2020, five days prior to the November 30, 2020 meeting of the Westmoreland County Board of Elections.  *Id.* ¶ 60.

Nonetheless, Ms. Ziccarelli expressly peddled her interpretation of the State Court Action to the Westmoreland County Board of Elections in her effort to encourage the disparate treatment across the two counties and manufacture a federal

21

constitutional issue.  *See* Stip. ¶ 62 (Appendix A Ex. 1).  On November 30, 2020,

she did not ask Westmoreland County to treat its undated mail-in ballots in the

manner the Pennsylvania Supreme Court directed on November 23, 2020 for the

2020 General Election (and which the Commonwealth Court affirmed applied to all

counties on November 25, 2020).  *Id.*  She did not join in Intervenors' request that

Westmoreland County cohere its conduct to what Pennsylvania courts (and this

very Court) indicated was the proper course of action: to count the undated mail-in

ballots.  *Id.*  Instead, Ms. Ziccarelli went out of her way to avoid a resolution, to

ensure that Westmoreland County failed to comply with the Pennsylvania Supreme

Court's directive, and to make sure that disparate treatment continued across the

two counties, all in order to continue this federal action.  *Id.*

Unsurprisingly, when given an opportunity to appeal the Westmoreland

County Board of Elections' decision to ignore the Pennsylvania Supreme Court's

directive, she declined to do so.  *Id.* ¶ 66.  Accordingly, to the extent there is any

disparate treatment between Allegheny and Westmoreland Counties, it is the result

of Ms. Ziccarelli's own actions.

Standing requires that a plaintiff's purported injury be traceable to the

defendant's challenged conduct.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560 (1992).  Plaintiff's purported injury, insofar as it was incurred voluntarily, is

not an injury that "fairly can be traced to the challenged action," as required by

Supreme Court decisions interpreting Article III of the United States Constitution. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (*quoting Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41 (1976)).  In other words, in order for Plaintiff to assert injury-in-fact for standing purposes, she must demonstrate that the Defendants caused the harm for which she seeks redress.  *See, e.g., Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Library of Cong., Inc. v. Billington*, 737 F.3d 767, 770 (D.C. Cir. 2013).  Here the Defendants, the Allegheny County Board of Elections and the Secretary had no choice but to follow the Pennsylvania Supreme Court decision.  *See* State Court Action at *16.  Clearly, the alleged harm here was created by the Westmoreland County Board, which Ms. Ziccarelli so encouraged and then selectively declined to include as a defendant. *See* Stip. ¶ 62 (Appendix A Ex. 1).

The United States Supreme Court has held that, for purposes of determining whether a party has Article III standing, when injuries are self-inflicted, the injury cannot be attributed to another party.  *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) ("No [party] can be heard to complain about damage inflicted by its own hand."); *Diamond v. Charles*, 476 U.S. 54, 69–70 (1986) (party's liability for attorney's fees was a consequence of his own decision to intervene in the case, could not "fairly be traced" to the law challenged, and could not confer Article III

standing); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) (subjective fear of surveillance did not give rise to standing because self-inflicted injury was not fairly traceable to the Government's purported activities).

Accordingly, a "self-inflicted harm"—i.e., an "injury ... largely of [the plaintiff's] own making"—is neither "an injury cognizable under Article III" nor an injury that is "fairly traceable to the defendant's challenged conduct." *Nat'l Family Planning & Reprod. Health Ass'n, v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006). Moreover, an injury that is "so completely due to the [plaintiff's] own fault as to break the causal chain" is not fairly traceable to the defendant's conduct, and thus cannot be the basis for Article III standing to sue. *Petro-Chem Processing, Inc. v. E.P.A.*, 866 F.2d 433, 438 (D.C. Cir. 1989) (*quoting* 13 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3531.5 (2d ed. 1984)); *see also Campeau v. Soc. Sec. Admin.*, 575 F. App'x 35, 38 (3d Cir. 2014) (plaintiff lacked standing to recover travel expenses from Social Security Administration where plaintiff's purely voluntary decision to travel to SSA headquarters was a self-inflicted injury not fairly traceable to Government's purported activities); *In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 276 (E.D. Pa. 2012) (holding that plaintiffs failed to establish standing where "plaintiffs undertook these actions on their own and any costs associated with them are, therefore, not traceable to the defendants") (citations omitted); *Rodos v.*

*Michaelson*, 527 F.2d 582, 584–85 (1st Cir. 1975) (no standing when injury was caused by plaintiffs' unreasonable overreaction to an abortion statute); *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1290 (D.C. Cir. 2007) (Kavanaugh, J.) (holding that a self-inflicted injury is, by definition, not an "actual" injury for standing purposes).

To the extent ballots continue to be treated differently across counties, Ms. Ziccarelli cannot complain about what was accomplished by her own hand.[12]  In attempting to avoid the reach of the *Rooker-Feldman* doctrine, Ms. Ziccarelli ignored this Court's and the Pennsylvania Supreme Court's directive, and generated self-inflicted injuries in order to contrive a federal question.  *See* Stip. ¶ 62 (Appendix A Ex. 1).  As a result, she lacks standing before this Court.  For this separate, independent, and adequate reason, Intervenors respectfully request that this Court dismiss Plaintiff's Amended Complaint with prejudice.

### D.    Plaintiff's Claims Are Moot Because The Secretary Has Already Certified The Election Results

In her Amended Complaint, Ms. Ziccarelli requests that the Secretary be enjoined "from certifying any election results regarding the 45th Senatorial District

---

[12] Stated differently, Ms. Ziccarelli has "unclean hands" in bringing this action.  "The doctrine of unclean hands, named for the equitable maxim that 'he who comes into equity must come with clean hands,' is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant."  *Karpenko v. Leendertz*, 619 F.3d 259, 265 (3d Cir. 2010).

that include the tally" of undated mail-in ballots from Allegheny County.  *See* Am.

Compl. Prayer for Relief (Appendix A Ex. 2).  That has already happened.  Stip. ¶

51 (Appendix A Ex. 1).  Further, the Election Code's contest period expired on

November 23, 2020 without any challenge to the 45th Senatorial District's canvass.

*Id.* ¶ 49.  Accordingly, Ms. Ziccarelli's claims are moot and should be dismissed.

Article III of the Constitution limits the federal judiciary's authority to

exercise judicial power to resolving "Cases" and "Controversies," rendering moot

claims beyond the jurisdiction of Article III courts.  *Hamilton v. Bromley*, 862 F.3d

329, 334 (3d Cir. 2017).  A case becomes moot where subsequent events "prevent a

court from being able to grant the requested relief."  *Id.* (citing *Blanciak v.

Allegheny Ludlum Corp.*, 77 F.3d 690, 698–99 (3d Cir. 1996)).

Between the denial of her original request for a restraining order or

preliminary injunction, Ms. Ziccarelli took no steps, for weeks, to otherwise prevent

the certification of the results of the 45th Senatorial District.  *See* Stip. ¶¶ 47, 66, 73

(Appendix A Ex. 1).  That certification having occurred, Ms. Ziccarelli's claims are

now moot, and this case should be dismissed.  Recent election cases have applied

mootness regarding certification.  *See, e.g., Feehan v. Wisconsin Elections Comm'n*,

Case No. 20-cv-1771, --- F. Supp. 3d ----, 2020 WL 7250219, at *13 (E.D. Wisc.

Dec. 9, 2020) (dismissing election challenge claim on mootness after noting

"plaintiff asks this court to prohibit from occurring an event that already has occurred").

Federal courts have dismissed recent election challenges as moot where the state election contest process was not followed. *Bowyer v. Ducey*, Case No. cv-20-02321-PHX, --- F. Supp.3d ----, 2020 WL 7238261, at *11 (D. Ariz. Dec. 9, 2020) ("[I]f de-certification were possible, it would only be possible through an action brought in Arizona superior court.  In other words, this Court has no power to de-certify the results."); *Wood v. Raffensperger*, Case No. 20-14418 ---F.3d ----, 2020 WL 7094866, at *6 (11th Cir. Dec. 5, 2020) ("[I]t is not possible for us to delay certification nor meaningful to order a new recount when the results are already final and certified."); *King v. Whitmer*, Case No. cv-20-13134, ---F.Supp.3d at ----, 2020 WL 7134198, at *5 n.3 (E.D. Mich. Dec. 7, 2020) ("[T]he evidence Plaintiffs seek to gather by inspecting voting machines and software and security camera footage only would be useful if an avenue remained open for them to challenge the election results.").

Here, the 45th Senatorial District results have already been certified.  Stip. ¶ 72 (Appendix A Ex. 1).  Ms. Ziccarelli did not file an election contest.  *Id.* ¶ 49. She did not contest the decision of the Westmoreland County Board of Elections. *Id.* ¶ 66.  Her claims seeking decertification are moot, and should be dismissed.

E.     **Ms. Ziccarelli Failed To Join The Westmoreland County Board Of Elections To This Action And Misapplies The Level Up/Level Down Analysis**

Even if this Court needed to review Plaintiff's Amended Complaint substantively (it lacks the subject-matter jurisdiction to do so), that Amended Complaint simply lacks any viable claim, and thus should be dismissed.  Plaintiff argues that because of the conduct of another, the nonparty Westmoreland County Board of Elections, the Allegheny County Board of Elections must disobey the Pennsylvania Supreme Court's Order to canvass and count valid electors' ballots, on the theory that such counting amounts to voter dilution.  *See* Am. Compl. ¶¶ 58, 61, 54-72 (Appendix A Ex. 2).

Under the federal constitution, however, voter dilution stemming from the actions of non-parties are simply not actionable.  *See, e.g., Donald J. Trump for President, Inc. v. Boockvar*, --- F. 3d. ----, 2020 WL 6821992, at *12 (M.D. Pa. Nov. 21, 2020) (Brann, J. op.) ("Defendant Counties, by implementing a notice-and-cure procedure, have in fact lifted a burden on the right to vote, even if only for those who live in those counties. Expanding the right to vote for some residents of a state does not burden the rights of others.  And Plaintiffs' claim cannot stand to the extent that it complains that 'the state is not imposing a restriction on someone else's right to vote.'").

Stated differently, "[w]hen remedying an equal-protection violation, a court may either 'level up' or 'level down.' This means that a court may either extend a benefit to one that has been wrongfully denied it, thus leveling up and bringing that person on par with others who already enjoy the right, or a court may level down by withdrawing the benefit from those who currently possess it.  ***Generally, the preferred rule in a typical case is to extend favorable treatment and to level up.***" *Id.* at *12 (emphasis supplied).  The court in *Boockvar* focused on the fact that there, Plaintiffs consciously chose not to include the "level down" counties in their action.  *Id.* at *6.  Those counties, the *Boockvar* court held, were the source of any constitutional injury.  *Id.*

So too here, Plaintiff consciously chose not to name the "level down" Board of Elections to this action.  *See* Am. Compl. *generally* (Appendix A Ex. 2). Similarly, when given the opportunity to influence that nonparty, she doubled down and demanded that it continue unequal, "level down" treatment of electors who were qualified to vote in the 2020 General Election but committed a technical error in completing their ballots.  Stip. ¶ 62 (Appendix A Ex. 1). The Pennsylvania Supreme Court issued a decision that applied to all counties, including Allegheny and Westmoreland counties, that they must count such votes in the 2020 General Election.  *See* State Court Action at *16.

In arguing against Judge Brann's "level up" approach, Ms. Ziccarelli asserts that the "Election Code commands" the discarding of the 2,349 mail-in ballots, in direct contravention of the Pennsylvania Supreme Court's decision in the State Court Action.  Ziccarelli Br. at 27-29 (Appendix A Ex. 5).  Again, this argument runs directly afoul of the *Rooker-Feldman* doctrine.  *See* Sec. III. B. above. Similarly, Amici "Legislative Leaders" also infuse their "level down" analysis with a claim that the Pennsylvania Supreme Court's decision in the State Court Action somehow violates the Electors and Elections Clause of the United States Constitution, despite the fact that **this dispute involves no federal election**. Amicus Br. at 2-3 (Appendix A Ex. 7).  The United States Supreme Court has never endorsed such a theory, even for federal elections, where justices have raised the argument in dissenting or concurring opinions.  *See, e.g., Bush v. Gore*, 531 U.S. 98, 122 (2000) (Rehnquist, C.J. concurring) (arguing that a "significant departure from the legislative scheme for appointing Presidential electors presents a federal constitutional question."); *Democratic Nat'l Comm. v. Wisconsin State Legis.*, --- U.S. ----, 141 S. Ct. 28, 34 n. 1 (Oct. 26, 2020) (Kavanaugh, J. concurring) (citing Rehnquist concurrence approvingly).  In any event, the Third Circuit has held that only the Pennsylvania General Assembly itself could possibly raise this issue. *Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336, 349-350 (3d Cir. 2020) (citing *Corman v. Torres*, 287 F. Supp. 3d 558, 573 (M.D. Pa. 2018)).

Further, in *Corman*, a three-judge panel held that legislative leaders cannot assert standing on behalf of the General Assembly without the concurrence of a two-thirds majority in both chambers.  287 F. Supp. 3d at 569.  Accordingly, the Amici's exegesis on the Elections and Electors Clauses is of no import here and should be discarded.

Under the standard enunciated in *DJT, Inc. v. Boockvar*, Plaintiff cannot support a constitutional demand to "level down" the right to vote to the lowest expansive jurisdiction, especially where the (1) Pennsylvania Supreme Court has held that the higher level is constitutionally required in the State Court Action; (2) the Commonwealth Court agreed with that determination and applied its mandate to at least one county that was not a party to the State Court Action; and (3) where Plaintiff herself encouraged the activity leading to the disparate treatment.  2020 WL 6821992, at *6, 12.

For this separate, independent, and adequate reason, Intervenors respectfully request that this Court dismiss Plaintiff's Amended Complaint with prejudice.

## IV.    CONCLUSION

WHEREFORE, for the reasons set forth above, Intervenors the Pennsylvania Democratic Party and James Brewster respectfully request that this Court DISMISS

Plaintiff's Amended Complaint with prejudice, or, in the alternative, award

summary judgment in favor of Intervenors and against Plaintiff.

Respectfully submitted,

DENTONS COHEN & GRIGSBY P.C.

Dated: December 30, 2020

By  */s/ Clifford B. Levine*
   Clifford B. Levine
   Pa. Id. No. 33507
   Alex M. Lacey
   Pa. Id. No. 313538
   Kyle J. Semroc
   Pa. Id. No. 326107
625 Liberty Avenue, 5th Floor
Pittsburgh, PA  15222-3152
(412) 297-4900

ATTISANO & ROMANO, LLC
   Marco S. Attisano
   Pa. Id. No. 316736
429 Fourth Avenue, Suite 1705
Pittsburgh, PA 15219
(412) 336-8622

Lazar M. Palnick
Pa. Id. No. 52762
1216 Heberton Street
Pittsburgh, Pennsylvania 15206
(412) 661-3633

On behalf of the Pennsylvania Democratic
Party and James Brewster, Intervenors

3517661.v3

32