Received 11/18/2020 1:45:31 PM Supreme Court Western District

Filed 11/18/2020 1:45:00 PM Supreme Court Western District
103 WM 2020

EMERGENCY ELECTION MATTER

# IN THE SUPREME COURT OF PENNSYLVANIA

---

No.___ WM 2020

---

## IN RE: 2,349 BALLOTS IN THE 2020 GENERAL ELECTION

Petition of Nicole Ziccarelli

---

## APPLICATION FOR EXTRAORDINARY RELIEF
## BY NICOLE ZICCARELLI

---

Seeking the exercise of extraordinary jurisdiction and review of the
November 18, 2020 Memorandum and Order of the Court of Common
Pleas of Allegheny County, GD 20-011654, notice of appeal to the
Commonwealth Court filed (docket number forthcoming)

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Shohin H. Vance (No. 323551)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: (215) 568-2000
Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
svance@kleinbard.com
szimmer@kleinbard.com

*Attorneys for Nicole Ziccarelli*

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................... 1

II.   STATEMENT OF JURISDICTION .............................................. 2

III.  STATEMENT OF QUESTIONS PRESENTED .............................. 3

IV.   STATEMENT OF THE CASE ...................................................... 4

V.    ARGUMENT ............................................................................ 5

    A.  The Court should exercise its extraordinary jurisdiction over this
appeal. ................................................................................. 5

    B.  Under this Court's interpretation of the Election Code, a mail-in
ballot with an undated signature is per se invalid and, thus, must
be set aside. ......................................................................... 9

    C.  The Election Code's requirements relative to the Voter
Declaration are mandatory, rather than directory. .................. 12

        1.  *Boockvar*'s interpretation of the secrecy requirement in of
Section 3150.16(a) as mandatory applies with equal force to the
provision's Voter Declaration mandate .................................. 13

        2.  The Voter Declaration provision does not fall within the limited
exception under which a mandatory provision can be treated as
directory. ............................................................................ 14

    D.  Courts have already held that where the Election Code requires a
dated signature, an elector's failure to supply the date is a fatal
defect. ................................................................................. 19

    E.  This Court's analysis of the ability to "cure" non-compliant ballots
in *Boockvar* controls the outcome here. .................................. 20

VI.   CONCLUSION AND RELIEF SOUGHT ...................................... 24

i

# TABLE OF AUTHORITIES

## Cases

*Appeal of Weiskerger*, 290 A.2d 108 (Pa. 1972)......................................15

*Commonwealth v. Martorano*, 634 A.2d 1063 (Pa. 1993)........................6

*Commonwealth v. Williams*, 129 A.3d 1199 (Pa. 2015)......................2, 6

*Cozzone ex rel. Cozzone v. W.C.A.B. (Pa Mun./E. Goshen Twp.)*, 73 A.3d
526 (Pa. 2013) .......................................................................................14

*In re 2003 Election for Jackson Twp. Supervisor*, 840 A.2d 1044 (Pa.
Cmwlth. 2003) ........................................................................................8

*In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d
1223 (Pa. 2004) ..............................................................................12, 17

*In re Morrison-Wesley*, 946 A.2d 789 (Pa. Cmwlth. 2008)...............19, 20

*In re Nomination Petition of Brown*, 846 A.2d 783 (Pa. Cmwlth. 2004) 19

*In re November 3, 2020 General Election*, __ A.3d __, __ 2020 WL
6252803 (Pa. 2020) ...............................................................10, 11, 17

*In re Silcox*, 674 A.2d 224 (Pa. 1996). ...................................................19

*Koter v. Cosgrove*, 844 A.2d 29 (Pa. Cmwlth. 2004) .................................8

*Oberneder v. Link Computer Corp.*, 696 A.2d 148 (Pa. 1997) ...............13

*Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020)
....................................................................................................... passim

*See League of Women Voters v. Commonwealth*, 178 A.3d 737 (Pa. 2018)
.....................................................................................................................5

*Shambach v. Bickhart*, 845 A.2d 793 (Pa. 2004) ...................................15

*Winston v. Moore*, 91 A. 520 (Pa. 1914) ..........................................21, 23

**Statutes**

25 P.S. § 2642 ...................................................................................... 7

25 P.S. § 2811 .................................................................................... 18

25 P.S. § 3146.8 ................................................................................ 10

25 P.S. § 3150.14 ............................................................... 9, 10, 17

25 P.S. § 3150.16 ................................................................................ 9

25 P.S. § 3154 ...................................................................................... 8

3 U.S.C. §§ 1 et seq. .......................................................................... 8

42 Pa.C.S. § 502 .................................................................................. 2

42 Pa.C.S. § 726 ............................................................................. 2, 5

**Constitutional Provisions**

Pa. Const. art. I, § 5 ........................................................................... 7

Pa. Const. art. V, § 2 .......................................................................... 2

## I.    INTRODUCTION

This case presents the exact issue upon which this Court has already agreed to exercise its extraordinary jurisdiction in *In Re: Canvass of Absentee and Mail-In Ballots of November 3, 2020 General Election (Petition of: Philadelphia County Board of Elections)*, No. 89 EM 2020. Specifically, this case presents the question of the validity of mail-in ballots where the voter declaration is signed but undated. The validity of mail-in ballots that do not comply with the complete requirements of the Election Code is a novel issue of statutory interpretation affecting more than the 2,349 votes in the present case, which concerns mail-in ballots received by the Allegheny County Board of Elections ("Board") during the November 3, 2020 General Election for the 45th Senatorial District. Accordingly, Nicole Ziccarelli, a candidate for the 45th Senatorial District, respectfully requests that the Court exercise its extraordinary jurisdiction over this matter.

## II.    STATEMENT OF JURISDICTION

The Court has jurisdiction to grant this Application under both its extraordinary jurisdiction and King's Bench powers. *See* Pa. Const. art. V, § 2; 42 Pa.C.S. § 502; 42 Pa.C.S. § 726. *See also* Pa.R.A.P. 3309; *Commonwealth v. Williams*, 129 A.3d 1199, 1206 (Pa. 2015).

## III.   STATEMENT OF QUESTIONS PRESENTED

Does the Election Code require county boards of elections to disqualify mail-in ballots from electors who submitted an undated signature on the outer envelope?

*Suggested Answer: Yes.*

## IV.  STATEMENT OF THE CASE

On November 10, 2020, the Board decided to canvass 2,349 mail-in ballots that contained a signed – but undated – declaration on the outer mailing envelope ("the Disputed Ballots"). Nicole Ziccarelli, a candidate for the 45th Senatorial District (Allegheny and Westmoreland Counties), petitioned the Allegheny County Court of Common Pleas for review of that decision on November 12, 2020. Following a hearing on November 17, 2020, the trial court, by Memorandum and Order dated November 18, 2020 (attached as Exhibit A), denied Candidate Ziccarelli's Petition for Review and affirmed the Board. Nicole Ziccarelli filed a notice of appeal of that decision to the Commonwealth Court of Pennsylvania on November 18, 2020 (docket number forthcoming). While the appeal was pending in the trial court, a similar case involving the campaign of Donald J. Trump for President, Inc., was pending before the Court of Common Pleas of Philadelphia County, which was appealed to the Commonwealth Court. On November 18, 2020, this Court ultimately exercised extraordinary jurisdiction over the Philadelphia matter at docket number 89 EM 2020.

## V.   ARGUMENT

This Court should employ its extraordinary jurisdiction powers to address questions of immediate and significant importance to interpret the provisions of the Election Code prior to certification of the election results. Further, upon exercising extraordinary jurisdiction over this case, this Court should reverse the decision of the trial court because it erred in construing the mandatory provisions of the Election Code as directive and allowing canvassing to proceed on unqualified mail-in ballots that did not contain a date.

### A.   The Court should exercise its extraordinary jurisdiction over this appeal.

Under 42 Pa.C.S. § 726, the Court may "in any matter pending before any court or district justice of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause justice to be done." This power allows the Court to exercise extraordinary jurisdiction over matters pending in another court of the Commonwealth. *See League of Women Voters v. Commonwealth*, 178 A.3d 737, 766 (Pa. 2018). With regard to the exercise of this extraordinary jurisdiction, the Court has stated that it is appropriate to

exercise it in order to conserve judicial resources, to expedite proceedings, and to provide guidance to the lower courts on a question that is likely to recur. *Commonwealth v. Martorano*, 634 A.2d 1063, 1073, n.6 (Pa. 1993). Similarly, the Court may invoke its King's Bench powers to "review an issue of public importance that requires timely intervention by the court of last resort to avoid the deleterious effects arising from delays incident to the ordinary process of law." *Commonwealth v. Williams*, 129 A.3d 1199, 1206 (Pa. 2015).

The present case is exactly the type of case that was intended to be captured by the exercise of these unique jurisdictional powers because it presents questions of immediate and significant importance directly affecting voters across the Commonwealth. The question of whether the Board can unilaterally alter the mandatory statutory criteria governing the casting of mail-in ballots is of crucial importance for this election and future elections. Moreover, this question directly affects the county's ability to certify its election results within the timeframe required by statute.

The issue presented in this appeal is of immediate importance because is not unique to Allegheny County and, therefore, has a direct

6

effect on the outcome of the 2020 General Election outcome in various counties in the Commonwealth. *See In Re: Canvass of Absentee and Mail-in Ballots*, No. 89 EM 2020 (Pa.). This matter implicates the compliance of county boards of election with the mandatory requirements of the Election Code and, therefore, is of significant public importance. Election Code compliance is crucial to ensuring that elections are carried out equally and freely. *See* Pa. Const. art. I, § 5 ("Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."). Given the significant public importance implicated by this case and the similar issues that have arisen across the Commonwealth following the November 3, 2020 Election, this Court should exercise its extraordinary jurisdiction.

The immediacy of the issue presented in this appeal is evident by the impending statutory deadline for certification of the 2020 General Election Results. The Election Code requires the Board to certify the results of the 2020 General Election by November 23, 2020, subject to certain enumerated exceptions, *see* 25 P.S. § 2642, and to announce computation of results at least five days before final certification,

7

25 P.S. § 3154(f). These deadlines are crucial in a presidential election year because there are deadlines for certification and the vote of the Electoral College. *See* 3 U.S.C. § 1 *et seq*. However, these deadlines will be indefinitely delayed while this matter and any subsequent appeal thereof are litigated.

"The Election Code reflects a clear intention of the General Assembly to expeditiously resolve election disputes and provide for the prompt certification of the vote." *In re 2003 Election for Jackson Twp. Supervisor*, 840 A.2d 1044, 1046 (Pa. Cmwlth. 2003). Moreover, "[t]he continuing and efficient operation of government is dependent upon the prompt resolution of election contests" because the "system depends upon the timely certification of the winner." *Koter v. Cosgrove*, 844 A.2d 29, 33 (Pa. Cmwlth. 2004). Given the purpose of the Election Code to ensure prompt resolution of disputes, this Court should exercise its extraordinary jurisdiction to hear this matter.

**B. Under this Court's interpretation of the Election Code, a mail-in ballot with an undated signature is per se invalid and, thus, must be set aside.**

Under Pennsylvania's recently implemented mail-in voting regime,[1] any registered elector whose application for a mail-in ballot has been approved, may vote by submitting that ballot to the appropriate county board of elections. However, the Election Code requires mail-in electors—as well as the individual county boards of elections responsible for counting the mail-in ballots—to adhere to certain basic guidelines.

With regard to the voters who have opted to vote by mail-in ballot, Section 3150.16(a) of the Election Code provides, among other things, that the elector must mark the ballot by eight o'clock p.m. on the day of the election, securely seal it in the secrecy envelope, and place it inside a second envelope bearing a voter declaration form attesting: (i) that the elector is qualified to vote in that particular election; and (ii) that the elector has not already voted in that election (the "Voter Declaration"). *See* 25 P.S. § 3150.16(a); 25 P.S. § 3150.14 (b) (setting forth the contents of the Voter Declaration). Furthermore, Section 3150.16(a) provides

---

[1] Act of October 31, 2019, P.L. 552, No. 77.

that, prior to mailing the ballot or delivering the same in-person, "the elector **shall** . . . fill out, **date** and **sign** the [Voter Declaration]." *Id.* (emphasis added).

In turn, under Section 3146.8(g)(3), before a county board of elections may count and tally the votes reflected on a mail in ballot (i.e., canvass the ballot), it "is required to determine if the [Voter Declaration] is 'sufficient.'" *In re November 3, 2020 General Election*, __ A.3d __, 2020 WL 6252803, at *12 (Pa. 2020) (quoting 25 P.S. § 3146.8 (g)(3)). Specifically, incorporating Section 3150.16(a)'s dating and signature requirement, this Court has explained that "in determining whether the declaration is 'sufficient' for a mail-in or absentee ballot at canvassing, the county board is required to ascertain whether the declaration on the return envelope has been filled out, dated, and signed." *Id.* at *12 (citing 25 P.S. § 3150.16 (a)). Where the accompanying Voter Declaration is insufficient, the mail-in ballot may not be treated as "verified" and, thus, cannot be "counted and included with the returns of the applicable election district." 25 P.S. § 3146.8 (g)(4)(i).

With this framework in mind, the Board's decision to accept and canvass the undated mail-in ballots is unsustainable.

Above all else, this Court has already held that mail-in ballots with undated declarations are not "sufficient" and, thus, must be set aside. Specifically, the Court has already held that in assessing a Voter Declaration's sufficiency, "the county board is required to ascertain whether the declaration on the return envelope has been filled out, dated, and signed." *In re November 3, 2020 General Election*, 2020 WL 6252803, at *12. As such, *In re Nov. 3 2020 Gen. Election*, by its plain terms, confirms that the sufficiency of a mail-in ballot is predicated on three factors, each of which must be satisfied. Specifically, the Voter Declaration must be: (1) filled out; (2) dated; and (3) signed. Indeed, neither the Election Code, nor any other legal principle governing the Board's conduct, permits it to exercise discretion relative to the examination of mail-in ballots or alter the scope and nature of its duties. Moreover, nothing in this Court's decision concerning the Board's duties in this regard suggests that a mail-in ballot with an

11

undated Voter Declaration is any less defective than one with an

unsigned Voter Declaration.[2]

In short, by directing the disputed ballots to be canvassed, the

Board has ignored a core feature of its statutory duty to examine a

mail-in ballot's sufficiency and improperly attempted to exercise

discretion it has not been granted.

### C.   The Election Code's requirements relative to the Voter Declaration are mandatory, rather than directory.

As previously noted, Section 3150.16(a) provides that "the elector

***shall*** . . . fill out, ***date*** and sign the [Voter Declaration]" prescribed by

statute. 25 P.S. § 3150.16(a) (emphasis added). Because "the word 'shall'

carries an imperative or mandatory meaning," this requirement is

presumptively mandatory. *In re Canvass of Absentee Ballots of Nov. 4,*

*2003 Gen. Election*, 843 A.2d 1223, 1231 (Pa. 2004) (*Appeal of Pierce*);

---

[2] Although the plain language of the statute makes recourse to the administrative pronouncements unnecessary, it is notable that the Department of State's Guidance issued on September 28, 2020 also directs the county boards of elections to set aside mail-in ballots with undated Voter Declarations. *See* Pa. Dep't of State, *Guidance Concerning Civilian Absentee and Mail-In Ballot Procedures*, at 5 (Sept. 28, 2020), *available at* https://www.dos.pa.gov/VotingElections/ OtherServicesEvents/Documents/DOS%20Guidance%20Civilian%20Absentee%20an d%20Mail-In%20Ballot%20Procedures.pdf ("A ballot-return envelope with a declaration that is not filled out, dated, and signed is not sufficient and must be set aside, declared void and may not be counted."); *see also id.* at 9 ("At the pre-canvass

*see also Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 (Pa. 1997) ("By definition, 'shall' is mandatory.").

When examined in light of the Election Code's broader statutory scheme and the governing caselaw, Section 3150.16(a)'s requirements are indeed mandatory. As such, where the Voter Declaration contains a voter declaration that has been signed, but not dated, the enclosed ballot is invalid.

> **1.** ***Boockvar*'s interpretation of the secrecy requirement in of Section 3150.16(a) as mandatory applies with equal force to the provision's Voter Declaration mandate.**

As an initial matter, to the extent this Court has any doubt regarding the proper interpretation of Section 3150.16's requirement that a Voter Declaration "shall" be dated, it should look no further than its recent interpretation of that very same provision. *Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020). Specifically, examining that provision's directive that the elector's ballot "shall" be enclosed in a secrecy envelope, the Court held that "the secrecy provision language in Section 3150.16(a) is mandatory and the mail-in elector's failure to comply with such requisite by enclosing the ballot in

---

or canvass, as the case may be, the county board of elections should . . . [s]et aside

13

the secrecy envelope renders the ballot invalid." *Id.* at 380. Given that parts of statutes relating to "the same relate to the same persons or things or to the same class of persons or things" are to be read *in pari materia*, *Cozzone ex rel. Cozzone v. W.C.A.B. (Pa Mun./E. Goshen Twp.)*, 73 A.3d 526, 536 (Pa. 2013), *Boockvar*'s interpretation of the term "shall" in the context of Section 3150.16(a)'s secrecy provision applies with equal force to the requirement that the Voter Declaration "shall" be dated. Hence, absent a compelling showing of a material distinction between two passages within the same subsection—*i.e.*, within, Section 3150.16(a)—the Board's decision to canvass the disputed ballots is untenable under *Boockvar*'s holding.

### 2.   The Voter Declaration provision does not fall within the limited exception under which a mandatory provision can be treated as directory.

Further, the *Boockvar* panel's detailed rendition of the mandatory-versus-directory dichotomy in the context of the Election Code also undermines the Board's construct. Specifically, although the *Boockvar* panel acknowledged that it has occasionally construed mandatory language as merely directory, it declined to expand the scope of those

---

any ballots without a filled out, dated and signed declaration envelope.").

14

decisions. To the contrary, carefully distinguishing its prior decisions in *Shambach v. Bickhart*, 845 A.2d 793 (Pa. 2004), and *Appeal of Weiskerger*, 290 A.2d 108 (Pa. 1972), the Court clarified that it has treated a mandatory provision as directory only under limited circumstances. *See Boockvar*, 238 A.3d at 378-79 ("[T]his case is distinguishable from those cases relied upon by the Secretary, which deemed mandatory language merely directory and without consequence."). Concluding that neither *Bickhart*, nor *Weiskerger* supplied the proper framework, the Court relied on *Appeal of Pierce*— which it characterized as "most analogous to the . . . case" before it— which held that "the Election Code's 'in-person' ballot delivery requirement was mandatory, and that votes delivered by third persons must not be counted." *Boockvar*, 238 A.3d at 379 (internal citations omitted).

Against the foregoing backdrop, Section 3150.16(a)'s requirement relative to voter declarations, like the secrecy portion of the provision at issue in *Boockvar*, are plainly mandatory, rather than directory.

**(a)** **The Voter Declaration provision is mandatory because it pertains to the manner in which a ballot is cast, rather than the manner in which it is canvassed.**

To begin, in contrast to *Bickhart* and *Weiskerger*, both of which examined provisions governing the manner in which a qualified voter's marked ballot is canvassed, the Voter Declaration requirement, like the secrecy requirement at issue in *Boockvar* and *Appeal of Pierce*, is precedes the canvassing of a ballot. Indeed, the distinction between statutes concerning the ***marking*** of ballots, as compared to the ***casting*** of ballots, which was at the core of *Appeal of Pierce*, cannot be overstated. To illuminate, while laws regulating ballot completion presupposes that the ballot is being cast by an elector whose qualification to vote in that election has been established, provisions relating to the submission of ballots exist for the precise purpose of ensuring that the ballot is cast by a qualified elector.

**(a)** **The Voter Declaration provision is mandatory because a dated Voter Declaration is a safeguard against fraud.**

Moreover, because the requirement that a declaration be dated is a necessary safeguard against fraud, under the framework established by *Appeal of Pierce*—and applied more recently in *Boockvar*—that

16

directive is mandatory, such that failure to strictly comply with its dictate renders the ballot invalid. 238 A.3d at 380 ("The clear thrust of *Appeal of Pierce* . . . is that, even absent an express sanction, where legislative intent is clear and supported by a weighty interest like fraud prevention, it would be unreasonable to render such a concrete provision ineffective for want of deterrent or enforcement mechanism."). Indeed, as aptly articulated in *Appeal of Pierce*, "there is an obvious and salutary purpose—grounded in hard experience—behind the limitation upon the delivery of absentee ballots. 843 A.2d at 1232.

In this regard, it also bears repeating that, by executing the Voter Declaration, the mail-in elector is not only attesting to the ballot's timely submission but also representing, under penalty of law, that the voter is: (a) qualified to cast the enclosed ballot; and (b) the voter did not already vote in the election for which the ballot was issued. 25 P.S. § 3150.14(b); *see also In re Nov. 3, 2020 Gen. Election*, No. 149 MM 2020, 2020 WL 6252803, at *1 (Pa. Oct. 23, 2020) ("The voter's declaration is a pre-printed statement required to appear on the ballot return envelope containing a voter's absentee or mail-in ballot declaring: that the voter is qualified to vote the ballot enclosed in the

envelope, and that the voter did not already vote in the election for which the ballot was issued.").

The accuracy of both representations is contingent on the date on which the representation was made. *First*, whether a person is a "qualified elector" entitled to vote at a particular election depends on the specific date on which that individual either became a resident of a given district or ceased residing there. *See* 25 P.S. § 2811 (explaining that every citizen of the Commonwealth eighteen years of age or older is qualified to vote, provided, *inter alia*, "[h]e or she shall have resided in the election district where he or she shall offer to vote at least thirty days immediately preceding the election, except that if qualified to vote in an election district prior to removal of residence, he or she may, if a resident of Pennsylvania, vote in the election district from which he or she removed his or her residence within thirty days preceding the election."). *Second*, whether an elector has already voted in the election for which the ballot was issued, by its very nature, depends on the date on which the declaration was signed.

**D. Courts have already held that where the Election Code requires a dated signature, an elector's failure to supply the date is a fatal defect.**

While recognizing the settled principle that "the Election Code is to be construed so as not to deny a candidate the opportunity to run or deprive the electorate of the right to vote for the candidate of choice[,]" *In re Nomination Petition of Brown*, 846 A.2d 783, 787 (Pa. Cmwlth. 2004), the Commonwealth Court has repeatedly held that, where the Election Code requires an elector to record the date of signing, failure to do so is a fatal defect that will result in the voter's signature being struck. *See id.* (invalidating several signatures "because the signer did not record the date of signing" and noting that the Commonwealth Court "has held that a signature will be struck when the signer omits only the year in the date of signing"); *In re Morrison-Wesley*, 946 A.2d 789, 795 (Pa. Cmwlth. 2008) ("The failure to provide the date of one's signing violates Section 908 of the Election Code and, thus, invalidates the signature." (citing *In re Silcox*, 674 A.2d 224, 225 (Pa. 1996). In short, far from being a minor defect that can be overlooked, the Commonwealth Court has explained that "[t]he date is essential to

19

determine the validity of the signature." *In re Morrison-Wesley*, 946 A.2d at 795.

E.    **This Court's analysis of the ability to "cure" non-compliant ballots in *Boockvar* controls the outcome here.**

In addition to the above-discussed analysis of "directory" versus "mandatory" provisions in the Election Code, the bulk of the issues presented in this appeal appear to have been resolved (or at least the resolution was substantially presaged) in this Court's *Boockvar* opinion. To explain, the Petition for Review at issue there demanded (in addition to relief from the secrecy envelope provisions) that county boards of elections, Allegheny's and Philadelphia's included, be directed to provide citizens with the opportunity to "cure" so-called "minor" errors on the outer envelope of mail-in ballots. *See id.* at 353, 372-74; *see also* Petition for Review at ¶ 123, *Pennsylvania Democratic Party v. Boockvar*, No. 407 MD 2020 (Pa. Cmwlth.) ("Balancing the impacts of disenfranchising electors for minor inconsistencies, against the (non-existent) governmental interest the harm to the voter is overwhelming; thus, electors should be allowed to cure a facial defect on their Mailing Envelope."). The Court—unanimously on this particular issue—

expressly declined to provide such relief. Instead, it agreed with the Secretary of the Commonwealth and held that the General Assembly alone had the right to provide a procedure to "cure" purportedly "minor" defects, and in the absence of such a procedure from the legislature, none could be supplied by a court. *See Boockvar*, 238 A.3d at 374; *see also Winston v. Moore*, 91 A. 520 (Pa. 1914) ("The power to regulate elections is legislative, and has always been exercised by the lawmaking branch of the government.") (cited favorably in *Boockvar*, 238 A.3d at 373-74).

In concurrence, Justice Wecht took the Court's majority holding on so-called "minor" defects and projected it even further than a mere question about the right to cure. He observed that where mail-in ballots, once received, suffered from "objective" defects, including "the failure to 'fill out, date and sign the declaration printed on' the ballot return envelope," that there is "no offense to the Free and Equal Elections Clause" when those ballots are rejected. *See id.* at 389 (Wecht, J., concurring). Justice Wecht so concluded because such facial defects were subject to "uniform, neutrally applicable election regulation," rather than "subjective assessments," which are susceptible to

"inconsistency and arbitrariness[.]" *See id.* As is acutely material here, he further observed that distinguishing between purported "minor" versus "major" "defects and omissions" was not, at least on the record before that Court, subject to "judicially manageable criteria[.]" *See id.*

There are two critical takeaways from this portion of the *Boockvar* opinion for present purposes.

*First*, this Court, the Secretary of the Commonwealth, and the petitioners were in utter agreement that deficiencies on the mailing envelope were "defects" under the Election Code that required a "cure" to remediate them. *See id.* at 377. It does not appear any party argued that in the absence of a cure—and, critically, none was observed in the Election Code nor supplied by the Court—that these defects could be simply ignored. Indeed, it appears the very premise of the dispute in *Boockvar* was that absent judicial intervention, ballots would be rejected based on "minor" defects. With the Court having, rightly, refused to provide that cure (which only the General Assembly can supply), the clear inference is that such "minor" defects render the ballots with which they are affiliated incurable and void.

22

*Second*, at a minimum, the decision foretells the outcome of this appeal. Indeed, Justice Wecht's concurrence takes the narrow issue presented by the petitioners there—the right to cure—and projected it forward to the obvious next case: one involving un-cured ballots. His projection, albeit his alone, is that such ballots are invalid. *See id.* at 389. His analysis of the matter should be adopted here, since the Election Code's mandate is clear—the declaration on the outer envelope must be fully completed, the date included—and there is no judicial right to line-item-veto out those parts of the Election Code that a court might otherwise deem unwise or unimportant. *See id.* at 373 (majority opinion) (citing *Winston*, 91 A. at 522 for the proposition that "'[t]he power to regulate elections is legislative'"). As Justice Wecht observed, applying a uniform in-or-out, objective analysis to such defects offends neither the Election Code nor the Pennsylvania Constitution. The Court here should adopt the same reasoning and thus require all boards of elections to count those ballots that were objectively complete, as the Election Code demands, and not count those that were objectively incomplete. Simply put, ballots not validly cast as the Election Code

requires should not be made valid by simply ignoring provisions of the statute.

## VI.   CONCLUSION AND RELIEF SOUGHT

Because this case presents an issue of immediate public importance and election results must be certified within a matter of days, this Court should exercise extraordinary jurisdiction. Upon doing so, this Court should reverse the Allegheny County Court of Common Pleas, as the provisions of the Election Code are clear that mail-in ballots must be both signed and dated by the elector. The provisions setting forth this requirement should be construed as mandatory and any ballots that do not meet this requirement should be deemed invalid. Accordingly, this Court should reverse the Court of Common Pleas of Allegheny County.

Respectfully submitted,

Dated: November 18, 2020          /s/ Matthew H. Haverstick
                                 Matthew H. Haverstick (No. 85072)
                                 Joshua J. Voss (No. 306853)
                                 Shohin H. Vance (No. 323551)
                                 Samantha G. Zimmer (No. 325650)
                                 KLEINBARD LLC
                                 Three Logan Square
                                 1717 Arch Street, 5th Floor
                                 Philadelphia, PA 19103
                                 Ph: (215) 568-2000
                                 Fax: (215) 568-0140
                                 Eml: mhaverstick@kleinbard.com
                                 jvoss@kleinbard.com
                                 svance@kleinbard.com
                                 szimmer@kleinbard.com

                                 *Attorneys for Nicole Ziccarelli*

## **WORD COUNT CERTIFICATION**

I hereby certify that the above brief complies with the word count limits of the Pennsylvania Rules of Appellate Procedure. Based on the word count feature of the word processing system used to prepare this brief, this document contains 4238 words, exclusive of the cover page, tables, and the signature block.

Dated: November 18, 2020        /s/ Matthew H. Haverstick

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Shohin H. Vance (No. 323551)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: (215) 568-2000
Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
svance@kleinbard.com
szimmer@kleinbard.com
*Attorneys for Nicole Ziccarelli*