**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| NICOLE ZICCARELLI, | : | |
| | : | |
| Plaintiff, | : | NO. 2:20-cv-001831-NR |
| | : | |
| v. | : | |
| | : | |
| THE ALLEGHENY COUNTY BOARD OF | : | |
| ELECTIONS, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA
KATHY BOOCKVAR TO DISMISS THE AMENDED COMPLAINT OR, IN THE
<u>ALTERNATIVE, TO GRANT SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   STATEMENT OF FACTS ................................................................................... 3

    A.    Relevant Aspects of Pennsylvania Election Law ................................... 3

        1.    The Responsibilities of Pennsylvania's County Boards of Elections and the Secretary .................................................................. 3

        2.    The 2019 and 2020 Changes to Vote-by-Mail Procedures ........................ 4

    B.    Plaintiff's Unsuccessful State-Court Appeal ......................................... 5

    C.    Westmoreland County's Unchallenged Decision to Set Aside Undated Ballots.... 7

    D.    The Current Proceedings........................................................................ 7

        1.    Plaintiff's Original Complaint and Motion for Injunctive Relief .............. 7

        2.    Plaintiff's Amended Complaint ................................................................. 9

        3.    Plaintiff's Motion for Summary Judgment ............................................... 9

III.   ARGUMENT ..................................................................................................... 11

    A.    This Court Lacks Jurisdiction Over Plaintiff's Claims......................... 11

        1.    Plaintiff's Claims Are Barred by the *Rooker-Feldman* Doctrine ............. 11

            (a)    Plaintiff's Claims Satisfy All the Elements of the *Rooker-Feldman* Doctrine ........................................... 12

            (b)    Plaintiff's Attempt to Plead Around the *Rooker-Feldman* Doctrine Is Unavailing ................................................ 14

        2.    Plaintiff Lacks Standing to Assert Third Parties' Claims or to Pursue a "Vote Dilution" Theory ......................................................... 18

            (a)    Plaintiff's "Vote Dilution" Theory Cannot Establish Standing.... 19

            (b)    Plaintiff Cannot Assert Injuries of Absent Third Parties ............. 20

        3.    Plaintiff's Claims Are Barred by the Doctrine of Sovereign Immunity ... 21

    B.    Plaintiff's Claims Are Barred by Res Judicata ................................... 23

    C.    Defendants Are Entitled to Judgment as a Matter of Law on Both Claims.......... 26

        1.    The Court Should Dismiss the Equal Protection Claim........................... 26

            (a)    Independent County Procedures, Even if Inconsistent, Do Not Give Rise to an Equal Protection Claim ...................................... 26

(b)     Even if Inter-County Variations Could Support an Equal Protection Claim, Plaintiff Cannot Allege or Prove That Anyone Violated *Her* Right to Equal Protection ......................... 27

2.     The Court Should Dismiss the Due Process Claim ................................. 30

D.     If There Is a Constitutional Violation Here, the Remedy Cannot Be to Create More Constitutional Violations............................................................. 33

IV.    CONCLUSION.................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 2,349 Ballots in the 2020 Gen. Election*,
No. 1162 C.D. 2020, 2020 WL 6820816 (Pa. Commw. Ct. Nov. 23, 2020) ............................6

*A.D. Bedell Wholesale Co. v. Philip Morris Inc.*,
263 F.3d 239 (3d Cir. 2001) ...................................................................................................13

*Acosta v. Democratic City Comm.*,
288 F. Supp. 3d 597 (E.D. Pa. 2018) .....................................................................................30

*Andino v. Middleton*,
141 S. Ct. 9 (2020) ..................................................................................................................35

*Andrews v. City of Phila.*,
895 F.2d 1469 (3d Cir. 1990) .................................................................................................28

*Artway v. Attorney Gen.*,
81 F.3d 1235 (3d Cir. 1996) ...................................................................................................27

*Balent v. City of Wilkes-Barre*,
669 A.2d 309 (Pa. 1995) .........................................................................................................24

*Blanciak v. Allegheny Ludlum Corp.*,
77 F.3d 690 (3d Cir. 1996) .....................................................................................................22

*Bognet v. Sec'y Commonwealth of Pa.*,
980 F.3d 336 (3d Cir. 2020) ........................................................................................ *passim*

*Boord v. Maurer*,
22 A.2d 902 (Pa. 1941) ...........................................................................................................15

*Brown v. Ga. Dep't of Revenue*,
881 F.2d 1018 (11th Cir. 1989) ..............................................................................................23

*Bruszewski v. United States*,
181 F.2d 419 (3d Cir. 1950) ...................................................................................................25

*In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*,
No. 29 WAP 2020, 2020 WL 6866415 (Pa. Nov. 23, 2020) ........................................ *passim*

*Cemex, Inc. v. Indus. Contracting & Erecting, Inc.*,
No. 02-1240, 2006 WL 1785564 (W.D. Pa. June 26, 2006), *aff'd*, 254 F.
App'x 148 (3d Cir. 2007) .........................................................................................................25

*Cicchiello v. SEIU 1199P Union Serv. Employees Int'l Union*,
   No. 361 M.D. 2015, 2016 WL 1639015 (Pa. Commw. Ct. Apr. 26, 2016)............................25

*Davison v. Gov't of Puerto Rico*,
   471 F.3d 220 (1st Cir. 2006) ....................................................................................16

*Donald J. Trump for President, Inc. v. Boockvar*,
   --- F. Supp. 3d ----, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) .................................. *passim*

*In re Estate of Plance*,
   175 A.3d 249 (Pa. 2017) ..........................................................................................24

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
   544 U.S. 280 (2005)..................................................................................11, 12, 23

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*,
   615 F.3d 159 (3d Cir. 2010)....................................................................... *passim*

*Green v. Mansour*,
   474 U.S. 64 (1985)....................................................................................................22

*Hammond v. Krak*,
   No. 17-00952, 2020 WL 1032296 (W.D. Pa. Mar. 3, 2020) ............................................24, 25

*Hennings v. Grafton*,
   523 F.2d 861 (7th Cir. 1975) .....................................................................................31

*Hoblock v. Albany Cnty. Bd. of Elections*,
   422 F.3d 77 (2d Cir. 2005)........................................................................11, 13, 15, 18

*Idaho v. Coeur d'Alene Tribe of Idaho*,
   521 U.S. 261 (1997)..................................................................................................21

*Williams ex rel. J.E. v. Reeves*,
   954 F.3d 729 (5th Cir. 2020) .......................................................................................22, 23

*Appeal of James*,
   377 Pa. 405, 105 A.2d 64 (1954) ..............................................................................34

*Johnson v. Phila. Hous. Auth.*,
   448 F. App'x 190 (3d Cir. 2011) ..............................................................................16

*Kasper v. County of Bucks*,
   514 F. App'x 210 (3d Cir. 2013) ...............................................................................28

*Keyes v. Gunn*,
   890 F.3d 232 (5th Cir. 2018) ....................................................................................19

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004)..................................................................................21

*Levin v. Commerce Energy, Inc.*,
   560 U.S. 413 (2010)..................................................................................35

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..................................................................................19

*Marbury v. Madison*,
   5 U.S. 137 (1803)......................................................................................33

*Mikhail v. Kahn*,
   991 F. Supp. 2d 596 (E.D. Pa. 2014) .......................................................13

*Miller v. City of Phila.*,
   174 F.3d 368 (3d Cir. 1999).....................................................................30

*Ne. Ohio Coalition for Homeless v. Husted*,
   696 F.3d 580 (6th Cir. 2012) ....................................................................33

*Nemeth v. Office of Clerk of Superior Court of N.J.*,
   --- F. App'x ----, No. 20-2244, 2020 WL 7385082 (3d Cir. 2020)..........22

*Pa. Prison Soc'y v. Cortés*,
   508 F.3d 156 (3d Cir. 2007)......................................................................19

*Partido Nuevo Progresista v. Barreto Perez*,
   639 F.2d 825 (1st Cir. 1980).....................................................................32

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984)..............................................................................21, 23

*Perles v. Cnty. Return Bd. of Northumberland Cnty.*,
   202 A.2d 538 (Pa. 1964) ...........................................................................34

*Prince v. Ark. Bd. of Exam'rs in Psychology*,
   380 F.3d 337 (8th Cir. 2004) ....................................................................16

*Radakovich v. Radakovich*,
   846 A.2d 709 (Pa. Super. Ct. 2004)..........................................................24

*Reynolds v. Sims*,
   377 U.S. 533 (1964)..................................................................................20

*Richards v. Dayton*,
   No. 13-3029, 2015 WL 1522199 (D. Minn. 2015)....................................22

*Roberts v. Perez*,
    No. 13-5612, 2014 WL 3883418 (S.D.N.Y. Aug. 7, 2014)...............................................12, 14

*Russo v. GMAC Morg., LLC*,
    549 F. App'x 8 (2d Cir. 2013) .................................................................................................12

*S&M Brands, Inc. v. Georgia ex rel. Carr*,
    925 F.3d 1198 (11th Cir. 2019) ...............................................................................................23

*In re Scroggin*,
    237 A.3d 1006 (Pa. 2020) ........................................................................................................31

*Sessions v. Morales-Santana*,
    137 S. Ct. 1678 (2017).................................................................................................17, 34, 35

*Shambach v. Bickhart*,
    845 A.2d 793 (Pa. 2004) .......................................................................................................5, 34

*Sheikhani v. Wells Fargo Bank*,
    577 F. App'x 610 (7th Cir. 2014) ............................................................................................12

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)..............................................................................................................19

*Tillman v. Lebanon Cnty. Corr. Facility*,
    221 F.3d 410 (3d Cir. 2000)......................................................................................................27

*Tobias v. Halifax Twp.*,
    28 A.3d 223 (Pa. Commw. Ct. 2011) .......................................................................................24

*Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*,
    655 F. Supp. 2d 581 (W.D. Pa. 2009)......................................................................................27

*Turner v. Crawford Square Apartments III, L.P.*,
    449 F.3d 542 (3d Cir. 2006)......................................................................................................24

*Udoh v. Minn. Dep't of Human Servs.*,
    No. 16-3119, 2017 WL 2683975 (D. Minn. June 21, 2017)....................................................12

*Wirth v. Aetna U.S. Healthcare*,
    469 F.3d 305 (3d Cir. 2006)......................................................................................................17

*Wood v. Raffensperger*,
    981 F.3d 1307 (11th Cir. 2020) ...............................................................................................32

*Yick Wo v. Hopkins*,
    118 U.S. 356 (1886)..................................................................................................................31

*Ziccarelli v. Allegheny Cnty. Bd. of Elections*,
    No. GD 20-011654, 2020 WL 7012634 (C.P. Allegheny Cnty. Nov. 18, 2020) ........... *passim*

**Statutes**

25 P.S. § 2601 *et seq.* ....................................................................................................3

25 P.S. § 2621(f) ......................................................................................................3, 28

25 P.S. § 2642(f)–(g), (k) ..............................................................................................3

25 P.S. § 3146.6(a) .........................................................................................................5

25 P.S. § 3150.16(a) .......................................................................................................5

25 P.S. § 3157 ...............................................................................................................14

25 P.S. §§ 3157–3159 ...................................................................................................18

25 P.S. § 3157(a) ............................................................................................................4

25 P.S. § 3157(b) ............................................................................................................4

25 P.S. § 3158 .................................................................................................................3

25 P.S. § 3159 .................................................................................................................3

28 U.S.C. § 1257 ...........................................................................................................11

28 U.S.C. § 1344 ...........................................................................................................19

42 U.S.C. § 1983 ......................................................................................................27, 28

Act of Mar. 27, 2020 (P.L. 41, No. 12), 2020 Pa. Legis. Serv. Act 2020-12 (S.B.
    422) .............................................................................................................................4

Act of Oct. 31, 2019 (P.L. 552, No. 77), 2019 Pa. Legis. Serv. Act 2019-77 (S.B.
    421) .............................................................................................................................4

**Other Authorities**

13 Charles Alan Wright et al., Federal Practice & Procedure § 3524.3 (3d ed.) ...........21

U.S. Const. art. I, § 4 ....................................................................................................13

U.S. Const. amend. XI ...............................................................................1, 21, 22, 23

U.S. Const. amend XIV ................................................................................................20

## I.     INTRODUCTION

Plaintiff, Nicole Ziccarelli, asks this federal court to overrule a decision of the Pennsylvania Supreme Court on an issue of Pennsylvania law. After the November 2020 general election, Plaintiff, a candidate for a state Senate seat, asked the Allegheny County Court of Common Pleas to order the County's Board of Elections to set aside and not count more than 2000 ballots that had arrived in envelopes with undated declarations. The Court of Common Pleas rejected her arguments and held that the Allegheny Board was required to count the ballots. On appeal, the Pennsylvania Supreme Court agreed that the Court of Common Pleas' order should stand and the ballots should be counted. This should have been the final word on whether, under state law, the ballots in question were valid. Now, however, Plaintiff has filed suit in this Court, asking it to hold that the Pennsylvania Supreme Court committed a legal error and that the Allegheny Board must therefore throw out the same ballots that the state courts told it to count. For a number of reasons, this Court should reject what is, in essence, a disappointed litigant's effort to "appeal" an adverse state-court decision to a federal court.

As an initial matter, the Court lacks jurisdiction. Despite several efforts to reframe her allegations, Plaintiff cannot escape the fact that her alleged harm stems from the Pennsylvania Supreme Court's judgment and that her claims necessarily require a finding that the Pennsylvania Supreme Court erred. Under the *Rooker-Feldman* doctrine, this Court cannot consider such a challenge to a state court's decision. Plaintiff also lacks standing; the Third Circuit has rejected her theory that votes can be "diluted" by votes that are "invalid" under state law, and she cannot assert claims on behalf of other voters. The Court also lacks jurisdiction over the claims against the Secretary because they are in reality state-law claims, for which the Eleventh Amendment confers immunity.

Even putting aside these jurisdictional defects, the Court should dismiss Plaintiff's claims. They are barred by res judicata because Plaintiff has already litigated the same dispute against the primary Defendant, the Allegheny Board. And they are legally insufficient. Plaintiff has not stated a claim of an equal protection violation; she does not allege that she personally received disparate treatment or that the Secretary treated similarly situated voters differently. She can show only that two different counties reached different decisions on the details of election management, and that the state courts agreed with one of those decisions and did not review the other one. These kinds of independent decisions, even if they lead to inconsistent treatment of certain ballots, cannot constitute an equal protection violation, particularly where the state courts have decided the issue. And neither Plaintiff's allegations nor the evidence she presents even arguably rise to the level of a due process violation.

Finally, even if the Court were to find that Plaintiff's claims have merit, there is no relief that this Court could grant. Plaintiff has tied this Court's hands by choosing to pursue claims against the Allegheny Board, which counted undated ballots in compliance with the Pennsylvania Supreme Court's ruling, and not against the Westmoreland County Board of Elections, which refused to count undated ballots (in accordance with Plaintiff's own request). If the Court were to find that the discrepancy between the two counties gives rise to an equal protection claim, the only acceptable remedy would be to order the Westmoreland Board to count its undated ballots; the alternative demanded by Plaintiff—disenfranchising hundreds or thousands of Allegheny County voters—would create a far more serious Constitutional violation than the one it would remedy. But Plaintiff has not brought the Westmoreland Board before this Court. Accordingly, even if Plaintiff could show that she was wronged, her strategic decisions would leave her without a remedy.

## II.     STATEMENT OF FACTS

### A.      Relevant Aspects of Pennsylvania Election Law

#### 1.      The Responsibilities of Pennsylvania's County Boards of Elections and the Secretary

Pennsylvania's Election Code, 25 P.S. § 2601 *et seq.*, provides for a decentralized election system. Primary responsibility for administering elections lies with the boards of elections of the Commonwealth's 67 counties. "The Election Code vests county boards of elections with discretion to conduct elections and to implement procedures intended to ensure the honesty, efficiency, and uniformity of Pennsylvania's elections." *Donald J. Trump for President, Inc. v. Boockvar*, --- F. Supp. 3d ----, 2020 WL 5997680, at *9 (W.D. Pa. Oct. 10, 2020) ("*Trump I*"); *see id.* at *30–31 (outlining areas of county discretion). The Election Code charges county boards with various responsibilities, including "[t]o make and issue such rules, regulations and instructions, not inconsistent with law, as they may deem necessary for the guidance of voting machine custodians, elections officers and electors," "[t]o instruct election officers in their duties," and to canvass, compute, and certify election returns. 25 P.S. § 2642(f)–(g), (k). For all but local races, once the county board has certified the returns, it must forward a copy to the Secretary. 25 P.S. § 3158.

The Election Code also gives the Secretary powers and duties, including the duty to "receive from county boards of elections the returns of primaries and elections, to canvass and compute the votes cast … to proclaim the results of such primaries and elections, and to issue certificates of election to the successful candidates." 25 P.S. § 2621(f); *see* 25 P.S. § 3159 ("Upon receiving the certified returns of any primary or election from the various county boards, the Secretary … shall forthwith proceed to tabulate, compute and canvass the votes cast …."). While the Secretary issues guidance to the county boards, nothing in the Election Code gives her

the authority to refuse to accept returns or to decide which ballots are to be counted and which are not. "The Secretary . . . has no authority to declare ballots null and void…. Moreover, the Secretary has no authority to order the sixty-seven county boards of election to take any particular actions with respect to the receipt of ballots." *In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, No. 29 WAP 2020, 2020 WL 6866415, at \*15 n.6 (Pa. Nov. 23, 2020) (Opinion Announcing the Judgment of the Court, or "OAJC").

If a candidate or elector is dissatisfied with a county board of elections' canvassing decision, the remedy is to appeal to the state courts, not to the Secretary. *See* 25 P.S. § 3157(a) (procedures for appeals by "person[s] aggrieved by any order or decision of any county board regarding the computation or canvassing of the returns of any primary or election, or regarding any recount or recanvass thereof"). The Code provides that while such an appeal is pending, "the county board shall suspend any official certification of the votes cast" in any election district that is the subject of an appeal. 25 P.S. § 3157(b).

### 2.      The 2019 and 2020 Changes to Vote-by-Mail Procedures

In late 2019, the Pennsylvania General Assembly passed and Governor Wolf signed legislation—Act 77—that made significant changes to the Election Code, including the extension of mail-in voting to all qualified electors. Act of Oct. 31, 2019 (P.L. 552, No. 77), 2019 Pa. Legis. Serv. Act 2019-77 (S.B. 421). Further changes to the Election Code followed with Act 12 of 2020. Act of Mar. 27, 2020 (P.L. 41, No. 12), 2020 Pa. Legis. Serv. Act. 2020-12 (S.B. 422). The COVID-19 pandemic sparked extensive voter interest in the new mail-in procedures; heavy use of mail-in balloting, in turn, led to litigation over how the procedures were to be implemented. The jump in numbers of mail ballots

> transformed the incentives of probing the mail-in balloting provisions for vulnerabilities in furtherance of invalidating votes. For the first time, a successful challenge arising from a given technical violation of statutory requirements might

result in the invalidation of many thousands of no-excuse mail-in ballots rather than scores or hundreds of absentee ballots.

*In re Canvass*, 2020 WL 6866415, at *24 (Wecht, J., concurring).

Over the last several months, the Pennsylvania state courts have accordingly been called upon to interpret a number of the Code's provisions for the first time—even provisions with language that was in the Code before the passage of Act 77. For example, to the Secretary's knowledge, no reported decision before 2020 analyzed the "fill out, date and sign" language in 25 P.S. §§ 3146.6(a) and 3150.16(a) that Plaintiff highlights in this case.

**B.    Plaintiff's Unsuccessful State-Court Appeal**

In Allegheny County, of the estimated 350,000 mail-in and absentee ballots cast in the November 3, 2020, general election, 2,349 arrived in envelopes with declarations that were signed but undated. Stip. Facts ¶¶ 27, 29. Of these undated ballots, 311 came from voters in Senate District 45, the seat for which Plaintiff was running. *Id.* ¶ 31. On Tuesday, November 10, 2020, the Allegheny Board voted to count all 2,349 undated ballots. *Id.* ¶ 33.

Plaintiff appealed this decision to the Allegheny County Court of Common Pleas. *Id.* ¶ 34. After a hearing, at which counsel for Plaintiff and the Allegheny Board appeared, Judge Joseph James affirmed the Allegheny Board's decision to count the ballots. He concluded that the date provision in Section 3150.16(a) is directory, not mandatory, and that "ballots containing mere minor irregularities should only be stricken for compelling reasons." *Ziccarelli v. Allegheny Cnty. Bd. of Elections*, No. GD 20-011654, 2020 WL 7012634, at *1 (C.P. Allegheny Cnty. Nov. 18, 2020) ("*Ziccarelli*") (citing *Shambach v. Bickhart*, 845 A.2d 793, 798 (Pa. 2004)). Judge James' Memorandum concluded that "[T]he [Allegheny] Board properly overruled [Plaintiff's] objections to the 2,349 challenged mail-in ballots. These ballots must be counted. The Petition for Review is denied and the Board's decision [to count the ballots] is affirmed." *Id.* at *2.

Plaintiff appealed Judge James' decision to the Commonwealth Court, which reversed the decision and ruled in Plaintiff's favor. *In re 2,349 Ballots in the 2020 Gen. Election*, No. 1162 C.D. 2020, 2020 WL 6820816 (Pa. Commw. Ct. Nov. 23, 2020). The Pennsylvania Supreme Court then granted the Allegheny Board's petition for allowance of appeal, reversed the Commonwealth Court's decision, and reinstated the decision of the Court of Common Pleas. *In re Canvass*, 2020 WL 6866415, at *16. In the OAJC, three Justices concluded that the Allegheny Board should count the undated ballots because a voter's failure to date a ballot envelope was a technical violation of the Election Code that should not result in disenfranchisement. *Id.* Justice Wecht concurred with much of the OAJC, but disagreed with its conclusion that the Election Code does not mandate that voters date their ballot envelopes. He opined, however, that his interpretation should apply "only prospectively," because he could not "say with any confidence that even diligent electors were adequately informed as to what was required to avoid the consequence of disqualification in this case …. [I]t would be unfair to punish voters for the incidents of systemic growing pains." *Id.* at *16, 24 (Wecht, J., concurring).

Accordingly, Justice Wecht joined the three signers of the OAJC in reinstating the Court of Common Pleas' decision that the Allegheny Board had acted "properly" and that the undated ballots "*must be counted.*" *Ziccarelli*, 2020 WL 7012634, at *2 (emphasis added); *see* ECF 29 ¶ 33 (acknowledging that "four justices had voted to reverse the Commonwealth Court and reinstate the Allegheny County Court of Common Pleas decision"). Plaintiff filed an Emergency Application for Reargument, in which she asserted that the Supreme Court had committed a legal error when it held the Allegheny Board should count undated ballots. The Supreme Court denied the Application. Stip. Facts, Ex. G.

On November 23, 2020, before the Pennsylvania Supreme Court ruled, the Allegheny Board certified a set of election results that did not include the undated ballots. Stip. Facts ¶ 51; ECF 3, at 6. On November 25, after the ruling, the Allegheny Board submitted an amended certification of vote totals to the Secretary that included the undated ballots. Stip. Facts ¶¶ 52, 54.

### C.      Westmoreland County's Unchallenged Decision to Set Aside Undated Ballots

The Westmoreland County Board of Elections received approximately 60,000 mail-in and absentee ballots for the 2020 general election; of these, 343 were signed but undated. Stip. Facts ¶¶ 56–57. The Board did not count the undated ballots after the election. On November 13, 2020, and again on November 30, 2020, one of the Board members proposed a motion to count the undated ballots. At the November 30 meeting, Plaintiff's counsel urged the Board not to consider the motion and not to count the undated ballots. The motion did not receive a second and the undated ballots remained uncounted. *Id.* ¶¶ 58–65.

On November 30, 2020, the Westmoreland Board certified its final election results; this certification did not include any count of the undated ballots. *Id.* ¶ 65. Unlike in neighboring Allegheny County, there was no court challenge to the Westmoreland Board's decisions. *Id.* ¶ 66. Indeed, as discussed below, Plaintiff's counsel urged the Westmoreland Board not to count the ballots.

### D.      The Current Proceedings

#### 1.      Plaintiff's Original Complaint and Motion for Injunctive Relief

On November 25, 2020, Plaintiff filed her original Complaint, which alleged that the Pennsylvania Supreme Court's decision was the foundation of her injuries. Indeed, the first sentence of the first paragraph stated that "[t]his is an action concerning, *inter alia*, the Pennsylvania Supreme Court's recent decision … where a majority of the Court concluded that 2,349 signed but undated mail-in ballots … in Allegheny County … should be counted." ECF 1

¶ 1. According to the Complaint, the Pennsylvania Supreme Court's decision had injured Plaintiff because it would cause the Allegheny Board to amend its certification to include the undated ballots, which would cause her to lose the election. ECF 1 ¶¶ 30, 39–43. Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, filed the same day, similarly alleged that the Pennsylvania Supreme Court had violated the rights of Plaintiff and other voters. ECF 3, at 9 ("Because the Pennsylvania Supreme Court simultaneously ruled that mail-in ballots lacking the statutorily-required date information are invalid but applied its ruling prospectively, it engaged in arbitrary and disparate treatment ….").

At the telephonic hearing on Plaintiff's Motion, Defendants' and Intervenors' counsel argued that because Plaintiff alleged that her injuries arose from a state court's ruling, her claims were barred under the *Rooker-Feldman* doctrine. Transcript dated November 25, 2020, ECF 15, at 19–22. The Court observed that to the extent Plaintiff could state an equal protection claim based on the Allegheny and Westmoreland Boards' procedural differences, the potential ways to even the playing field would be to "level up"—ordering the Westmoreland Board to count its undated ballots—or to "level down"—ordering the Allegheny Board to remove those ballots from its count. *Id.* at 13–14. The Court noted that Plaintiff had not named Westmoreland County as a defendant. *Id.* at 14–15. Plaintiff's counsel responded that, in Plaintiff's view, the Allegheny Board had counted "invalid" votes, the Westmoreland Board had not, and "we don't need Westmoreland here because they did what the Election Code requires." *Id.* at 15–17. The Court denied relief, stating that the order Plaintiff sought—a direction that the Allegheny Board should not certify the undated ballots—would not be in the public interest, because it would disenfranchise and harm thousands of Allegheny County voters. *Id.* at 28–29.

On November 30, 2020, Intervenors' counsel told the Westmoreland Board about the Pennsylvania Supreme Court's ruling and asked it to count Westmoreland County's undated ballots. Stip. Facts ¶ 60 & Ex. I. Later that day, Intervenors' counsel appeared before the Westmoreland Board and again asked it to count those ballots. Plaintiff's counsel also appeared and argued that the Board should *not* count the ballots. Stip. Facts ¶ 62 & Ex. J. Westmoreland County certified the election results without including the undated ballots. Stip. Facts ¶ 65. No one appealed the Westmoreland Board's determination, and Plaintiff has not taken any steps to add the Westmoreland Board as a defendant in this proceeding.

### 2.    Plaintiff's Amended Complaint

On December 1, 2020, Plaintiff filed an Amended Complaint. ECF 29. This pleading deleted the references to the Pennsylvania Supreme Court quoted above—and even deleted the first paragraph summarizing her complaint. *See* Appendix hereto (redline comparison of Complaint and Amended Complaint). In the Amended Complaint, Plaintiff no longer points to the Pennsylvania Supreme Court as the source of Plaintiff's alleged injury. Instead, Plaintiff alleges, the Allegheny Board committed the original error by voting to count the undated ballots, and the Pennsylvania Supreme Court and the Allegheny County Court of Common Pleas merely "affirmed" and "ratified" that "independent and intentional decision." ECF 29 ¶¶ 35–36. Plaintiff also alleges that the Secretary somehow violated someone's rights by "intentionally accept[ing]" the Allegheny Board's amended certification. Plaintiff does not explain how the Secretary could lawfully have refused to accept the certification, given the Pennsylvania Supreme Court's decision and the Secretary's statutory obligations.

### 3.    Plaintiff's Motion for Summary Judgment

In her Motion for Summary Judgment, Plaintiff continues her effort to soft-pedal the fact that accepting her claims requires a conclusion that the Pennsylvania Supreme Court erred.

Indeed, in the Motion, the specifics of that Court's ruling have faded away, leaving only the incorrect implication that the Court held that the ballots in question were "invalid" and "illegal." According to Plaintiff, a majority of the Supreme Court announced the "legal principle" that *all* ballots with undated declarations—including the Allegheny County ballots at issue here—are "invalid under the Election Code." ECF 47, at 15. Plaintiff brushes aside Justice Wecht's firmly stated opinion that the Allegheny County undated ballots from the November 2020 election *should* be counted, characterizing that opinion as a mere "preference." *Id.* at 14. And she never acknowledges that, by reversing the Commonwealth Court and reinstating the decision of the Court of Common Pleas, a majority of the Court decided that the undated ballots in question should count—and therefore could not, by definition, be "invalid" or "illegal."

Plaintiff's Motion includes several other significant misinterpretations and misstatements of Pennsylvania law. For example, Plaintiff argues that the Secretary was required to ignore the Pennsylvania Supreme Court's decision because, according to Plaintiff, that decision conflicted with guidance and briefs that the Secretary had issued and filed *before* the Supreme Court ruled. ECF 47 at 1, 16–17, 24–25, 29. Even if Plaintiff's characterizations of the Secretary's guidance and briefs were correct (they are not), these documents are now completely irrelevant. The Court's rulings bind the Secretary, not the other way around; the Secretary does not have the authority to ignore the Court's interpretation of the Election Code in favor of her own.

Plaintiff also offers the following bold, but totally unsupportable, argument: "[A]s a matter of state law, [the Secretary] was, and remains, duty-bound to critically examine the votes she receives from counties … she cannot simply certify election totals knowing full well they are infected with the fatal disease of arbitrary, disparate treatment of identically situated voters." ECF 47, at 17. Plaintiff manufactures this "duty" from thin air. Nothing in the Election Code

requires the Secretary to reject county boards' certifications based on her own independent constitutional analysis; indeed, nothing in the Election Code permits her to do so. The Code provides that appeals of county board decisions go to the state courts, not to the Secretary, and does not authorize the Secretary to overrule decisions of those courts.

## III.  ARGUMENT

### A.  This Court Lacks Jurisdiction Over Plaintiff's Claims

#### 1.  Plaintiff's Claims Are Barred by the *Rooker-Feldman* Doctrine

As a threshold matter, this Court lacks jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine. The doctrine recognizes that "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010); *see also Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) ("Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions."). As clarified by the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), the *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of the state court's judgments." *Id.* at 284. Accordingly, the doctrine bars jurisdiction where four requirements are satisfied: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining*, 615 F.3d at 166 (cleaned up). The first and third of these requirements "may be loosely termed procedural," and the second and fourth "may be termed substantive." *Hoblock*, 422 F.3d at 85.

(a)     **Plaintiff's Claims Satisfy All the Elements of the *Rooker-Feldman* Doctrine**

Each of these requirements is met here. Plaintiff lost in state court.[1] She contended that 2,349 mail-in ballots returned to the Allegheny Board with a signed but undated declaration were *per se* invalid under the Pennsylvania Election Code and thus must be excluded from the election returns. The Allegheny County Court of Common Pleas rejected Plaintiff's argument, holding that "[t]he ballots [at issue] *must* be counted." *Ziccarelli*, 2020 WL 7012634, at *2 (emphasis added). The Pennsylvania Supreme Court reinstated the decision of the Court of Common Pleas. As a result of the Pennsylvania Supreme Court's holding, the Allegheny Board included the votes from those ballots in its certified returns, and the Secretary included them in her certification. In short, the state-court judgment was directly adverse to Plaintiff's position.

*Rooker-Feldman*'s other procedural requirement is also met: The Pennsylvania Supreme Court's judgment was "rendered before the federal suit was filed." *Great W. Mining*, 615 F.3d at 166. Indeed, Plaintiff's original and amended complaints repeatedly refer to the Pennsylvania Supreme Court's judgment. *See* ECF 1 ¶¶ 1, 30–40, 49–52; ECF 29 ¶¶ 28–38.

The two substantive requirements are also satisfied. First, Plaintiff "complains of injuries caused by the state-court judgments." *Great W. Mining*, 615 F.3d at 166. As discussed above, *see supra* § II.D.1, she admitted as much in her Complaint. The Complaint likewise makes clear that

---

[1] That Plaintiff added, as defendants in this action, certain parties who were not parties to the state-court proceeding is irrelevant to the *Rooker-Feldman* analysis. *See Russo v. GMAC Morg., LLC*, 549 F. App'x 8, 10 (2d Cir. 2013) ("It does not matter that the plaintiff added parties to the federal action who were not parties to the state action. The *Rooker-Feldman* doctrine bars 'cases … brought by state-court losers complaining of injuries caused by state-court judgment rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" (citing *Exxon Mobil*, 544 U.S. at 284 (emphasis added))); *Sheikhani v. Wells Fargo Bank*, 577 F. App'x 610, 611 (7th Cir. 2014); *Udoh v. Minn. Dep't of Human Servs.*, No. 16-3119, 2017 WL 2683975, at *1 (D. Minn. June 21, 2017); *Roberts v. Perez*, No. 13-5612, 2014 WL 3883418, at *2-3 (S.D.N.Y. Aug. 7, 2014).

Plaintiff "is inviting [this Court] to review and reject the state judgments." *Great W. Mining*, 615 F.3d at 166. At its core, the Complaint contends that the Pennsylvania Supreme Court's judgment is somehow inconsistent with the reasoning of a majority of that Court: "[A] majority of the [Supreme] Court concluded that [the] 2,349 signed but undated mail-in ballots … were *invalid*, but … a separate majority of the Court concluded nonetheless [they] should be *counted*." ECF 1 ¶ 1. Moreover, the Complaint expressly alleges that this Court should reject the Pennsylvania Supreme Court's decision on the purported grounds that it violates the federal Constitution: "The Pennsylvania Supreme Court, by simultaneously ruling that mail-in ballots lacking the … date information are invalid, but applying its ruling prospectively, engaged in arbitrary and disparate treatment that treated voters in the 45th Senatorial District differently depending on which of the two counties comprising that District the voters resides." ECF 1 ¶ 49; *accord id.* ¶ 51. Indeed, a clearer case of a federal plaintiff complaining about an alleged injury caused by an adverse state-court judgment, and asking a federal district court to review and reject that judgment on purported federal-law grounds, is difficult to imagine.[2]  *See id.* ¶ 52 (alleging that "the Pennsylvania Supreme Court's ruling … violates the Constitution's mandate of one person, one vote"). The *Rooker-Feldman* doctrine squarely bars Plaintiff's claims.[3]

---

[2] That Plaintiff did not actually assert her federal constitutional claims in the state-court proceedings is irrelevant. "When a federal plaintiff brings a claim, *whether or not raised in state court*, that asserts injury caused by a state-court judgment and seeks review and reversal of that judgment, the federal claim is … barred from review." *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 615 (E.D. Pa. 2014) (quoting *Great W. Mining*, 615 F.3d at 170) (emphasis in *Mikhail*), *aff'd*, 572 F. App'x 68 (3d Cir. 2014); *accord Hoblock*, 422 F.3d at 87 ("[A] federal plaintiff cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state court.").

[3] The "Amicus Brief of Legislative Leaders" asserts an additional argument: that the Pennsylvania Supreme Court's decision in *In re Canvass* somehow violated the Elections Clause in Article I, § 4 of the U.S. Constitution. *See* ECF 49-1. This argument, which Plaintiff does not raise, fails for at least three reasons. First, it is well settled that, "in the absence of exceptional circumstances" not present here, courts do not consider "new issues raised by an amicus." *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 266 (3d Cir. 2001). Second, like

**(b)**     **Plaintiff's Attempt to Plead Around the *Rooker-Feldman* Doctrine Is Unavailing**

After Defendants pointed out the *Rooker-Feldman* bar at the November 25 hearing, Plaintiff filed her Amended Complaint in an apparent effort to plead around the doctrine. As described *supra* § II.D.2, the Amended Complaint backed away from the original Complaint's allegations that the Supreme Court's alleged errors had harmed Plaintiff, and shifted to allegations of an injury that the Board caused and the Supreme Court merely "ratified."

For at least two reasons, Plaintiff's "artful pleading is insufficient to bypass *Rooker-Feldman.*" *Roberts*, 2014 WL 2883418, at *3. First, Plaintiff misunderstands the roles played by the county boards and the Pennsylvania courts. It is true that where "a plaintiff sues his employer in state court for violating … anti-discrimination law … and loses," the *Rooker-Feldman* doctrine does not bar the plaintiff from "bring[ing] the same suit in federal court" (though the federal-court claims may well be barred by preclusion doctrines). *Great W. Mining*, 615 F.3d at 167 (internal quotation marks omitted). In such cases, the alleged injury is not based on the state-court judgment but solely "*on the employer's discrimination*. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment." *Id.* But the Allegheny Board is not analogous to a private employer-defendant, and the Pennsylvania Supreme Court's decision is not analogous to a ruling that alleged employment discrimination should not be remedied. Under Pennsylvania law, decisions about whether ballots should be counted are committed to county boards of election in the first instance, *subject to appellate review by the Pennsylvania courts*. *See* 25 P.S. § 3157. The question that Plaintiff raises here—whether ballots

---

Plaintiff's claims, amici's argument is barred by, *inter alia*, the *Rooker-Feldman* and preclusion doctrines. Third, amici fail to state any Elections Clause claim as a matter of law: The Elections Clause applies only to *federal* elections, not to state elections like the one here.

returned with signed but undated declarations are *per se* invalid and must be rejected under the Pennsylvania Election Code—is a question of law. The Pennsylvania Supreme Court rejected Plaintiff's position and held that, at least for purposes of the November 2020 election, such ballots are not *per se* invalid. As Plaintiff's original Complaint recognized, that ruling is the source of Plaintiff's alleged injury. To state the obvious: if the Supreme Court had instead ruled in Plaintiff's favor, the 2,349 ballots would not have been counted, and no injury would exist.

In asserting that the Pennsylvania Supreme Court merely "ratified" the Board's decision, Plaintiff appears to seek support in certain language in the Second Circuit's *Hoblock* decision. But the attempt is unavailing. *Hoblock* held that, for *Rooker-Feldman* purposes, a New York Court of Appeals ruling that certain absentee ballots were invalid under state law *did* cause the injury the plaintiffs complained of in their subsequent federal lawsuit challenging the Albany County Board of Elections' refusal to tally those ballots. *Hoblock*, 422 F.3d at 81–83, 88–89. In so holding, the Court observed that "the Board, had it been left to its own devices, would have counted [the absentee ballots]," and that "[t]he state-court judgment did not ratify, acquiesce in, or leave unpunished an anterior decision by the Board not to count the ballots." *Id.* at 89.

Insofar as Plaintiff reads the *Hoblock* opinion to suggest, in dicta, that the *Rooker-Feldman* doctrine would not have applied if the Albany County Board had instead been inclined *not* to count the absentee ballots, and then further contends that such a proposition controls this case, Plaintiff is mistaken. Such an argument ignores the important distinction, noted above, between private defendants and agencies, like the Allegheny Board, that make quasi-judicial decisions subject to appellate review by courts. *See Boord v. Maurer*, 22 A.2d 902, 904 (Pa. 1941) (Pennsylvania Election Code "clothes [county boards of elections] with quasi-judicial functions"). As courts including the Third Circuit have repeatedly recognized, challenges to

15

state-court decisions can fall within the scope of the *Rooker-Feldman* bar notwithstanding that

they uphold agency decisions. *See, e.g.*, *Johnson v. Phila. Hous. Auth.*, 448 F. App'x 190, 191–

92 (3d Cir. 2011) ("[t]o the extent" that a federal civil rights complaint "calls into question the

validity" of a Court of Common Pleas judgment denying an appeal from a decision of the

Philadelphia Housing Authority, the federal "complaint is barred by *Rooker-Feldman*"); *Davison

v. Gov't of Puerto Rico*, 471 F.3d 220, 221–23 (1st Cir. 2006) (federal-court challenge to

decisions of Puerto Rico courts upholding order of Puerto Rico Firefighters Corps was barred by

*Rooker-Feldman*); *Prince v. Ark. Bd. of Exam'rs in Psychology*, 380 F.3d 337, 341 (8th Cir.

2004) (*Rooker-Feldman* barred federal challenge brought by litigant who had pursued state-court

appeal of state administrative agency determination).

Moreover, Plaintiff herself alleges that the Allegheny Board did not actually add the

2,349 ballots to its certified vote count until *after* the Pennsylvania Supreme Court's ruling. *See*

ECF 1 ¶ 30 ("On November 23, 2020, prior to the issuance of the Supreme Court's decision in

this matter, the Board certified its election results, *excluding* any certification of the Disputed

Ballots."); ECF 29 ¶ 37 ("Following the Supreme Court's decision, on November 25, 2020, the

Board … canvassed and certified the results from the [undated] Ballots to Secretary Boockvar

…."). That chronology reflects the Board's indisputable obligation to abide by the Supreme

Court's decision with respect to whether the ballots were *per se* invalid under Pennsylvania law.[4]

In addition, Plaintiff's attempt to avoid *Rooker-Feldman* overlooks that her federal claims

would necessarily require this Court to overturn the Pennsylvania Supreme Court's decision. The

---

[4] Plaintiff's Amended Complaint emphasizes "the absence of a court order requiring the Board to
count the [Disputed] Ballots." ECF 29 ¶ 37. But that argument exalts form over substance. The
Court of Common Pleas decision that the Supreme Court reinstated held that, under
Pennsylvania law, the 2,349 ballots in dispute "*must* be counted." *Ziccarelli*, 2020 WL 7012634,
at *2 (emphasis added).

Pennsylvania Supreme Court held that the 2,349 ballots were properly counted under Pennsylvania law. But Plaintiff insists that counting the ballots was *improper*, and further contends that the proper remedy for the alleged equal protection violation is to "level down"— that is, to enjoin Defendants from counting the 2,349 ballots—*because that is what Pennsylvania law purportedly "command[s]*." ECF 47, at 28–29; *see also Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1698 & n.23 (2017) (noting that how the remedy of equal treatment is achieved is a matter of state law that should generally be decided by state courts). To sustain this contention, Plaintiff must take the position—as she does—that the Pennsylvania Supreme Court somehow interpreted Pennsylvania law and violated that interpretation in the same ruling. By inviting this Court to reject the Pennsylvania Supreme Court's decision as to the requirements of state law, not only does Plaintiff run afoul of the principle that state courts—not federal district courts—are the definitive expositors of state law, *see Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305, 309 (3d Cir. 2006); she also contravenes the *Rooker-Feldman* doctrine.

Second, and independently, even if the *Rooker-Feldman* doctrine did not bar Plaintiff's claims against the Allegheny Board (as it does), it would still bar her claims against the Secretary. The action by the Secretary of which Plaintiff complains is the acceptance of the Board's amended certified results containing the 2,349 ballots at issue. As the Amended Complaint alleges, this action occurred *after* the Pennsylvania Supreme Court's decision. *See* ECF 29 ¶¶ 37–38. It was also done *pursuant to* that decision. Plaintiff's suggestion that the Secretary should have excluded those ballots, despite the Pennsylvania Supreme Court's holding that they were properly counted, is as astonishing as it is incorrect. The Pennsylvania Election Code provides for the state judiciary—ultimately, the Pennsylvania Supreme Court—to resolve disputes over which ballots should be counted; for the county boards of election to certify

election results, reflecting the resolution of any such disputes, to the Secretary; and for the Secretary to tabulate and certify the votes cast for each race based on the certified returns received. 25 P.S. §§ 3157–3159. As the Second Circuit has explained, "[w]here a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court [of the United States] can hear." *Hoblock*, 422 F.3d at 88. Accordingly, just as, "if the state has taken custody of a child pursuant to a state judgment, the parent cannot escape *Rooker-Feldman* simply by alleging in federal court that he was injured by the state employees who took his child rather than by the judgment authorizing them to take the child," *id.*, so too can Plaintiff not evade *Rooker-Feldman* by alleging that she was injured by the Secretary who tabulated election results pursuant to the state-court judgment in Plaintiff's case.

### 2. Plaintiff Lacks Standing to Assert Third Parties' Claims or to Pursue a "Vote Dilution" Theory

Plaintiff alleges three kinds of injury in her Amended Complaint: (1) that Defendants' alleged acts caused Plaintiff to lose the race for State Senator for the 45th District, ECF 29 ¶ 5; (2) that counting supposedly "invalid" ballots dilutes the votes of "persons who voted in complete compliance with the Election Code in both counties—including Ziccarelli herself," *id.* ¶¶ 61, 70, 71; and (3) that voters who neglected to date their ballots were treated differently, depending on what county they voted in, because undated ballots were counted in Allegheny County but not in Westmoreland County, *id.* ¶ 60. Of these alleged injuries, Plaintiff only has standing to assert the first—her loss of the election.[5] The second alleged injury, which is critical to much of Plaintiff's case—"dilution" of "valid" votes by "invalid" ones—is foreclosed by

---

[5] As discussed below, although Plaintiff may have standing to seek relief for this injury, she is unable to state a claim for relief.

binding Third Circuit precedent. Plaintiff also cannot pursue relief for the third alleged injury,

because she does not allege that she forgot to date her ballot, and she cannot assert claims on

behalf of the 343 Westmoreland County voters who submitted undated ballots.

Plaintiff thus fails to establish the "irreducible constitutional minimum of standing" with

respect to any injury other than her loss of the election. *See Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560–61 (1992) (plaintiff must demonstrate the familiar elements of injury in fact,

causation, and redressability). Plaintiff cannot bear the burden of proving each element of

standing "with the manner and degree of evidence required at the successive stages of the

litigation." *Pa. Prison Soc'y v. Cortés*, 508 F.3d 156, 161 (3d Cir. 2007).[6]

### (a)   Plaintiff's "Vote Dilution" Theory Cannot Establish Standing

In a recent, precedential opinion that Plaintiff fails to cite, the Third Circuit found that

generalized "vote dilution" claims such as Plaintiff's could not establish standing. The Court

noted that "the foremost element of standing is injury in fact, which requires the plaintiff to show

a harm that is both 'concrete and particularized.'" *Bognet v. Sec'y Commonwealth of Pa.*, 980

F.3d 336, 352 (3d Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016)).

Plaintiff's vote dilution allegations fail to meet either criterion.

*Bognet* considered voter-plaintiffs' allegation that allegedly unlawful votes diluted their

votes in violation of the Equal Protection Clause. The Court found that this harm did not meet

Article III's standards because "this conceptualization of vote dilution—state actors counting

ballots in violation of state election law—is not a concrete harm under the Equal Protection

---

[6] This Court also lacks jurisdiction over Plaintiff's claims because 28 U.S.C. § 1344 is the only statute that confers jurisdiction upon federal courts to hear election disputes for state offices, and that statute does not apply here. *Keyes v. Gunn,* 890 F.3d 232, 237 (5th Cir. 2018) (reversing and remanding with instructions to dismiss equal protection claim because district court lacked jurisdiction over state election contest for a legislative seat under 28 U.S.C. § 1344).

Clause of the Fourteenth Amendment." *Bognet*, 980 F.3d at 354. Nor is it "particularized," because "the illegal counting of unlawful votes, 'dilute[s]' the influence of all voters in Pennsylvania equally and in an 'undifferentiated' manner and do[es] not dilute a certain group of voters particularly." *Id.* at 356. Plaintiff alleges exactly the same injury—that Defendants' counting of "unlawful" votes dilutes "lawful" votes. *See, e.g.*, ECF 29 ¶¶ 57–64. This injury is not cognizable under *Bognet*.

To the extent Plaintiff alleges some generic violation of the one-person, one-vote principle announced in *Reynolds v. Sims*, 377 U.S. 533, 561–62 (1964), the Third Circuit has likewise emphasized that "vote dilution under the Equal Protection Clause is concerned with votes being weighed differently …. [I]f dilution of lawfully cast ballots by the 'unlawful' counting of invalidly cast ballots 'were a true equal-protection problem, then it would transform every violation of state election law (and, actually, every violation of every law) into a potential federal equal-protection claim requiring scrutiny of the government's 'interest' in failing to do more to stop the illegal activity.'" *Bognet*, 980 F.3d at 355 (citing *Trump I*, 2020 WL 5997680, at *45–46). Here, Plaintiff has not shown that any Defendant "weighed" two identical votes differently, and as such the presence of allegedly "unlawful votes" in the overall count does not injure "lawful" voters for purposes of Article III.

**(b)      Plaintiff Cannot Assert Injuries of Absent Third Parties**

Furthermore, Plaintiff cannot assert third-party standing on behalf of absent "Ziccarelli Voters" who neglected to date their Westmoreland County ballots.[7] The Supreme Court has permitted third-party standing only in limited circumstances, by "requiring that a party seeking

---

[7] Count Two of the Amended Complaint purports to speak for all voters. ECF 29 ¶ 72. Plaintiff's Motion, however, argues for relief only for Plaintiff and her voters. Either way, the analysis is the same: Plaintiff cannot assert claims on behalf of any third-party voters.

third-party standing make two additional showings. First, [the Court has] asked whether the party

asserting the right has a 'close' relationship with the person who possesses the right. Second, [the

Court has] considered whether there is a 'hindrance' to the possessor's ability to protect his own

interests." *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). Here, Plaintiff has not alleged any

barrier to Ziccarelli voters bringing claims to vindicate their own rights. Nor can she. For one

thing, these claims have already been fully litigated in state court. And nothing stands in these

voters' way if they want to bring a claim to vindicate their own rights, as Plaintiff purports to do

here. Because Plaintiff lacks standing to bring claims on behalf of these absent third parties, the

Court should not consider their alleged injuries when analyzing its jurisdiction under Article III.

### 3.       Plaintiff's Claims Are Barred by the Doctrine of Sovereign Immunity

This Court also lacks jurisdiction to adjudicate Plaintiff's claims by virtue of Eleventh

Amendment sovereign immunity. Put simply, federal courts lack jurisdiction to hear claims for

injunctive and declaratory relief based on a "claim that state officials violated state law in

carrying out their official responsibilities." *Pennhurst State Sch. & Hosp. v. Halderman*, 465

U.S. 89, 121 (1984). *See generally* 13 Charles Alan Wright et al., Federal Practice & Procedure §

3524.3 (3d ed.). Plaintiff's state-law claims in federal constitutional claims' clothing are

precisely that—allegations that the Secretary violated the Election Code (or, more specifically,

Plaintiff's incorrect interpretation of the Election Code) in carrying out her duties. Her claims are

thus barred, because there is no ongoing violation of federal law and Plaintiff seeks only an order

compelling state officials to comply with Plaintiff's incorrect understanding of state law.

First, Plaintiff fails to identify any ongoing violation of federal law that might justify this

federal court exercising judicial power under the narrow exception for a litigant seeking

prospective injunctive relief premised on a violation of the U.S. Constitution. *See Idaho v. Coeur

d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997) (summarizing the rule of *Ex parte Young*, 209

U.S. 123 (1908)). The Third Circuit has dismissed claims just like Plaintiff's for failure to seek

"prospective injunctive relief" when "specific allegations target past conduct, and the … remedy

is not intended to halt a present, continuing violation of federal law." *Blanciak v. Allegheny*

*Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996); *see also Nemeth v. Office of Clerk of Superior*

*Court of N.J.*, --- F. App'x ----, No. 20-2244, 2020 WL 7385082, at *2 (3d Cir. 2020). Other

federal courts have emphasized that "[i]n order to state a viable claim for prospective injunctive

relief, an event that occurred once in the past does not support a claim of an ongoing violation of

federal law in the future." *Richards v. Dayton*, No. 13-3029, 2015 WL 1522199, at *16 (D.

Minn. 2015) (dismissing complaint for lack of subject matter jurisdiction under the Eleventh

Amendment because "none of the [Office of Secretary of State] Defendants have any connection

with the enforcement of the actions that [Plaintiff] seeks to remedy").

Here, Plaintiff has failed to allege that the Secretary's "actions are currently violating

federal law." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 737 (5th Cir. 2020)*; see also Green v.*

*Mansour*, 474 U.S. 64, 68, 73 (1985) ("There is no claimed continuing violation of federal law,

and therefore no occasion to issue an injunction."). Plaintiff alleges only that the Secretary

"accept[ed]" the vote tallies from Allegheny and Westmoreland counties. *See* ECF 29 ¶¶ 44, 52.

There are no further allegations that the Secretary is now violating, or will in the future violate,

Plaintiff's federal constitutional rights. *See generally id.*

Second, Plaintiff's claims are barred because, properly construed, they derive entirely

from state law and are thus an improper attempt to smuggle a state-law claim into the *Ex Parte*

*Young* framework. *See Trump I*, 2020 WL 5997680, at *75 (noting that Secretary may have

sovereign immunity as to state-law claims). The only relief Plaintiff seeks is an order compelling

Defendants to comply with her incorrect interpretation of the Pennsylvania Election Code. *See*

ECF 29 at Prayer for Relief. Although Plaintiff pleads federal constitutional claims, "the determinative question [under *Pennhurst*] is not the relief ordered, but whether the relief was ordered pursuant to state or federal law." *Brown v. Ga. Dep't of Revenue*, 881 F.2d 1018, 1023 (11th Cir. 1989). Creative pleading—alleging that tabulating election results as required by state law raises a federal issue—cannot do an end-run around *Pennhurst. See Williams*, 954 F.3d at 741; *S&M Brands, Inc. v. Georgia ex rel. Carr*, 925 F.3d 1198, 1205 (11th Cir. 2019). Plaintiff's own Amended Complaint reveals as much. Count One explicitly alleges that "the Defective Ballots are invalid under the plain language of the Election Code" and seeks to have the Allegheny ballots removed from the final tally because "disqualifying such ballots reflects the General Assembly's express intent." ECF 29 ¶ 64; *see also id.* ¶ 68 (Count Two, "the Board counted and certified the results of the Defective Ballots even though these ballots are invalid under the Election Code"). The Eleventh Amendment bars this bald attempt to re-litigate the state-law claim Plaintiff lost before the Pennsylvania Supreme Court.

> **B.      Plaintiff's Claims Are Barred by Res Judicata**

Even if the *Rooker-Feldman* doctrine did not bar Plaintiff's claims, those claims would be precluded under the doctrine of res judicata. *See Great W. Mining*, 615 F.3d at 170 ("should the *Rooker-Feldman* doctrine not apply such that the district court has jurisdiction, disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law"; "the *Rooker-Feldman* inquiry is distinct from the question of whether claim preclusion (res judicata) or issue preclusion (collateral estoppel) defeats the federal suit").

A "federal court must 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Id.* (quoting *Exxon Mobil*, 544 U.S. at 293). Under Pennsylvania's doctrine of res judicata, "[a]ny final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same

cause of action." *Hammond v. Krak*, No. 17-00952, 2020 WL 1032296, at *3 (W.D. Pa. Mar. 3, 2020) (quoting *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995)). "A claim is barred by res judicata when the former and current actions share the same four conditions: '(1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued.'" *Id.* (quoting *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006)). Because the doctrine serves the essential purpose of "reliev[ing] the parties of the cost and vexation of multiple lawsuits, conserv[ing] judicial resources, prevent[ing] inconsistent decisions, and encourag[ing] reliance on adjudications," *id.* (quoting *Turner*, 449 F.3d at 551), Pennsylvania jurisprudence holds that "res judicata 'must be liberally construed and applied without technical restriction.'" *Id.* (quoting *Radakovich v. Radakovich*, 846 A.2d 709, 715 (Pa. Super. Ct. 2004)); *see also Tobias v. Halifax Twp.*, 28 A.3d 223, 226 (Pa. Commw. Ct. 2011) ("it is well-settled that res judicata will not be 'defeated by minor differences of form, parties, or allegations'" (internal quotation marks omitted)).

All four elements exist here. First, "the thing sued upon or for" element is met. Here, as in the underlying state-court proceedings, Plaintiff seeks to exclude the undated ballots from the vote count in her race. Second, both proceedings involve the same "cause of action." Importantly, the fact that Plaintiff did not actually assert her federal equal protection or due process claims in the state-court proceedings is irrelevant, as res judicata "bars litigation of claims that were or could have been raised in a prior action which resulted in a final judgment on the merits, so long as the claims derive from the same cause of action." *Id.* (quoting *In re Estate of Plance*, 175 A.3d 249, 258 (Pa. 2017)); *accord Tobias*, 28 A.3d at 227 ("a party cannot avoid res judicata simply by varying the legal theory for relief"). "Pennsylvania courts have instructed that causes of action are identical when the 'subject matter' and the 'ultimate issues' are the same

in both the 'old and new proceedings.' A 'cause of action' or 'claim' is to be defined 'broadly in transactional terms, regardless of the number of substantive theories advanced in the multiple suits by the plaintiff.'" *Cemex, Inc. v. Indus. Contracting & Erecting, Inc.*, No. 02-1240, 2006 WL 1785564, at *5 (W.D. Pa. June 26, 2006) (citations omitted), *aff'd*, 254 F. App'x 148 (3d Cir. 2007). Here, both the state-court and federal-court proceedings arise from the same subject matter and involve the same ultimate issues—namely, the November 2020 election and whether 2,349 specific mail-in ballots may lawfully be counted. Further, nothing prevented Plaintiff from asserting her federal equal protection and due process claims during the state-court proceedings. Accordingly, the earlier and present proceedings demonstrate an identity of "causes of action."

The third element—identity of parties—is also satisfied. Plaintiff and the Allegheny Board were both parties to the state-court proceedings. Although Plaintiff has added additional Defendants to this federal proceeding—namely, each member of the Board and the Secretary— these additions do not defeat res judicata. "Where," as here, "'res judicata is invoked against a plaintiff who has twice asserted essentially the same claim against different defendants, courts have … enlarged the area of res judicata beyond any definable categories of privity between the defendants." *Hammond*, 2020 WL 1032296, at *4 (quoting *Bruszewski v. United States*, 181 F.2d 419, 422 (3d Cir. 1950)); *see also Cicchiello v. SEIU 1199P Union Serv. Employees Int'l Union*, No. 361 M.D. 2015, 2016 WL 1639015, at *4 (Pa. Commw. Ct. Apr. 26, 2016) ("as observed by the federal courts, merely naming additional defendants will not convert one cause of action into a second cause of action if both actions involve the same liability-creating conduct on the part of the defendants and the same alleged invasion of the plaintiff's rights"). Here, in both the state- and federal-court proceedings, Plaintiff has complained that Pennsylvania election officials are unlawfully counting certain specific ballots that, in Plaintiff's view, should not be counted. The

connections between the Defendants are more than close enough to satisfy the third element of the res judicata test.

Finally, the fourth element of res judicata is satisfied because the capacity of the parties is the same in both the state- and federal-court proceedings. Accordingly, under the doctrine of res judicata, the Pennsylvania Supreme Court's judgment precludes Plaintiff's claims in this action.

### C.    Defendants Are Entitled to Judgment as a Matter of Law on Both Claims

#### 1.    The Court Should Dismiss the Equal Protection Claim

##### (a)    Independent County Procedures, Even if Inconsistent, Do Not Give Rise to an Equal Protection Claim

Plaintiff fails to state a claim under the Equal Protection Clause because variation in canvassing decisions between county boards is not an equal protection violation. Plaintiff relies heavily on *Bush v. Gore*, which turned on "a statewide recount under the authority of a single state judicial officer," and the "the minimum procedures necessary to protect the fundamental right of each voter" in the process. 531 U.S. 98, 109 (2000). But *Bush* expressly stated that it was *not* addressing "whether local entities … may develop different systems for implementing elections." *Id.* And Third Circuit precedent makes clear that county-by-county variation does not offend the Equal Protection Clause; only a *statewide* decision or rule that fails to provide "rudimentary requirements of equal treatment and fundamental fairness" gives rise to equal protection claims, *id.*

Two Third Circuit cases have recently clarified the boundaries to equal protection claims under *Bush v. Gore*. In *Bognet,* the Third Circuit noted that "*Bush v. Gore* does not require us to perform an Equal Protection Clause analysis of Pennsylvania election law as interpreted by the Pennsylvania Supreme Court." *Bognet*, 980 F.3d at 355 n.11. Likewise, in *Donald J. Trump for President, Inc. v. Boockvar* ("*Trump II*"), the Third Circuit held that "Pennsylvania's Election

Code gives counties specific guidelines. To be sure, counties vary in implementing that guidance, but that is normal. Reasonable county-to-county variation is not discrimination." 830 F. App'x 377, 388 (3d Cir. 2020). Two counties independently deciding close questions of the Election Code differently cannot suffice to state an equal protection claim under *Bush v. Gore* because Plaintiff has alleged no statewide action, and no discrimination. This is true *a fortiori* where, as here, Pennsylvania law provides a readily available mechanism to obtain a uniform statewide result—namely, appeal to an appellate court with statewide jurisdiction; that court has clearly indicated that it *would* impose a uniform result, *see In re Canvass*, 2020 WL 6866415; and the only reason there remains variation among counties is that Plaintiff, knowing what the result would be, has voluntarily declined to seek judicial review of one county's decision. This Court should therefore dismiss Count One because it seeks to extend equal protection beyond the limits of *Bognet* and *Trump II*.

> **(b)** **Even if Inter-County Variations Could Support an Equal Protection Claim, Plaintiff Cannot Allege or Prove That Anyone Violated *Her* Right to Equal Protection**

To state a claim under the Equal Protection Clause, a § 1983 plaintiff "must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*, 655 F. Supp. 2d 581, 589 (W.D. Pa. 2009) (citing *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000)). Protected classes include those based upon suspect distinctions, such as race, religion, and alienage, and those impacting fundamental rights. *Artway v. Attorney Gen.*, 81 F.3d 1235, 1267 (3d Cir. 1996). Stripped of its third party and vote dilution theories of injury, which are foreclosed by *Bognet,* Plaintiff's Amended Complaint cannot state a claim under the Equal Protection Clause because it fails to allege that Plaintiff is a member of a protected class or that her fundamental rights have been burdened.

First, and most significantly, Plaintiff fails to allege that any Defendant discriminated against her. "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination. They must demonstrate that they 'receiv[ed] different treatment from that received by other individuals similarly situated,'" *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990) (citations omitted); *see also Kasper v. County of Bucks*, 514 F. App'x 210, 214–15 (3d Cir. 2013) (finding plaintiff's "§ 1983 assertions are plainly defective in that they fail to allege disparate treatment relative to other similarly situated people"). Plaintiff's Amended Complaint does not make this basic, threshold allegation. Plaintiff simply alleges that two county boards of elections made different decisions concerning whether to count absentee or mail-in votes with undated ballot envelopes, and that the Secretary "accepted the certified final returns." ECF 29 ¶¶ 38, 52. No allegation shows a Defendant treated Plaintiff differently than another similarly-situated individual. Indeed, both parties simply carried out mandatory duties under state law with an even hand; the Allegheny Board obeyed the Pennsylvania Supreme Court's order reinstating the Allegheny County Court of Common Pleas' ruling that the undated ballots "must be counted," *see Ziccarelli*, 2020 WL 7012634, at *2, and the Secretary accepted ballots as required by 25 P.S. § 2621(f). Not only has Plaintiff failed to allege that she received "different treatment," she has shown that each Defendant did exactly what state law required. This failure to allege differential treatment is, by itself, fatal to Plaintiff's equal protection claim.

To the extent Plaintiff argues there was different treatment because the Secretary failed to properly "count" or "canvass" returns from Allegheny and Westmoreland counties,[8] Plaintiff

---

[8] An allegation Plaintiff does not make in her Amended Complaint, but raises for the first time in her brief in support of motion for summary judgment. *See* ECF 47, at 16-17.

misconceives the role of the Secretary in the Commonwealth's election process and fails to adduce necessary proof for an equal protection claim. As discussed *supra* § II.A.1, the Secretary may not independently determine whether a vote is lawful, or second-guess canvassing decisions of county boards of elections. *See In re Canvass*, 2020 WL 6866415, at *15 n.6; *see also id.* at *20 (Wecht, J., concurring). This is especially so when the Pennsylvania Supreme Court has reinstated a decision that the ballots in question "must be counted." *Ziccarelli*, 2020 WL 7012634, at *2. Therefore, because the Election Code and the Pennsylvania Supreme Court prevent the Secretary from canvassing returns as Plaintiff alleges she should have, Plaintiff fails to show any alleged failure on the Secretary's part treated her unequally. Without an allegation that Defendants treated Plaintiff differently, Plaintiff cannot state an equal protection claim.

Even if Plaintiff could allege differential treatment, Plaintiff cannot show any burden to her fundamental rights, or that such a burden outweighs the state's interest in an orderly election process. As this Court has held, to the extent *Anderson-Burdick* applies to these types of "square peg, round hole" situations of "burden[ing] the right to vote through **inaction**," the Court must "weigh any burden stemming from the government's alleged failures against the government's interest in enacting the broader election scheme it has erected." *Trump I*, 2020 WL 5997680, at *47 (emphasis in original). Here, the burden on Plaintiff is slight, if it exists at all; apart from her foreclosed vote dilution claims, she articulates no direct burden on her own fundamental rights, and the Secretary cannot imagine one. Whatever this burden adds up to is easily overcome by the state's interest in an orderly, timely-certified election. Pennsylvania's regulatory interests in a uniform election pursuant to established procedures are more than sufficient to withstand scrutiny. *Timmons*, 520 U.S. at 358; *Trump I*, 2020 WL 5997680, at *63. Not only is Pennsylvania's interest sufficient on its own, but the type of independent ballot-by-ballot

constitutional review Plaintiff seems to be asking for would not only bring the election process to

a standstill; it would ask the Secretary to issue proclamations on the lawfulness of votes in

conflict with the judgment of the Supreme Court of Pennsylvania. That is not the law of the

Election Code, and that cannot be what the Equal Protection Clause requires. Because Plaintiff

has not provided any evidence to show how the burden to her individual rights outweighs the

significant benefits to the Commonwealth in a uniform election pursuant to established

procedures, this Court should grant judgment as a matter of law to Defendants on Count One.[9]

### 2.   The Court Should Dismiss the Due Process Claim

In Count Two, Plaintiff claims that the Secretary violated her rights under the Due

Process Clause when the Secretary accepted the counties' election results. This argument does

not come close to meeting Plaintiff's heavy burden to make out a due process claim.

This Court has held that substantive due process challenges that rely on the same

allegations as equal protection challenges "demand[] even stricter proof," and "exist[] in only the

most extraordinary circumstances." *Trump I*, 2020 WL 5997680, at *51. In the Third Circuit,

"only the most egregious official conduct can be said to be arbitrary in the constitutional

sense"—the "executive action must be so ill-conceived or malicious that it 'shocks the

conscience.'" *Id.* (quoting *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999) (cleaned

up)). It is only when "the election process itself reaches the point of patent and fundamental

unfairness[] [that] a violation of the due process clause may be indicated." *Acosta v. Democratic

City Comm.*, 288 F. Supp. 3d 597, 645 (E.D. Pa. 2018) (citation omitted). Indeed, the federal

---

[9] Plaintiff also argues that the Secretary has violated the Equal Protection Clause by accepting "incomplete results," because ballots with certain flaws—missing secrecy envelopes, for example—were not counted. ECF 47, at 17-18. This argument is simply another challenge to the Pennsylvania Supreme Court's determination that under state law, different balloting flaws have different consequences. It also ignores the fact that under the Election Code, county boards of elections, and not the Secretary, determine when results are "complete."

courts have historically intervened in state elections only where there has been "purposeful or systematic discrimination against voters of a certain class, geographic area, or political affiliation," or "willful conduct which undermines the organic processes by which candidates are elected." *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975) (collecting cases).

The fact that the Allegheny County Board of Elections decided to count ballots timely returned by eligible voters with signed declarations, where there is no allegation or evidence of any fraud—and that the Secretary later carried out the straightforward task of accepting and tabulating vote totals, in compliance with the Election Code and the Pennsylvania Supreme Court's judgment—hardly "shocks the conscience." Count II is simply another species of the "vote dilution" argument in Count One, and should be dismissed for the same reasons.[10]

Plaintiff also advances a broad "fundamental unfairness" argument, alleging that "certification effectively changed the rules of the election after the election had already been conducted." Plaintiff alleges that the Secretary altered the "rules" by certifying election results that (according to Plaintiff) conflicted with a previous guidance and brief. ECF 47, at 23–24. Plaintiff is wrong that the Secretary is "contraven[ing] a rule that she articulated." *Id.* at 25. Even if the guidance and brief had the meaning that Plaintiff ascribes to them (they do not), "it is the Election Code's express terms that control, not the written guidance provided by the Department." *In re Scroggin*, 237 A.3d 1006, 1021 (Pa. 2020).

---

[10] Plaintiff frames her due process claim as seeking to protect the fundamental right to vote, citing *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). ECF 29 ¶ 66. The Amended Complaint alleges that "dilution of the votes of the Ziccarelli Voters violates the Due Process Clause of the Constitution" and also alleges an injury to "each voter's fundamental right to vote." *Id.* ¶ 72. For the reasons highlighted above, Plaintiff lacks standing to bring this claim under *Bognet*. Once the vote dilution theory is removed from this case, as it must be, the Amended Complaint alleges no further violation of Plaintiff's fundamental rights.

Plaintiff attempts to rely on *Roe v. Mobile County Appointing Board* for the proposition

that counting a set of ballots found valid post-election by a state supreme court "changed the

rules of the election after the election had already been conducted." ECF 47, at 22–23 (citing

*Roe*, 43 F.3d 574 (11th Cir. 1975)). In *Roe*, however, the Eleventh Circuit confronted a state

supreme court decision that, after the election, had retroactively eliminated the requirement that

absentee ballots contain "the signature of two witness or a notary"; the Eleventh Circuit

explicitly relied on the finding that candidates would have changed their campaign strategies and

"*supporters of [the plaintiff candidates] who did not vote would have voted*" had they known that

the state supreme court would change the rule. 43 F.3d at 582 (emphasis added).[11] Here, Plaintiff

can point to no evidence that any voter or candidate would have changed their conduct based on

a belief that undated ballots would be counted. Moreover, on remand in *Roe*, the District Court

found the "rule" that had been changed by the state court decision had previously been a

consistent practice of all counties in Alabama but one for over fifteen years. 904 F. Supp. 1315,

1335 (S.D. Ala. 1995), *aff'd sub nom. Roe v. Alabama*, 68 F.3d 404 (11th Cir. 1995). Here, by

contrast, Justice Wecht observed that "[one] cannot say with any confidence that even diligent

electors were adequately informed as to what was required to avoid the consequence of

---

[11] It is worth noting that, to the extent earlier portions of the *Roe* opinion could be read to suggest that the alleged "dilution" of votes cast in accordance with the witness/notary signature requirement was itself sufficient to make out a due process claim, the court backed away from that position in addressing the First Circuit's decision in *Partido Nuevo Progresista v. Barreto Perez*, 639 F.2d 825 (1st Cir. 1980). As *Partido Nuevo* recognized, "claims [by plaintiffs] that votes were 'diluted' by the votes of others, not that [the plaintiffs] themselves were prevented from voting," do not state a constitutional injury. *Id.* at 828. *Roe* distinguished *Partido Nuevo* solely on the ground that, in *Roe*, unlike in *Partido Nuevo*, candidates and voters had detrimentally relied on the requirement eliminated by the state supreme court. *Roe*, 43 F.3d at 581–82. Significantly, in a precedential decision issued earlier this month, the Eleventh Circuit expressly agreed with *Bognet* that vote "dilution" of the sort alleged here is not a cognizable injury. *Wood v. Raffensperger*, 981 F.3d 1307, 1314–15 (11th Cir. 2020).

disqualification in this case." *In Re Canvass*, 2020 WL 6866415, at *24 (Wecht, J., concurring).

Plaintiff's additional theory for a due process violation should be rejected, and the claim should

be dismissed, or summary judgment entered in Defendants' favor.

### D.      If There Is a Constitutional Violation Here, the Remedy Cannot Be to Create More Constitutional Violations

Even if the Court were to find a constitutional violation here, the proper remedy should

not be to create at least hundreds or thousands of new constitutional violations for the sake of

remedying one. Judge Brann persuasively summarized the remedies available to a District Court

in these cases:

> When remedying an equal-protection violation, a court may either "level up" or "level down." This means that a court may either extend a benefit to one that has been wrongfully denied it, thus leveling up and bringing that person on par with others who already enjoy the right, or a court may level down by withdrawing the benefit from those who currently possess it. Generally, "the preferred rule in a typical case is to extend favorable treatment" and to level up. In fact, leveling down is impermissible where the withdrawal of a benefit would necessarily violate the Constitution. Such would be the case if a court were to remedy discrimination by striking down a benefit that is constitutionally guaranteed.

*Trump II*, 2020 WL 6821992, at *12 (citations omitted). As Judge Brann rightly pointed out, "[i]t

is not in the power of [a District] Court to violate the Constitution." *Id.* (citing *Marbury v.

Madison*, 5 U.S. 137, 147 (1803)).

That is precisely what "leveling down" here would mean: The relief Plaintiff asks for

would without question violate the constitutional rights of other Pennsylvania voters, something

this Court cannot do. Even if the disparity between Allegheny and Westmoreland's processes

amounted to a constitutional violation, this occurrence could not possibly justify cancelling the

votes of 311 Pennsylvania voters. Such a remedy would place an undue burden on those 311

voters' rights to vote, and force the Allegheny County Board to do what Plaintiff suggests it

cannot—count one tranche of undated mail-in or absentee ballots, but not another. *See Ne. Ohio*

*Coalition for Homeless v. Husted*, 696 F.3d 580, 595, 597–98 (6th Cir. 2012) (rejecting ballots invalidly cast due to poll worker error likely violates due process). And "[t]he disenfranchisement of even one person validly exercising his right to vote is an extremely serious matter." *Perles v. Cnty. Return Bd. of Northumberland Cnty.*, 202 A.2d 538, 540 (Pa. 1964). This Court cannot "level down" as a matter of law, and should not do so at Plaintiff's request here.

There are federalism reasons to refuse to "level down" as well. The Third Circuit made this clear in rejecting another, more significant remedy that would have cancelled the votes of other Pennsylvania voters without sufficient reason to do so:

> The Pennsylvania Supreme Court has long "liberally construed" its Election Code "to protect voters' right to vote," even when a ballot violates a technical requirement. *Shambach v. Bickhart*, 577 Pa. 384, 845 A.2d 793, 802 (2004). "Technicalities should not be used to make the right of the voter insecure." *Appeal of James*, 377 Pa. 405, 105 A.2d 64, 66 (1954) (internal quotation marks omitted). That court recently reiterated: "[T]he Election Code should be liberally construed so as not to deprive, inter alia, electors of their right to elect a candidate of their choice." *Pa. Dem. Party*, 238 A.3d at 356. Thus, unless there is evidence of fraud, Pennsylvania law overlooks small ballot glitches and respects the expressed intent of every lawful voter. *In re: Canvass of Absentee and Mail-in Ballots*, 2020 WL 6875017, at *1 (plurality opinion). In our federalist system, we must respect Pennsylvania's approach to running elections. We will not make more of ballot technicalities than Pennsylvania itself does.

*Trump II*, 830 F. App'x at 391. Although this decision was non-precedential, its persuasive analysis of federalism concerns suggests the relief requested here would create at least as many constitutional problems as it purports to solve.

There are also two key and dispositive differences between the cases Plaintiff cites to support a "level down" remedy and the one before this Court. First, *Sessions v. Morales-Santana* teaches that rescinding a benefit based on an interpretation of "what [] the legislative body [would] have done with the equal treatment violation had it been presented with it" is appropriate for a federal district court only when construing federal law; the Court in *Sessions* interpreted

what Congress would do with a federal law, and noted that "[b]ecause the manner in which a State eliminates discrimination is an issue of state law … upon finding state statutes constitutionally infirm, we have generally remanded to permit state courts to choose between extension and invalidation." 137 S. Ct. 1678, 1698, n.23 (2017). Here, the Pennsylvania Supreme Court has *already* determined the proper application of Pennsylvania law to the ballots at issue: the ballots should be counted. Second, any court "leveling down" may do so only going forward, and cannot grant the type of retrospective relief Plaintiff seeks here. Although the Court in *Sessions* leveled down, it made clear that its ruling would only do so "prospectively." *See id.* at 1701; *cf. Andino v. Middleton,* 141 S. Ct. 9, 10 (2020) (staying a district court order prospectively, but holding that "any ballots cast before this stay issues and received within two days of this order *may not be rejected*") (emphasis added). No other case Plaintiff cites supports awarding retrospective relief. *See* ECF 47, at 28.[12]

## IV.   CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that the Court dismiss all claims in the Amended Complaint with prejudice or, in the alternative, grant summary judgment in favor of the Secretary on Counts One and Two.

---

[12] In fact, in the tax context Plaintiff cites, it has long been the Supreme Court's "practice, for reasons of federal-state comity, to abstain from deciding the remedial effects of such a holding." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 427 (2010) (internal citations omitted).

Respectfully submitted,

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

Dated: December 30, 2020

By:    */s/ Michele D. Hangley*
            Mark A. Aronchick
            Michele D. Hangley*
            Robert A. Wiygul*
            John G. Coit**
            One Logan Square, 27th Floor
            Philadelphia, PA 19103
            Telephone: (215) 496-7050
            Email: mhangley@hangley.com

*Counsel for Defendant Kathy Boockvar, in her official capacity as the Secretary of the Commonwealth of Pennsylvania*

*\* Admitted pro hac vice*
*\*\* Pro hac vice motion to be filed*