# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICOLE ZICCARELLI, | : | |
| Plaintiff, | : | No. 2:20-cv-01831-NR |
| | : | |
| v. | : | |
| | : | |
| THE ALLEGHENY COUNTY BOARD OF | : | |
| ELECTIONS, RICH FITZGERALD, in his | : | |
| official capacity as a Member of the | : | |
| Allegheny County Board of Elections, | : | |
| SAMUEL DEMARCO, in his official | : | |
| capacity as a member of the Allegheny | : | |
| County Board of Elections, BETHANY | : | |
| HALLAM, in her official capacity as a | : | |
| member of the Allegheny County Board of | : | |
| Elections, and KATHY BOOCKVAR, in | : | |
| her official capacity as the Secretary of | : | |
| the Commonwealth of Pennsylvania, | : | |
| Defendants. | : | |

## PLAINTIFF'S REPLY BRIEF
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Joshua J. Voss (No. 306853)
Matthew H. Haverstick (No. 85072)*
Shohin H. Vance (No. 323551)*
James G. Gorman (No. 328376)*
Samantha G. Zimmer (No. 325650)*
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: (215) 568-2000 | Fax: (215) 568-0140
Eml: jvoss@kleinbard.com
mhaverstick@kleinbard.com
svance@kleinbard.com
jgorman@kleinbard.com
szimmer@kleinbard.com
* Admitted Pro Hac Vice
Attorneys for Plaintiff

# TABLE OF CONTENTS

I.   ARGUMENT ........................................................................................................ 1

A.  Intervenors' and Defendants' arguments are predicated on a
    misunderstanding of the Supreme Court's decision. ........................................ 1

B.  Defendants' various justiciability defenses fail. ............................................. 3

    1.  Ms. Ziccarelli has standing. ...................................................................... 3

    2.  The *Rooker-Feldman* doctrine does not apply. ....................................... 5

    3.  The Secretary's Eleventh Amendment defense and Mr. Brewster's
        mootness argument both fail. .................................................................... 7

        (a)  Secretary Boockvar misapplies *Ex parte Young*. ........................... 7

        (b)  Mr. Brewster's mootness argument fails. ...................................... 9

    4.  Secretary Boockvar's res judicata argument does not satisfy the governing
        standard. ................................................................................................... 10

    5.  Ms. Ziccarelli has a valid Section 1983 action against the Board based
        upon *Monell*. ........................................................................................... 11

C.  The Secretary's merits argument misreads the relevant precedent. .............. 12

D.  Neither the Secretary nor Mr. Brewster offer a satisfactory rejoinder relative
    to the appropriate remedy. ............................................................................ 14

II.  CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597 (E.D. Pa. 2018).....................9

*Berg v. Cty. of Allegheny*, 219 F.3d 261 (3d Cir. 2000) ........................................ 11, 12

*Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690 (3d Cir. 1996) ..............................8

*Bognet v. Secretary of the Commonwealth of Pa.*, 980 F.3d 336 (3d Cir. 2020)...........3

*Brown v. Georgia Dep't of Rev.*, 881 F.2d 1018 (11th Cir. 1989)................................8

*Bush v. Gore*, 531 U.S. 98 (2000)....................................................................... 12, 13

*Ciox Health, LLC v. Azar*, 435 F. Supp. 3d 30 (D. D.C. 2020) ...................................4

*Cytemp Specialty Steel v. W.C.A.B. (Crisman)*, 39 A.3d 1028 (Pa. Cmwlth. 2012)... 10

*Donald J. Trump for President v. Boockvar*, --- F. Supp. 3d ----, 2020 WL 5997680
(W.D. Pa. Oct. 10, 2020) ................................................................................. 9, 13

*Fish v. Schwab*, 957 F.3d 1105 (10th Cir. 2020)........................................................4

*Gallagher v. New York State Bd. of Elections*, --- F. Supp. 3d ----, No. 20-cv-5504,
2020 WL 4496849 (S.D. N.Y. Oct. 30, 2020) ........................................................3

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir.
2010) ....................................................................................................................5

*Hammond v. Krak*, No. 17-00952, 2020 WL 1032296 (W.D. Pa. Mar. 3, 2020) ........ 10

*Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005) ..........................5

*Hoblock v. Albany Cty. Bd. of Elections*, 487 F. Supp. 2d 90 (N.D. N.Y. 2006).........12

*Hunter v. Hamilton Cty. Bd. of Elections*, 850 F. Supp. 2d 795 (S.D. Oh. 2012) ........4

*In re Estate of Plance*, 175 A.3d 249 (Pa. 2017) ...................................................... 10

*In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254 (E.D. Pa. 2012)..................3

*In re Recall of West*, 126 P.3d 798 (Wash. 2006) .....................................................2

*Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994) ............................................................... 9

*Marks v. Stinson*, No. 93-cv-6157, 1994 WL 146113 (E.D. Pa. Apr. 26, 1994)............ 9

*Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978) ................ 11

*Palakovic v. Wetzel*, 854 F.3d 209 (3d Cir. 2017) .......................................................... 5

*Papasan v. Allain*, 478 U.S. 265 (1986) .......................................................................... 8

*Pearlman v. Vigil-Giron*, 71 F. App'x 11 (10th Cir. 2003) ............................................. 9

*Rogers v. Hill*, 289 U.S. 582 (1933) ................................................................................. 2

*Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011) ................................. 7

**Treatises**

20 Am. Jur. 2d Courts § 33 .................................................................................................. 2

Standard Pennsylvania Practice 2d § 2:298 ...................................................................... 2

**Other Authorities**

Senator Jake Corman, *Senate to Delay Swearing-In for 45th District Senator* (Jan. 4, 2021) ......................................................................................................................... 1

Neither Jim Brewster nor Nicole Ziccarelli has yet been seated as Senator for Senate District 45. Further, 340 ballots in Westmoreland County identical to 2,349 ballots in Allegheny County were not counted. These two sets of ballots contain the same defect, a defect that the Secretary advised on September 28, 2020 should be treated as follows: "A ballot-return envelope with a declaration that is not filled out, dated, and signed is not sufficient and must be set aside, declared void and may not be counted." This guidance to set aside and not count the undated ballots was, according to the Pennsylvania Senate President Pro Tempore, followed by 62 of 67 counties in Pennsylvania.[1] This difference in treatment is the difference between who wins and who loses; this difference in treatment violates the U.S. Constitution.

I. ARGUMENT

A. **Intervenors' and Defendants' arguments are predicated on a misunderstanding of the Supreme Court's decision.**

Before turning to specific legal arguments, it is important to address a fundamental defect in the framework within which the Secretary, the Allegheny Board, and Intervenor Jim Brewster present their positions. Specifically a central tenet of each is the notion that: (1) the State Supreme Court *held* that the mail-in and absentee ballots without a dated signature ("Undated Ballots") comply with the Election Code; and (2) that it *directed* the Allegheny Board to cavass the 311

---

[1] Senator Jake Corman, *Senate to Delay Swearing-In for 45th District Senator* (Jan. 4, 2021) ("The Westmoreland County Board of Elections – along with 61 other counties in Pennsylvania – followed Secretary Boockvar's September 28, 2020, guidance that said 'a ballot-return envelope with a declaration that is not filled out, dated, and signed is not sufficient and must be set aside, declared void and may not be counted.'"), *available at* https://www.senatorcorman.com/2021/01/04/senate-to-delay-swearing-in-for-45th-district-senator/.

Undated Ballots at issue in this action. However, this construct is incorrect.

*First*, the Supreme Court did not hold that Undated Ballots in the 2020 General Election are valid, as that view was not adopted by a majority of the Court. The proper method for discerning the holding of a fractured decision was developed in Ms. Ziccarelli's principal brief and not rebutted by the Defendants or Intervenors.

*Second*, relying on the trial court's opinion, Defendants and Intervenors mistakenly assert that the Allegheny Board is required to canvass the Undated Ballots pursuant to a directive of the Pennsylvania Supreme Court. Yet, the Supreme Court only reinstated the Court of Common Pleas' *decision*, which in appellate parlance refers to the lower court's judgment or order. *See Rogers v. Hill*, 289 U.S. 582, 587 (1933) (cautioning that although the words "opinion" and "decision" are "often loosely used interchangeably, [they] are not equivalents" and explaining that "[t]he court's decision of a case is its judgment thereon[,]" while "[i]ts opinion is a statement of the reasons on which the judgment rests").[2] The Court did not, however, reinstate the opinion of the trial court. Thus, while the Court of Common Pleas' order (*i.e.*, its "decision") *permitting* the Allegheny Board to canvass the 311 Ballots was reinstated, the accompanying opinion concluding that the ballots "must be counted" was not reinstated and is entirely ineffectual (and it is for that reason that the Allegheny Board's absolute immunity argument, Dkt. 57 at

---

[2] *See also* Standard Pennsylvania Practice 2d § 2:298, *Opinions generally; "decision" distinguished*; 20 Am. Jur. 2d Courts § 33; *accord In re Recall of West*, 126 P.3d 798, 800 (Wash. 2006).

2-5, also fails).[3]

## B.   Defendants' various justiciability defenses fail.

### 1.   Ms. Ziccarelli has standing.

Article III standing requires establishing injury, causation, and redressability. *In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 269 (E.D. Pa. 2012). Ms. Ziccarelli has been injured by the Allegheny Board and the Secretary certifying election results that unfairly treated similarly situated electors in Senate District 45. This harm is not asserted on behalf of nonparty voters nor is it a generalized and particular grievance common to all of the public as in *Bognet v. Secretary of the Commonwealth of Pennsylvania*, 980 F.3d 336, 356 (3d Cir. 2020), but a specific harm to Plaintiff arising from the treatment of votes in her race.

Further, the outcome-determinative nature of this suit also provides Ms. Ziccarelli standing. Indeed, because this Court's decision will determine whether the Undated Ballots are uniformly excluded across the 45th Senatorial District, the outcome of the election rests upon the present case. The status of defective ballots that "could affect the election results," is "more than sufficient to establish injury to the candidate," as candidates "have an informational interest in an accurate count in their races," and "legally protected interest[s] in ensuring that valid ballots cast" are counted. *Gallagher v. New York State Bd. of Elections*, --- F. Supp. 3d ----, No. 20-cv-5504, 2020 WL 4496849, at *9 (S.D. N.Y. Oct. 30, 2020). Given this, Ms. Ziccarelli's harm is "traceable to the allegedly unconstitutional conduct," and an

_____

[3] Indeed, Judge James's rationale was expressly rejected by a majority of the justices on the State Supreme Court.

order from this Court compelling equal treatment to similarly situated ballots would address the harm; thus, Ms. Ziccarelli has standing. *See Hunter v. Hamilton Cty. Bd. of Elections*, 850 F. Supp. 2d 795, 803 (S.D. Oh. 2012).

Finally, Ms. Ziccarelli's injury is also caused by Defendants' actions and not remotely self-imposed. Where an injury is allegedly self-inflicted, to eliminate standing "it must be so *completely due* to the complainant's own fault as to break the causal chain." *Ciox Health, LLC v. Azar*, 435 F. Supp. 3d 30, 51 (D. D.C. 2020) (emphasis added; internal quotations omitted). "[A] finding of self-inflicted harm results from either misconduct or something akin to entering a freely negotiated contractual arrangement, not from a failure to comply with an allegedly unlawful regime." *Fish v. Schwab*, 957 F.3d 1105, 1120 (10th Cir. 2020). Here, Ms. Ziccarelli challenges the actions of the Allegheny Board and the Secretary to certify, and accept, results that included disparately treated voters using rules changed "during the game": actions that she is not responsible for. Further, she is not responsible for the *independent* actions of the Westmoreland County Board of Elections, who had its own solicitor and who, notably, received extensive briefing from Mr. Brewster on what state law purported to require. *See* Stip. Facts ¶¶ 60-63, Stip. Facts Exs. I & J. Contrary to Defendants' assertion otherwise, Ms. Ziccarelli did not have to advocate for the Westmoreland County Board of Elections to certify results with invalid defective mail-in ballots in order to prevent an equal protection violation because, among other reasons, such a result would have only exacerbated the due process violations at issue. In sum, Ms. Ziccarelli has standing.

## 2. The *Rooker-Feldman* doctrine does not apply.

The *Rooker-Feldman* doctrine does not bar Ms. Ziccarelli's claims because she (1) does not complain of injury caused by the state court judgment, and (2) does not invite this Court to review that judgment.[4] These two factors, which "are key to determining whether a federal suit presents an independent, non-barred claim," are not met, and Ms. Ziccarelli has properly presented claims that could not be raised in state court and do not attack the state court judgment. *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163, 166 (3d Cir. 2010).

The actions forming the basis for the Amended Complaint were not produced by a state court judgment and thus are not barred. *See Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 89 (2d Cir. 2005). Indeed, here, no state court order produced the Allegheny Board's and the Secretary's actions, as there is no state court order directing the Board or the Secretary to include the Undated Ballots in the final tally. *Cf. id.* This is evident from the language of every single order issued by the state courts throughout the litigation. And regardless of how the issue was framed or discussed in any opinions issued by the state courts, the only operative wording is that found in the *orders*, none of which ordered the counting of the Undated Ballots. Indeed, on November 25, 2020, when the Allegheny Board amended its final certification, *see* Stip. Facts ¶ 52, had it **not** counted the Undated Ballots **it would not have violated any court order.**

---

[4] The Secretary relies in part upon the allegations made in Plaintiff's original Complaint, but, of course, there is an Amended Complaint in this matter, and "an amended pleading . . . supersedes the earlier pleading and renders the original pleading a nullity." *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017).

Absent any court directive actually ordering the Allegheny Board's or Secretary's actions, their actions were not "produced" by the Supreme Court's decision regardless of the fact that the certification and acceptance of the results occurred after the decision was issued. This chronology alone does not transform Ms. Ziccarelli's claims into an impermissible challenge to a state court decision given the clear language of the state court orders, which, notably, are in no way directed at the Secretary, who was not a party to the proceedings in state court, and could not have been ordered to do anything. Additionally, there was no equal protection violation while the validity of the Undated Ballots was pending before the state courts, as that violation arose when the results were certified and similarly situated ballots were treated unequally on November 30th and beyond.

Finally, this Court, in granting Ms. Ziccarelli the relief she seeks would be neither reviewing the state court decision nor overturning it. In evaluating Ms. Ziccarelli's claims of whether the actions of the Allegheny Board and the Secretary create equal protection and due process violations, this Court is not determining whether those ballots are valid under Pennsylvania law, as four justices of the Supreme Court have already concluded that they are not. In order to address the present claims, this Court need only apply the principles of equal protection and due process to the independent actions taken by the Allegheny Board and the Secretary in certifying and accepting results. Because these claims do not challenge the Supreme Court's decision and the Allegheny Board's and Secretary's actions were not directed from that decision, *Rooker-Feldman* does not apply.

### 3. The Secretary's Eleventh Amendment defense and Mr. Brewster's mootness argument both fail.

Secretary Boockvar's Eleventh Amendment immunity argument and Mr. Brewster's mootness argument are both predicated upon the same fundamental factual flaw: that once the 45th Senatorial District results were certified on December 16 there was nothing for any court to adjudicate. *See* Dkt. 59 at 21-23; Dkt. 53 at 25-27. But just two weeks ago, both the Secretary and Mr. Brewster joined in the Stipulated Facts and agreed that "as of December 21, 2020, the Secretary has not issued a certificate of election for any State Senate race regarding the 2020 Election." Stip. Facts ¶ 74. In other words, they agreed, at least as of the time of the Stipulations, there were still substantial actions to be taken. In view of the foregoing, it is erroneous—factually—for the Secretary to state that there is not an ongoing violation of federal law and for Mr. Brewster to state that this action is mooted because the election process has been fully completed. Again, as of the time of this Reply, neither Mr. Brewster nor Ms. Ziccarelli has been seated as the Senator for Senate District 45.

Legally, the defenses also have various flaws, as is set forth below.

#### (a) Secretary Boockvar misapplies *Ex parte Young*.

The *Ex Parte Young* doctrine avoids an Eleventh Amendment issue when a plaintiff "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011). The Amended Complaint alleges an ongoing violation to be resolved

prospectively. Dkt. 29 at ¶ 43. And again, the Stipulated Facts speak for themselves and Plaintiff's proposed order seeks prospective relief. Stip. Facts ¶ 74; Dkt. 46-1.

Further, *Blanciak*, cited by both the Secretary and Mr. Brewster, is unavailing because this is not an action about employment law damages directed to past conduct that would be paid out of the state's treasury. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996). This is an action that seeks the type of relief discussed in *Papasan* where a "violation of federal law by a state official is ongoing" and "the relief against the state official directly ends the violation of federal law." *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986).

Secretary Boockvar also raises a *Pennhurst*-focused argument, which again attempts to incorrectly paint Plaintiff's claims as state law claims. Dkt. 59 at 22. To reject this argument, this Court need do no more than evaluate the Amended Complaint, the Stipulated Facts, and the relief sought in Plaintiff's Motion for Summary Judgment to see this is a matter that pleads federal equal protection and due process violations. Dkt. 29. Indeed, Boockvar's own cited precedent demonstrates the fault of her *Pennhurst* argument. *See Brown v. Georgia Dep't of Rev.*, 881 F.2d 1018, 1023 (11th Cir. 1989) ("This issue need not detain us long for the appellants misconstrue the holding of *Pennhurst* and the claim presented in this case. Since the plaintiff alleged a violation of the federal Constitution, *Pennhurst* does not apply[]").

Taking Secretary Boockvar's argument to its conclusion, no election law matter could be brought under *Ex parte Young* because they all merely "relate to

tabulating elections under state law." That is readily not the case. *See Donald J. Trump for President, Inc. v. Boockvar*, --- F. Supp. 3d----, 2020 WL 5997680, at \*75 (W.D. Pa. Oct. 10, 2020); *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 627 (E.D. Pa. 2018); *Pearlman v. Vigil-Giron*, 71 F. App'x 11 (10th Cir. 2003) (challenge to balloting laws could be brought even after election had taken place). In short, Secretary Boockvar's argument should be rejected.

### (b) Mr. Brewster's mootness argument fails.

This case is not moot because all of Plaintiff's requested relief can still be granted. As a threshold matter, neither Mr. Brewster nor Ms. Ziccarelli has been seated as the Senator for Senate District 45, and thus the election process remains "in progress." Further, any certification, either by the Secretary or the Allegheny Board, can be readily amended. *See Marks v. Stinson*, No. 93-cv-6157, 1994 WL 146113, at \*35, \*37 (E.D. Pa. Apr. 26, 1994) (ordering county board of elections to recertify election results in favor of plaintiff Marks, even after defendant Stinson had already been sworn in by the Pennsylvania Senate months before); *see also* Stip. Facts ¶ 52 (Allegheny Board amended its certification on November 25); *see generally Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994). Finally, Mr. Brewster cites to an inapposite list of non-binding and unreported presidential-race "election fraud" cases. *See* Dkt. 53 at 26-27. These cases hold no weight in a case where Defendants ***agree*** that votes have been treated unequally based on which side of the county line they emanated. The cited cases further hold no weight in that they lack facts like those here that demonstrate the election process has not been completed. Accordingly, Mr. Brewster's mootness argument fails.

### 4. Secretary Boockvar's res judicata argument does not satisfy the governing standard.

Secretary Boockvar raises a res judicata defense even though she admittedly was not part of the state court action. Dkt. 59 at 23, 25. This argument fails at the outset because the facts, on their face, cannot support the res judicata standard. *See In re Estate of Plance*, 175 A.3d 249, 270 (Pa. 2017) (a claim is barred by res judicata when the former and current actions share the same four conditions: (1) identity of issues; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of the capacity of the parties suing or sued).

Regarding factor 3, Secretary Boockvar admits that she was never a party in any prior action brought by Nicole Ziccarelli. Dkt. 59 at 25. Thus, res judicata fails on this front alone. Secretary Boockvar cites the unreported *Hammond* case for the premise that even though she was not a party, res judicata should be "enlarged" to apply here. *Hammond*, however, deals with a situation where all defendants were employed in "the auspices of DOC to provide dental care to inmates." *Hammond v. Krak*, No. 17-00952, 2020 WL 1032296, at *3 (W.D. Pa. Mar. 3, 2020). Accordingly, even *Hammond*'s extension of the doctrine cannot save the Secretary's argument because she and the other Defendants are not part of the same organization.

Regarding factors 1, 2, and 4, Secretary Boockvar's res judicata argument similarly fails. The doctrine of res judicata applies not only to matters that actually were litigated in the prior proceeding but also to matters that could have been, or should have been, litigated in the prior proceeding. *Cytemp Specialty Steel v. W.C.A.B. (Crisman)*, 39 A.3d 1028, 1034 (Pa. Cmwlth. 2012). Thus, res judicata will

not apply if it was impossible for a claim to have been brought in the prior proceeding. Here, Secretary Boockvar could not have been a defendant in the state court action because the violation occurred *after* the state court action when the Allegheny Board completed its amended certification on November 25, when the Westmoreland County Board of Elections certified its results on November 30, and when the Secretary then accepted the Westmoreland results alongside the Allegheny results, which she certified on December 16. Stip. Facts ¶ 72. It is her subsequent acceptance—weeks after the end of the state court case—that created the ultimate violation, and not just the Allegheny County Board's initial decision to count the ballots or its later amended certification. Stated simply, it was impossible to include the present claims in the state court action. The argument thus fails.

> **5.      Ms. Ziccarelli has a valid Section 1983 action against the Board based upon *Monell*.**

The Board did not certify the results to include the Undated Ballots pursuant to court order. As explained above, no court ordered the Allegheny Board to count the ballots. Therefore, the Allegheny Board's actions were pursuant to a policy or custom and they are liable under Section 1983 for these actions. Ms. Ziccarelli has a valid Section 1983 claims because the Allegheny Board acted intentionally pursuant to policy and custom "with deliberate indifference as to its known or obvious consequences." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). It is well established that "when the execution of a government's policy or custom . . . inflicts the injury that the government entity is responsible . . . ." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Policy is made when a

decisionmaker posses[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Berg*, 219 F.3d at 275 (alteration in original) (quotations omitted). As stipulated to by the Allegheny Board: the Board is responsible for overseeing the conduct of elections in Allegheny County; Allegheny County advised mail-in voters that they were required to sign and date their declaration; and the Allegheny Board nonetheless issued a certification inclusive of undated mail-in ballots. Stip. Facts ¶¶ 5, 25, 52. The Allegheny Board, a body with decision-making authority as to the conduct of elections, took actions evidencing a policy that was executed with deliberate indifference to the equal protection concerns implicated. Indeed, as explained in the Section 1983 analysis on remand of *Hoblock*, a county board of elections acts intentionally even when the action is taken pursuant to mistaken procedure. *Hoblock v. Albany Cty. Bd. of Elections*, 487 F. Supp. 2d 90, 95 (N.D. N.Y. 2006). The Allegheny Board acted pursuant to policy and with deliberate indifference to the equal protection and due process concerns when it certified the Allegheny County election results to include the Undated Ballots. Therefore, Ms. Ziccarelli has a claim under Section 1983.

C. **The Secretary's merits argument misreads the relevant precedent.**

The Secretary's merits rejoinder is unpersuasive. *First*, as it relates to the equal protection claim, the Secretary's attempt to cabin *Bush v. Gore*, 531 U.S. 98 (2000) to statewide elections is unsupportable, as such a limiting principle is not expressed in that opinion, and has never been articulated by any other court.

12

Further, while the Secretary correctly observes that variations in *implementing* uniform guidelines do not give rise to an equal protection claim, the disparate treatment of Undated Ballots here is not the product of differing *implementations* of the same rule; rather, it is the result of counties adhering to palpably different rules and abusing any discretion they may have had.[5]

*Second*, relying on various decisions cautioning that a due process claim exists "in only the most extraordinary circumstances[,]" Dkt. 59 at 30 (quoting *Donald J. Trump*, 2020 WL 5997680, at *51), the Secretary maintains that Ms. Ziccarelli has "not come close to meeting [her] heavy burden to make out a due process claim." Dkt. 59 at 30. This assertion, however, overlooks *Roe*'s principal directive: changing the rules by which ballots are canvassed after the votes have been cast, which is what occurred here, is itself the type of "egregious official conduct" and "fundamental unfairness" that violates the Due Process Clause.

In this regard, the Secretary attempts to distinguish *Roe*. She suggests that the "Eleventh Circuit explicitly relied on the finding" that candidates and voters

---

[5] The Secretary also contends that relief on the equal protection claim is inappropriate because: (1) Ms. Ziccarelli has not alleged differential treatment; and (2) both Defendants are acting in accordance with state law and the judgment of the State Supreme Court. Neither argument passes muster. Ms. Ziccarelli's Amended Complaint avers that she, *as a candidate*, has received differential treatment from two counties and, thus, her allegations are sufficient. Further, even if all Defendants have a mandatory duty to facilitate the violation of the Equal Protection Clause—which, they do not—precepts of federal supremacy dictate that a state official cannot take actions, even if they are mandated by state law, in conflict with the Federal Constitution. Indeed, that was the very essence of *Bush v. Gore*'s holding that a recounting scheme ordered by the state supreme court would be barred insofar as it conflicted with the Equal Protection Clause.

would have acted differently had they known of the change in the rules prior to the election. Dkt. 59 at 32. No such finding of fact, however, was ever made—let alone "explicitly relied [up]on." Rather, the quote referenced in the Secretary's brief has no reference to the record and appears to be an expression of a self-evident fact: candidates generally craft their campaign strategies based on the extant rules governing elections. While the Secretary is correct that in *Roe*, the "'rule' that had been changed by the state court decision had previously been a consistent practice of all counties in Alabama but one for over fifteen years[,]" Dkt. 59 at 32, the number of years that the practice had been in place was not dispositive; rather, the determinative factor was that it had been firmly established and understood by election officials. Similarly, a statewide assessment was appropriate in *Roe* because the candidate-plaintiffs were running for a statewide office and, importantly, had named each of the county boards of elections as defendants. By contrast, because Ms. Ziccarelli is not a candidate for statewide office and the Allegheny Board is the only county board of elections whose retroactive change in rules is implicated, a survey of the remaining sixty-six counties in Pennsylvania is unnecessary. Moreover, even if this Court were to determine that such an assessment is necessary, it would require factual development, which, in light of the recent report on this question, *see* footnote 1 above, Ms. Ziccarelli would welcome.

### D. Neither the Secretary nor Mr. Brewster offer a satisfactory rejoinder relative to the appropriate remedy.

Finally, the Secretary's and Mr. Brewster's assertion that the only appropriate remedy in this case is to order the Westmoreland County Board of

14

Elections to canvass undated ballots is unsustainable. To begin, while courts have cautioned that disenfranchisement is an extreme remedy that should be exercised in only the most extreme circumstances, the exclusion of invalid or defective ballots is not disenfranchisement. Indeed, the admonition in each of the cases referenced in the Secretary's brief was given in the context of a request to a tranche of votes that included both invalid *and valid* votes. Under such circumstances, even in the face of wide-spread fraud or illegality, courts have been understandably reluctant to exclude the votes of an entire precinct or voting district merely because illegal votes may have also been cast. Here, leveling down would not result in "disenfranchisement," as each of the invalid Undated Ballots are identifiable and can be excluded from the final certification without impairing a single valid vote.

Next, contrary to the Secretary's characterization, *Sessions* does not hold that recourse to legislative intent is appropriate only when construing federal law[.]" Dkt. 59 at 34. Specifically, while the U.S. Supreme Court noted that in the past it has "remanded to permit state courts to choose between extension and invalidation[,]" it did so in support of the proposition that a constitutional violation may be cured either by extension *or* by invalidation. Nothing in *Sessions* even remotely suggests the limiting principle the Secretary offers.

## II.    CONCLUSION

For the reasons set forth in the opening brief and above, Nicole Ziccarelli respectfully requests that the Court grant her Motion for Summary Judgment.

Respectfully submitted,

Dated: January 6, 2021

/s/ Joshua J. Voss
Joshua J. Voss (No. 306853)
Matthew H. Haverstick (No. 85072)*
Shohin H. Vance (No. 323551)*
James G. Gorman (No. 328376)*
Samantha G. Zimmer (No. 325650)*
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: (215) 568-2000
Fax: (215) 568-0140
Eml: jvoss@kleinbard.com
mhaverstick@kleinbard.com
svance@kleinbard.com
jgorman@kleinbard.com
szimmer@kleinbard.com
*Admitted Pro Hac Vice*
*Attorneys for Plaintiff*

16