THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICOLE ZICCARELLI, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:20-cv-1831-NR |
| v. | ) | |
| | ) | |
| THE ALLEGHENY COUNTY BOARD | ) | |
| OF ELECTIONS, et al. | ) | The Honorable J. Nicholas Ranjan |
| | ) | |
| Defendants. | ) | |

### INTERVENORS' REPLY BRIEF IN SUPPORT OF DISMISSAL, OR IN THE ALTERNATIVE, SUMMARY JUDGMENT

DENTONS COHEN & GRIGSBY P.C.
  Clifford B. Levine
  Pa. Id. No. 33507
  Alex M. Lacey
  Pa. Id. No. 313538
  Kyle J. Semroc
  Pa. Id. No. 326107
625 Liberty Avenue, 5th Floor
Pittsburgh, PA  15222-3152
(412) 297-4900

Lazar M. Palnick
Pa. Id. No. 52762
1216 Heberton Street
Pittsburgh, Pennsylvania 15206
(412) 661-3633

ATTISANO & ROMANO, LLC
  Marco S. Attisano
  Pa. Id. No. 316736
429 Fourth Avenue, Suite 1705
Pittsburgh, PA 15219
(412) 336-8622

On behalf of the Pennsylvania Democratic Party
and James Brewster, Intervenors

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT..........................................................................................................1

    A.    Ms. Ziccarelli's Action is Barred by the Rooker-Feldman Doctrine........................1

    B.    Ms. Ziccarelli Does Not Have Article III Standing to Pursue Her Equal Protection Claim ..........................................................................................4

        1.    Ms. Ziccarelli Does Not Have Standing as a Candidate ..............................5

        2.    Ms. Ziccarelli Does Not Have Standing as a Voter .....................................7

        3.    Ms. Ziccarelli Lacks Standing to Complain of a Purported Injury that She Actively Encouraged ......................................................................9

III. CONCLUSION.....................................................................................................12

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bognet v. Sec'y Commonwealth of Pa.*
  980 F.3d 336 (3d Cir. 2020)..................................................................................7, 8, 9

*Ciox Health, LLC v. Azar*,
  435 F. Supp. 3d 30 (D.D.C. 2020) ......................................................................10, 11

*Donald J. Trump for President, Inc. v. Boockvar*, Case No. 4:20-cv-2078,
  --- F.Supp.3d ----, 2020 WL 6821992 (M.D. Pa. Nov. 21, 2020)...............................5, 6

*Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*,
  830 F. App'x 377 (3d Cir. 2020)..................................................................................6

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*,
  615 F.3d 159 (3d Cir. 2010)…………………………………………………...1, 2

*Hoblock v. Albany County Bd. of Elections*,
  422 F.3d 77 (2d Cir. 2005)....................................................................................3, 4

*In re Canvas of Absentee and Mail-in Ballots of November 3, 2020 General Election*,
  29 WAP 2020, --- A.3d ----, 2020 WL 6866415 (Pa. Nov. 23, 2020).........................2

*In Re: Canvass of Absentee and/or Mail-in Ballots of November 3, 2020 General Election*, 1191
  C.D. 2020, (Pa. Commw. Ct. Nov. 25, 2020) (Slip. Op.)……………………………. 9

*In re McNeil Consumer Healthcare*,
  877 F. Supp. 2d 254 (E.D. Pa. 2012) ...................................................................... 10

*Karpenko v. Leendertz*,
  619 F.3d 259 (3d Cir. 2010)..................................................................................... 12

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................................7

*Marks v. Stinson*,
  19 F.3d 873 (3d Cir. 1994)......................................................................................6, 7

*Parkview Assocs. P'ship v. City of Lebanon*,
  225 F.3d 321 (3d Cir. 2000).......................................................................................3

*Pennsylvania v. New Jersey*,
  426 U.S. 660 (1976) ..................................................................................................9

*Roberts v. Inservco Ins. Servs., Inc.*,
   334 F.Supp.3d 646 (E.D. Pa. 2018) ..................................................................................4

*Strader v. U.S. Bank*, Case, No. 2-19-cv-118-NR,
   2020 WL 3447776 (W.D. Pa. Jun. 24, 2020) ....................................................................1

*Taliaferro v. Darby Twp. Zoning Bd.*,
   458 F.3d 181 (3d Cir. 2006)………...…………………………………………………….. 5

**Statutes**

25 P.S. § 3159……………………………………………………………………………………3

Intervenors, the Pennsylvania State Democratic Party and James Brewster (the "Intervenors"), by and through counsel, file this Reply Brief in Support of Dismissal, or, in the Alternative, Summary Judgment, and in support thereof, state the following:

## I.     INTRODUCTION

In her Reply Brief, Ms. Ziccarelli contorts factual and legal elements of the core issues before this Court, apparently to compensate for the fundamental defects in her case. Specifically:

- Ms. Ziccarelli misstates the facts and standard for the *Rooker-Feldman* doctrine;

- Ms. Ziccarelli conflates disparate treatment between counties with disparate treatment between candidates; and

- Ms. Ziccarelli ignores the legal implication of her own extended efforts to encourage disparate treatment between counties to manufacture a superficial federal constitutional claim.

For these reasons, and the reasons set forth in their Motion and Opening Brief, Intervenors respectfully request that this Court dismiss Plaintiff's Amended Complaint with prejudice or, in the alternative, award summary judgment in Intervenors' favor.[1]

## II.     ARGUMENT

### A.     Ms. Ziccarelli's Action is Barred by the Rooker-Feldman Doctrine

The *Rooker-Feldman* doctrine deprives federal district courts of jurisdiction when "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court's judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Strader v. U.S. Bank*, Case, No. 2-19-cv-118-NR, 2020 WL 3447776 at * 2 (W. D. Pa. Jun. 24, 2020) (Ranjan, J. op.) (*quoting Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d

---

[1] Intervenors further join in the legal arguments presented by the Allegheny County Board of Elections and Secretary Boockvar.

159, 166 (3d Cir. 2010)). As set forth in Intervenors' Opening Brief, the doctrine applies here due to the Supreme Court's decision in *In re Canvas of Absentee and Mail-in Ballots of November 3, 2020 General Election*, No. 29 WAP 2020, 2020 WL 6866415 (Pa. Nov. 23, 2020), which reinstated the decision of the Allegheny County Court of Common Pleas (collectively, the "State Court Action."). (*See* Intervenors' Br. at 15-19).

Ms. Ziccarelli argues two main points in attempting to avoid the application of the *Rooker-Feldman* doctrine: 1) that no state court order directs the Board or Secretary to include the undated ballots in the final tally; and 2) the absence of Secretary Boockvar as a party to the State Court Action precludes application of the *Rooker-Feldman* doctrine. (Ziccarelli Reply Br. at 5-6).

The Parties' Joint Undisputed Facts demonstrate that Ms. Ziccarelli's first point is false. In the State Court Action, a clear majority of the Pennsylvania Supreme Court voted to reinstate the decision of the Allegheny County Court of Common Pleas. State Court Action at * 16, *see also* Stip. Ex. I, Appx. B. The decision of the Allegheny County Court of Common Pleas provides **no** discretion in counting the undated ballots: "The Court finds that the Board properly overruled Petitioner's objections to the 2,349 challenged mail-in ballots. **These ballots must be counted.** The Petition for Review is denied and the Board's decision is affirmed." Stip. Ex. I, Appx. A (emphasis supplied).

Ms. Ziccarelli attempts (and fails) to avoid this fact by arguing that because there is no Pennsylvania Supreme Court majority opinion in the State Court Action, and because the above mandatory language from the Allegheny Court of Common Pleas decision is located in the court's Opinion rather than its Order of Court, it was somehow discretionary, neutralizing the effect of the *Rooker-Feldman* doctrine. (Ziccarelli Reply Br. at 5). Ms. Ziccarelli provides no citation for the proposition that the *Rooker-Feldman* doctrine only applies where the judgment is expressly

laid out in its Order of Court. To the contrary, the Third Circuit recognizes that the applicable state action is the "decision;" whether an individual judge or court issues a detailed opinion with a single-sentence order of court has no bearing on the application of the *Rooker-Feldman* doctrine. *See, e.g., Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir. 2000) (discussing *Rooker-Feldman* doctrine's impact on review of state court "decisions" rather than orders or opinions). Here, the Supreme Court's decision explicitly reinstated the decision of the Court of Common Pleas. Thus, the *Rooker-Feldman* doctrine applies.[2]

Secondly, Ms. Ziccarelli argues that because Secretary Boockvar was not a party to the State Court Action, the doctrine cannot apply. (Ziccarelli Reply Br. at 6). The parties have stipulated that Secretary Boockvar waited until after the conclusion of any election challenges under the Pennsylvania Election Code, and then certified the results. Stip. ¶¶ 72, 73. Under the Election Code, the Secretary can only canvass state election results by tabulating the certified returns from the various county boards, a ministerial act. 25 P.S. § 3159. Here, the Allegheny County Court of Common Pleas determined that Allegheny County **must** count the undated ballots, and the Pennsylvania Supreme Court reinstated that decision. Accordingly, under the Election Code, Secretary Boockvar had to utilize the certified Allegheny County results, with its tabulations, in certifying the results in the 45th Senatorial District, and thus was similarly bound by the State Court Action.

Where a third party acts to enforce or comply with a state court judgment, the *Rooker-Feldman* doctrine still applies. *See, e.g., Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77,

---

[2] In her Reply brief, Ms. Ziccarelli also asserts, without further elaboration, that her claims "could not be raised in state court," and that her equal protection and due process claims could not be raised until November 30, 2020 (Ziccarelli Reply Br. at 5-6). Ziccarelli does not explain how that assertion is possible when she made those arguments to this Court on November 25, 2020. That filing was one day after seeking reconsideration from the Pennsylvania Supreme Court where she clearly understood that she had lost but did not raise those claims.

3

88 (2d Cir. 2005) ("if the state had taken custody of a child pursuant to a state judgment, the parent cannot escape *Rooker-Feldman* simply by alleging in federal court that he was injured by the state employees who took his child rather than by the judgment authorizing them to take the child"), *Roberts v. Inservco Ins. Servs., Inc.*, 334 F.Supp.3d 646, 650 (E.D. Pa. 2018) (holding that the *Rooker-Feldman* doctrine precluded federal action against third party workers' compensation insurance company where plaintiff's complaint sought to relitigate state court judgments against plaintiff's employer and the workers' compensation appeal board). Similarly, Secretary Boockvar, in carrying out her ministerial duty, does not generate an exception to the *Rooker-Feldman* doctrine.

For these reasons, this Court lacks jurisdiction over Ms. Ziccarelli's Amended Complaint. It should be dismissed.

### B. Ms. Ziccarelli Does Not Have Article III Standing to Pursue Her Equal Protection Claim

Ms. Ziccarelli has failed to establish Article III standing to pursue her equal protection claim. Although Ms. Ziccarelli suggests that she has been harmed by the differential treatment of votes in the 45th Senate District election, Ms. Ziccarelli does not have standing to pursue her claim as either a candidate or a voter. Ms. Ziccarelli does not have standing as a candidate because **she and Brewster were treated exactly the same** – i.e., the same set of votes counted in Allegheny County and Westmoreland County. Ms. Ziccarelli does not have standing as a voter because she fails to allege injury-in-fact by any of the named defendants. Further, any purported injury to Ms. Ziccarelli was self-imposed because she encouraged the Westmoreland County Board of Elections not to count the undated ballots.

Accordingly, because Ms. Ziccarelli does not have Article III standing, as either a candidate or a voter, this Court should dismiss her Amended Complaint, with prejudice. *See*

4

*Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) ("Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed.").

                1.     *Ms. Ziccarelli Does Not Have Standing as a Candidate*

Ms. Ziccarelli does not have standing to pursue her equal protection claim as a candidate because she and Brewster were treated exactly the same – i.e., the same set of votes counted in Allegheny County and Westmoreland County.  The Allegheny County Board's determination to count the undated ballots applied equally to voters for each candidate. The Westmoreland County Board's determination not to count the undated ballots also applied equally. Put another way, the Allegheny County Board of Elections did not vote to count *only* undated ballots for Brewster. Nor did the Westmoreland County Board of Elections vote not to count *only* undated ballots for Ms. Ziccarelli.  Accordingly, Ms. Ziccarelli has failed to establish standing as a candidate.

Although Ms. Ziccarelli suggests that the outcome-determinative nature of this case provides her standing, her position recently was rejected by a court in the Third Circuit.  In *Donald J. Trump for President, Inc. v. Boockvar*, the Court considered the Trump Campaign's assertion that it had "competitive standing" to pursue an equal protection claim.  *See Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-CV-02078, 2020 WL 6821992, at *5 (M.D. Pa. Nov. 21, 2020), *aff'd sub nom. Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 F. App'x 377 (3d Cir. 2020).

The Trump Campaign had alleged that it was unconstitutional for Pennsylvania to give counties discretion to adopt a "notice-and-cure" policy for mail-in ballots that did not comply with a mandatory provision of the Election Code.  *Id.* at *4.  According to the Trump Campaign, such local control was unconstitutional because it created an arbitrary system where some persons were allowed to cure procedurally defective mail-in ballots while others were not. *Id.*  The Trump

5

Campaign asserted that it had "competitive standing" to pursue its equal protection claim based upon purportedly disparate state action – the uneven implementation of the notice-and-cure policy between counties – leading to the "potential loss of an election." *Id.* at *8.

The District Court in *DJTP* noted that the Trump Campaign's theory of competitive standing was not supported by any precedent in the Third Circuit. *Id.* at *9. Accordingly, the Court declined to take such an expansive view of the theory of competitive standing and held that the Trump Campaign did not have standing to pursue an equal protection claim asserting purportedly disparate state action. *Id.* The Third Circuit affirmed the District Court's dismissal of the Trump Campaign's lawsuit in *DJTP*. *Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 F. App'x 377 (3d Cir. 2020).

Like the Trump Campaign in *DJTP*, Ms. Ziccarelli has attempted to plead an equal protection claim arising out of the uneven application of the Pennsylvania Supreme Court's decision in the State Action. *See* Am. Compl. ¶¶ 55–64. She suggests that she has standing because this Court's decision will determine the outcome of the election in the 45th Senatorial District. (Ziccarelli Reply Br. at 3.) For the same reasons that the Trump's Campaign's theory of competitive standing failed in *DJTP*, Ms. Ziccarelli's theory of competitive standing similarly fails.

Further, Ms. Ziccarelli's reliance on *Marks v. Stinson* is unavailing. *See Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994). Wholly distinguishable from this case, the District Court in *Marks* found that the Stinson campaign had orchestrated "massive absentee ballot fraud, deception, intimidation, harassment and forgery." *Id.* at 887. The Third Circuit remanded that case, instructing that "the district court should not direct the certification of a candidate unless it finds,

6

on the basis of record evidence, that the designated candidate would have won the election but for wrongdoing." *Id.* at 889.

Here, Ms. Ziccarelli has not even attempted to allege any mail-in or absentee ballot fraud or forgery whatsoever. She alleges no disparate treatment of the two campaigns. Instead, she claims that because the Allegheny County Board of Elections followed the directive of the Pennsylvania Supreme Court to count the undated ballots, the election was illegal. Unlike the Stinson campaign in *Marks*, there was no fraud or wrongdoing by the Secretary or the Allegheny County Board of Elections whatsoever. Moreover, unlike in *Marks*, there is no evidence of fraud or wrongdoing that could provide a basis to re-certify the election results. Because there was no disparate treatment between Ms. Ziccarelli and Brewster, Ms. Ziccarelli does not have Article III standing to pursue her equal protection claim as a candidate.

### 2. Ms. Ziccarelli Does Not Have Standing as a Voter

Ms. Ziccarelli does not have Article III standing to pursue her equal protection claim as a voter because she was treated like every other voter in Westmoreland County. She has failed to allege any injury-in-fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (plaintiff must demonstrate injury-in-fact, causation, and redressability in order to assert Article III standing).

Nowhere in Ms. Ziccarelli's Amended Complaint does she allege that: (i) she voted using a mail-in ballot Westmoreland County or Allegheny County; (ii) she failed to include a handwritten date on the outer envelope of her mail-in ballot; and (iii) the Westmoreland County Board of Elections did not count her mail-in ballot as a result of her failure to include a handwritten date on the outer envelope. *See* Amended Complaint, *generally*; s*ee also* Stip. ¶ 2 ("Ziccarelli is a qualified elector **residing in Westmoreland County who voted in person on**

7

**Election Day**, for herself.") (emphasis supplied).  Tellingly, Ms. Ziccarelli failed to name the Westmoreland County Board of Elections as a defendant in her Amended Complaint, the only party that theoretically could remedy any injury to her as a voter.  *See* Am. Compl., *generally*.

Although, Ms. Ziccarelli suggests that her vote has been diluted by the uneven application of the Pennsylvania Supreme Court's decision in the State Court Action, *see* Am. Compl. ¶¶ 55–64, this type of equal protection claim has been squarely rejected by the Third Circuit.  In *Bognet v. Sec'y Commonwealth of Pa.*, the voter-plaintiffs, who had planned to vote in person on Election Day, alleged that by voting in person, they had to comply with the single, uniform federal Election Day deadline, whereas mail-in voters could submit votes any time before 5:00 P.M. on November 6, 2020.  980 F.3d 336, 345–46 (3d Cir. 2020).

Thus, the plaintiff-voters in *Bognet* alleged that the Pennsylvania Supreme Court treated them in an arbitrary and disparate way by elevating mail-in voters to a "preferred class of voters" in violation of the U.S. Constitution's equal protection clause and the single, uniform, federal Election Day set by Congress.  *Id.* at 346.  In support of this theory, the voter-plaintiffs asserted that counting ballots received after Election Day would unlawfully dilute their votes in violation of the equal protection clause.  *Id.*

The Third Circuit in *Bognet* expressly refused to recognize this type of vote dilution claim because "this conceptualization of vote dilution—state actors counting ballots in violation of state election law—is not a concrete harm."  *See Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 354, 356 (3d Cir. 2020).  The Third Circuit in *Bognet* further held that this type of vote dilution claim is not a particularized harm because "the illegal counting of unlawful votes, 'dilute[s]' the influence of all voters in Pennsylvania equally and in an 'undifferentiated' manner and do[es] not dilute a certain group of voters particularly."  *Id.*

Under *Bognet*, even if Ms. Ziccarelli's vote was diluted as a result of the uneven application of the Pennsylvania Supreme Court's decision in the State Court Action (which it was not), her vote was diluted equally. Thus, she lacks standing as a voter to pursue her equal protection claim because she suffered neither a concrete nor a particularized harm according to *Bognet*.[3] Because Ms. Ziccarelli lacks standing as a candidate and as a voter,[4] this Court should dismiss her Amended Complaint, with prejudice.

> 3. *Ms. Ziccarelli Lacks Standing to Complain of a Purported Injury that She Actively Encouraged*

Ms. Ziccarelli lacks standing to complain of a theoretical injury that she actively encouraged – the purported differential treatment of undated mail-in ballots in Allegheny County and Westmoreland County. *See* Stip. ¶ 62. The United States Supreme Court has held that, for purposes of determining whether a party has Article III standing, when injuries are self-inflicted, the injury cannot be attributed to another party. *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) ("No [party] can be heard to complain about damage inflicted by its own hand."). Ms. Ziccarelli expressly requested that the Westmoreland County Board *not* count the undated

---

[3] The only persons conceivably injured by the Board's actions were mail-in voters in Westmoreland County whose ballots the Board rejected because they lacked a handwritten date. In fact, in advocating before the Westmoreland Board and in intentionally omitting that board as a defendant here, Ziccarelli has gone out of her way to ensure that those voters' ballots were not counted.

[4] Although Ms. Ziccarelli suggests that the Secretary's and Intervenors' proposed remedy – that the Westmoreland County Board of Elections count the undated mail-in ballots – is "unsustainable," she cites no case law or authority to support this position. *See* Ziccarelli Reply Br. at 14-15. Further, Ms. Ziccarelli ignores that the Commonwealth Court applied the holding in the State Court Action to Bucks County, even though that particular county's undated mail-in ballots were not before the Pennsylvania Supreme Court in the State Court Action. *See In Re: Canvass of Absentee and/or Mail-in Ballots of November 3, 2020 General Election*, 1191 C.D. 2020, (Pa. Commw. Ct. Nov. 25, 2020) (Slip. Op.), Stip. ¶ 45, Ex. H at 5-6 ("This Court [in reviewing Bucks County's decision to count undated mail-in ballots] is bound by the Supreme Court's decision."). Even if Ms. Ziccarelli is correct that Intervenors' proposed remedy is unsustainable, it is only unsustainable because she failed to sue the Westmoreland County Board of Elections. *See* Am. Compl., *generally*.

ballots, thus ensuring that undated ballots in Westmoreland County would be treated differently from undated ballots in Allegheny County.  *See* Stip. at ¶ 62.

In her Reply Brief, Ms. Ziccarelli cites *In Re McNeil Consumer Healthcare* for the general proposition that "Article III standing requires establishing injury, causation, and redressability." (Ziccarelli Reply Br. at 3.)  The *McNeil* case supports Intervenors' position that Ms. Ziccarelli did not suffer any injury fairly traceable to the Defendants' conduct in this case.

In *McNeil*, consumers brought a class action lawsuit against the manufacturer of over-the-counter healthcare products that were subject to a series of recalls.  *In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 255–56 (E.D. Pa. 2012).  The plaintiffs alleged that they overpaid for the defendants' products as a result of the recalls and the defendants' scheme to conceal or downplay the scope of the quality control problems.  *Id.* at 256.  The defendants in *McNeil* argued that the plaintiffs who purchased the recalled products but did not seek a refund lacked standing because they did not suffer any injury fairly traceable to the conduct of the defendants.  *Id.* at 275.

The Court agreed, finding that, with respect to any plaintiffs who purchased recalled products but did not seek a refund from the defendants, any injury suffered by this group was not traceable to the defendants' conduct and, thus, was self-inflicted.  *Id.* at 277.

Here, much like the plaintiffs who failed to seek a refund in *McNeil*, Ms. Ziccarelli failed to seek redress from the only party whose conduct arguably caused her injury – the Westmoreland County Board of Elections.  She failed to name the Westmoreland County Board as a defendant in this action and failed to appeal the Board's decision not to count the undated ballots to the Court of Common Pleas.  *See* Am. Compl., *generally*; *see also* Stip. at ¶ 66.  Thus, like the plaintiffs in *McNeil*, Ms. Ziccarelli's purported injury was self-imposed and she lacks standing as a result.

Although Ms. Ziccarelli relies on *Ciox Health, LLC v. Azar* for the proposition that a self-inflicted injury "must be so completely due to the complainant's own fault as to break the causal chain," Ziccarelli Reply Br. at 3, *Ciox Health* is wholly distinguishable from this case.  In *Ciox Health*, a medical records provider brought an action against the Department of Health and Human Services (HHS), challenging the HHS's amended rule and guidance governing fees that could be charged for delivering such records.  *Ciox Health, LLC v. Azar*, 435 F. Supp. 3d 30, 38 (D.D.C. 2020).  The defendant in *Ciox Health* argued that the plaintiff's injury was self-inflicted because the plaintiff had negotiated agreements that linked its compensation to the fee restrictions promulgated by HHS.  *Id.* at 50.  The District Court in *Ciox Health* rejected this argument and found that the plaintiff's passive inclusion of the fee restrictions in its negotiated agreements in a highly regulated environment – i.e., following the guidance of HHS – did not render its injury "self-inflicted."  *Id.* at 51.

Here, far from a passive negotiator of an agreement in a highly regulated environment, as in *Ciox Health*, Ziccarelli actively encouraged the Westmoreland County Board of Elections not to count the undated ballots.  *See* Stip. ¶ 62.  She did not ask Westmoreland County Board to treat its undated mail-in ballots consistent with the Pennsylvania Supreme Court's decision in the State Court Action.  *Id.*  Nor did she join in Intervenors' request that Westmoreland County Board count the undated mail-in ballots.  *Id.* at ¶ 61.  Instead, she expressly requested that the Westmoreland County Board *not* count the undated ballots.  *Id.* at ¶ 62.  Further, she failed to appeal the Westmoreland County Board's decision to the Court of Common Pleas.  *Id.* at ¶ 66.  Finally, she chose to sue only the Allegheny County Board and not the Westmoreland County Board.  *See* Am. Compl., *generally*.  To the extent that there is any disparate treatment between

11

undated ballots in Allegheny and Westmoreland Counties, it is the result of Ms. Ziccarelli's own actions.

Further, even if Ms. Ziccarelli is correct that her purported injury is not self-imposed, she failed to rebut Intervenors' argument in its Opening Brief that she has "unclean hands" in bringing this action.[5]  *See* Intervenors' Br. at 25, n.12.  Here, Ms. Ziccarelli seeks equitable relief in the form of an injunction to prevent "the Secretary from certifying any election results regarding the 45th Senatorial District that include the tally of the [undated ballots]."  Am. Compl. Prayer for Relief.  Ms. Ziccarelli's bad faith attempt to contrive a federal constitutional claim should bar her requested equitable relief.  Accordingly, because Ms. Ziccarelli lacks Article III standing and comes to this Court with unclean hands, her Amended Complaint should be dismissed, with prejudice.

### III.   CONCLUSION

For the reasons asserted herein, and in their Supporting Brief, Intervenors respectfully request that this Court dismiss Plaintiff's Amended Complaint with prejudice, or, in the alternative, award Summary Judgment in Intervenors' favor.

---

[5] *See*, *e.g.*, *Karpenko v. Leendertz*, 619 F.3d 259, 265 (3d Cir. 2010) ("The doctrine of unclean hands, named for the equitable maxim that 'he who comes into equity must come with clean hands,' is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.").

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | DENTONS COHEN & GRIGSBY P.C. |
| Dated: January 8, 2021<br>3525488.v1 | By: */s/ Clifford B. Levine*<br>   Clifford B. Levine<br>   Pa. Id. No. 33507<br>   Alex M. Lacey<br>   Pa. Id. No. 313538<br>   Kyle J. Semroc<br>   Pa. Id. No. 326107<br><br>625 Liberty Avenue, 5th Floor<br>Pittsburgh, PA  15222-3152<br>(412) 297-4900 |
| Lazar M. Palnick<br>Pa. Id. No. 52762<br>1216 Heberton Street<br>Pittsburgh, Pennsylvania 15206<br>(412) 661-3633 | ATTISANO & ROMANO, LLC<br>   Marco S. Attisano<br>   Pa. Id. No. 316736<br><br>429 Fourth Avenue, Suite 1705<br>Pittsburgh, PA 15219<br>(412) 336-8622<br><br>On behalf of the Pennsylvania Democratic Party and James Brewster, Intervenors |