IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE ZICCARELLI, | : |
| Plaintiff, | : NO. 2:20-cv-001831-NR |
| v. | : |
| THE ALLEGHENY COUNTY BOARD OF ELECTIONS, *et al.*, | : |
| Defendants. | : |

**SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA KATHY BOOCKVAR'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT OR, IN THE ALTERNATIVE,
<u>TO GRANT SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  ARGUMENT ................................................................................................................... 2

    A.   The *Rooker-Feldman* Doctrine Bars Plaintiff's Claims.......................................... 2

    B.   Plaintiff's Claims Are Barred by Res Judicata ....................................................... 6

    C.   Because There Is No Ongoing Violation of Federal Law, the Eleventh
        Amendment Bars Plaintiff's Claims ...................................................................... 6

    D.   Plaintiff Has Mooted the Secretary's Standing Argument by Disclaiming Her
        Third Party and Vote Dilution Arguments........................................................... 10

    E.   Plaintiff Fails to Address Fatal Flaws in Her Equal Protection and Due Process
        Claims ................................................................................................................... 11

        1.   The Court Should Dismiss the Equal Protection Claim............................ 11

        2.   The Court Should Dismiss the Due Process Claim .................................. 12

    F.   This Court Cannot, and Should Not, Level Down................................................ 14

III. CONCLUSION............................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andrews v. City of Phila.*,
 895 F.2d 1469 (3d Cir. 1990)...........................................................................................11

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).........................................................................................................12

*Balent v. City of Wilkes-Barre*,
 669 A.2d 309 (Pa. 1995)....................................................................................................6

*Bruszewski v. United States*,
 181 F.2d 419 (3d Cir. 1950)...........................................................................................7, 8

*Campbell v. Pa. Sch. Boards Ass'n*,
 972 F.3d 213 (3d Cir. 2020).............................................................................................12

*In re Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020 Gen. Election*,
 No. 29 WAP 2020, 2020 WL 6866415 (Pa. 2020).............................................5, 13, 14

*Commonwealth v. Tilghman*,
 673 A.2d 898 (Pa. 1996)....................................................................................................4

*First Options of Chi. Inc. v. Kaplan*,
 913 F. Supp. 377 (E.D. Pa. 1996) .....................................................................................7

*Hammond v. Krak*,
 No. 17-00952, 2020 WL 1032296 (W.D. Pa. Mar. 3, 2020) ............................................7

*Hoblock v. Albany Cnty. Bd. of Elections*,
 422 F.3d 77 (2d Cir. 2005)....................................................................................3, 4, 8, 9

*McCloskey v. Biehler*,
 No. CV 3:2007-291, 2009 WL 10689848 (W.D. Pa. July 27, 2009) .............................10

*Mertes v. Mertes*,
 350 F. Supp. 472 (D. Del. 1972), *aff'd*, 411 U.S. 961 (1973) ..........................................8

*Miller v. City of Phila.*,
 174 F.3d 368 (3d Cir. 1999).............................................................................................13

*Miller v. United States*,
 438 F. Supp. 514 (E.D. Pa. 1977) .....................................................................................7

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
   571 F.3d 299 (3d Cir. 2009) .................................................................................. 7

*Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*,
   297 F.3d 310 (3d Cir. 2002) ................................................................................ 10

*Phillips v. Cnty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) ................................................................................ 12

*Sessions v. Morales-Santana*
   137 S. Ct. 1678 (2017) ................................................................................. 14, 15

*Ziccarelli v. Allegheny Cnty. Bd. of Elections*,
   No. 20-11654, 2020 WL 7012634 (C.P. Allegheny Cnty. Nov. 18, 2020) .............. 4

**Statutes**

25 P.S. § 3167 ............................................................................................................ 9

42 U.S.C. § 1983 ................................................................................................ 11, 12

**Other Authorities**

U.S. Const. amend. XI ......................................................................................... 9, 10

18A Charles Alan Wright et al., *Federal Practice and Procedure* § 4448 (3d ed.) ........ 8

I.      INTRODUCTION

Plaintiff has asked this Court to overrule a Pennsylvania Supreme Court decision. In her Motion to Dismiss and for Summary Judgment, Defendant Kathy Boockvar, Secretary of the Commonwealth, showed that under the doctrines of *Rooker-Feldman* and res judicata, this Court cannot take that step. It cannot revisit a dispute that has already been litigated and decided, and it cannot act as a de facto appellate court and reverse the Pennsylvania Supreme Court's decision that Pennsylvania law required the Allegheny County Board of Elections to count 2,349 ballots that had been submitted in undated envelopes. The Secretary also showed that even if this Court were to find a federal constitutional equal protection violation in this case, the Pennsylvania Supreme Court's decision would preclude this Court from ordering the Allegheny Board to discard the ballots in question.

Plaintiff does not respond directly to these arguments. Instead, she contends that—appearances to the contrary—the Pennsylvania Supreme Court didn't actually issue a ruling on whether the ballots in question should be counted. The Secretary, Plaintiff argues, has "misunderstood" the Pennsylvania Supreme Court's decision; the "framework" of the Secretary's brief has a "fundamental defect"; and the Secretary has applied a "construct" that is "incorrect" because she has not appreciated "[t]he proper method for discerning the holding of a fractured decision" and is not conversant in "appellate parlance."  ECF 65, Reply at 1-2. Beyond all this dismissive rhetoric, however, there is nothing to support Plaintiff's characterization of the Pennsylvania Supreme Court's ruling. According to Plaintiff, although four Justices of that Court signed on to opinions stating that the ballots in question should be counted, those Justices somehow neglected to use magic words that would give those opinions legal effect. In fact, Plaintiff argues, the opinions mean the opposite of what they say—they mean that the Allegheny Board was *not permitted* to count the undated ballots.

In ordinary times, Plaintiff's argument would be meritless. In the present environment, when prominent voices are displaying a worrying disregard for court rulings on election matters, it is both meritless and deeply troubling. The Pennsylvania Supreme Court's opinions were fractured, but its ruling was clear: The undated ballots had to be counted. It would be inconsistent with principles of federalism and comity for this Court to sit in judgment on whether this ruling violated Pennsylvania law; it would be similarly inconsistent for this Court to undermine the Pennsylvania Supreme Court by applying hypertechnical restrictions to render its rulings ineffective. For these and the other reasons set forth in the Secretary's Motion and discussed below, this Court should dismiss Plaintiff's claims.

**II.   ARGUMENT**

    **A.   The *Rooker-Feldman* Doctrine Bars Plaintiff's Claims**

This is a quintessential *Rooker-Feldman* case: Plaintiff filed this federal lawsuit two days after the Pennsylvania Supreme Court's decision that the 2,349 Allegheny County ballots should be counted; she alleged that "the Pennsylvania Supreme Court's ruling … violates the Constitution[]," ECF 1 ¶ 52; and she sought an injunction preventing the 2,349 ballots from being counted, *id.* at p. 10; *accord* ECF 29, at pp. 12-13. Recognizing that her admissions plead her right into the *Rooker-Feldman* bar, Plaintiff now insists that she "(1) does not complain of injury caused by the state court judgment, and (2) does not invite this Court to review that judgment."[1] ECF 65, at 5. She is wrong.

Plaintiff now contends that her injury was not actually caused by the Pennsylvania Supreme Court's decision, but rather by "the Allegheny Board's and the Secretary's actions"

---

[1] Plaintiff does not dispute that the remaining two elements of the *Rooker-Feldman* test—namely, (a) that she lost in state court and (b) that the state-court judgment was rendered before the federal suit was filed—are satisfied.

2

implementing that decision.[2] ECF 65, at 5. But as the Secretary previously demonstrated, that is a distinction without a difference. "Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court [of the United States] can hear." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005).[3]

This is not Plaintiff's only attempt to avoid the *Rooker-Feldman* bar by means of semantic sleight of hand. She also insists that the Court of Common Pleas and Pennsylvania Supreme Court decisions could not have caused her injury because they did not "*order*[] the counting of the Undated Ballots," ECF 65, at 5 (emphasis added), but rather affirmed the decision to count the ballots (or, in the case of the Pennsylvania Supreme Court's decision, reversed the Commonwealth Court's judgment and reinstated the Court of Common Pleas' decision, which amounts to the same thing). Conspicuously, however, Plaintiff cites no case holding that an appellate state-court judgment cannot trigger a *Rooker-Feldman* bar simply because it affirms, rather than reverses, the decision of the tribunal of original jurisdiction. At the same time, Plaintiff entirely ignores the decisions of multiple courts cited by the Secretary, including the Court of Appeals for the Third Circuit, holding that a state-court appellate

---

[2] As Plaintiff herself has admitted, and as the Secretary previously pointed out, the Allegheny Board did not add the 2,349 ballots to its certified vote count until *after* the Pennsylvania Supreme Court's ruling. *See* ECF 59, at 16. Plaintiff's Reply ignores this fact.

[3] Plaintiff's conclusory assertion that the challenged actions "by the Allegheny Board and the Secretary in certifying and accepting results" were "independent" of the Pennsylvania Supreme Court's decision is simply wrong. ECF 56, at 6. As Defendants showed in their earlier briefing—and as Plaintiff does not dispute—the Secretary's certification of election results is a ministerial task in which she receives and tallies the results certified by the counties. And both the Board and the Secretary are bound by the Pennsylvania Supreme Court's decisions regarding which ballots should and should not be counted.

3

judgment upholding an agency decision does, in fact, trigger the doctrine. *See* ECF 59, at 15-16 (citing cases). Put simply, Plaintiff's position finds no support in the law.

Notably, none of the decisions cited by the Secretary suggests that the applicability of the *Rooker-Feldman* bar depends on whether the state appellate court ruled that the agency decision was required, as opposed to merely permitted. *See id.* But even assuming *arguendo* that such a requirement exists, it is plainly satisfied here. Contrary to Plaintiff's unsupported suggestion, this is not a case in which an agency exercised some sort of discretionary policymaking authority, and the appellate courts held merely that its decision was permissible under the law. The question here was whether 2,349 specific ballots that, without dispute, had been timely returned by qualified voters, who had signed the accompanying declarations but failed to date them, should be counted. There is nothing in any of the state-court decisions—or, for that matter, logic—suggesting that the answer to this question was a matter committed to the Board's discretion, that is, that the Board could permissibly have decided *either* to reject *or* accept the ballots. Rather, the answer was dictated by law. The Court of Common Pleas held that the ballots "*must* be counted." *Ziccarelli v. Allegheny Cnty. Bd. of Elections*, No. 20-11654, 2020 WL 7012634, at *2 (C.P. Allegheny Cnty. Nov. 18, 2020) (emphasis added).[4] Similarly, the three justices joining the Opinion Announcing the Judgment of the Pennsylvania Supreme Court based

---

[4] Plaintiff argues that when the Pennsylvania Supreme Court reinstated the "decision" of the Court of Common Pleas, it implicitly rejected this statement. ECF 65 at 2. This argument rests on a crabbed reading of the word "decision" as meaning "orders but not opinions." *Id.* Plaintiff claims that "appellate parlance" requires this definition of "decision," but can point to no Pennsylvania case law to support this supposed "parlance." The Pennsylvania Supreme Court, however, does not take so rigid a view; it has used the term "decision" to refer to both opinions and orders. *See Commonwealth v. Tilghman*, 673 A.2d 898, 904 (Pa. 1996) ("Where we dismiss an appeal as improvidently granted, the lower tribunal's opinion and order stand as a decision of that court …."). Plaintiff identifies no authority for the proposition that the use of the term "decision" rendered the Court of Common Pleas opinion entirely irrelevant.

4

their decision on the principle that "ballots containing mere minor irregularities should *only* be stricken for compelling reasons"; they held that the absence of a date was nothing more than such a minor irregularity *and there were "no compelling reasons"* to strike the 2,349 ballots at issue in that case. *In re Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020 Gen. Election*, No. 29 WAP 2020, 2020 WL 6866415, at *16 (internal quotation marks omitted) (emphasis added). And Justice Wecht, who provided the fourth vote for the Pennsylvania Supreme Court's judgment, held in no uncertain terms that rejecting the ballots at issue "would be unfair." *Id.* at *24 (Wecht, J., concurring). Indeed, in her Petition for Reargument before the Pennsylvania Supreme Court, Plaintiff expressly acknowledged that "the Court … [had] directed [the ballots] to *be counted*." ECF 45-8, Fact. Stip., Ex. G, at 7. In sum, the Pennsylvania Supreme Court reinstated the Court of Common Pleas' decision because it concluded that the ballots must be counted.

That the Supreme Court did not style its disposition as an order, or use the term "order" in the decretal language of its opinions, is irrelevant. Appellate courts do not issue "orders" to lower tribunals that rendered a decision they were required to render; appellate courts "affirm" (or, where applicable, "reinstate") those decisions. Under Plaintiff's view, the applicability of the *Rooker-Feldman* bar would turn on whether the Pennsylvania Supreme Court's authoritative, final judgment happened to be consistent or inconsistent with the initial decision of the tribunal of first instance.[5] A Pennsylvania Supreme Court decision holding that a ballot must be counted

---

[5] As the Secretary previously discussed, the decision whether a ballot should be counted is not analogous to conduct, such as employment discrimination, by a private defendant that might subsequently be challenged in court. Determining whether to count or reject a ballot is an inherently adjudicative function that must be performed by a governmental institution. In Pennsylvania, the government institution with the ultimate authority to make those determinations is the Pennsylvania Supreme Court.

5

would trigger the *Rooker-Feldman* bar if the county board had initially decided to reject the ballot, but not if it had interpreted and applied the law in the same way as the Supreme Court. By the same token, a Pennsylvania Supreme Court decision holding that a ballot must be rejected would trigger the *Rooker-Feldman* bar if the county board had decided to count it, but not if the county board had correctly anticipated the Pennsylvania Supreme Court's conclusion. Such a rule would make no sense; it would rest on arbitrary distinctions lacking any basis in the Supreme Court's *Rooker-Feldman* jurisprudence. In each of the four scenarios sketched above, it is the Pennsylvania Supreme Court's authoritative, binding decision to count or reject the ballots that causes the aggrieved candidate-plaintiff's injury. Here, Plaintiff asks this Court to review and reject the Pennsylvania Supreme Court's ruling that the 2,349 ballots should be counted, on the purported ground that counting those ballots is unconstitutional. This Court lacks jurisdiction to adjudicate that challenge.

      **B.**    **Plaintiff's Claims Are Barred by Res Judicata**

The defense of claim preclusion, or res judicata, is straightforward: Unsurprisingly, where a party files a state-court lawsuit seeking to exclude certain ballots and loses on the merits, that judgment has preclusive effect when the same party files a subsequent lawsuit seeking to exclude the same ballots.

Plaintiff contends the Secretary cannot invoke res judicata because she "was never a party" in Plaintiff's prior state-court action. ECF 65, at 10. But Plaintiff cites no authority in support of this proposition. Nor could she. The law is clear that res judicata does not require an absolute identity of parties. It is well settled that "[a]ny final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties *or their privies* on the same cause of action." *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995) (emphasis added). The term "privy" "is merely a word used to say that the relationship between

6

one who is a party on the record and another is close enough to include the other within the res judicata." *First Options of Chi. Inc. v. Kaplan*, 913 F. Supp. 377, 383 (E.D. Pa. 1996) (citing *Bruszewski v. United States*, 181 F.2d 419, 243 (3d Cir. 1950)).

Moreover, where, as here, the question is *not* whether a party not named in the first lawsuit can be *bound* by the judgment in that lawsuit (here, the party to be bound, Plaintiff, was the plaintiff challenging the same ballots in the earlier state-court litigation), but rather whether a party not named in the lawsuit can *invoke* the earlier judgment *to bind a party to that lawsuit*, "'privity' is not required." *Miller v. United States*, 438 F. Supp. 514, 520 (E.D. Pa. 1977) (citing *Bruszewski*, 181 F.2d at 422). As the Court of Appeals explained in *Bruszewski*:

> Where the party *to be bound* in a second proceeding is different from the party against whom the original adjudication was made, a close relationship between them is a requirement of fairness and may be necessary to provide due process of law. Thus, the rule that only parties and privies are bound by a prior judgment is unquestionably correct….
>
> … [But] where, as in this case, res judicata is invoked against a plaintiff who has twice asserted the same claim against different defendants, courts have … enlarged the area of res judicata beyond any definable categories of privity between the defendants.

*Bruszewski*, 181 F.3d at 422 (emphasis added) (approving of "this development of the law away from formalism which impedes the achievement of fair and desirable results"); *see also Hammond v. Krak*, No. 17-00952, 2020 WL 1032296, at *3 (W.D. Pa. Mar. 3, 2020) ("res judicata 'must be liberally construed and applied without technical restriction'" (quoting *Radakovich v. Radakovich*, 846 A.2d 709, 715 (Pa. Super. Ct. 2004))).[6] *See generally* 18A

---

[6] This principle governs Pennsylvania as well as federal law. *See Hammond*, 2020 WL 1032296, at *3 (applying Pennsylvania law); *see also First Options*, 913 F. Supp. 377, 384 n.8 (E.D. Pa. 1996) ("State law requirements for res judicata and privity are not inconsistent with the federal law applied by [the Court of Appeals for the Third Circuit]."), *cited approvingly by Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009).

Charles Alan Wright et al., *Federal Practice and Procedure* § 4448 (3d ed.) (distinguishing the question of "who is bound by a judgment" from the question of "who may take advantage of [a judgment]").

The *Bruszewski* principle is applicable where, as here, the "new" defendants "were simply added to the present suit in order to obtain some of the injunctive relief demanded." *Mertes v. Mertes*, 350 F. Supp. 472, 475 (D. Del. 1972), *aff'd*, 411 U.S. 961 (1973); *see also* 18A Charles Alan Wright et al., *supra*, § 4463 (noting the principle "that a second action cannot be permitted against new parties when any judgment necessarily would undo a prior judgment"). This principle makes perfect sense as a rule of civil procedure. Plaintiff earlier sought a state-court ruling that the ballots at issue should not be counted—and lost. She cannot be allowed to avoid res judicata simply by adding as a party, and seeking an injunction against, a defendant who is bound, as a matter of ministerial duty, to implement the earlier state-count judgment by including the challenged ballots in her certification of the results (based, in relevant part, on the results certified to the Secretary by the Allegheny Board, which, like Plaintiff, was a party to the state-court action). If the rule were otherwise, a parent could avoid the effect of a judgment depriving him of custody of his child by filing a new lawsuit adding, and seeking injunctive relief against, the state employees subsequently charged with the duty of implementing the judgment. That is not the law. *Cf. Hoblock*, 422 F.3d at 88.

Plaintiff contends that res judicata does not apply because she could not have brought claims against the Secretary "in the state court action [given that] the violation occurred *after* the state court action …, when the the Secretary … accepted the Westmoreland results alongside the Allegheny results, which she certified on December 16." ECF 65, at 11. According to Plaintiff, it was this "subsequent acceptance—weeks after the end of the state court case—that created" what

8

Plaintiff calls the "ultimate violation."[7] *Id.* This argument fails for at least two different reasons. First, it is completely unsupported by any on-point authority. Indeed, as a matter of logic, an action implementing an earlier judicial decision cannot occur until after the case resolved by that decision has ended. And the identity of the specific individuals who will be tasked with implementing that decision may not be knowable until long after the decision itself is made. As shown above, that does not mean that those individuals cannot invoke the defense of res judicata in a subsequent lawsuit filed against them. Second, Plaintiff's argument is belied by her own pleadings. She filed this lawsuit against (among others) the Secretary, alleging the same equal protection and due process claims she presses now, on November 25, 2020—before the Secretary "accepted" Westmoreland County's certified results and weeks before December 16.

The doctrine of res judicata is squarely applicable here. The Pennsylvania Supreme Court's judgment precludes Plaintiff's claims.

### C. Because There Is No Ongoing Violation of Federal Law, the Eleventh Amendment Bars Plaintiff's Claims

Despite what Plaintiff argues in her Reply, the Amended Complaint does not allege an "ongoing violation" of federal law, and her claims are therefore barred by the Eleventh Amendment. Plaintiff cites only paragraph 43 of her Amended Complaint as proof that she alleges an ongoing violation; this paragraph, however, states only that "neither Ziccarelli nor Brewster has been declared the winner based on receiving the most votes, *see* 25 P.S. § 3167, nor has Secretary Boockvar has [*sic*] issued a certificate of election." ECF 65, at 8; *see also* ECF 45, Stip. Facts ¶ 74. The alleged wrongful conduct that the Secretary "accept[ed] returns" from the

---

[7] It is not clear how Plaintiff defines "ultimate." Arguably, the "ultimate" injurious act, from Plaintiff's standpoint, would be the swearing in of her opponent to office. And, indeed, by Plaintiff's logic, she could, even if she were to lose *this* lawsuit, turn around and assert the same legal arguments, and seek an injunction against, the person who would perform the swearing-in ceremony. This *reducio ad absurdum* underscores the error of Plaintiff's position.

9

Counties is not "ongoing" simply because paragraph 43 alleges that neither party has yet been declared a winner. This may be an answer to Allegheny County's mootness argument,[8] but it is not sufficient to satisfy the "ongoing violation" requirement of *Ex Parte Young*.

Furthermore, to the extent Plaintiff alleges any ongoing violation, it is of state, rather than federal, law. The Third Circuit has held that where the relief sought is prospective, a Court must analyze "whether the ongoing violations alleged are of federal or state law." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 324 (3d Cir. 2002). Plaintiff alleges a past violation of state law, but nowhere alleges the Secretary is currently violating her rights, or that the Secretary's future actions will violate those rights either. *See* ECF 29, First Amended Complaint ¶¶ 44, 52. Because Plaintiff's allegation of "ongoing violation" is another variation on the theme that Defendants did not comply with state law as Plaintiff—as opposed to the Pennsylvania Supreme Court—interprets it, this Court should find the Eleventh Amendment bars her claims.

### D. Plaintiff Has Mooted the Secretary's Standing Argument by Disclaiming Her Third Party and Vote Dilution Arguments

In her Motion to Dismiss, the Secretary argued that Plaintiff lacked standing to pursue (1) claims on behalf of third parties and (2) claims based on a vote dilution theory of harm. *See* ECF 59, at 18-21. Plaintiff now concedes these points, acknowledging that "this harm is not asserted on behalf of nonparty voters," and that she raises only "a specific harm to Plaintiff." ECF 65, at 3. Therefore, the only remaining basis for standing is that Defendants' allegedly wrongful acts caused Plaintiff to lose the race for State Senator for the 45th District. ECF 29 ¶ 5.

---

[8] The analysis of the two is distinct. *See McCloskey v. Biehler*, No. CV 3:2007-291, 2009 WL 10689848, at *2 (W.D. Pa. July 27, 2009) ("It must be recognized that Eleventh Amendment immunity and the mootness doctrine are distinct concepts.").

This Court should therefore disregard any allegations involving injuries to absent third parties, *see, e.g.*, ECF 29 ¶ 70, or vote dilution, *see, e.g., id.* ¶ 61, and consider the merits of Plaintiff's Section 1983 claims based only on allegations of purported violations of *her own* fundamental rights.

### E. Plaintiff Fails to Address Fatal Flaws in Her Equal Protection and Due Process Claims

#### 1. The Court Should Dismiss the Equal Protection Claim

The Reply highlights a rudimentary failure in Plaintiff's unsuccessful attempt to plead an equal protection claim. As noted in the Secretary's Motion, Third Circuit law is clear that a plaintiff must show she "'receiv[ed] different treatment from that received by other individuals similarly situated'" to state a claim for a violation of the Equal Protection Clause under 42 U.S.C. § 1983. *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990) (citations omitted). In her Reply, Plaintiff argues she met this burden by alleging that "she, *as a candidate*, has received differential treatment from two counties and, thus, her allegations are sufficient." ECF 65, at 13 n.5 (emphasis in original). The allegations and the record simply fail to bear this out. Plaintiff alleges no policy or practice that treated Ms. Ziccarelli "as a candidate" differently from any other candidate. In fact, the record shows that each county implemented its interpretation of Sections 3146.6(a) & 3150.16(a) uniformly as to Ziccarelli and Brewster voters. ECF 45, Stip. Facts ¶¶ 31-33, 57, 65. Plaintiff's Reply fails to point to any allegation or piece of evidence that shows Plaintiff herself was treated differently from another similarly-situated individual, which crystallizes her failure to adequately plead this basic element of an equal protection claim.

Plaintiff also incorrectly argues in her Reply that she does not need to plead that Defendants caused a specific deprivation of her constitutional rights. ECF 65, at 13 n.5. Third Circuit law is unequivocal that she does. "Under Section 1983, a plaintiff must plead a

deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008). In her Reply, Plaintiff argues that "even if all Defendants have a mandatory duty to facilitate the violation of the Equal Protection Clause—which, they do not—precepts of federal supremacy dictate that a state official cannot take actions, even if they are mandated by state law, in conflict with the Federal Constitution." ECF 65, at 13 n.5. First, the Supremacy Clause has nothing to do with Rule 8's pleading requirements. *See Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Second, as *Phillips* makes clear, Plaintiff very much does have the duty to plead that a Defendant, in Plaintiff's terms, "facilitate[d] [read, caused] the violation of the Equal Protection Clause." ECF 65, at 13 n.5. As indicated in the Secretary's Motion to Dismiss, and unaddressed in the Reply, Plaintiff fails to do so.[9] This basic failure of pleading, which Plaintiff argues is insignificant in her Reply brief, is in fact fatal to both of Defendants' Section 1983 claims.

### 2.     The Court Should Dismiss the Due Process Claim

Plaintiff's Reply fails to address critical flaws in her due process claim as well. First, the Reply's concession that Plaintiff does not bring vote dilution or third party claims dooms Count Two. In the Third Circuit, "[t]o establish any claim under § 1983, a plaintiff must demonstrate that … the complained-of conduct deprived the plaintiff of rights secured under the Constitution or federal law." *Campbell v. Pa. Sch. Boards Ass'n*, 972 F.3d 213, 224 (3d Cir. 2020). The Amended Complaint's due process allegations speak only in terms of the fundamental right to vote and vote dilution, *see* ECF 29 ¶¶ 66-72, harms which Plaintiff has now disclaimed. *See supra* § II.D. Without a fundamental right at issue, therefore, Plaintiff cannot state a claim that

---

[9] Footnote five in Plaintiff's Reply fails to seriously confront the many other pleading deficiencies raised in the Secretary's Motion to Dismiss, including the failure to articulate a burden, and to show that burden outweighs the Commonwealth's significant interest in an orderly election. ECF 59, at 28-30.

12

her rights under the Due Process Clause have been violated by Defendants' actions. Plaintiff's Reply also neglects the binding case law highlighted in the Secretary's Motion to Dismiss regarding due process claims being limited to official action that "shocks the conscience," *see, e.g.*, *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999), and nowhere argues that the conduct alleged here rises to that level. Because Plaintiff's due process claim is simply a regurgitation of her equal protection claim, and because it fails to satisfy the Third Circuit's pleading requirements, it should also be dismissed.

And, even if this Court were not bound to dismiss the claim under Third Circuit law, Plaintiff's attempt to analogize this case to the unpersuasive and non-binding out-of-circuit ruling in *Roe* fails. Plaintiff's argument in her Reply that "changing the rules by which ballots are canvassed after the votes have been cast … violates the Due Process Clause" is limited to a situation, as in *Roe*, where the "[rule] had been firmly established and understood by election officials." ECF 65, at 13-14. The rule at issue in this case, however, was being implemented for its first full election cycle; this is hardly "firmly established" or "understood" like the fifteen-year near-universal practice at issue in *Roe.* As Justice Wecht noted, "[one] cannot say with any confidence that even diligent electors were adequately informed as to what was required to avoid the consequence of disqualification in this case." *In Re Canvass*, 2020 WL 6866415, at *24 (Wecht, J., concurring). These facts are miles from *Roe*, a case that has not been cited by the Third Circuit, and stands as an outlier in the election law arena. This Court should not find such an opinion persuasive, especially because its facts are so different from those at issue here, and should dismiss Plaintiff's due process claim based on binding Third Circuit precedent.

## F. This Court Cannot, and Should Not, Level Down

It is beyond this Court's power to order a remedy that would cancel 311 validly-counted votes of Allegheny County electors. This is so because Justice Wecht's controlling opinion in *In re Canvass* found "it would be unfair to punish voters for the incidents of systemic growing pains" by retrospectively cancelling ballots of voters who failed to date their mail-in or absentee ballot declaration envelope. 2020 WL 6866415, at *24 (Wecht, J., concurring). The Pennsylvania Supreme Court refused to grant Plaintiff's request to invalidate these ballots. *See id.* To do so now—and override the Pennsylvania Supreme Court—would infringe those 311 voters' federal constitutional rights—something this Court cannot do. *Trump II*, 2020 WL 6821992, at *12 (citations omitted) ("It is not in the power of [a District] Court to violate the Constitution."). For the reasons laid out in the Secretary's Motion to Dismiss, this Court should refuse to order such a remedy.

And, even if this Court *could* level down, Supreme Court precedent suggests it should not. Plaintiff's Reply does not refute the key limitation the Supreme Court places on federal courts choosing to order a level-down remedy: that it should only be done ***prospectively***. *Sessions v. Morales-Santana* 137 S. Ct. 1678, 1701 (2017). Plaintiff also neglects to distinguish *Andino v. Middleton*, where the Supreme Court applied its decision only prospectively because ballots cast in reliance on a misunderstanding of an election rule prior to the Court's decision "*may not be rejected.*" 141 S. Ct. 9, 10 (2020) (emphasis added). Plaintiff's Reply does not seriously grapple with the federalism constraint in *Sessions*, either. To be sure, *Sessions* acknowledges that "extension" or "invalidation" are the remedial options, but, crucially, *which option to impose* is not a matter for a federal district court to decide for a State: "upon finding state statutes constitutionally infirm, we have generally remanded to permit state courts to choose between extension and invalidation." 137 S. Ct. at 1698 n.23. Following *Sessions*, this Court

14

should not order a retrospective, unconstitutional remedy that also violates the important federalism principles announced by the Supreme Court.

*Pierce v. Allegheny County Board of Elections* is an instructive example of this limitation. 324 F. Supp. 2d 684, 707 (W.D. Pa. 2003). In *Pierce*, the court found a constitutional violation, but only ordered the remedy "that these absentee ballots will be challenged in the manner provided for under the election code," and allowed the claims to proceed through the prescribed state law process. *Id.* Consistent with the rule articulated later in *Sessions*, this remedy deferred to the Commonwealth on how to resolve the equal protection violation. *See id.* Plaintiff's effort to invert the *Pierce* scenario by asking this Court to overrule the Pennsylvania Supreme Court, rather than defer to it on matters of state law, reveals how inappropriate this remedy would be. As the Third Circuit recently highlighted, "[v]oters, not lawyers, choose the President. Ballots, not briefs, decide elections … Nor does federal law govern whether to count ballots with minor state-law defects or let voters cure those defects. Those are all issues of state law, not ones that we can hear." *Trump II*, 830 F. App'x at 391. This Court should likewise acknowledge it has no power to order the remedy Plaintiff requests, and deny the requests for relief accordingly.

### III.   CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that the Court dismiss all claims in the Amended Complaint with prejudice or, in the alternative, grant summary judgment in favor of the Secretary on Counts One and Two.

|  |  |
|---|---|
| Dated: January 8, 2021 | Respectfully submitted,<br><br>HANGLEY ARONCHICK SEGAL<br>PUDLIN & SCHILLER<br><br>By:  /s/ Michele D. Hangley<br>       Mark A. Aronchick<br>       Michele D. Hangley*<br>       Robert A. Wiygul*<br>       John G. Coit**<br>       One Logan Square, 27th Floor<br>       Philadelphia, PA 19103<br>       Telephone: (215) 496-7050<br>       Email: mhangley@hangley.com<br><br>*Counsel for Defendant Kathy Boockvar, in her official capacity as the Secretary of the Commonwealth of Pennsylvania*<br><br>\* *Admitted pro hac vice*<br>\*\* *Pro hac vice motion to be filed* |

16