# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE ZICCARELLI, | ) |
| | ) |
| Plaintiff, | ) 2:20-cv-1831-NR |
| | ) |
| v. | ) |
| | ) |
| THE ALLEGHENY COUNTY BOARD | ) |
| OF ELECTIONS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION

**J. Nicholas Ranjan, United States District Judge**

  This lawsuit concerns a hotly contested state senate race between Nicole Ziccarelli and Jim Brewster, in a district that encompasses parts of both Allegheny and Westmoreland Counties. After the general election, only a few hundred votes separate the two candidates, with Mr. Brewster having been certified the winner. Ms. Ziccarelli, however, argues that 311 mail-in ballots received by Allegheny County were erroneously counted, and should be thrown out, because the voters who cast those ballots did not write the date next to their signatures. If those ballots are thrown out, Ms. Ziccarelli would win the election by 93 votes.

  Ms. Ziccarelli's argument for invalidating the challenged ballots turns on her interpretation of the Pennsylvania Supreme Court's decision in a previous lawsuit she filed, where she sought to have the same ballots deemed invalid for lacking a date. *See In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, — A.3d —, No. 29 WAP 2020, 2020 WL 6866415 (Pa. Nov. 23, 2020). Even though a majority of the Supreme Court, in that decision, ultimately determined that Allegheny County could count the undated ballots in this election, she interprets the decision to mean that those ballots are invalid under Pennsylvania's election code. She further alleges that, by counting undated ballots that violate the election code, Allegheny County (and then, by certifying the results, Secretary Boockvar) violated

her equal-protection and due-process rights. That is because, while Allegheny County counted undated ballots, Westmoreland County did not. Ms. Ziccarelli contends that this amounts to arbitrary, unequal treatment in violation of the equal-protection principle announced in *Bush v. Gore*, 531 U.S. 98 (2000).

After a careful review of the parties' cross-motions for summary judgment, the Court disagrees with Ms. Ziccarelli's positions. The Court's fundamental disagreement is with Ms. Ziccarelli's interpretation of the Pennsylvania Supreme Court's decision. Contrary to Ms. Ziccarelli's reading, the Court finds that the Supreme Court expressly held that the undated ballots at issue remain valid ballots that are properly counted under state law. Thus, because Ms. Ziccarelli's federal constitutional claims all depend on the invalidity of the ballots under state law, those claims necessarily fail on the merits. That is, even if applying disparate counting standards in Allegheny and Westmoreland Counties creates an equal-protection concern, the validity of the challenged ballots forecloses any argument that Allegheny County is responsible for that violation, or that the Court could throw out Allegheny County's ballots as a remedy. For these reasons, discussed in full below, the Court will grant Defendants' and Intervenors' motions for summary judgment.[1]

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the Court must ask whether the evidence presents a "sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In making that

---

[1] Because the Court writes primarily for the benefit of the parties and given the time-sensitive nature of this case, the Court dispenses with a recitation of the factual background here. Instead, the Court adopts the parties' comprehensive and well-written stipulation of undisputed, material facts as if fully set forth herein. ECF 45.

determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007).

The summary-judgment stage "is essentially 'put up or shut up' time for the non-moving party," which "must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). The filing of cross-motions "does not constitute an agreement that if one is rejected the other is necessarily justified." *Id.* But the Court may "resolve cross-motions for summary judgment concurrently." *Hawkins v. Switchback MX, LLC*, 339 F. Supp. 3d 543, 547 (W.D. Pa. 2019) (Conner, J.). When doing so, the Court views the evidence "in the light most favorable to the non-moving party with respect to each motion." *Id.*

## DISCUSSION & ANALYSIS [2]

### I. The Pennsylvania Supreme Court held that the undated ballots remain valid, and that Allegheny County properly counted them.

After the Allegheny County Board of Elections decided to count the undated ballots, Ms. Ziccarelli filed a lawsuit in the Allegheny County Court of Common Pleas. She litigated that matter up to the Pennsylvania Supreme Court. In a November 23, 2020, decision, the Supreme Court held that the undated mail-in ballots remained

---

[2] Defendants raise a bevy of procedural defenses, such as standing and mootness. *See generally* ECF 53; ECF 57; ECF 59. The Court finds that these defenses are no bar to Ms. Ziccarelli's claims, for substantially the same reasons stated in Ms. Ziccarelli's reply brief. ECF 65.

valid, and thus that it was proper for the Allegheny County Board of Elections to count them. *See In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, — A.3d —, No. 29 WAP 2020, 2020 WL 6866415, at *16 (Pa. Nov. 23, 2020).

The issue before the Supreme Court was not whether the election code requires voters to date their ballots (it does), but whether the date requirement, found in 25 P.S. §§ 3150.16(a) and 3146.6(a), was "directory" or "mandatory." *See In re Nov. 3, 2020 Gen. Election*, 2020 WL 6866415, at *14. In short, if the date requirement was "directory," then an undated ballot would still be valid, and could be counted, despite its technical deficiency. If, instead, the requirement was "mandatory," an undated ballot would be invalid and must not be counted. *Id.* A four-justice majority of the Pennsylvania Supreme Court held that the ballots were not invalid, and thus that Allegheny County could properly count them. *See id.* at *16 ("[W]e conclude that while failures to include a … date in the voter declaration on the back of the outer envelope, while constituting technical violations of the Election Code, do not warrant the wholesale disenfranchisement of thousands of Pennsylvania voters. … [B]allots containing mere minor irregularities should only be stricken for compelling reasons.") (cleaned up); *see also id.* (Wecht, J. concurring) ("[D]espite my reservations about the OAJC's analysis, I concur in its disposition of these consolidated cases.").

The parties' dispute over the Supreme Court's opinion concerns the reasoning of Justice Wecht's concurring & dissenting opinion. *See id.* at *16-24 (Wecht, J. concurring).[3] In his concurrence, Justice Wecht explained that, unlike the three justices who authored the Opinion Announcing the Judgment of the Court, he would

---

[3] Justice Wecht styled his concurrence as a "concurring and dissenting opinion," but he did not dissent from any aspect of the Supreme Court's judgment. Rather, as will be discussed, he simply expressed different reasoning before joining in the full "disposition" of the OAJC. *See In re Nov. 3, 2020 Gen. Election*, 2020 WL 6866415, at *16 (Wecht, J. concurring) ("[D]espite my reservations about the OAJC's analysis, I concur in its disposition of these consolidated cases.").

prefer to interpret the date requirement as "mandatory," rather than "directory," for "future elections." *See id.* at \*16 (Wecht, J. concurring). As such, Ms. Ziccarelli argues that the reasoning of the OAJC (signed by only three of the seven justices) was not controlling—and that, instead, reading Justice Wecht's concurring opinion together with the other dissenting opinions shows that four justices found that the date requirement was "mandatory," such that the ballots are *per se* invalid under Pennsylvania law, and thus cannot be counted. *See, e.g.,* ECF 47, p. 15 ("[I]n short, the legal principle that emerged from the Court's decision was that mail-in ballots with undated declarations are invalid under the Election Code."); ECF 47, pp. 23-24 ("[U]ndated declarations render the accompanying ballot invalid under the plain language of the statute, as confirmed by the Pennsylvania Supreme Court's interpretation.").

From that premise, Ms. Ziccarelli proceeds to argue that (1) equal protection requires that a uniform standard be applied across Allegheny and Westmoreland Counties; and (2) the appropriate remedy is to discount the ballots that four Supreme Court justices held to be invalid under Pennsylvania law. *See, e.g.,* ECF 47, p. 31 ("[I]t is not disenfranchisement to disallow the counting of undated ballots that are not now, **and never were**, lawful ballots under Pennsylvania law.") (emphasis in original); ECF 47, pp. 32 ("It is … a case where a discrete and identifiable set of invalid ballots (the 311 undated Allegheny County ballots) can be readily separated from the remaining lawfully cast ballots, and appropriately disqualified. Doing so would ensure equal treatment of voters both across counties *and* within a single county[.]").

While a clever argument, the Court disagrees with Ms. Ziccarelli's reading of the Supreme Court's decision—and, specifically, with her reading of Justice Wecht's concurrence. To be sure, under Pennsylvania law, the reasoning of the OAJC is not controlling precedent. *See* 210 Pa. Code § 63.4(B)(3) ("An opinion shall be designated

as the 'Opinion Announcing the Judgment of the Court' when it reflects only the mandate, **and not the rationale**, of a majority of Justices.") (emphasis added). It is likewise true that Justice Wecht said that he thought the date requirement was better understood as "mandatory." *Id.* at *16. But he also explained that he "would apply [his] interpretation only prospectively." *Id.* He also very clearly, if begrudgingly, found that, for purposes of Ms. Ziccarelli's and the other consolidated cases, the "disposition" reflected in the OAJC was correct. *Id.* That disposition included issuing a mandate reinstating the lower court's order that blessed the Allegheny County Board of Elections' decision to count the undated ballots. *Id.* ("The decision of the Commonwealth Court is hereby reversed and the decision of the Allegheny County Court of Common Pleas is reinstated.").

Thus, this Court reads Justice Wecht's opinion as expressly declining to join the dissenters' conclusion that the date requirement should *presently* be interpreted as "mandatory," such that the specific at-issue undated ballots are invalid. Instead, he indicated that he might "adopt" such an interpretation "prospectively," *i.e.,* not now but perhaps "in future elections." *Id.* In doing so, he relied on Pennsylvania and United States Supreme Court case law authorizing a court interpreting state election law to "elect to apply only prospectively a ruling that overturns pre-existing law or issues a ruling of first impression not foreshadowed by existing law." *Id.* at *23 (Wecht, J. concurring) (citing *Appeal of Zettner*, 626 A.2d 146, 149 (Pa. 1993) ("To now void the results of an election where all candidates were submitted to the voters, with late but nonetheless filed financial statements which left adequate time for study by the electorate, would be an unnecessary disenfranchisement."); *Andino v. Middleton*, 141 S.Ct. 9 (Mem), 2020 WL 5887393, *1 (Oct. 5, 2020) (staying district-court injunction "except … that any ballots cast before this stay issues and received within two days of this order may not be rejected for failing to comply with the witness requirement")).

In Justice Wecht's view, prospective application was justified here due to a lack of clarity in the election code, the absence of case law interpreting the relevant provisions, and conflicting guidance leading up to the election from various state and local election officials (likely due to the absence of any binding interpretation of the code). *See In re Nov. 3, 2020 Gen. Election*, 2020 WL 6866415, at *23-24. Thus, he determined that it "would be unfair" to interpret the election code "to punish voters for the incidents of systemic growing pains." *Id*. [4]

What this means is that, in the end, four justices—in a case brought by the same plaintiff and challenging the very same ballots at issue here—interpreted Act 77's date requirement as not invalidating non-compliant ballots under the circumstances present here, and thus held that Allegheny County's decision to count those ballots was proper. That interpretation of Pennsylvania law is binding on the federal courts, including on this Court. *See Riley v. Kennedy*, 553 U.S. 406, 425 (2008) ("A State's highest court is unquestionably the ultimate expositor of state law. … There is no good reason to hold otherwise simply because Alabama's highest court … did not render its decision until after an election was held.") (cleaned up); *Bush*, 531 U.S. at 112 (Rehnquist, J. concurring) ("In most cases, comity and respect for federalism compel us to defer to the decisions of state courts on issues of state law. That practice reflects our understanding that the decisions of state courts are definitive pronouncements of the will of the States as sovereigns.").

---

[4] Aside from the failure to date the declaration on their ballots, there is no suggestion from either party that the voters who cast the challenged ballots here lacked the qualifications to vote or that the ballots they cast were fraudulent. Nor is there any suggestion that the ballots in question were untimely mailed. Thus, at bottom, this case concerns ballots cast by lawful voters who wished to vote (presumably for both Mr. Brewster and Ms. Ziccarelli, though in different proportions) but simply failed to comply with a technical requirement of the election code.

## II. The Pennsylvania Supreme Court's decision compels dismissal of Ms. Ziccarelli's federal constitutional claims.

Because the Pennsylvania Supreme Court held that undated ballots are not invalid, Ms. Ziccarelli's federal constitutional claims fail for at least two reasons.

First, on the merits, both of Ms. Ziccarelli's federal claims depend on the Pennsylvania Supreme Court declaring the undated ballots invalid. For example, she brings an equal-protection claim, asserting that Allegheny County's decision to count the ballots conflicts with Westmoreland County's decision to not count undated ballots. She asserts that the application of different standards in different counties violates the equal-protection principles found in *Bush v. Gore*. That may be so. *See Donald J. Trump for President, Inc. v. Boockvar*, — F. Supp. 3d —, No. 20-966, 2020 WL 5997680, at *42 (W.D. Pa. Oct. 10, 2020) (Ranjan, J.) ("*Bush*'s core proposition—that a state may not take the votes of two voters, similarly situated in all respects, and, for no good reason, count the vote of one but not the other—seems uncontroversial."). But the question then becomes: what is the remedy?

To remedy an equal-protection violation, a court can either extend favorable treatment and "level up" (*i.e.,* order Westmoreland County, which is not a party here, to count its undated ballots and enfranchise certain voters), or "level down" (*i.e.,* order Allegheny County to not count the undated ballots, and disenfranchise certain voters). *Donald J. Trump for President, Inc. v. Boockvar*, — F. Supp. 3d —, No. 20-2078, 2020 WL 6821992, at *12 (M.D. Pa. Nov. 21, 2020) (citing *Heckler v. Mathews*, 465 U.S. 728, 740 (1984)), *aff'd sub nom. Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 F. App'x 377 (3d Cir. 2020).

Ms. Ziccarelli, relying on *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017), argues that the decision to level up or down must be discerned from the legislative intent behind the statute at issue. But that principle, applied here, is fatal to Ms. Ziccarelli's claim. The Pennsylvania Supreme Court held that the legislatively

enacted election code does not automatically require invalidation of undated ballots, even if the justices in the majority split on whether they might interpret legislative intent to be different, when faced with a different context, in the future. This Court is bound by the Pennsylvania Supreme Court's interpretation of this state law— which directly applies to the very ballots at issue here. Consequently, faithfully implementing legislative intent here would require this Court to "level up," resulting in affirming Allegheny County's counting of the undated ballots.

Similarly, Ms. Ziccarelli claims that her substantive due process rights have been violated because the "rules have changed," *i.e.,* the "rule" before the election was to not count undated ballots, but Defendants changed the rules by counting and certifying those ballots. Not so. In interpreting the statute, the Pennsylvania Supreme Court was necessarily deciding whether these ballots were valid *at the time they were cast*—that is, before the election and before votes were counted. *See Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312–13 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."). That the case reached the Pennsylvania Supreme Court after the election does not evince a "change in the rules." *See Riley*, 553 U.S. at 425 ("There is no good reason to hold otherwise simply because Alabama's highest court … did not render its decision until after an election was held.").[5] Moreover, Justice Wecht made clear that his decision to not apply his

---

[5] Ms. Ziccarelli argues that *Roe v. State of Ala. By & Through Evans*, 43 F.3d 574, 580 (11th Cir. 1995) supports her contention that due process is violated by a post-election, state-court decision that retroactively changes state election rules. *Roe* was a very different case, and it doesn't control here.

*Roe* involved a state-court decision that retroactively eliminated a requirement of Alabama law that absentee ballots contain "the signature of two witnesses or a notary." *Id.* at 582. The Eleventh Circuit affirmed a district court finding that this retroactive rule change violated due process. But it did so only because (1) "counting ballots that were not previously counted would dilute the votes" of those who complied with the previously established requirement; and (2) "the change in the rules after

- 9 -

the election would have the effect of disenfranchising those who would have voted but for the inconvenience imposed by the notarization/witness requirement." *Id.* at 581. The court also noted that the longstanding "practice of the election officials throughout [Alabama] ha[d] been to exclude absentee ballots that did not meet this requirement," and that it would be "unreasonable to expect average voters and candidates to question the Secretary's, the Attorney General's, and the election officials' interpretation and application" of the statutory requirement. *Id.*

None of these concerns is present here. First, Ms. Ziccarelli has disclaimed any theory based on dilutive harm suffered by nonparty voters, ECF 65, p. 3 ("[T]his harm is not asserted on behalf of nonparty voters"), and any such theory would not be viable in this circuit after *Bognet v. Sec'y Commonwealth of Pa.,* 980 F.3d 336, 354 (3d Cir. 2020) ("This conceptualization of vote dilution—state actors counting ballots in violation of state election law—is not a concrete harm under the Equal Protection Clause of the Fourteenth Amendment."). As for *Roe's* disenfranchisement concern, there is no allegation or evidence that any voter "would have voted but for the inconvenience" of writing the date on a ballot declaration. *Roe,* 43 F.3d at 581. Critically, this case also differs from *Roe* in that the Pennsylvania Supreme Court's decision was not a "departure from previous practice" in Pennsylvania of invalidating undated ballots. *Id.* Instead, the Supreme Court was interpreting the relevant provisions of the election code as a matter of first impression. Pennsylvania voters' reliance interests also cut in the opposite direction from *Roe*—as reflected by Justice Wecht's concern that he could not "say with any confidence that even diligent electors were adequately informed as to what was required to avoid the consequence of disqualification[.]" *In re Nov. 3 Gen. Election,* 2020 WL 6866415 at *24.

Given these distinctions, the Court does not find that the facts of Ms. Ziccarelli's case present anything resembling the sort of conscience-shocking behavior that is required to show a due-process violation. *See Boockvar,* 2020 WL 5997680, at *51 ("Such a claim exists in only the most extraordinary circumstances."); *Miller v. City of Phila.,* 174 F.3d 368, 375 (3d Cir. 1999) ("[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense … "executive action must be so ill-conceived or malicious that it 'shocks the conscience.'").

Separately, the Court notes that *Roe* also inspired a strong dissent that called into doubt the majority opinion in several pertinent respects. These included the majority's "theory that Alabama's legislature has the power in election contests to act contrary to the law of Alabama as declared by Alabama's highest court," as well as "the perception that a federal court order that countermands a pre-existing Alabama court order maintains the status quo in Alabama." *Roe,* 43 F.3d at 586 (Edmondson, J. dissenting). The dissent's concerns are consistent with the principle, noted above, that "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers,* 511 U.S. at 312–13.

- 10 -

preferred interpretation of the statute except "prospectively" was premised on his view that such a ruling would be a "ruling of first impression not foreshadowed by existing law"—in other words, there was not a different rule set in place before the election. *In re Nov. 3, 2020 Gen. Election*, 2020 WL 6866415, at *23. As a result, there was no four-justice consensus for the view that the date requirement was mandatory before the election.[6]

Second, because the Pennsylvania Supreme Court found that the ballots were valid, if this Court were to adopt any contrary position, it would run afoul of the *Rooker-Feldman* doctrine. That doctrine provides that a federal court, like this one, cannot sit as an appellate court to review the decision of a state supreme court. *See In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005) ("The *Rooker–Feldman* doctrine prevents 'inferior' federal courts from sitting as appellate courts for state court judgments.") (citation omitted). "[T]here are four requirements that must be met for the *Rooker–Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is

---

[6] Ms. Ziccarelli's due-process claim is also based on Secretary Boockvar's pre-election guidance to county boards of elections to not count any undated ballots. She says the Secretary changed the rules from before the election by certifying Allegheny County's count, including the challenged ballots, after initially issuing pre-election guidance suggesting that undated ballots should not be counted. The Secretary disputes Ms. Ziccarelli's interpretation of her guidance. But in any event, under Pennsylvania law, the Secretary's pre-election guidance is just that—guidance. County boards of elections ultimately determine what ballots to count or not count in the first instance. *See* 25 P.S. § 2642; *see also Boockvar*, 2020 WL 5997680, at *9 ("The Election Code vests county boards of elections with discretion to conduct elections and implement procedures intended to ensure the honesty, efficiency, and uniformity of Pennsylvania's elections."). Then, if there are any disputes about the counties' decisions, those disputes are definitively resolved by the state courts, not the Secretary. As a result, Secretary Boockvar did not have the authority to "change the rules." Her guidance has force only insofar as it correctly interprets the law.

inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (cleaned up).

All four elements are satisfied here. If, as Ms. Ziccarelli invites, the Court were to piece together the non-precedential reasoning of the Pennsylvania Supreme Court's concurring and dissenting justices to hold that the undated ballots are, in fact, invalid under Pennsylvania law, it would be effectively overturning the judgment of that Court—which affirmed that Allegheny County's decision to count the ballots was proper under Pennsylvania law. In other words, to grant Ms. Ziccarelli the relief she seeks, the Court would be required to tell a state supreme court that, based on its reasoning, the judgment it entered was erroneous. *Rooker-Feldman* forbids such an action, so long as the doctrine's other elements are also satisfied. They are. Ms. Ziccarelli was the plaintiff in the state court proceedings; she lost; and the Supreme Court's judgment was issued before this case was filed.

There is one more point to make about the Pennsylvania Supreme Court's decision and *Rooker-Feldman*. One fair reading of the court's decision is that the date requirement essentially gave Allegheny County the option to count or not count the undated ballots.[7] That certainly is a potential equal-protection risk, because some counties may count undated ballots and others may not, in the exercise of their

---

[7] *See In re Nov. 3, 2020 Gen. Election,* 2020 WL 6866415, at *16 ("[W]e **decline to intercede** in the counting of the votes at issue in these appeals.") (emphasis added); *id.* at *14 ("[T]he inadvertent failure to comply does not ***require*** that ballots lacking a date be excluded from counting.") (emphasis added); *but see id.* at *15 ("[T]he lack of a handwritten date ***cannot result*** in vote disqualification.") (emphasis added).

Allegheny County argues it was required to count the ballots by the Supreme Court's decision. Ms. Ziccarelli argues that Allegheny County was required *not* to do so, based on the reasoning of the dissenting justices and Justice Wecht. Therefore, the parties do not appear to be necessarily advancing an interpretation of the Pennsylvania Supreme Court's decision that Allegheny County had discretion to count or not count the ballots. The Court addresses it here out of an abundance of caution.

discretion. But even if the Supreme Court left to Allegheny County the discretion to either count or discount the ballots (*i.e.,* if its holding were merely that counting undated ballots is permissible but not required), that would run directly into *Rooker-Feldman*.

This is so because any equal-protection issue would then flow not from the counties' decisions themselves, but from the Pennsylvania Supreme Court's "mandatory" / "directory" framework and its application of that framework to ratify a discretionary state of affairs. *Cf. Bush*, 531 U.S. at 107 (Florida Supreme Court violated equal protection when it "ratified ... uneven treatment" of equivalent votes).[8] Given that, to grant Ms. Ziccarelli relief, the Court would be required to hold that the Pennsylvania Supreme Court's decision violated the federal Constitution. *Rooker-Feldman* deprives this Court of the authority to make such determinations in the context of an "appeal" by the loser in the state-court lawsuit where that decision was made.

To be clear, this does not mean that no federal remedy is available when a state supreme court's decision creates a federal equal-protection issue. It just means that, as in *Bush v. Gore*, the United States Supreme Court has exclusive jurisdiction to hear an appeal directly from that decision, while the lower federal courts, like this one, lack jurisdiction under *Rooker-Feldman*. *See Walker v. Horn*, 385 F.3d 321, 329 (3d Cir. 2004) ("The *Rooker–Feldman* doctrine arises from 28 U.S.C. § 1257 which states in relevant part that '[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....' ... Since Congress has never conferred a similar power of review on the United States

---

[8] Indeed, the Pennsylvania Supreme Court recently hinted that its "mandatory" / "directory" framework could create an equal-protection violation, but declined to find such a violation based on the record before it. *See Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345, 361 (Pa. 2020).

District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions.") (cleaned up).

In sum, the correct interpretation of the Pennsylvania Supreme Court's decision on Ms. Ziccarelli's state-court appeal is that the challenged ballots are valid and may properly be counted. This causes Ms. Ziccarelli's federal claims to fail on the merits. Separately, any other result would effectively overturn the Pennsylvania Supreme Court's decision, in violation of *Rooker-Feldman*.[9]

## **CONCLUSION**

For all the reasons discussed above, the Court will grant Defendants' and Intervenors' motions for summary judgment and deny Ms. Ziccarelli's cross-motion for summary judgment. An appropriate order follows.

DATED: January 12, 2021

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge

---

[9] Defendants argue that this Court lacks subject-matter jurisdiction under *Rooker-Feldman*. The Court, however, believes that the more appropriate view of *Rooker-Feldman* here is that that doctrine acts to constrain how this Court can interpret the Pennsylvania Supreme Court's decision in analyzing the merits of Ms. Ziccarelli's federal claims. In other words, this Court has subject-matter jurisdiction to adjudicate the federal claims, so long as its analysis of the claims does not seek to invalidate the state-court judgment. *See Jordon v. Attorney Gen. of U.S.*, 424 F.3d 320, 325 n.8 (3d Cir. 2005) (noting that in cases involving statutory jurisdiction, as opposed to Article III jurisdiction, federal courts may consider the merits of the claims before addressing jurisdictional issues).